UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALFRED G. OSTERWEIL,

|  |  |  |
|---|---|---|
| | *Plaintiff*, | 09-CV-825 |
| -against- | | GLS/DRH |

GEORGE R. BARTLETT, III., in his official capacity as
Licensing Officer in the County of Schoharie; DAVID A.
PATERSON, in his official capacity as Governor of New
York; and ANDREW M. CUOMO, in his official capacity as
Attorney General of New York,

*Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants Bartlett, Paterson and
    Cuomo
Office of the Attorney General
The Capitol
Albany, New York  12224

Roger W. Kinsey
Assistant Attorney General, of Counsel
Bar Roll No. 508171
Telephone:  (518) 473-6288
Fax:  (518) 473-1572 (Not for service of papers)
Date: September 3, 2009

## Table of Contents

**Preliminary Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Statutory Framework** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I
THE GOVERNOR AND ATTORNEY GENERAL ARE NOT
PROPER PARTIES TO THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II
PLAINTIFF'S SECOND AMENDMENT CLAIM FAILS TO
STATE A CLAIM FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
A. The Second Amendment Binds Only The Federal Government . . . . . . . . . . 6
B. The Second Amendment Does Not Guarantee An Individual Right To
Possess a Handgun . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT III
THE ELEVENTH AMENDMENT BARS SUIT AGAINST THE
STATE OF NEW YORK AND RECOVERY OF DAMAGES . . . . . . . . . . . . . 9

POINT IV
NEW YORK'S LICENSING CRITERIA ARE
SUBSTANTIALLY JUSTIFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT V
NEW YORK'S RESIDENCY REQUIREMENT IS RATIONALLY
RELATED TO A LEGITIMATE GOVERNMENT INTEREST . . . . . . . . . . . . 16
A. Rational Basis Review is the Appropriate Level of Equal
Protection Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
B. New York's Penal Law Provision is Rationally Related
to Legitimate State Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT VI
THE ALLEGATIONS BY PLAINTIFF DO NOT GIVE
RISE TO A SUBSTANTIVE DUE PROCESS CLAIM . . . . . . . . . . . . . . . . . . 19

POINT VII
THE ALLEGATIONS BY PLAINTIFF DO NOT GIVE
RISE TO A PROCEDURAL DUE PROCESS CLAIM . . . . . . . . . . . . . . . . . . 20

POINT VIII
PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED . . . . . . . . 21

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Preliminary Statement

Plaintiff pro se commenced this action challenging New York's statutory mechanism by which individuals apply for permits to carry or possess concealed firearms.  Plaintiff contends that he was denied a handgun permit by defendant Bartlett due to defendant Bartlett's "imperfect performance of his sworn duties." Complaint ¶12.  Plaintiff alleges that defendants Paterson and Cuomo failed to take appropriate action "to protect plaintiff's rights under the United States Constitution and existing New York Statues."  Complaint ¶13.  Plaintiff urges that the denial of the handgun permit violated rights granted to plaintiff under the Second Amendment to the United States Constitution and New York's Civil Rights Law.  Complaint "Second Cause of Action."  Simply stated, plaintiff contends that the New York statute unlawfully discriminates against individuals who own residential property in the State of New York but are domiciled in another state.

Defendants Bartlett, Paterson and Cuomo move to dismiss the complaint on the following grounds:

1) Defendants Paterson and Cuomo are not proper parties;

2) complaint should be dismissed because that Second Amendment does not bind the actions of the state and does not protect the individual right to bear arms asserted by plaintiff;

3) monetary damages are not recoverable from defendants in their official capacities;

4) the challenged statute does not run afoul of District of Columbia, et al., v. Heller, 128 S.Ct. 2783 (2008);

5) Penal Law § 400.00(3) is rationally related to legitimate state interests and thus does not deprive plaintiff of equal protection; and

6) plaintiff has failed to state a claim alleging any violation of his due process rights.

2

**Statutory Framework**

New York Penal Law §400.00 provides the statutory framework under which individuals may apply for permits to carry and possess firearms[1] in New York.  A permit issued under §400.00 of the Penal Law can exempt an individual from felony prosecution for possession of a handgun or pistol.  Penal Law § 265.20(3).  Subdivision three of section 400.00 provides, in relevant part:

> (a) Applications shall be made or renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper; and in the case of a license as gunsmith or dealer in firearms, to the licensing officer where such place of business is located.

A variety of persons with significant contacts with the State, therefore, are statutorily eligible to apply for a permit, namely New York residents and non-residents who have their principal place of employment or principal place of business as a merchant or storekeeper in New York.  Id.; see also New York State Rifle & Pistol Ass'n v. Mt. Vernon, 148 A.D.2d 616, 617 (2d Dep't 1989); People v. Moore, 127 Misc. 2d 402 (Crim. Ct. N.Y. City 1985) (discussing case of Pennsylvania resident holding permit under §400.00).  The identity of the licensing officer referred to in this section depends on the locality.  See Penal Law § 265.00(10).  Whether a permit is, in turn, actually granted is within the discretion of that licensing officer.  Under these provisions, persons, even when granted a permit, are not provided a blanket license to carry any weapon.  Instead, each license specifies in detail each weapon covered by that license and whether that license is issued as a license to carry or possess on the premises.  Penal Law § 400.00(7); see also Moore, 127 Misc.2d at 403-05.

---

[1] This case, of course, concerns only plaintiff's request for a license for a pistol or revolver. See N.Y. Penal Law § 400.00(3)(a) (application process for pistol or revolver permit).  Though they may not be plaintiff's weapons of choice, on these facts it appears that nothing prohibits plaintiff from carrying a rifle or shotgun while traveling in New York.  See N.Y. Penal Law, Practice Commentary to Article 263, McKinney's p. 95 ("the Penal Law does not make it a crime per se for a citizen to possess a rifle or shotgun").

**Argument**

Plaintiff's allegations set forth two distinct types of claim.  One is a broad-based challenge to New York's qualifications for firearms permits, premised on an asserted fundamental right to bear arms under the Second Amendment.  Plaintiff's remaining claims allege that the New York statute has denied plaintiff his constitutionally protected rights to possess a firearm in his New York residence on an unjustifiable distinction between domiciled and non-domiciled residents with regard to the ability to seek firearms permits.

Preliminarily, we note that plaintiff's challenges are neither novel nor meritorious, and existing precedent dispatches them completely.  The Attorney General and Governor are not proper targets for plaintiff's challenge to the licensing scheme.  Maloney v. Cuomo, 470 F. Supp. 2d 205, 211, aff'd 554 F.3d 56 (2009).  The Supreme Court's determination in District of Columbia v. Heller, 128 S.Ct. 2783, which addresses the United States Constitution's restrictions on federal legislation under the Second Amendment, does not apply to the State or state statutes.  Id.  Indeed, the Court itself commented that nothing in the Court's decision should be interpreted as disapproval of longstanding regulations on ownership or possession of firearms such as, for example, bans against convicted felons, mentally ill persons, or the carrying of firearms in sensitive areas such as government buildings (128 S. Ct. at 2816-17).  In any event, New York State's residency and other licensing qualifications under Penal Law §400 have long been found to pass constitutional muster in the Second Circuit  Bach v. Pataki, 408 F3d 75 (2005).  Heller does not change the paradigm.

As the complaint's federal claims must all be dismissed for failure to state a cause of action, the Court should decline to entertain the complaint and dismiss it in its entirety.

POINT I

THE GOVERNOR AND ATTORNEY GENERAL ARE NOT
PROPER PARTIES TO THIS ACTION

Governor Paterson is sued in his capacity as the "chief executive officer" of the State, while Attorney General Cuomo is sued in his capacity as the "chief law enforcement officer" of the State. Complaint ¶ 13.  Plaintiff does not allege that either defendant has any personal responsibility with respect to enforcing the State's licensing scheme or granting permits.  The statute is clear that, insofar as it has and would involve plaintiff, it is a judicial official or local municipal official that makes a determination regarding an application for a permit.  Penal Law § 265.00(10); see also Attorney General's Informal Opinion, 1986 N.Y. A.G. Lexis 26, at * 2 (1986) ("police authority for the county or city where an application for a license to carry a firearm is made has responsibility for investigating the statements made in the application").  The plaintiff has no reasonable fear that the New York State Attorney General will prosecute any offenses arising out of this licensing scheme. See, e.g., Maloney v Cuomo, 470 F.Supp 2d. at 211, supra.  Similarly, the Governor's generalized duty to ensure that the laws are faithfully executed is not the stuff of a federal claim against him where the constitutionality of this licensing scheme is in issue.  Id. Courts have long recognized that the Attorney General is not a proper party to an action merely because the constitutionality of a statute is raised.  See, e.g., Filler v. Port Washington Union Free Sch. Dist., 436 F. Supp. 1231, 1234-35 (E.D.N.Y. 1977).  When a state official has no role in enforcement of the statute at issue, he simply is not a proper party to an action challenging that statute.  See Ex Parte Young, 209 U.S. 123, 157 (1908).  "Although he has a duty to support the constitutionality of challenged state statutes and to defend actions in which the state is interested, the Attorney General does so, not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes."  Mendez v. Heller, 530 F.2d 457, 460 (2d Cir. 1976) (internal citations omitted).  As licensing is principally

5

a local process with local controls (see, e.g., Bach v Pataki, 408 F3d at 81), plaintiff does nothing here to demonstrate involvement of these highly placed government officials and they should be dismissed from the action.

POINT II

PLAINTIFF'S SECOND AMENDMENT CLAIM FAILS TO<br>STATE A CLAIM FOR RELIEF

Plaintiff's first enumerated cause of action alleges that the New York statute violates his rights under the Second Amendment to the United States Constitution which plaintiff alleges protects his personal right to keep and bear arms.  See Complaint  ¶¶ 7 & 11.  Because the Second Amendment binds only the actions of the federal government and, in any event, does not provide for the individual right to bear arms plaintiff asserts, this cause of action must be dismissed.

**A. The Second Amendment Binds Only The Federal Government**

It is well settled that the amendments constituting the Bill of Rights represent, in the first instance, a restriction on the power of only the federal government.  Clark v. Town of Ticonderoga, 213 F. Supp.2d 198, 201 (N.D.N.Y. 2002) (Kahn, J.) (citing cases).  Our constitutional jurisprudence has seen fit, in some circumstances, to apply the strictures of those amendments to the states as well, through the auspices of the Fourteenth Amendment.  See generally Duncan v. Louisiana, 391 U.S. 145, 148 (1968) (discussing incorporated rights).  Thus, a state is bound by these amendments only if specifically incorporated by the Fourteenth Amendment.  See Lanfranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (error to consider grand jury claim against state when Fifth Amendment grand jury protection had not been incorporated through Fourteenth Amendment); see also Quilici v. Morton Grove, 695 F.2d 261, 270 (7th Cir. 1982), cert. denied, 464 U.S. 863 (1983) (citing Supreme Court cases rejecting notion that entire Bill of Rights applies to states).

The Supreme Court has consistently ruled that the Second Amendment is a limitation only

6

on actions of the federal government.  In <u>United States v. Cruikshank</u>, the Court stated that the Second Amendment was "one of the amendments that has no other effect than to restrict the powers of the national government."  92 U.S. 542, 553 (1876).  Ten years later, the Court reaffirmed this holding, citing <u>Cruikshank</u> for the proposition that the Second Amendment "is a limitation only upon the power of Congress and the National government, and not upon that of the States."  <u>Presser v. Illinois</u>, 116 U.S. 252, 265 (1886).  Additionally, the Supreme Court has subsequently cited <u>Presser</u> for the proposition that the Second Amendment does not bind the states.  <u>Malloy v. Hogan</u>, 378 U.S. 1, 5 (1964).  Indeed, <u>Cruikshank</u> and <u>Presser</u> have routinely been cited by courts holding that the Second Amendment do not bind the states.  <u>See</u>, <u>e.g.</u>, <u>Peoples Rights Org. v. City of Columbus</u>, 152 F.3d 522, 538 n. 18 (6th Cir. 1998); <u>Quilici</u>, 695 F.2d at 270; <u>Nollet v. Justices of the Trial Court</u>, 83 F. Supp.2d 204, 214 (D. Mass.), <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000).

Notwithstanding plaintiff's claim (first cause of action), it is well settled that the Second Amendment has never been specifically incorporated through the Fourteenth Amendment to restrict the power of the states.  <u>Bach v. Pataki</u>, 408 F.3d 86 (2d Cir. 2005); <u>Parker v. District of Columbia</u>, 478 F.3d 370, 391, n. 13 (D.C.Cir. 2007).  Plaintiff's Second Amendment challenge to the New York statute on the theory of incorporation in his "First Cause of Action" must be dismissed.

## B. The Second Amendment Does Not Guarantee An Individual Right To Possess a Handgun

Plaintiff urges that <u>District of Columbia, et al., v. Heller</u>, has created a federal right for each homeowner to possess a handgun in his home.  Complaint ¶¶ 7 & 11.  As a primary matter, Heller dealt with a law passed in the Federal District of Columbia and not in any state.  Thus, a federal statute was under review and no state statute was implicated.  <u>District of Columbia, et al., v. Heller</u>, <u>supra</u>.  Moreover, " . . . the United States Supreme Court's decision in *Heller* [did not] alter the court's analysis in any way. *Heller* involved an outright ban of possession of handguns-including

in one's own home. In striking down the District of Columbia statute, the Supreme Court noted that nothing in the Court's decision should be interpreted as disapproval of longstanding regulations on ownership or possession of firearms such as, for example, bans against convicted felons, mentally ill persons, or the carrying of firearms in sensitive areas such as government buildings ( *id.* at 2816-17). Importantly, the Court noted that it named but a few examples of permissible regulations, not a list that purported to be exhaustive ( *id.* at 2817 n. 26)." Wisotsky v. Kelly, 2009 WL 1620181 *6 (N.Y. Supp. 2009).  The Court took great pains to reiterate that licensing and control of licensing that did not create a total ban was permissible.  District of Columbia, et al., v. Heller, at 2819.

Plaintiff argues that the simple purchase of real property in the State of New York grants him an enforceable, constitutional right to possess a handgun on and in that property.  Not only does Plaintiff fail to properly read District of Columbia, et al., v. Heller, his argument would effectively destroy any licensing requirement for property owners anywhere in the United States.  One would simply have to buy a piece of property, no matter how small, in any location in order to have unfettered access to a handgun.  In effect, Plaintiff's reasoning would virtually do away with any vetting, control, felony exclusions or supervision for those persons who could buy real estate in any state.  Such an outcome was specifically rejected by the Court.  District of Columbia, et al., v. Heller at 2819.  Thus, contrary to Plaintiff's assertion, there is no constitutional right to unregulated possession of a handgun, and the Complaint should be dismissed.

As noted by the Second Circuit Court of Appeals, the New York State regulatory process is designed to ensure that all persons granted permits in New York State are subject to rigorous local monitoring to ensure that the State's substantial and legitimate interest in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character appropriate for one entrusted with a dangerous instrument.  See

8

Bach v. Pataki, 408 F.3d at 91.  When the Second Circuit upheld the New York statutory scheme, it specifically acknowledged that New York State discriminates against non-domiciliaries ( Id., n. 13.) but also found that non-domiciliaries distinction was substantially related to the threatened danger.  See, id., 408 F.3d at 91.  The mere fact that plaintiff has purchased residential property in New York, of course, does nothing to address the State's needs to monitor the permit-holders' entire behavior, within and without the State, recognizing that it is much more difficult to monitor the behavior of mere visitors who live elsewhere. See, id., 408 F.3d at 92.  In essence, by the State limiting its residency-based permits to domiciliaries, the State best guarantees it is able to monitor those permit-holders.  Plaintiff's passing residency does nothing to ensure the State' ability to monitor his out-of-state conduct at his domicile and other residences.  Cf. Bach v. Pataki, (New York's non-resident distinction, with the in-state worker exception, is tailored to meet the State's monitoring interest).   For the above reasons the complaint should be dismissed.

## POINT III

## THE ELEVENTH AMENDMENT BARS SUIT AGAINST THE STATE OF NEW YORK AND RECOVERY OF DAMAGES

Generally, the Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity.[2]  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Green v. Mansour, 474 U.S. 64, 72-73 (1985); see also Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities, 64 F.3d 810 (2d Cir. 1995).  It is well settled that generally neither the State, or its agencies can be sued under section 1983.  Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998).  One

---

[2]  Suits in equity refers to both requests for declaratory and injunctive relief.  See generally Fiedler v. State of New York, 925 F. Supp. 136, 137 (N.D.N.Y. 1996) (McAvoy, J.).  Thus, this analysis is applicable to both plaintiffs' request for a declaratory judgment and a permanent injunction in the form of ordering the issuance of a license.

exception to this immunity exists where a plaintiff is seeking prospective injunctive relief to prevent the continuation of a ongoing violation of federal law.  See Ex Parte Young, 209 U.S. 123, 155-56 (1908).  The Ex Parte Young exception to the Eleventh Amendment bar, however, is a narrow one, and may only be utilized for prospective injunctive relief "where there is a specific conflict between [a] federal mandate and [a] State plan or practice that a federal right is implicated" and when such is necessary to vindicate the supremacy of federal law.  Doe v. Pfrommer, 148 F.3d 73, 80-81 (2d Cir. 1998).  Thus, as the defendants are named as officials of New York State, plaintiffs can only seek prospective injunctive relief against them in their official capacity as any other equitable relief is barred by the Eleventh Amendment.  Ex Parte Young, 209 U.S. at 123; Edelman v. Jordan, 415 U.S. 651, 677 (1974); New York Health & Hosp. Corp v. Perales, 50 F.3d 129, 135 (2d Cir. 1995) ("From all of this it may be seen that principles of Eleventh Amendment law attempt to strike a balance between the states' sovereign immunity and the supremacy of federal law.") (citing Pennhurst, 465 U.S. at 105).

Since there is no federal constitutional right to the relief requested, plaintiff cannot demonstrate that there is a state policy or custom that was the "moving force behind the alleged constitutional deprivation."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Accordingly, plaintiffs' claims for the equitable relief of ordering the state to issue a firearm license against the defendants in their official capacities are barred by the Eleventh Amendment and the complaint should be dismissed.

Additionally, Plaintiff names and seeks to sue the Defendants in their official capacity for monetary damages.  Complaint ¶ "Wherefore" and ¶3.  The Supreme Court has stated, "[o]bviously, state officials literally are persons.  But a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different

10

from a suit against the State itself." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71.  To the extent that plaintiff's reference to the defendants' title or "official capacities" purports to subject either the State of New York or its agencies to the jurisdiction of this court, the Eleventh Amendment bars such action and the complaint should be dismissed as to the State of New York or its agencies. <u>See</u> <u>Chinn v. City University of New York School of Law at Queens College</u>, 963 F. Supp. 218 (E.D.N.Y. 1997).

In addition to the above enumerated grounds for dismissal, it is well settled that claims for monetary relief are not cognizable pursuant to § 1983 with regard to the State of New York.  <u>Monell v. NY City Dept. Soc. Services</u>, 436 U.S. 658, 690 n. 55 (1978); <u>Ford v. Reynolds</u>, 316 F. 3d. 351, 354 (2d. Cir. 2003).   Thus, all claims for damages must be dismissed.

POINT IV

<u>NEW YORK'S LICENSING CRITERIA ARE<br>SUBSTANTIALLY JUSTIFIED</u>

Plaintiff attributes the denial of a handgun license to an alleged statutory structure which unreasonably discriminates against nonresidents of New York.  However, the Second Circuit has upheld the rigorous local monitoring to ensure that the State's substantial and legitimate interest in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character appropriate for one entrusted with a dangerous instrument.  <u>See Bach v. Pataki</u>, 408 F3d at 91.  Tellingly, when the Second Circuit upheld the New York statutory scheme, it specifically had in mind the fact that New York State discriminates against non-domiciliaries.  <u>Id.</u>, n. 13.

Notwithstanding plaintiff's complaint, the U.S. Constitution-Privileges and Immunities Clause does not prohibit all distinctions in treatment, instead barring only "discrimination against

11

citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." Toomer v. Witsell, 334 U.S. 385, 396 (1948). Because the statute at issue is substantially justified by strong governmental interests as articulated by the Second Circuit, as a matter of law it does not impinge upon plaintiff's rights. See Bach v. Pataki, 408 F3d at 91, n.13.

As noted above, the statute permits residents of New York and those who either operate a business in New York or have their principal place of employment in New York to apply for a permit. See Penal Law § 400.00; Moore, 127 Misc.2d 402. As such, plaintiff's arguments that New York cannot discriminate against nonresidents as a class is not support for his claim that section 400 is unconstitutional. Instead, this Court must consider whether New York's substantial contacts test runs counter to the long established purpose of the Privileges and Immunities Clause.

The Privileges and Immunities Clause "was intended to create a national economic union." Supreme Ct. of N.H. v. Piper, 470 U.S. 274, 280 (1985). As such it is only "with respect to those privileges and immunities bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." Baldwin v. Fish & Game Comm'n, 436 U.S. 371, 383 (1978) (internal quotations omitted). The Clause, therefore, protects those privileges necessary to help "fuse into one Nation a collection of independent, sovereign States." Toomer, 334 U.S. at 395. Indeed, while much of the Supreme Court's Article IV jurisprudence has focused on furthering interstate unity in the fields of employment, education and commerce, section 400.00 is entirely consistent with fostering these goals in permitting those who have their principal place of business or employment in New York to seek a permit.

Instructive in this area is the principle that "[T]he States possess primary authority for defining and enforcing the criminal law." United States v. Lopez, 514 U.S. 549, 561 n. 3 (1995).

12

Though not criminalizing conduct, section 400.00 must be read together with Penal Law § 265.00 et seq., regarding criminal possession of a weapon and, therefore, viewed with the particular deference accorded the individual states in such matters.  A review of state laws from around the nation is particularly instructive to the privileges and immunities analysis.  That review reveals a wide divergence in licensing practices for non-residents. California, like New York, requires applicants for a pistol permit to either live in the county of application or "spend[] a substantial period of time in the applicants's principal place of employment or business in the county."  Calif. Penal Code § 12050(a)(1)(D) (2002).  Connecticut requires applicants to have a "bona fide residence or place of business within the jurisdiction." Conn. Gen. Stat. § 29-28 (2002).  Delaware maintains an even more restrictive policy, permitting only residents to obtain a firearms license.  In re Ware, 474 A.2d 131, 132 (Del. Sup. Ct. 1984) (interpreting 11 Del. Code § 1441 to permit only residents to apply to carry a concealed weapon).  Significantly, the Ware decision upheld Delaware's restrictive policy against challenges under the Privileges and Immunities and Equal Protection Clauses, relying in large part on a New York case affirming section 400.00. Id. at 133 (citing People v. Perez, 67 Misc.2d 911 (Co. Ct. Onondaga Co. 1971)).  Minnesota too requires applications for a permit to be made "where the applicant resides."  Minn. Stat. § 624.714 (2000). In addition to the states listed above, at least twenty-three other states impose a residency requirement for those seeking a concealed weapons permit, though some recognize permits issued in other states pursuant to mutual reciprocity agreements.[3]   Plaintiff's argument that he has some ingrained federal

---

[3]   Ala. Code § 13A-11-75 (2002); Alaska Stat. § 18.65.700 (2002); Ark. Code § 5-73-301 (1999); Ga. Code § 16-11-129 (2002); Ind. Code § 35-47-2-3 (2002); Ky. Rev. Stat. § 237.110 (2002); La. Rev. Stat. Ann. § 1379.3 (2003); Mich. Comp. Laws § 28.425b (2002); Miss. Code Ann. § 45-9-101 (2002); Mo. Rev. Stat. § 571.090 (2002); Mont. Code Ann. § 45-8-321 (2002); Nev. Rev. Stat. Ann. § 202.350 (2002); N.C. Gen. Stat. § 14-415.12 (2002); N.D. Cent. Code § 62.1-04-03 (2001); Okla. Stat. tit. 21, § 1290.9 (2002); Or. Rev. Stat. § 166.291 (2001); S.C. Code. Ann. 23-31-215 (2002); S.D. Codified Laws § 23-7-7 (2002); Tenn. Code Ann. § 39-17-1351 (2002); Tex. Gov't Code Ann. § 411.172 (2002); Va. Code Ann. § 18.2-308 (2002); W. Va. Code § 61-7-4 (2002); Wyo. Stat. § 6-8-

protection to apply for a permit as a nonresident is significantly undermined by the fact that a

majority of the States do not permit such applications by nonresidents.  The particular right plaintiff

asserts, therefore, is not among those protected under the Privileges and Immunities Clause.

Nor may plaintiff allege any abridgement of freedom to travel between the states due to the

lack of a handgun permit.  Federal law protects plaintiff from criminal prosecution when traveling

between states in which he may lawfully possess a firearm, even when passing through a state where

he may not be licensed.  28 U.S.C. § 926A (2002).

New York's interest in licensing firearms is clear:

> Licensing allows the State to review the reasons individuals apply for a weapon
> permit, to determine the validity of those reasons, and ultimately to be informed of
> what individuals are legally armed and with what weapons.

Moore, 127 Misc.2d at 404.  Clearly, section 400.00 is readily justified by legitimate and compelling

state interests in any event and, therefore, does not run afoul of the Privileges and Immunities

Clause.  In furthering that state interest, the Legislature was justified in  acting to stem the

"substantial danger to the public interest which would be caused by the unrestricted flow of

dangerous weapons into and through the State, possessed by countless travelers."  Perez, 67 Misc.2d

at 913.  And in seeking to limit the number of weapons, New York acted reasonably in denying the

privilege to those with remote contacts to New York.

Numerous other considerations provide ample justification for the dividing line adopted by

New York.  Prior to granting a permit, a background investigation must be conducted.  N.Y. Penal

Law § 400.00(4).  The practical implications of requiring New York to accept applications from all

nonresidents are apparent.  First, the strain on investigatory resources would be significantly

increased.  More importantly, however, the ability to obtain and verify information would be

---

104 (2002).

negatively impacted were New York officials required to make inquiries in other states.  Nor can it be argued that New York could simply enter into agreements with other jurisdictions to do such work for the licensing county as to do so would run a significant risk of a lack of uniformity in the licensing regime.

> Further, a rule permitting a person to obtain a pistol permit in any county where he or she is a temporary or occasional inhabitant could result in a person possessing multiple pistol permits covering different weapons and issued by different licensing officers.  The revocation for proper cause of such a person's pistol permit in one county would not be effective to prevent that person from possessing weapons required to be licensed, as the licensing officer in one locality would not have knowledge of the existence of additional permits issued to the same person for different weapons.  This result would be clearly inimical to the purpose of the statute, for the control of weapons possession intended to be afforded thereby would be defeated.

In re Davies, 133 Misc.2d 38, 41 (Oswego Co. Sup. Ct. 1986).  This also creates an undue risk of forum shopping for those seeking the easiest means to obtain a firearms permit.  Id.  Likewise, the risk of New York officials not learning of a disqualifying event or subsequent action bearing on a person's ability to carry a weapon is heightened the further from New York the person may reside.

Because the New York statute is substantially justified in furtherance of legitimate state interests, plaintiff's assertion of a right to possess a firearm outside of New York's statutory scheme fails to state a claim for relief and should be dismissed.  Accordingly, this claim, set forth in the Fourth and Sixth Causes of Action, should be dismissed.

POINT V

NEW YORK'S RESIDENCY REQUIREMENT IS RATIONALLY
RELATED TO A LEGITIMATE GOVERNMENT INTEREST

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike'." Roth v. City of Syracuse, 96 F. Supp. 2d 171, 178 (N.D.N.Y. 2000) (Mordue, J.) (quoting City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985)). The Clause does not, of course, prohibit all classifications. "It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Because the scope of review depends on the nature of the right allegedly violated, the first step in equal protection analysis is identifying the proper standard of review.

**A. Rational Basis Review is the Appropriate Level of Equal Protection Scrutiny**

When the objected to classification is made against a "suspect class" of persons or implicates a fundamental constitutional right, the highest level of review - strict scrutiny - is required. Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457-58 (1988); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976). "Where the alleged classification is not based on a suspect class or does not impair a fundamental right, the classification and the actions are reviewed on a rational basis standard, i.e., whether the legislative judgements are rationally related to a legitimate state purpose." Benjamin v. Town of Fenton, 892 F. Supp. 64, 67 (N.D.N.Y. 1995); see also Romer v. Evans, 517 U.S. 620, 631 (1996). Plaintiff does not contend that the New York statutory framework discriminates against any suspect class of individuals. Instead, he contends that it implicates what he asserts is his fundamental Second Amendment right to bear arms and that he is treated differently than other home owners and there is no rational basis for the different treatment.

As discussed above, "[T]he right to possess a gun is clearly not a fundamental right" and a

statute regulating that conduct is constitutional if it passes rational basis review.  United States v. Toner, 728 F.2d 115, 128 (2d Cir. 1984).  The Second Circuit's rule, which of course controls in this case, is supported by authority from around the nation.  See, e.g., Olympic Arms v. Buckles, 301 F.3d 384, 388-89 (6th Cir. 2002); United States v. Hancock, 231 F.3d 557, 565-66 (9th Cir. 2000), cert. denied, 532 U.S. 989 (2001); Gillespie v. City of Indianapolis, 185 F.3d 693, 709 (7th Cir. 1999), cert. denied, 528 U.S. 1116 (2000).

Plaintiff admittedly is not domiciled in New York.  Complaint ¶ 7; Third, Forth & Sixth Causes of Action.  Accordingly, plaintiff's equal protection claims must be dismissed if Penal Law § 400.00 is rationally related to a legitimate state purpose and rationally applied.

**B. New York's Penal Law Provision is Rationally Related to Legitimate State Interests**

"Rational basis review is deferential."  Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001).  This level of review does not permit the Court to "pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are plausible reasons for [the legislative] choices." General Media Comm., Inc. v. Cohen, 131 F.3d 273, 286 (2d Cir. 1997), cert. denied, 524 U.S. 951 (1998).  In general, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."  Nordlinger, 505 U.S. at 10 (quoting McGowan v. Maryland, 366 U.S. 420, 425-426 (1961)).  As such, "an equal protection challenge to a government classification must be denied if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Weinstein, 261 F.3d at 140.  Indeed, "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it."  FCC v. Beach Communications, Inc., 508 U.S. 307, 315 (1993).  "These laws are therefore entitled to a strong presumption of validity."  Vacco v. Quill, 521 U.S. 793, 800 (1997).

17

Guns are dangerous weapons which pose an undeniable risk of harm.  Through New York's statutory framework, the state has endeavored to permit only those individuals with a **substantial connection** to New York to carry weapons while in the state.  In its effort to delineate that group, New York chose to restrict permits to those who live, work or own a business in New York.  This was an entirely reasonable classification on which the Legislature could base its judgment.  "Lines must inevitably be drawn, and it is the legislature's province to draw them."  Brown v. Bowen, 905 F.2d 632, 635 (2d Cir. 1990), cert. denied, 498 U.S. 1093 (1991).  Here the Legislature cannot be said to have acted arbitrarily in drawing that line to include only those with the closest ties to the state.

As outlined in much more detail in the preceding point, New York has strong interests in its permit restriction.  Through that statute, the State seeks to guarantee the uniformity and accuracy of the background checks that are a predicate to the actual issuance of a license.  It seeks to preserve resources in managing its application process and minimize the risk for fraud or abuse in the permitting process.  Finally, the current mechanism limits the number of weapons permitted in the State.  These factors and the similar, or more restrictive, statutes in many of New York's sister States more than amply demonstrate that the application limitations inherent in section 400.00 are rationally related to the State's legitimate interest in regulating guns.

Taken together, these factors preclude plaintiff from demonstrating his burden that there is no conceivable justification for the classification under attack.  His equal protection claim, therefore, should be dismissed.

POINT VI

THE ALLEGATIONS BY PLAINTIFF DO NOT GIVE
RISE TO A SUBSTANTIVE DUE PROCESS CLAIM

While plaintiff frames his complaint as a violation of the 14th Amendment "equal protection clause," it may be liberally read to claim a violation of his due process rights. Complaint Fourth, Fifth and Sixth Causes of Action.[4]  "The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience."  Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002) (citing cases) (internal quotations omitted); see also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).  "Substantive due-process rights guard against the government's 'exercise of power without any reasonable justification in the service of a legitimate governmental objective'."  Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999) (citing County of Sacramento, 523 U.S. at 846).  Accordingly, "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."  Id.  Indeed, the Second Circuit has noted that "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Governmental action that is or may be viewed as merely "incorrect or ill-advised" does not give rise to a substantive due process claim.  Padberg v. McGrath-McKechnie, 203 F. Supp.2d 261, 284 (E.D.N.Y. 2002) (citing Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)).  Viewed in light of this "high standard," Leeandy Dev. Corp. v. Town of Woodbury, 134 F. Supp.2d 537, 543 (S.D.N.Y. 2001), plaintiff's due process allegations clearly fail to state a claim.  Additionally,  "[w]here

_____

[4]  Defendants do not believe that plaintiff has raised a due process claim but address due process in an abundance of caution, cognizant of the liberal pleading rules afforded pro se litigants by the Court.

another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit  provision and not the more generalized notion of substantive due process." Conn v. Gabbert, 526 U.S. 286, 293 (1999) (internal quotations omitted).     This action challenges New York's Penal Law and New York's statutory judgment regarding what conduct should be criminalized; unlicensed handgun possession.  In making that judgment, New York has established a regulatory scheme in which only those with significant ties to New York may apply for permission to carry a concealed weapon while in the state.  In this regard, New York is not unlike some twenty-seven sister states which likewise restrict the ability of non-residents to apply for firearms licenses.  See Footnote 4 supra & accompanying text.  This common state practice is justified by the strong interests of those states in regulating gun possession and transportation within their borders.  There can be no question that this is not the type of egregious, offensive and conscience shocking conduct at which the Due Process Clause is directed. Plaintiff's substantive due process claim, if any, should be denied.

POINT VII

THE ALLEGATIONS BY PLAINTIFF DO NOT GIVE
RISE TO A PROCEDURAL DUE PROCESS CLAIM

Plaintiff alleges a violation of his Fourteenth Amendment rights in the refusal of his handgun permit.  Complaint Sixth Cause of Action.  See Footnote 6, supra.  "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest."  Green v. Bauvi, 46 F.3d 189, 194 (2d Cir.1995).  Thus, if a plaintiff does not have a cognizable liberty interest in the subject matter of his action, he cannot maintain a Fourteenth Amendment Due Process claim.

Plaintiff alleges that his rights were violated when defendants "failed to comply with their

20

own statutory requirements . . ."  Complaint, Fifth Cause of Action.  However, it is well settled that "a violation of a state law is not cognizable under §1983." Pollnow v. Glennon, 757 F. 2d 496, 501 (2d Cir. 1985)(citing Davis v. Scherer, 468 US 183 (1984)); see also Bolden v. Alston, 810 F.2d 353 (2d Cir. 1987), cert. denied, 484 U.S. 896 (1987); Deane v. Dunbar, 777 F.2d 871 (2d Cir. 1985); Cofone v. Manson, 594 F.2d 934, 938 (2d Cir. 1979).  "State procedural requirements do not establish federal constitutional rights.  [A]t most, any violation of state procedural requirements would create liability under state law." Bolden, 810 F.2d at 353;  Jerome Russell v. Selsky, 35 F.3d 55 (2d Cir. 1994)(Violation of state regulation where review officer acted as hearing officer is not a violation of federal due process).  While plaintiff may allege delay and inefficiency, he has failed to point to any part of the licensing process that was denied to him and the claims should be dismissed.

<u>POINT VIII</u>

<u>PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED</u>

If plaintiff's claims are broadly read to state a pendant state law claim, then dismissal of the state law claim is the recommended procedure in cases where the federal claims are dismissed prior to trial.  Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979).  As the Supreme Court wrote in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988):

> [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity -will point toward declining to exercise jurisdiction over the remaining state-law claims.

See also, United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); DiLaura v. Power Authority of the State of New York, 982 F.2d 73, 80 (2d

Cir. 1992) (same); Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir.), cert. denied, 502 U.S. 941 (1991) (28 U.S.C. §1367(c)(3) codifies existing case law and gives district courts discretion to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction."); Temple of the Lost Sheep, Inc. v. Abrams, 930 F.2d 178, 185 (2d Cir.), cert. denied, 502 U.S. 866 (1991) ("Given the absence of federal claims left to adjudicate, the district court properly dismissed the pendant state-law claims.").

In this case, if the federal claims are dismissed against defendants and the Court broadly construes plaintiff's claims to contain a pendant state law claim, then the claims are precluded under state law and there is certainly no special reason for this Court to maintain jurisdiction over the state law claims.  Plaintiff's pendant state law claims, if any, should, therefore, be dismissed.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss should be granted and the

complaint dismissed in its entirety.

Dated: Albany, New York
       September 3, 2009

                                       ANDREW M. CUOMO
                                       Attorney General of the State of New York
                                       Attorney for Defendants Bartlett, Paterson and
                                       Cuomo
                                       Office of the Attorney General
                                       The Capitol
                                       Albany, New York  12224

                            *s/ Roger W. Kinsey*
                                    ————————————————
                                       Roger W. Kinsey
                                       Assistant Attorney General,   Of Counsel
                                       Bar Roll No. 508171
                                       Telephone:  (518) 473-6288
                                       Fax:  (518) 473-1572 (Not for service of papers)
                                       Email: Roger.Kinsey@oag.state.ny.us
                                       Dol #09-099033-O

TO:    Alfred G. Osterweil
         310 Rossman Fly Road
         Summit, New York 12175