ALFRED G. OSTERWEIL
310 ROSSMAN FLY ROAD
P.O. BOX 173
SUMMIT, NEW YORK 12173
PHONE 518 287-1646

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

February 14, 2011

FEB 1 7 2011

AWRENCE K. BAERMAN, CLERK
ALBANY

Clerk, USDC, Northern District of New York
James T. Foley U. S. Courthouse
445 Broadway
Albany, New York 12207

Re; Osterweil v. Bartlett      c9
                               89-CV825
                               GLS/DRH

Dear Sir,

Enclosed please find an original and copy of Plaintiff's motion for summary judgment, accompanied by an original and copy of a memorandum in support of said motion and original and copy of an affidavit.

By copy of this letter, we are providing Judge Sharpe with a courtesy copy of each of the above documents.

In addition, I hereby certify that on the same date as this letter, I have mailed a copy of the motion, memorandum and affidavit to James R. McGowan, Esq. at The Capitol, Albany New York, 12224 by U.S..mail, with sufficient postage affixed. Apparently, Mr. McGowan will be handling this case in the absence of Roger W. Kinsey, Esq. who, I believe, remains as attorney of record for the Defendant.

Very truly yours,

Alfred G. Osterweil, Plaintiff *pro se.*

cc: Judge Sharpe
    James R. McGowan, Esq.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

…..................................................................................

ALFRED G. OSTERWEIL.

|                           | *Plaintiff*   | 09-CV-825 |
|---------------------------|---------------|-----------|
|                           |               |           |
| *versus*                  |               | GLS/DRH   |
|                           |               |           |
| GEORGE R. BARTLETT, III   |               |           |

*defendant*

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

FEB 17 2011

LAWRENCE K. BAERMAN, CLERK
ALBANY

…..................................................................................

To: Roger W. Kinsey, Esq., Attorney for Defendant

Please take notice that the undersigned does hereby move for Summary Judgment, before the Honorable Gary L. Sharpe, and

Please take Further Notice that we shall rely upon the Affidavit annexed hereto, and the enclosed Memorandum in Support of Plaintiff's Motion for Summary Judgment, and

Please take further notice that we hereby request the Court to hear this matter on a date to be fixed by the Clerk in accordance with Local Rule 7.1.

Alfred G. Osterweil,    Plaintiff *pro se*

310 Rossman Fly Road
P. O. Box 173
Summit, New Hyork  12175
Phone: (518) 287-1646

AFFIDAVIT

Alfred G. Osterweil, being duly sworn, upon his oath does hereby depose and say that:

1. I am the Plaintiff in the matter of Osterweil v. Bartlett.
2. On May 21, 2008, I filed an application to possess and keep a gun in my home located in Schoharie County, at 310 Rossman Fly Road, Summit, New York.
3. Because I intended to change my domicile, I so advised the Sheriff who, in Schoharie County, was assigned the duty of fingerprinting me and performing an investigation of me on behalf of the licensing official, the Defendant herein.
4. I paid the sum of $105.00 as the charge for fingerprinting, paid for and provided a passport type photo, and was fingerprinted on two occasions.
5. Neither attempt at fingerprinting resulted in prints which were sufficiently satisfactory for the agency reviewing them.
6. Months of correspondence between the licensing officer and the undersigned ensued with the licensing officer advising me that he would determine my eligibility to possess a gun on the issue of my domicile being Louisiana, although I still maintained and spent time in the same home in Summit that I lived in when I first applied..
7. The issue of additional fingerprinting was to be addressed later if he ruled favorably on my application. There was no determination made with finality as to whether I would be required to pay an additional $105, so that issue remains.
8. On May 29, 2009, the licensing officer issued a written "decision" in which he stated that "Since applicant admittedly is not a resident of the State of New York, his application for a pistol permit is denied."
9. My Summit home is used exclusively by me and my family as a vacation home, and it has never been rented out to any person.
10. I incorporate by reference herein, all the statements made by me in prior affidavits/certifications and which are part of the record in this case.

I swear that the statements made by me in this affidavit are true to the best

of my knowledge, information and belief.

Alfred G. Osterweil

Sworn to and subscribed before me, a Notary Public of New York

this 2nd day of August 2010.

CAROL A. EAKIN
Notary Public, State of New York
No. 01EA6017271
Qualified in Schoharie County
Commission Expires December 7, 2010

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

…..........................................................................

ALFRED G. OSTERWEIL,

                              *Plaintiff*              09-CV-825

        *versus*                                        GLS/DRH


GEORGE R. BARTLETT, III                    U.S. DISTRICT COURT
                                                N.D. OF N.Y.
                                                   FILED

                              *Defendant*        FEB 1 7 2011

                                          LAWRENCE K. BAERMAN, CLERK
                                                  ALBANY

…..........................................................................


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


ALFRED G. OSTERWEIL, PLAINTIFF PRO SE

   310 Rossman Fly Road
   P.O. Box 173
   Summit, New York  12175
   Phone: (518) 287-1646

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii.

STATEMENT OF MATERIAL FACTS NOT IN ISSUE.............................................1

INTRODUCTION..........................................................................................2

ARGUMENT

    POINT I   THE SECOND AMENDMENT ENSHRINES PLAINTIFF'S

                 FUNDAMENTAL RIGHT TO POSSESS A HANDGUN IN

                 HIS SUMMIT NEW YORK HOME.................................................4

    POINT II  THE SUPREME COURT CARVED OUT LIMITED BUT

                 SPECIFIC AREAS WHERE THE STATES ARE PERMITTED

                 TO EXERCISE SOME LIMITED CONTROL OVER THE

                 THE RIGHT TO KEEP AND BEAR ARMS....................................6

    POINT III FAILURE TO PERMIT PLAINTIFF TO KEEP AND BEAR

                 ARMS IN HIS SUMMIT NEW YORK HOME WOULD

                 VIOLATE HIS RIGHTS UNDER THE FOURTEENTH

                 AMENDMENT.........................................................................7

    CONCLUSION..........................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Bach v. Pataki*, 408 F.3d. 75 (2d. Cir. 2005)................................................................3,7

*City of Cleburne v. Cleburne living Center*, 473 U.S. 432 (1985).......................................5

*DeShaney v. Winnebago Dep't of Social Services*, 489 U.S. 189 (1989)..........................8

*District of Columbia v. Heller*, 128 S. Ct. 2783 (2008)...........................................*passim*

*Dunn v. Blumstein*, 405 U.S. 330 (1972)..............................................................8

*Harper v. Virginia Board od Education*, 383 U.S. 663 (1966)........................................7

*Hetherton v. Sears Roebuck & Co.*, 652 F.2d. 1152 (3d. Cir. 1981)..................................9

*Mahoney v. Lewis*, 199 A. D. 2d. 734 (3d. Dep't 1993)......................................4

*Maloney v. Cuomo*, 554 F. 3d. 56 (2d. Cir. 2009)...........................................3,4

*McDonald v. Chicago*, 130 S. Ct.3020 (2010)...........................................*passim*

*Nordlinger v. Hahn*, 505 U.S. 1 (1992)..............................................................9

*Peoples Rights Organ3,ization v. City of Columbia*, 152 F.3d. 522 (6th Cir. 1998)...........9

*Romer v. Evans*, 517 U.S. 620 (1996)..............................................................9

*Saenz v. Roe*, 526 U.S.489 (1999)..............................................................8

*Shapiro v. Thompson*, 394 U.S. 618 (1969)..............................................8

*United States v, Panter*, 688 F. 2d. 268 (5th Cir. 1982)..................................8

**CONSTITUTIONAL PROVISIONS**

U.S.  Const. Amend.II..............................................................3,6

U.S. Const. Amend. XIV..............................................................3,7

**STATUTES**

18 U.S. Code Sec 926A..............................................................8

New York Penal Code,  Article 400..............................................................4

## STATEMENT OF MATERIAL FACTS NOT IN ISSUE

1.  Plaintiff filed an application for a handgun permit on May 21, 2008, at which time he was domiiciled at his home locatedat 310 Rossman Fly Road, Summit, New York. {see Complt., Affidavit to this Motion, Par 2, 9.

2.  During the process, Plaintiff advised the Sheriff that he intended to change his domicile but retain ownership of the same premises as a summer home. See Complt.; Affidavit to this Motion, Par 3.

3.  In fact, Plaintiff is domiciled elsewhere and and maintains his Summit property as a vacation home. Affidavit to this Motion. Par. 6, 9.

4.  Plaintiff's application was denied by the licensing officer on May 29, 2008, by written decision,stating : "Since applicant  admittedly is not a resident of the State of New York, his application for a pistol permit is denied," Affidavit to this Motion, Par 8.

1

INTRODUCTION

Plaintiff herein seeks to keep and bear arms in his home located in Schoharie county, more particularly 310 Rossman Fly Road, Summit, New York. Plaintiff has never denied that this Summit home, located on 21 acres, is no longer his principal residence.  During the period  the application was being reviewed by the licensing official, Plaintiff became domiciled in another state, and that situation exists to this date.

The licensing official determined that the New York Statute and the cases interpreting that Statute set up a standard for the term "resident" as meaning something akin to "domicile".

Prior to the opinion by the licensing official, the U. S. Supreme Court had issued its ruling in *District of Columbia v. Heller,* 128 S. Ct. 2783 (2008). That case held that Americans had an individual and fundamental  right to keep and bear arms in their homes. The decision by Justice Scalia is replete with references as to the very basic right to self defense we all enjoy as Americans, and to our preference of handguns to defend ourselves and our families.

However, because the case dealt with a Federal enclave, there remained the question of whether the same ruling would apply to the states. Because of that uncertainty, and because the licensing officer chose to make the issue one which could be decided by balancing the equities he perceived, he ruled that even assuming *Heller* applied, the State of New York could legislate "reasonable restraints" in the area of gun control, and one of those restraints was the necessity to be domiciled in New York Of course, this runs counter to *Heller* which states  that with respect to fundamental rights, the test is one of strict scrutiny. Thus, the licensing officer ruled that it was reasonable for the state to  limit these licenses to persons domiciled in New York.

2

Following that , the next event was the Motion to Dismiss by Counsel for Defendant. This Court did

not accept the proposition that *Heller* was applicable to the state as the licensing official had, and

dismissed the first three counts of the complaint because they were grounded on the Second

Amendment. The Court went on to preserve those counts which were grounded on the Equal Protection

Clause of the Fourteenth Amendment. In its decision dismissing the counts in question, the Court relied

principally upon two cases, *Maloney v. Cuomo,* 554 F. 3d. 56 (2d  Cir. 2009) and *Bach v. Pataki,* 408 F.

3d. 75 (2d Cir. 2005}.

Thereafter, on June 28, 2010, the Supreme Court rendered its opinion in *McDonald v. Chicago,*

130 S. Ct.. 3020. *McDonald* ruled , for the first time, that the Second Amendment was incorporated and

made applicable to the states through the Fourteenth Amendment. The Court endorsed the *Heller*

opinion in its entirety, and it reaffirmed its  view that the rights embodied in the Second  Amendment

are fundamental rights of free men.

Following the decision in *McDonald,* this Court acted on Plaintiff's motion to vacate its prior

dismissal.

The issue then, which is to be decided in this case is whether, based on *Heller* and  *McDonald,*

Plaintiff is guaranteed the right to keep and bear a a handgun in his home in Summit New York, absent

any disqualifying factors such as a prior conviction of a felony or treatment for mental illness.

Plaintiff submits that there are no material facts in dispute, and that the issue(s) in this case may

appropriately be decided by Summary Judgment.

3

## POINT I

## THE SECOND AMENDMENT ENSHRINES PLAINTIFF'S FUNDAMENTAL RIGHT TO POSSESS A HANDGUN IN HIS SUMMIT NEW YORK HOME

This Court, in its analysis of Defendant's Motion to Dismiss the Complaint, referred to Section 400 of the New York Penal Law, which indicates that residents may be licensed to possess handguns. The Court, on Page 3 of its decision, went on to say that "the term 'residence' in this context has been construed as equivalent to domicile or primary residence, thus requiring something more than mere ownership of land." *Mahoney v. Lewis,* 199 A. D. 2d. 734 (3d Dep't 1993). The Court also relied on *Maaloney* which found that *Heller,* did not expressly find that the Second Amendment was applicable to the states

Further, this Court cited *Bach,* a case where an applicant for a gun permit, who resided out of state, sought the permit based upon his visits to his parents who did reside in New York. His application was denied.

Against this background, the Supreme Court rendered its historic decision in *McDonald.* It made binding upon the states, the proposition enunciated in *Heller,* that the Second Amendment enshrined a basic and fundamental right to be secure in one's home. In *Heller,* at 2812, we find Justice Scalia's compelling analysis:

> "We know of no other enumerated constitutional right
> whose core protection has been subjected to a freestanding
> "interest balancing" approach. The very enumeration of the
> right takes out of the hands of government---even the Third
> Branch of Government, the power to decide on a case-by-
> case basis, whether the right is really worth insisting upon.
> A constitutional guarantee subject to future judges' assessment
> o473f its usefulness is no constitutional guarantee at all.
> Constitutional rights are enshrined with the scope they were
> understood to have when people adoped them."

4

We submit that bthis quote sets forth sets forth the standard of strict scrutiny and rejects any attempt by a Court to balance this fundamentsl right with a perceived need of a state. Indeed, the strict scrutiny test must be applied to all government classifications which "impinge on personal rights protected by the Constitution." *City of Cleburne v. Cleburne Living Center,* 473 U.S..432,440 (1985) (citations omitted).

Throughout the opinion, the *Heller* Court reiterates the fundamental right to be secure in one's home. *McDonald* adopts that view, as well, and specifically acknowledges that the preferred American weapon to guarantee that security is the handgun. *McDonald* at 3036.

Plaintiff has a home in New York,albeit his domicile is elsewhere.. On this basis alone, plaintiff contends that *Heller* and *McDonald,* read in *para materia ,* lead to the inescapable conclusion that the New York statute, which sets the standard at "domicile" or "primary residence" as a requirement for one to possess a handgun in one's home,  must yield to the Supreme Court's unrelenting position that all Americans have a basic and fundamental right to self defence in their **homes.** (Emphasis added).

While Plaintiff submits that he need go no further to establish this right, it is quite obvious that Plaintiff is no "mere owner of land". He does not rent out the property, living there when he returns to New York. See Prior Affidavits.

We submit that the fact pattern presented herein falls squarely within the parameters of *Heller* and *Mcdonald,* compelling the State of New York to issue to Plaintiff a license to possess a handgun in his Summit, New York home, unless the state can establish a compelling reason to disqualify him, consIstent with  the historical standards set forth in those cases.

POINT II

## THE SUPREME COURT CARVED OUT LIMITED BUT SPECIFIC AREAS WHERE THE STATES ARE PERMITTED TO EXERCISE SOME LIMITED CONTROL OVER THE RIGHT TO KEEP AND BEAR ARMS

The majority opinion in *Heller* at 2816-7, set forth examples of permissible government action uch as a so called "sensitive location:", exception where no weapons are permitted in places like schools and government buildings. The Court went on to say "...nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill..." *McDonald* generally adopted that language when Justice Alito said, at 3047:

> "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the prohibitions of firearms by felons or the mentally ill," laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."

Nowhere in either *Heller* or *McDonald* is there any suggestion that the "home" to which they refer as being the place where every American has the right to keep arms to protect his family must be his only home or his principal residence, Indeed, we submit that a state's attempt to limit Plaintiff to being armed to protect his family in only one of his homes would be in direct conflict with the over-riding concept and thrust of the Second Amendment.

## POINT III

## FAILURE TO PERMIT PLAINTIFF TO KEEP AND BEAR ARMS IN HIS SUMMIT

## HOME WOULD VIOLATE HIS RIGHTS UNDER THE FOURTEENTH

## AMENDMENT

The Fourteenth Amendment states, in part:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is quite apparent that Plaintiff would be treated differently than other "residents" of New York if he were denied the right to bear arms in his Summit home. In cases involving a person's fundamental rights, the Supreme Court has long held that strict scrutiny will be applied to governmental classifications. *Harper v. Virginia Board of Elections,* 383 U. S. 663 (1966)

We are aware of *Bach's* rationale for New York's "residence requirement. The Court there indicated the need to 'monitor" holders of guns, and that the State could not do so unless a person resided principally in New York. We submit, however, that even facially, this "justification" does not pass the strict scrutiny test. Even a mere visitor to New York is entitled to the right to self defense should he be attacked.

While a balancing test is unavailable to satisfy an infringement of a fundamental right enshrined in the Second Amendment, *Heller* at 2812, we submit that New York's "domicile" requirement does not meet even that threshold.

Assuming Plaintiff had continued to maintain his New York domicile but spent 9, 10 or more months out of the state, under *Bach,* he would be entitled to a gun permit with no more opportunity for the state to monitor him than now exists.

7

If the purpose of the "residence" or "domicile" standard is to permit the state to monitor prospective and current gun owners as the *Bach* Court indicated, we submit it is unconstitutional because it is so vague it is no standard at all. What is the magic number of days which the state finds necessary to moinitor a gun owner. Are 300 days necessary. Are 30 days sufficient. And how does the state deal with an individual who retains his domicile but spends a minimal number of days in New York.

Long before *McDonald* and *Heller,* courts have recognized that "The right to defend oneself from deadly attack is fundamental." *United States v. Panier,* 688 F. 2d. 268, 271 (5th Cir. 1982). Yet, the Stae of New York , which would deny Plaintiff the right to possess a handgun as a means of self defense, has no legal duty to protect him and his family. *DeShaney v. Winnebago Dep't of social Services.* 489 U. S. 189 (1989). "A state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." *DeShaney* at 197.

Then too, the New York "domicile" requirement violates Plaintiff's right to travel. Durational residency requirements have not met constitutional muster and have been stricken repeatedly on the ground that they are inconsistent with various elements of the right to travel. *Saenz v. Roe,* 526 U. S 489 (1999); *Shapiro v. Thompson,* 394 U. S. 618 (1969). See also *Dunn v. Blumstein,* 405 U. S. 330 (1972). A federal statute permits citizens to travel from state to state with firearms. 18 U. S. C. Sec. 926A provides that "Not withstanding any rule or regulation of a state...any person shall be entitled to transport a firearm from any place where he may lawfully possess and carry a weapon to any other place where he may lawfully possess and cary such firearm..." By denying Plaintiff the right to possess a handgun in his Summit residence, New York has effectively impaired Plaintiff's right to travel in safety to and from any other state where he is authorized to possess a handgun.

Additionally, the New York statute discriminates on the basis of wealth. Can it be said that a

8

person who has limited means and without the assets to either purchase a home in a gated
community which provides armed security or employ his own armed security personnel is
more likely to improperly use a handgun than his wealthier counterpart. See *Peoples Rights
Organization, Inc. v. City of Columbus,* 152 F. 3d. 522(6th Cir. 1998), invalidating a law which
allowed some to register and possess certain firearms and prohibited others similarly situated
persons from doing so, quoting from *Nordlinger v. Hahn,* 505 U. S. 1, 10 (1992), which held that
the Equal Protection Clause "keeps governmental decision makers from treating persons who are
in all relevant respects alike." Plaintiff contends that he is in no different a situation than a
person domiciled in New York who may spend months or even years out of the state for personal
or business reasons. See also *Romer v. Evans,* 517 U. S. 620, 632 which indicated that even in
an ordinary equal protection case, the Court will insist on a clear showing of the relationship
between the classification and the object to be attained.

Discrimination based on wealth or the type of one's housing as to who may or may not
possess weapons violates the Equal Protection Clause. *Hetherton v. Sears Roebuck & Co,* 652 F.
2d 1152(3d. Cir. 1981). There, the Court invalidated a requirement that two freeholders were
required to identify the purchaser of a firearm because a state may not : arbitrarily establish
categories of persons who can or cannot buy weapons.' *id.* At 1157. *Hetherton* further goes on
to say, at 1160:

> To limit the options of prospective purchasers of guns to a
> requirement that only people who own real estate can identify the
> purchasers is not more constitutionally permissible than a
> requirement that only Catholics or Blacks or Indians can identify
> purchasers of handguns.

9

## CONCLUSION

Plaintiff contends that he has an absolute right to keep and bear arms in his home in Summit, New York, absent any disqualifying attributes such as insanity, proof of conviction of a felony or other personal trait or character flaw which rises to the level where society would be threatened by possession of such arms. Plaintiff believes and avers that the State cannot give him the right to possess a handgun in his home because he has that right enshrined in the Constitution. Just as the State cannot give Plaintiff the right to gather and assemble, or go to a religious house of his choosing, the State must permit Plaintiff to exercise his Second Amendment right to keep and bear arms in his home.

For all the forgoing reasons, Plaintiff submits that the Court should enter Summary Judgment in favor of Plaintiff and find the New York statute requiring domicile in order for Plaintiff to lawfully keep and bear arms in his home unconstitutional. Plaintiff further requests an order directing the licensing officer to perform his duties consistent with this Court's decision. In addition, Plaintiff requests that the Court, in a remand to the licensing officer, retain jurisdiction so that Plaintiff may appear before this Court expeditiously in the event the licensing officer fails to comply with any order issued herein. Plaintiff also seeks costs and such other relief as the Court may deem fair, reasonable and appropriate.

Respectfully submitted,

Alfred G. Osterweil, *pro se*

10



Alfred G Osterweil
197 Lawson Ln
Many LA 71449-5652



7010 1670 0000 5166 1348

CLERK, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
JAMES T. FOLEY U.S. COURTHOUSE
445 BROADWAY
ALBANY, NEW YORK 12207

RETURN RECEIPT
REQUESTED

