United States District Court - Northern District of New York

Alfred G. Osterweil,

               Plaintiff,

                                         Civil Action No. 1:09-CV-825 (GLS/DRH)

vs.

George R. Bartlett III, et al.

               Defendant.

George R. Bartlett, III, affirms under penalty of perjury:

## Background

1.  I am the duly elected Schoharie County Judge. In my capacity as Schoharie County Judge, I am the licensing officer in Schoharie County for pistol (firearm) permits (Penal Law §400).

2.  On or about May 21, 2008, Alfred Osterweil submitted an application with the Schoharie County Sheriff's Department for a New York State Pistol permit. In this application, he listed his residence as being in Schoharie County, New York. (Exhibit 1A)

## Investigation by Sheriff

3.  Pursuant to Penal Law §400.00[4], the Schoharie County Sheriff ("Sheriff") conducts investigations regarding pistol permit applications. Part of the investigation involves verifying information set forth in the application, receiving references from the applicant's references, obtaining criminal background checks, obtaining the applicant's fingerprints and then submitting the fingerprints to the New York State Division of Criminal Justice Services and the FBI for records check.

4.    By letter dated June 24, 2008 the Sheriff advised Mr. Osterweil that he
      needed to come into the Sheriff's office "to correct and/or complete some
      information on your permit." *(Exhibit1)*

5.    In response, Mr. Osterweil sent a letter dated June 25, 2008 to the Sheriff
      stating that since he applied for a permit, he had purchased a home in
      another state which he intended to utilize as his primary residence and to
      now use his Schoharie County property as a vacation home. Accordingly,
      he asked "Under those circumstances, am I still eligible for a permit . . .
      Obviously, if my move to another state rules out a pistol permit, there is no
      sense in correcting the application." *(Exhibit 2)*

6.    By memo dated July 8, 2008, the Sheriff forwarded Mr. Osterweil's
      "incomplete" application to the Court together with Mr. Osterweil's letter of
      June 25, 2008. *(Exhibit 3)*

7.    On July 16, 2008, the Court also received a letter from Mr. Osterweil.
      *(Exhibit 4)* According to my secretary, the Sheriff then requested that the
      application be given back to him and this was done. Apparently, the Court
      also sent Mr. Osterweil's letter received July 16, 2008 to the Sheriff without
      responding.

8.    Upon information and belief, on August 13, 2008, the New York State
      Division of Criminal Justice Services *("DCJS")* advised the Schoharie
      County Sheriff that "Due to the poor quality of the fingerprint impressions
      received, DCJS is unable to determine whether this individual has any other
      criminal record in New York State." *(Exhibit 5)*

9.    Upon information and belief, on or about July 31, 2008, Mr. Osterweil's
      fingerprints were rejected by the FBI as "the quality of the characteristics in
      too low to be used." *(Exhibit 6)*

10.   By letter dated August 18, 2001, the Schoharie County Sheriff requested
      Mr. Osterweil to come into his office to be refingerprinted. *(Exhibit 7)*

11.   Upon information and belief, on September 8, 2008, Mr. Osterweil's
      fingerprints were apparently again rejected by the FBI because the "quality
      of the characteristics is too low to be used." *(Exhibit 8)*

12.    After Mr. Osterweil's fingerprints were again rejected a series of e-mails ensued between the Sheriff and Mr. Osterweil. *(Exhibit 9)*

## Court Involvement

13.    By letter dated February 18, 2009, the Sheriff advised Mr. Osterweil that he was sending Mr. Osterweil application to me. *(Exhibit 10)*

14.    By letter to Mr. Osterweil dated February 20, 2009, I set forth what I felt were the issues regarding Mr. Osterweil's application *(i.e., the lack of quality fingerprints that could be used by the FBI and New York State Division of Criminal Justice Services and his residency [domicile]).* Accordingly, the Court scheduled an appearance on March 24, 2009 for Mr. Osterweil and/or his attorney. *(Exhibit 11)*

15.    Specifically, the letter scheduling the matter explained that this Court appearance was to allow Mr. Osterweil or his attorney the opportunity to "present any arguments in support of your application. In particular, I would be interested in your supplying any legal precedent supporting your position with regard to residency and in support of a fingerprint check waiver. Moreover, I would like the Sheriff to be present to explain the fingerprint situation and answer any questions you or your attorney may have." *(Exhibit 11)*

16.    By letter to the Court dated March 3, 2009, Mr. Osterweil, sent information on special steps that could be taken with respect to persons with worn fingerprints. Mr. Osterweil indicated that none of these "special steps" were utilized by the Schoharie County Sheriff in his case. *(Exhibit 12)*

17.    By letter dated March 4, 2009, Mr. Osterweil advised the Court that he would not be available to attend Court on March 24, 2009 as scheduled, and would not be available until the summer. In this letter, Mr. Osterweil sets forth several issues he had with New York law and the process used in processing pistol permits. Mr. Osterweil's submission contained several enclosures and an affidavit. *(Exhibit 13)*

18.    By another letter dated March 4, 2009 to the Court, Mr. Osterweil forwarded a supplemental affidavit. *(Exhibit 14).*

19. By letter dated March 13, 2009, the Court responded to Mr. Osterweil's correspondence. Pursuant to Mr. Osterweil's request, the Court cancelled the appearance scheduled for March 24, 2009 and asked Mr. Osterweil if he wished to reschedule the March 24, 2009 appearances or if he wished to waive an appearance. *(Exhibit 15)*

20. By letter dated March 19, 2009, Mr. Osterweil responded, explaining in some detail his position regarding the lack of fingerprints and a residency requirement. He also stated that he would not be available to appear in the Court prior to April 15, 2009. *(Exhibit 16)*

21. As Mr. Osterweil's letter of March 19, 2009 did not indicate if he wished to personally appear in Court or waive a personal appearance, by letter dated April 10, 2009, I wrote Mr. Osterweil a letter to inquire whether he wished to reschedule the March 24, 2009 Court date or waive a personal appearance and consider his application fully submitted on papers. *(Exhibit 17)*

22. By letter dated April 13, 2009, Mr. Osterweil responded that " . . . I do not wish to leave any stone unturned in the prosecution of this matter, I will appear before you if you request me to do so . . ." "I expect to be in Summit [Schoharie County] commencing on or about June 15, 2009, and will be available to appear at your convenience thereafter. " *(Exhibit 18) (emphasis supplied)*

23. By letter dated May 1, 2009, I acknowledged receipt of Mr. Osterweil's letter of April 13, 2009 and responded that: "It appears from this correspondence that you do not wish to submit any further information or personally appear in support of your application. Accordingly, unless I hear from you to the contrary on or before May 15, 2009, I will consider your application fully submitted and will proceed to determine it." *(Exhibit 19)*

24. By letter dated May 6, 2009, Mr. Osterweil wrote to the Court indicating he did not wish a personal appearance and referred the Court to a recent decision by the Ninth Circuit Court of Appeals in support of his argument concerning the constitutionality of New York's pistol permitting law. *(Exhibit 20)*

4

## Decision

25.   On May 29, 2010, the Court issued a written decision denying Mr.
      Osterweil's pistol permit application. *(Exhibit 21)*

## Finger Print Issue

26.   In this decision, the Court rejected Mr. Osterweil's argument that, since
      more than six (6) months elapsed since he submitted his application, the
      Court was required to grant his application.

27.   The Court found there was good cause for the time taken in rendering a
      decision.

28.   Initially, the Court noted that Mr. Osterweil's application was as yet not
      complete as, due to the poor quality of his fingerprints, the Sheriff had been
      unable to complete the investigation required by New York Law (Penal Law
      §400). The Court noted, as a courtesy to Mr. Osterweil, the Court held the
      issue of fingerprints in abeyance in order to address the threshold issue of
      whether New York Law allows the issuance of a pistol permit to a non-
      resident.

29.   Moreover, the Court noted that when Mr. Osterweil originally submitted his
      application, he listed his residency as being in Schoharie County, New
      York. It was after the application was submitted that Mr. Osterweil changed
      his residence (domicile) to that of another state, and so advised the Sheriff.
      This change in the application led to much of the above-referenced
      communications and submissions.

## Residency Issue

30.   In denying Mr. Osterweil's application, the Court noted Mr. Osterweil's
      candid acknowledgment that he was not a resident of New York State. That
      being the case, the Court adhered to long-standing New York precedent that
      a pistol permit may be issued to residents only and that the term residence
      *[as used in Penal Law §400.00]* is the equivalent to domicile *(see, Mahoney
      v. Lewis, 199 AD2d 734).*

5

31.     The Court rejected Mr. Osterweil's argument that New York's pistol permit system is unconstitutional. The Court quoted extensively from *Bach v. Pataki (408 F3d 75, 87)* wherein the Second Circuit Court of Appeals held that "New York's interest in monitoring gun licenses is substantial and that New York's restrictions to residents and persons working primarily within the State is sufficiently related to this interest . . ."

32.     This Court followed the Second Circuit's finding that the residency requirement is an important component of New York's regulation, and concluded that that requirement appears to be reasonable and constitutionally permissible *(see, District of Columbia v. Heller, 128 S. Ct. 2783)*.

33.     This Court held that the statute in *Heller* differed significantly from the law in question here, since an important component of the District of Columbia law consisted of a total ban on all handgun possession within that jurisdiction. Moreover, this Court noted that New York law allows a nonresident, such as Mr. Osterweil, to possess long guns. Thus, unlike *Heller*, this Court found the New York statutory scheme does not preclude the applicant from the possession of any firearms.

34.     Finally, this Court cited to the controlling decision in this jurisdiction wherein the New York State Appellate Division, Third Department determined that ". . . New York's firearms licensing requirement remains an acceptable means of regulating the possession of firearms *(citations omitted)* and will not contravene *Heller* so long as it is not enforced in an arbitrary and capricious manner *(see, District of Columbia v. Heller, 128 S. Ct. at 2819; People v. Perkins, 62 AD3d 1160, leave denied 13 NY3d 748)*.

Affirmed:     October **25**, 2010
              Schoharie, New York

George R. Bartlett III

APPLICATION

Exhibit 1A

APPLICATION

INSTRUCTIONS: Print or type in black ink only

| NYSID NUMBER | | |
| --- | --- | --- |
| LICENSE NUMBER | | |
| DATE OF ISSUE | | |

K. J-3 REV. 10/03

**STATE OF NEW YORK**

PISTOL/REVOLVER LICENSE APPLICATION

COUNTY OF ISSUE

EXPIRATION DATE

PRESENT OCCUPATION
RETIRED

CITIZEN OF U.S.A.
☒ YES  ☐ NO

MPLOYED BY
RETIRED

NATURE OF BUSINESS
N/A

BUSINESS ADDRESS
N/A

HEREBY APPLY FOR A PISTOL/REVOLVER LICENSE TO:   (Check one only)   ☐ CARRY CONCEALED  ☒   * POSSESS ON PREMISES

☐ * POSSESS/CARRY DURING EMPLOYMENT (* Premise address or place of employment must be provided)

STREET ADDRESS OR OTHER LOCATION
A LICENSE IS REQUIRED FOR THE FOLLOWING REASON:

CITY,VILLAGE,TOWN
TARGET   PRACTICE
AND   HUNTING

ZIP CODE

GIVE FOUR CHARACTER REFERENCES WHO BY THEIR SIGNATURE ATTEST TO YOUR GOOD MORAL CHARACTER

| AST,FIRST,MI | STREET ADDRESS | CITY,VILLAGE,TOWN | SIGNATURE |
| --- | --- | --- | --- |
| FLAHERTY, MICHAEL | PO B  28 2347 ROUTE 10 | SUMMIT | |
| FAUCHER, DOUGLAS | POB  309 141 ERNEST DR | SUMMIT | |
| GOLDSMITH, GARY | POB  29 226 GHIRENCE RD | SUMMIT | |
| MEANEY, JOHN C | POB  159 302 BEARGULCH RD | SUMMIT | |

IAVE YOU EVER BEEN ARRESTED, SUMMONED, CHARGED OR INDICTED ANYWHERE FOR ANY OFFENSE, INCLUDING DWI (EXCEPT RAFFIC INFRACTIONS)?   ☐ YES  ☒ NO   IF YES, FURNISH THE FOLLOWING INFORMATION:

| DATE | POLICE AGENCY | CHARGE | DISPOSITION - COURT AND DATE |
| --- | --- | --- | --- |
| | | | |
| | | | |

| | | |
| --- | --- | --- |
| AVE YOU EVER BEEN TERMINATED/DISCHARGED FROM ANY EMPLOYMENT OR THE ARMED FORCES FOR CAUSE? | ☐ YES | ☒ NO |
| AVE YOU EVER UNDERGONE TREATMENT FOR ALCOHOLISM OR DRUG USE? | ☐ YES | ☒ NO |
| AVE YOU EVER SUFFERED ANY MENTAL ILLNESS, OR BEEN CONFINED TO ANY HOSPITAL, PUBLIC OR RIVATE INSTITUTION, FOR MENTAL ILLNESS? | ☐ YES | ☒ NO |
| AVE YOU EVER HAD A PISTOL LICENSE, DEALER'S LICENSE, GUNSMITH LICENSE, OR ANY APPLICATION OR SUCH A LICENSE DISAPPROVED, OR HAD SUCH A LICENSE REVOKED OR CANCELLED? | ☐ YES | ☒ NO |
| D YOU HAVE ANY PHYSICAL CONDITION WHICH COULD INTERFERE WITH THE SAFE AND PROPER USE OF HANDGUN? | ☐ YES | ☒ NO |
| AVE YOU EVER BEEN CHARGED, PETITIONED AGAINST, A RESPONDENT, OR OTHERWISE BEEN A SUBJECT F A PROCEEDING IN FAMILY COURT? | ☐ YES | ☒ NO |

ANSWER TO ANY QUESTION IS YES, EXPLAIN HERE:

PHOTOGRAPH
OF APPLICANT
AKEN WITHIN 30 DAYS

FULL FACE ONLY

ANY OMISSION OF FACT OR ANY FALSE STATEMENT WILL BE SUFFICIENT CAUSE TO DENY THIS APPLICATION AND CONSTITUTES A CRIME PUNISHABLE BY FINE, IMPRISONMENT, OR BOTH.

I AM AWARE THAT THE FOLLOWING CONDITIONS AFFECT ANY LICENSE WHICH MAY BE ISSUED TO ME:

1. NO LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS VALID IN THE CITY OF NEW YORK.
2. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION WILL BE VALID ONLY FOR A PISTOL OR REVOLVER SPECIFICALLY DESCRIBED IN THE LICENSE PROPERLY ISSUED BY THE LICENSING OFFICER.
3. IF I PERMANENTLY CHANGE MY ADDRESS, NOTICE OF SUCH CHANGE AND MY NEW ADDRESS MUST BE FORWARDED TO THE SUPERINTENDENT OF THE STATE POLICE AND IN NASSAU COUNTY AND SUFFOLK COUNTY, TO THE LICENSING OFFICER OF THAT COUNTY,WITHIN 10 DAYS OF SUCH CHANGE.
4. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS SUBJECT TO REVOCATION AT ANY TIME BY THE LICENSING OFFICER OR ANY JUDGE OR JUSTICE OF A COURT OF RECORD.

JURAT:
SIGNED AND SWORN TO BEFORE ME
THIS 16th DAY OF May , 20 08
AT Richmondville , NEW YORK

SIGNATURE OF APPLICANT

SIGNATURE OF OFFICER ADMINISTERING OATH

TITLE OF OFFICER

**CAROL A. EAKIN**
Notary Public, State of New York
No. 01EA6017271
Qualified in Schoharie County
Commission Expires December 7, 2010

S FORM APPROVED BY SUPERINTENDENT OF STATE POLICE AS
{UIRED BY PENAL LAW SECTION 400.00,SUBD.3.

APPLICATION NOT VALID UNLESS SWORN

3/PPB3A

| 1. RIGHT THUMB | 2. RIGHT FOREFINGER | 3. RIGHT MIDDLE FINGER | RIGHT RING FINGER | 5. RIGHT LITTLE FINGER |
|---|---|---|---|---|
| | | | | |

| 6. LEFT THUMB | 7. LEFT FOREFINGER | 8. LEFT MIDDLE FINGER | 9. LEFT RING FINGER | 10. LEFT LITTLE FINGER |
|---|---|---|---|---|
| | | | | |

PLAIN IMPRESSIONS TAKEN SIMULTANEOUSLY

LEFT FOUR FINGERS

THUMBS TAKEN TOGETHER

RIGHT FOUR FINGERS

IMPRESSIONS TAKEN BY: NAME *Floyd Scales*  RANK *Deputy*  SHIELD *138*  DATE *5/21/08*

APPLICANT'S SIGNATURE AND ADDRESS: *Agosto Osterwal  310 Rossman Fly Road  Summit*

INVESTIGATION REPORT - ALL INFORMATION PROVIDED BY THIS APPLICANT HAS BEEN VERIFIED:

NAME _____  RANK _____  ORGANIZATION _____

RECOMMEND  APPROVAL - DISAPPROVAL:  (STRIKE OUT ONE)

SIGNATURE OF INVESTIGATING OFFICER

THIS APPLICATION IS  APPROVED - DISAPPROVED  (STRIKE OUT ONE)

THE FOLLOWING RESTRICTION(S) IS (ARE) APPLICABLE TO THIS LICENSE:

TITLE AND SIGNATURE OF LICENSING OFFICER

IF LICENSING OFFICER AUTHORIZES THE POSSESSION OF A PISTOL OR REVOLVER AT THE TIME OF ISSUE OF ORIGINAL LICENSE, FURNISH THE FOLLOWING INFORMATION:

| MANUFACTURER | PISTOL OR REVOLVER | CALIBER | SERIAL NUMBER | MODEL | PROPERTY OF: |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

DUPLICATE OF THIS APPLICATION MUST BE FILED WITH THE SUPERINTENDENT OF STATE POLICE WITHIN 10 DAYS OF ISSUANCE AS REQUIRED BY PENAL LAW SECTION 400.00 SUBD.5.

PPB3A(PPB3)

EXHIBIT 1

EXHIBIT 1



# Schoharie County Sheriff's Office

**JOHN BATES, JR.**
SHERIFF

(518) 295-7066

WILLIAM A. SLATER
UNDERSHERIFF

157 DEPOT LANE
P.O. BOX 689
SCHOHARIE, NY 12157
FAX (518) 295-7094

| | |
|---|---|
| CIVIL | (518) 295-7080 |
| | (518) 296-8888 |
| RECORDS | (518) 295-7072 |
| JAIL | (518) 295-7071 |
| DEPUTIES | (518) 295-7076 |
| DARE | (518) 295-7098 |
| NON-EMERGENCY | (518) 295-8114 |
| EMERGENCY | 911 |

Civil 295-7080

Mr. Osterweil:                                    June 24, 2008

### REGARDING YOUR PISTOL PERMIT APPLICATION

( )  Application not signed or notarized.

( )  Some arrests or convictions not listed or incorrect.

( )  Reference sheet not notarized or signed.

( )  Some reference sheets indicate you may not be a full
     time resident of Schoharie County - Explain.

( )  In reference to your pistol permit application, the
     **D.C.J.S.** has rejected the original fingerprint card.
     It will be necessary for you to come in to the office
     to be reprinted.  Also ask the deputy to reprint you
     on an **F.B.I.** card.

( )  In reference to your pistol permit application, the
     F.B.I. has rejected the original fingerprint card.  It
     will be necessary for you to come in to the office to
     be reprinted.

( )  There is no additional charge for reprinting and it
     can be done any Wednesday evening between 6:30 PM and
     8:30 PM.  Please bring this letter with you so you
     get printed on the correct card.

(XX)  You may stop at the Sheriff's civil office Monday-
      Friday between 9 AM and 4 PM.

(XX)  Other:  Please stop at the Sheriff's civil office to
      complete and/or correct some information on your permit
      application.  A "premises" permit is only valid **inside**
      the residence for which you have applied.  The
      application needs to be changed to "carry concealed".
      Also "race" information is missing on one copy of the
      application.

EXHIBIT 2

EXHIBIT 2

John Bates,Jr.,Sheriff
157 Depot Lane
PO Box 689
schoharie, NY 12157

Dear Sir,

With reference to your letter of June 24, 2008, a copy of which I have enclosed, I have a few questions.
Since I applied for a pistol permit, I purchased a home in another state. My intention is to to make that state my
primary residence while I still intend to have a vacation property here in Schoharie County. Under those
circumstance, am I still eligible for a permit. I note that the application itself does not appear to require that
Schoharie County be my principal residence or domicile.
Obviously, if my move to another state rules out a pistol permit, there is no sense in correcting the application.
Thank you for your attention to this matter.

Alfred G Osterweil
310 Rossman Fly Road
POB 173
Summit NY 12175

6/25/08

EXHIBIT 3

EXHIBIT 3

 ***Schoharie County Sheriff's Office***

|  |  |  |
|---|---|---|
| JOHN BATES, JR.<br>SHERIFF | 157 DEPOT LANE<br>P.O. BOX 689<br>SCHOHARIE, NY 12157<br>FAX (518) 295-7094 | CIVIL   (518) 295-7080<br>(518) 296-8888<br>RECORDS (518) 295-7072<br>JAIL   (518) 295-7071<br>DEPUTIES (518) 295-7076<br>DARE  (518) 295-7098<br>NON-EMERGENCY (518) 295-8114<br>EMERGENCY  911 |

(518) 295-7066

WILLIAM A. SLATER
UNDERSHERIFF

## **M E M O R A N D U M**

TO:    The Honorable George Bartlett

FROM:  Sheriff John S. Bates

RE:    Pistol Permit Application:
        Alfred G. Osterweil

DATE:  July 8, 2008



This <u>incomplete</u> application is being forwarded for your review.

      Also, enclosed is a letter dated June 25, 2008 from Mr. Osterweil detailing his current residency plans. Please advise how you wish for me to proceed with this application.

JSB/rm
Enc.

John Bates,Jr.,Sheriff
157 Depot Lane
PO Box 689
schoharie, NY 12157

Dear Sir,

With reference to your letter of June 24, 2008, a copy of which I have enclosed, I have a few questions.
Since I applied for a pistol permit, I purchased a home in another state. My intention is to to make that state my
primary residence while I still intend to have a vacation property here in Schoharie County. Under those
circumstance, am I still eligible for a permit. I note that the application itself does not appear to require that
Schoharie County be my principal residence or domicile.
Obviously, if my move to another state rules out a pistol permit, there is no sense in correcting the application.
Thank you for your attention to this matter.

Alfred O Osterweil
310 Rossman Fly Road
POB 173
Summit NY 12175

6/25/08



# Schoharie County Sheriff's Office

JOHN BATES, JR.
SHERIFF

(518) 295-7066

WILLIAM A. SLATER
UNDERSHERIFF

157 DEPOT LANE
P.O. BOX 689
SCHOHARIE, NY 12157
FAX (518) 295-7094

| CIVIL | (518) 295-7080 |
| | (518) 296-8888 |
| RECORDS | (518) 295-7072 |
| JAIL | (518) 295-7071 |
| DEPUTIES | (518) 295-7076 |
| DARE | (518) 295-7098 |
| NON-EMERGENCY | (518) 295-8114 |
| EMERGENCY | 911 |

Civil 295-7080

Mr. Osterweil:                                June 24, 2008

REGARDING YOUR PISTOL PERMIT APPLICATION

( )  Application not signed or notarized.

( )  Some arrests or convictions not listed or incorrect.

( )  Reference sheet not notarized or signed.

( )  Some reference sheets indicate you may not be a full
     time resident of Schoharie County - Explain.

( )  In reference to your pistol permit application, the
     D.C.J.S. has rejected the original fingerprint card.
     It will be necessary for you to come in to the office
     to be reprinted.  Also ask the deputy to reprint you
     on an F.B.I. card.

( )  In reference to your pistol permit application, the
     F.B.I. has rejected the original fingerprint card.  It
     will be necessary for you to come in to the office to
     be reprinted.

( )  There is no additional charge for reprinting and it
     can be done any Wednesday evening between 6:30 PM and
     8:30 PM.  Please bring this letter with you so you
     get printed on the correct card.

(XX) You may stop at the Sheriff's civil office Monday-
     Friday between 9 AM and 4 PM.

(XX) Other:  Please stop at the Sheriff's civil office to
     complete and/or correct some information on your permit
     application.  A "premises" permit is only valid inside
     the residence for which you have applied.  The
     application needs to be changed to "carry concealed".
     Also "race" information is missing on one copy of the
     application.

EXHIBIT 4

EXHIBIT 4

Alfred G. Osterweil
P.O. Box 173
Summit, New York  12175

July 10, 2008



The Honorable George R. Bartlett, III
P.O. Box 429
Schoharie, New York  12157

### Re:  <u>Handgun License</u>

Dear Sir:

Some months ago, I filed for a license to purchase and hold a handgun. At that time I had been a full-time resident of Summit. Shortly thereafter, it became expedient for me to change my primary residence and to become domiciled in another state. When the Sheriff wrote to me with respect to a minor issue on my application, I took it upon myself to be entirely forthright and to advise him of the change in my status. Thereafter, Sheriff Bates called me to discuss the issue. He was most courteous and professional and suggested that there might be a problem because the State has been taking the position that an applicant must have his primary residence in New York. I intend to continue to own a home in New York as I do now; however, I intend to vote and obtain a driver's license in that other state. I will utilize this Summit home as a summer home, spending the great majority of the year outside New York.

I have read the <u>Heller</u> case, which was decided shortly after I wrote to Sheriff Bates advising him of my projected move to another state. That case was quite clear, it seems to me, stating that the Second Amendment was adopted to permit all citizens to own and bear arms to protect them in their homes. The case never uses the term "residence", "principal residence", "domicile", or similar designation. Justice Scalia referred to one's "home" throughout the majority opinion. If the amendment was meant to permit me to protect myself in my home, is it not logical to assume that I have the same right in a second home? Indeed, the founding fathers came to Philadelphia from all the thirteen states where they had their primary residences but stayed and lived in Philadelphia for long periods of time in a "second

home". They did not choose to limit the scope of the amendment to domicile, primary residences, and the like.

In the event the Court holds the same view as does Sheriff Bates and denies my application, I believe the issue is sufficiently significant for me to pursue the matter with vigor. While I am not admitted to practice law in New York, I am admitted to practice in New Jersey, the District of Columbia, the Third Circuit Court of Appeals and the United States Supreme Court. I am prepared to appear *pro se* to see this matter concluded as a natural extension of the Heller case.

Should the Court wish to establish a record, I would be very happy to appear before the Court at any time the Court feels it convenient. If the Court wishes to have me provide an affidavit to frame the issue, I would be happy to provide same. In short, I would hope that the Court will deal expeditiously with the issue before it with the knowledge that I will cooperate fully to meet any and all directives of the Court.

Respectfully yours,

Alfred G. Osterweil

Copy to Sheriff Bates

EXHIBIT 5

EXHIBIT 5

# Fingerprint Response

### ORI: NY0470000
### Schoharie County Sheriff Department
### NYSID : 10421025N
### Attention: A fingerprint search shows no available prior NYS information for this individual.

New York State Division of Criminal Justice Services
4 Tower Place
Albany, NY 12203-3764
Tel: 1-800-262-DCJS
Denise E. O'Donnell Commissioner of NYS Division of Criminal Justice Services

Identification    Summary    Criminal History    Job/License    Wanted    Missing    NCIC/III

## ● Transaction Data

**Name:**              ALFRED G OSTERWEIL
**Transaction ID:**    10073138
**Agency ORI:**        NY0470000
**SSN:**               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
**Type of Submission: CIVIL**

### Civil Information
**Type of Application:** Pistol
**Comments:**         CARRY
**Name:**             ALFRED G OSTERWEIL
**Address:**          310 ROSSMAN FLY RD, SUMMIT, NY
**Date of Birth:**    June 30, 1931
**SSN:**              142222222
**Date of Application:** May 21, 2008
**Application Agency:** Schoharie County Sheriff Department
**Application Number:**

## ● Transaction Status Information

**Caution** - Due to the **poor quality** of the fingerprint impressions received, DCJS is unable to determine whether this individual has any other criminal record in New York State.

| Activity | Date/Time | Elapsed |
|---|---|---|
| Initial Transaction Received | July 08, 2008 12:59:23 pm | |
| Latest Resubmission | August 13, 2008 08:53:52 am | |
| Transaction Completed | August 13, 2008 09:45:54 am | 0 hours 51 mins |
| Rapsheet Produced | August 13, 2008 09:45:56 am | |

| Reject Date/Time | Restart Date/Time | Reject Reason(s) |
|---|---|---|
| August 13, 2008 08:51 am | August 13, 2008 08:52 am | Restarted - Input Processing Error |
| August 13, 2008 08:53 am | August 13, 2008 08:53 am | Restarted - Input Processing Error |

## NYS DCJS Repository Response

Fingerprint response on 08/13/2008 09:45 am for transaction 10073138    https://159.181.56.47/webqueue/get.jsp?msgID=4f4d512053554e5052...

## ✪ Attention - Important Information

\* See **Additional Information** at the bottom of this response for more banners pertaining to the criminal history

## ✪ Identification Information

**Name:**
ALFRED G OSTERWEIL    ALFRED G OSTERWEIL

**Date of Birth:**
Jun 30, 1931    Jun 30, 1931

**Place of Birth:**
New Jersey    New Jersey

**Address:**
310 ROSSMAN FLY RD, SUMMIT, NY
310 ROSSMAN FLY RD, SUMMIT, NY

| Sex: | Race: | Ethnicity: | SkinTone: |
|------|-------|-----------|-----------|
| Male | White/White | | Medium/Medium |
| **Eye Color:** | **Hair Color:** | **Height:** | **Weight:** |
| Brown | White | 5' 11" | 175 |

**SSN:**
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 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

| NYSID#: | FBI#: | NCIC Classification: |
|---------|-------|----------------------|
| 10421025N | | |

**III status:**

## ✪ Summary Information

There is no Summary Information associated with this history.

## ✪ NYS Criminal History Information

There is no Criminal History Information associated with this history.

## ✪ Other History Related Information

There is no Other History Related Information associated with this history.

## ✪ Job/License Information

### Civil Information

| | |
|--|--|
| **Type of Application:** | Pistol |
| **Comments:** | CARRY |
| **Name:** | ALFRED G OSTERWEIL |
| **Address:** | 310 ROSSMAN FLY RD, SUMMIT, NY |
| **Date of Birth:** | June 30, 1931 |
| **SSN:** | 142222222 |
| **Date of Application:** | May 21, 2008 |
| **Application Agency:** | Schoharie County Sheriff Department |

Application Number:

## ● Wanted Information    ▲

There is no NYS Wanted Information associated with this history.

## ● Missing Person Information    ▲

There is no NYS Missing Person Information associated with this history.

## ● Additional Information    ▲

## *Federal NCIC, III and/or FBI Response*    ▲

## ● NCIC Information    ▲

**The following information is provided in response to your request for a search of the NCIC Person files based on:**

- **Name: OSTERWEIL, ALFRED G**
- **Sex: M**
- **Race: W**
- **Date of Birth: 06/30/1931**
- **Social Security number: 142222222**

```
NY0470000

NO NCIC WANT SOC/142222222
NO NCIC WANT NAM/OSTERWEIL,ALFRED G DOB/19310630 RAC/W SEX/M
***MESSAGE KEY QW SEARCHES WANTED PERSON FILE FELONY RECORDS REGARDLESS OF
EXTRADITION AND MISDEMEANOR RECORDS INDICATING POSSIBLE EXTRADITION FROM THE
INQUIRING AGENCY'S LOCATION.  ALL OTHER NCIC PERSONS FILES ARE SEARCHED
WITHOUT LIMITATIONS.
```

**WARNING:** Release of any of the information presented in this computerized Case History to unauthorized individuals or agencies is prohibited by federal law TITLE 42 USC 3771b.
This report is to be used for this one specific purpose as described in the Use and Dissemination Agreement your agency has on file with DCJS. **Destroy after use and request an updated rap sheet for subsequent needs.**
All information presented herein is as complete as the data furnished to DCJS.

EXHIBIT 6

*Rejection Reason for a TCN*



## Requested BCN: 08668401W000

**Created:** 7/31/08    1:25:22PM

| TCN | TIME STAMP | REASON FOR REJECTION |
|---|---|---|
| 866840003 | 7/31/08 11:04:15AM | L0008 |

| IAFIS Detail Rejection Reason | | | **IAFIS ICN:** E2008207000000079920 |
|---|---|---|---|
| **TCN** | **IAFIS_RECV_TS** | **MSG_CODE** | **MSG_TEXT** |
| 866840003 | 7/30/08 9:21:04AM | L0008 | L0008 - The quality of the characteristics is too low to be used . |

1

1-17a(Rev.4-14-08)



**U.S. Department of Justice**

Federal Bureau of Investigation

AUG 0 7 2008 5 9 5 9

Clarksburg, WV 26306

The fingerprints appearing on the attached fingerprint card(s) are not adequate for accurate identification purposes.   The reason(s) for return are set forth below:

**CODE   DESCRIPTION**

**L0008**   The quality of characteristics is too low to be used.

(Determined by the FBI's Automated Fingerprint Identification System)

**L0116**   Fingerprint pattern(s) not discernible.

**L0117**   Insufficient pattern area(s) recorded for identification purposes.

**L0118**   Erroneous or incomplete fingerprint(s) on images; fingers or hands out of sequence; printed twice; missing and no reason given.

It is requested that the individual(s) be reprinted and fully rolled and clearly recorded fingerprint card(s) be resubmitted to the FBI, Criminal Justice Information Services (CJIS) Division.

**Resubmitting Criminal Fingerprint Cards:**

When submitting criminal reprints, it is not necessary to return the original fingerprint card(s).

**Resubmitting Applicant/Civil Fingerprint Cards:**

For applicant/civil fingerprint cards for which a fee is involved, one reprint will be processedd at no additional charge.   The first reprint must be returned with the original prints and all attachments, in order to receive credit.

See the opposite side of this form for suggestions for obtaining legible fingerprints.

Thank you for your cooperation in this matter.

Criminal Justice Information Services Division
FBI

**Please Note Instructions on Reverse Side**

# **Please Note**

It is suggested that each newly recorded fingerprint card be examined to ensure that the impressions are fully rolled and clearly recorded, bearing in mind the following:



Please, attempt to print fingers which are deformed or scarred and note fingerprints which are amputated or missing at birth.

Your earnest cooperation is solicited in obtaining the best possible impressions in each block on each fingerprint card. By doing so, you are rendering a vital service and making a major contribution to all agencies participating in the fingerprint exchange program.

Training information relative to the procedures for properly recording fingerprints can be obtained by contacting FBI, CJIS Division at (304) 625-5590 or (304) 625-2000.

EXHIBIT 7

EXHIBIT 7



# Schoharie County Sheriff's Office

| | CIVIL | (518) 295-7080 |
| | | (518) 296-8888 |
| 157 DEPOT LANE | RECORDS | (518) 295-7072 |
| P.O. BOX 689 | JAIL | (518) 295-7071 |
| SCHOHARIE, NY 12157 | DEPUTIES | (518) 295-7076 |
| FAX (518) 295-7094 | DARE | (518) 295-7098 |
| | NON-EMERGENCY | (518) 295-8114 |
| | EMERGENCY | 911 |

**JOHN BATES, JR.**
SHERIFF

(518) 295-7066

**WILLIAM A. SLATER**
UNDERSHERIFF

Civil 295-7080

Mr. Osterweil:                                    August 18, 2008

### REGARDING YOUR PISTOL PERMIT APPLICATION

( )  Application not signed or notarized.

( )  Some arrests or convictions not listed or incorrect.

( )  Reference sheet not notarized or signed.

( )  Some reference sheets indicate you may not be a full
time resident of Schoharie County - Explain.

( )  In reference to your pistol permit application, the
D.C.J.S. has rejected the original fingerprint card.
It will be necessary for you to come in to the office
to be reprinted.  Also ask the deputy to reprint you
on an F.B.I. card.

(XX)  In reference to your pistol permit application, the
F.B.I. has rejected the original fingerprint card.  It
will be necessary for you to come in to the office to
be reprinted.

(XX)  There is no additional charge for reprinting and it
can be done any Wednesday evening between 6:30 PM and
8:30 PM.  Please bring this letter with you so you
get printed on the correct card.

( )  You may stop at the Sheriff's civil office Monday-
Friday between 9 AM and 4 PM.

( )  Other:



EXHIBIT 8

EXHIBIT 8

*Rejection Reas n for a TCN*

 

**Requested BCN:  08672511W000**                    **Created:** 9/8/08    8:48:27AM

| TCN | TIME STAMP | REASON FOR REJECTION |
|-----|-----------|----------------------|
| 867251011 | 9/8/08  7:45:49AM | L0008 |

---

IAFIS Detail Rejection Reason                                    **IAFIS ICN:**  E2008249000000058561

| TCN | IAFIS_RECV_TS | MSG_CODE | MSG_TEXT |
|-----|---------------|----------|----------|
| 867251011 | 9/6/08  9:57:10AM | L0008 | L0008 - The quality of the characteristics is too low to be used . |

1-17a(Rev.4-14-08)



**U.S. Department of Justice**
Federal Bureau of Investigation

SEP 1 2005 9206

Clarksburg, WV 26306

The fingerprints appearing on the attached fingerprint card(s) are not adequate for accurate identification purposes.   The reason(s) for return are set forth below:

**CODE    DESCRIPTION**

**L0008**   The quality of characteristics is too low to be used.
(Determined by the FBI's Automated Fingerprint Identification System)

**L0116**   Fingerprint pattern(s) not discernible.

**L0117**   Insufficient pattern area(s) recorded for identification purposes.

**L0118**   Erroneous or incomplete fingerprint(s) on images; fingers or hands out of sequence; printed twice; missing and no reason given.

It is requested that the individual(s) be reprinted and fully rolled and clearly recorded fingerprint card(s) be resubmitted to the FBI, Criminal Justice Information Services (CJIS) Division.

**Resubmitting Criminal Fingerprint Cards:**

When submitting criminal reprints, it is not necessary to return the original fingerprint card(s).

**Resubmitting Applicant/Civil Fingerprint Cards:**

For applicant/civil fingerprint cards for which a fee is involved, one reprint will be processedd at no additional charge.   The first reprint must be returned with the original prints and all attachments, in order to receive credit.

See the opposite side of this form for suggestions for obtaining legible fingerprints.

Thank you for your cooperation in this matter.

Criminal Justice Information Services Division
FBI

**Please Note Instructions on Reverse Side**

# Please Note

It is suggested that each newly recorded fingerprint card be examined to ensure that the impressions are fully rolled and clearly recorded, bearing in mind the following:



LOOP

CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

WHORL

DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

ARCH

ARCHES HAVE NO DELTAS

Please, attempt to print fingers which are deformed or scarred and note fingerprints which are amputated or missing at birth.

Your earnest cooperation is solicited in obtaining the best possible impressions in each block on each fingerprint card. By doing so, you are rendering a vital service and making a major contribution to all agencies participating in the fingerprint exchange program.

Training information relative to the procedures for properly recording fingerprints can be obtained by contacting FBI, CJIS Division at (304) 625-5590 or (304) 625-2000.

SEP 15 2004 3903

1-12 (Rev. 8-4-05)

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Investigation
Criminal Justice Information Services Division
Identification and Investigative Services Section

1000 Custer Hollow Road
Clarksburg, WV 26306

Date _____

Contributor:

The enclosed fingerprints and/or correspondence are being returned to you because of reason(s) indicated below:

☐ Second request for correction.
☐ (Contributor) (CIDN) (SOC) omitted or incorrect
☐ Name (not shown at top of card) (name and signature differ) (name illegible or unclear).
☐ Essential information (omitted) (not clear) (incomplete): ☐ Sex     ☐ Descriptive data     ☐ Date of birth
☐ Charge and/or date of arrest (omitted) (not clear) incomplete). List charges in literal form (i.e. murder, rape, robbery, etc.)
☐ Advise reason for submission of fingerprints: (i.e. Law Enforcement, Criminal Justice, Weapon Permit, etc.)
☐ Fingerprint(s) illegible - please submit another card.  For enhanced legibility, ensure fingers are rolled nail to nail.
☐ Inked finger impressions not on card.
☐ Advise reason for submission of fingerprints; if criminal furnish charge; or if applicant furnish position for which applying.
☐ FBI number omitted.  Rolled impressions of all fingers, and plain impressions, are necessary to process.
☐ Impressions not black on standard white fingerprint card stock.
☐ Apparently mailed to us by mistake.
☐ Our records fail to reveal a statute from your state requiring fingerprinting for the position indicated.
☐ There is no indication the enclosed cards and/or correspondence have been processed through your state identification
    bureau or central agency prior to submission to the FBI.
☐ Enclosed card or correspondence may have been submitted by your office.  Please list contributor and return to FBI.  If not
    submitted by your office, please advise.
☐ We do not include information unsupported by fingerprints in our files.
☐ Fingerprint card with nonserious offense.
☐ Please enter Sex Offender Registration information into the "Convicted Sexual Offender Registry File" using NCIC 2000.
☐ A new processing fee will be charged.  Please submit a set of fingerprints without attachments.
☐ Failure to follow 3rd submission rules.
☐ REJ/50 - Transaction received for processing matches NFF record from your state.
☐ REJ/51 - SID on file different than SID on print.
☐ REJ/52 - SID previously established for another FNU.
☐ REJ/53 - SID missing for NFF participant.
☐ Live scan equipment not properly programmed.
☐ The form used for submission was (not the correct form/fingerprint card) (not a standard form/fingerprint card), please resubmit.
☐ Please submit electronically.
☐ Cannot update Subject Record because DOA _____ and corresponding DO S already exists.
☐ Fingerprint cards accepted by Immigration and Naturalization Services (INS) (excluding PORTPASS and PAL programs), must be
    forwarded to the respective service center for processing.
☐ Attached fingerprint card has been afforded an Integrated Automated Fingerprint Identification System (IAFIS) name check.
☐ The fingerprints and/or correspondence are being returned per your request.

☐ The FBI has only approved two inkless methods for obtaining fingerprints.  It is suggested that you contact the
    appropriate vendor listed below who sold you your equipment for clarification of processing procedures.

Identicator Corporation (310) 305-8181          Dactek International, Inc.  (818) 787-1901
4051 Glencoe Avenue                             8142 Orion Avenue
Marina Del Rey, CA. 90292                       Van Nuys, CA. 91406

☐ Other
_____  Your cooperation is appreciated.

Enclosure(s)

Exhibit 9

Exhibit 9

**Subject:** Al;fred G Osterweil permit
**From:** "Al Osterweil" <twodogs@midtel.net>
**Date:** Mon, 15 Dec 2008 08:08:44 -0600
**To:** "sheriffbates" <sheriffofc@co.schoharie.ny.us>

Dear Sheriff Bates,

Some months have now passed since I was re-fingerprinted. I have not been scheduled
for the gun safety class your office provides, nor have I had any communication
from your office at all.
Would you please contact me and advise me of the status of my application.A
response to this e-mail woulxd be fine.
Sincerely,
Alfred G Osterweil

**Subject:** Re: Al;fred G Osterweil permit
**From:** Schoharie County Sheriff <sheriffofc@co.schoharie.ny.us>
**Date:** Tue, 16 Dec 2008 15:02:12 -0500
**To:** Al Osterweil <twodogs@midtel.net>

Mr. Osterweil,

   The F.B.I. has rejected your fingerprints for the second time.  I am meeting with
Judge Bartlett next week and will ask him if he will consider your application
without the F.B.I. check.  If so,  you will be scheduled for the next class.

John Bates


Al Osterweil wrote:
  Dear Sheriff Bates,

  Some months have now passed since I was re-fingerprinted. I have not been
  scheduled for the gun safety class your office provides, nor have I had any
  communication from your office at all.
  Would you please contact me and advise me of the status of my application.A
  response to this e-mail woulxd be fine.
  Sincerely,
  Alfred G Osterweil

**Subject:**
**From:** "Al Osterweil" <twodogs@midtel.net>
**Date:** Mon, 2 Feb 2009 13:30:14 -0600
**To:** "sheriffbates" <sheriffofc@co.schoharie.ny.us>

Dear Sheriff Bates,I last received an E-mail from you on December 16, 2008. At that
time you iondicated you were going to speak to Judge Bartlett, who would be acting
not as a judge, but rather as the county's "issuing agent". I must insist on a
response to my application forthwith. Dragging this out and denying me the right to
gun ownership violates my rights as a US citizen under 42 USC 1983. I will not
hesitate to seek damages and relief against the county and all lother persons who
are in complicity in this matter.
Very truly yours,
Alfred G Osterweil

**Subject:** Re:
**From:** Schoharie County Sheriff <sheriffofc@co.schoharie.ny.us>
**Date:** Tue, 03 Feb 2009 15:00:52 -0500
**To:** Al Osterweil <twodogs@midtel.net>

Mr. Osterweil,

   I met with Judge Bartlett on Tuesday, December 23, 2008 regarding other pistol
permit matters. He was unable to address your application at that time.   His
secretary was asked by me to schedule an appointment to specifically  discuss your
application.   I did not receive an appointment date until last week.   I will now
meet with Judge Bartlett on Friday, February 13, 2009.  For your information, your
fingerprints have been rejected for the second time by both the F.B.I. and NY State
D.C.J.S.   They will not process another set of prints without an additional fee of
$105.00.   I intend to ask the Judge if there is any way to avoid this additional
fee for you.

Sincerely,

Sheriff John S. Bates, Jr.


Al Osterweil wrote:
   Dear Sheriff Bates,I last received an E-mail from you on December 16, 2008. At
   that time you iondicated you were going to speak to Judge Bartlett, who would be
   acting not as a judge, but rather as the county's "issuing agent". I must insist
   on a response to my application forthwith. Dragging this out and denying me the
   right to gun ownership violates my rights as a US citizen under 42 USC 1983. I
   will not hesitate to seek damages and relief against the county and all lother
   persons who are in complicity in this matter. Very truly yours,
   Alfred G Osterweil

Re:

**Subject:** Re:
**From:** "Al Osterweil" <twodogs@midtel.net>
**Date:** Wed, 4 Feb 2009 06:28:07 -0600
**To:** "Schoharie County Sheriff" <sheriffofc@co.schoharie.ny.us>

Dear Sheriff Bates
Thank you for your response of 2/03/09. It may be that I am simply not able
to provide clear fingerprints. Does that mean that I am disqualified from
gun ownership in New York? Your deputies noted that several fingers printed
out clear;ly and only a few were difficult to read. If the FBI can locate
felons with only one finger's print at a crime scene, they should be able to
run my prints. Further, why should I be required to pay an additional fee
and have the process linger on for several more months.Even the flawed NY
statute indicates that the entire process must be completed within 6 months,
irrespective of whether the prints come back from the FBI within that period
of time.We are well beyond 6 months at this juncture.
The way my matter is being handled, it appears that every efort is being
made to thwart my application for gun ownership.I suppose an illegal alien
who lives in a tent in Schoharie as his only residence but whose
fingerprints are clearer than mine would have been issued a permit within
the prescribed 6 months. I pay enormous property taxes in Schoharie County
on two residences, I served in the Armed Forces of the USA, I pay my income
taxes, unlike some of our highest ranking  governmental officials, and
insteead of being treated fairly in accordance with the law as enunciated by
our own Supreme Court, my right to protect myself and my family in my two
homes in Summit NY is being stymied.This is not the kind of country I grew
up in and served.
I look forward to a speedy resolution of this matter.
Very truly yours,
Alfred G Osterweil


----- Original Message ----- From: "Schoharie County Sheriff"
<sheriffofc@co.schoharie.ny.us>
To: "Al Osterweil" <twodogs@midtel.net>
Sent: Tuesday, February 03, 2009 2:00 PM
Subject: Re:


Mr. Osterweil,

   I met with Judge Bartlett on Tuesday, December 23, 2008 regarding other
pistol permit matters.  He was unable to address your application at that
time.  His secretary was asked by me to schedule an appointment to
specifically  discuss your application.  I did not receive an appointment
date until last week.  I will now meet with Judge Bartlett on Friday,
February 13, 2009.  For your information, your fingerprints have been
rejected for the second time by both the F.B.I. and NY State D.C.J.S.
They will not process another set of prints without an additional fee of
$105.00.   I intend to ask the Judge if there is any way to avoid this
additional fee for you.

Sincerely,

Sheriff John S. Bates, Jr.


Al Osterweil wrote:
   Dear Sheriff Bates,I last received an E-mail from you on December 16,
   2008. At that time you iondicated you were going to speak to Judge
   Bartlett, who would be acting not as a judge, but rather as the county's
   "issuing agent". I must insist on a response to my application forthwith.

Re:

Dragging this out and denying me the right to gun ownership violates my
rights as a US citizen under 42 USC 1983. I will not hesitate to seek
damages and relief against the county and all lother persons who are in
complicity in this matter. Very truly yours,
Alfred G Osterweil

Exhibit 10

Exhibit 10



# Schoharie County Sheriff's Office

**JOHN BATES, JR.**
SHERIFF

(518) 295-7066

WILLIAM A. SLATER
UNDERSHERIFF

157 DEPOT LANE
P.O. BOX 689
SCHOHARIE, NY 12157
FAX (518) 295-7094

February 18, 2009

| | |
|---|---|
| CIVIL | (518) 295-7080 |
| | (518) 296-8888 |
| RECORDS | (518) 295-7072 |
| JAIL | (518) 295-7071 |
| DEPUTIES | (518) 295-7076 |
| DARE | (518) 295-7098 |
| NON-EMERGENCY | (518) 295-8114 |
| EMERGENCY | 911 |

Alfred G. Osterweil
310 Rossman Fly Road
Summit, NY  12175

Dear Mr. Osterweil,

As I explained in my e-mail of February 3, 2009,  I met with Judge Bartlett on Friday, February 13, 2009.

Judge Bartlett has requested that your permit application be turned over to him.  This is being done today. Any further questions regarding this matter, should be directed to the Court at 518-295-8383.

Sincerely,

John S. Bates, Jr.
Sheriff
Schoharie County

Cc: Hon. George R. Bartlett III

JSB|mh

Exhibit 11

Exhibit 11



COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF SCHOHARIE
THE COURTHOUSE - 290 MAIN STREET
P.O. BOX 669
SCHOHARIE, NEW YORK 12157
TEL: (518) 295-8342
FAX: (518) 295-7226

GEORGE R. BARTLETT III
COUNTY COURT JUDGE
WILLIAM J. MINKEL
COURT ATTORNEY

F. CHRISTIAN SPIES
CHIEF CLERK

February 20, 2009

Mr. Alfred G. Osterweil
310 Rossman Fly Road
Summit, New York 12175

        Re:    Pistol Permit Application

Dear Mr. Osterweil:

        I met with Sheriff Bates on February 3, 2009 concerning various issues; and
during that meeting, he indicated he had legal questions regarding your pistol
permit application that he felt should be addressed by the Court prior to his office
further processing your application. Accordingly, in order to avoid any ex parte
discussions, I asked the Sheriff to forward your paperwork to me so that I could
review your application and ascertain the issues involved with your permit
application.

        I have reviewed your file and it appears to me that there are two threshold
issues. One being that the FBI has rejected your fingerprints twice due to the fact
that the "quality of characteristics is too low to be used." Moreover, it appears
that New York State DCJS was also unable to utilize your fingerprints in their
record's check. There is also a note in your file, apparently from the Deputy who
took your prints, indicating concern about the FBI being able to read your prints
as, in his opinion, you did not have "prints to speak of. They are very worn."

        Penal Law §400 requires an FBI fingerprint and NYS DCJS search prior to
the issuance of a pistol permit, but does allow the issuing authority some
discretion with respect to this requirement. As the failure to be able to read your
prints is certainly not under your control, I would entertain a request to waive this
requirement.

Page 2

The second issue seems to be that you are not or will not be a resident of the State of New York. In this regard, New York Law has regularly held that pistol permits should be issued to residents only[1] (see, Mahoney v. Lewis, 199 A.D. 2d 734). However, I acknowledge your correspondence which sets forth your intention to maintain a second home in Schoharie County and certainly appreciate the fact that, as such, you will pay real estate taxes upon that property.

At this juncture, I would like to schedule an appearance in Court where you or your attorney can present any arguments in support of your application. In particular, I would be interested in your supplying any legal precedent supporting your position with regard to residency and in support of a fingerprint check waiver. Moreover, I would like the Sheriff to be present to explain the fingerprint situation and answer any questions you or your attorney may have.

I have, accordingly, scheduled this matter for an appearance on **Tuesday, March 24, 2009 at 1:30 p.m.** If you or your attorney wish to submit written, legal arguments prior to this date, please feel free to submit same. Also, should you wish to review your file, please call Kathy in my office to arrange for a convenient time to do so. Finally, if the date set for an appearance is not convenient for you, please call my office to reschedule.

Very truly yours,

GEORGE R. BARTLETT, III

GRB/klp
c:    Sheriff John S. Bates, Jr.
      F. Christian Spies, Chief Clerk

---

[1]In Mahoney v. Lewis, id. at p. 735 it was held that the "term residence [as used in Penal Law §400] is equivalent to domicile and requires something more than mere ownership of land."

Exhibit 12

Exhibit 12

**Alfred G. Osterweil**
P. O. Box 173
Summit New York 12175
March 3, 2009



Re: Pistol Permit

Dear Judge Bartlett

I will be sending you a package of materials with respect to my application, but I thought you might want to visit the FBI site with respect to fingerprinting, steps to take, the issue of worn fingerprints and other matters related to the fingerprinting done by sheriff's deputies..

None of the special steps suggested in the FBI article which is attached to this FAX were utilized when I was fingerprinted.

Respectfully,

Alfred G Osterweil.

Enclosures 12

By FAX to 518 295-7226

# Taking Legible Fingerprints

## Section I. Introduction

The purpose of this program is to provide information regarding the nature of fingerprints and outline techniques for taking legible fingerprints.

Fingerprints can be recorded on a standard fingerprint card or digitally. Obtaining quality fingerprint impressions can be a matter of using proper techniques. Even though the methods of recording fingerprints may differ, the techniques for obtaining quality fingerprints are very similar.

## Section II. Fingerprint Pattern Types

Fingerprints are the result of minute ridges and valleys found on the hand of every person. In the fingers and thumbs, these ridges form patterns of loops, whorls and arches.

### Outline

I. Introduction

II. Fingerprint Pattern Types
1. Loop, Whorl, Arch

III. Fingerprint Impression Types
1. Rolled. Plain

IV. Basic Fingerprinting Equipment
1. Ink, Paper, Live Scan

V. Steps for Fingerprinting

VI. Special Situations
1. Amputations
2. Bandaged Fingers
3. Scars
4. Deformities
5. Worn Fingerprints
6. Extra Fingers

VII. Quality Checklist



**LOOP**
In a loop pattern, the ridges enter from either side, re-curve and pass out or tend to pass out the same side they entered.



**WHORL**
In a whorl pattern, the ridges are usually circular.



**ARCH**
In an arch pattern the ridges enter from one side, make a rise in the center and exit generally on the opposite side.

### Each of the three pattern types have focal points which are used for classification.

In the **Loop** pattern there are two focal points: the **Core**, or the center of the loop, and the delta. The **Delta** is the area of the pattern where there is a triangulation or a dividing of the ridges. When recording fingerprints, the delta and the area between the delta and the core must be completely recorded.



A **Whorl** pattern will have two or more deltas. For a whorl pattern, all deltas and the areas between them must be recorded.



The **Arch** pattern has no delta or core; but, it too, must be fully recorded so that its individual characteristics can be readily distinguished.



### Section III. Fingerprint Impression Types

There are two types of impressions involved in taking fingerprints. The upper ten impressions are taken individually, thumb, index, middle, ring, and little fingers of each hand. These are referred to as the "rolled" impressions because the fingers are rolled from one side of the fingernail to the other, in order to obtain all

available ridge detail.

The impressions at the bottom of the card are taken simutaneously without rolling, printing all of the fingers of each hand at a forty-five degree angle and then the thumbs. These are referred to as "plain," "slapped," or "flat" impressions. The plain impressions are used to verify the sequence and accuracy of the rolled impressions.

**Rolled
Impressions**



**Plain
Impressions**

## Section IV. Basic Fingerprint Equipment

Fingerprints can be recorded with any of the following materials:

- Ink (Black Printers Ink or Porelon Pad) and Paper (Standard Fingerprint Card, FD-249 Criminal Card or FD-258 Applicant Card). A Porelon Pad contains a built-in ink supply.

- Chemicals and Paper (Standard Fingerprint Card)

- Livescan. For a list of FBI certified Live Scan and Card Scan devices see the FBI Certified Equipment List at www.fbi.gov.

## Section V. Steps for Fingerprinting

The recommended height for the fingerprinting device (Card or Live-Scan) is approximately thirty-nine inches from the floor. This will allow the forearm of an average adult being fingerprinted to be parallel to the floor, at which position it is best to roll and record fingerprints. If the fingerprinting device is not at this height, care must be taken or the finger tends to rise off the device. If this happens, the technician will fail to capture the lower portion of the first joint and necessary ridge detail will be missing.

1. Fingers to be printed must be clean and dry. Wiping the individual's fingers with an alcohol swab and then drying them should prevent perspiration from being a problem. If the individual's occupation has caused a wearing down or

   rough surface on the fingers, use lotion to soften the fingers (be sure to wipe the lotion off before printing).

2. The individual being fingerprinted should be asked to stand in front of and at a forearm's length from the fingerprinting device. The individual should stand to the right and rear of the person taking the fingerprints.

3. Encourage the individual being fingerprinted to relax. Ask them to look at some distant object to distract them from what you are doing.

4. Grasp the individual's right hand at the base of the thumb with your right hand. Cup your hand over the individual's fingers, tucking under those fingers

   not being printed. Guide the finger being printed with your left hand.

5. If using the ink and paper method, roll the finger on the inking plate or Porelon Pad so that the entire fingerprint pattern area is evenly covered with ink. The ink should cover from one edge of the nail to the other and from the crease of the first joint to the tip of the finger. Using the right amount of ink is of vital importance. Too little ink and the impression will be too light. Too much ink and the fine details will run together.



**Bulb of the Finger**

**First Joint**

6. In taking the rolled impression, the side of the bulb (see illustration above) of the finger is placed upon the paper fingerprint card or the fingerprinting device, and the finger is rolled to the other side until it faces the opposite direction. Care should be exercised so the bulb of each finger is rolled evenly from tip to below the first joint. Generally, the weight of the finger is all the pressure needed to clearly record the fingerprint.

 **Click here for video clip showing rolling technique**

7. In order to take advantage of the natural movement of the forearm, the hand should be rotated from the more difficult position to the easiest position. This requires that the thumbs be rolled toward and the fingers away from the center of the individual's body. This process relieves strain and leaves the fingers relaxed when rolling so that they may be lifted easily without danger of slipping which smudges and blurs the fingerprints.

8. Roll each finger from nail to nail in the appropriate space taking care to lift each finger up and away after rolling, to avoid smudging.

9. If using the ink and paper method and a rolled impression is not acceptable, you may use an adhesive re-tab to cover the fingerprint in its space. (No more than one re-tab per finger block is permitted.) For live scan, the image can be deleted and retaken.

10. Plain impressions are printed last, at the bottom of the card. The technician simultaneously presses the individual's four fingers (on the right hand), keeping the fingers together, on the surface of the fingerprint card or the fingerprinting device at a forty-five degree angle in order to capture all four fingers in the allotted space (see illustration). Repeat this process for the left hand. Print both thumbs simultaneously in the plain impression thumb blocks (to ensure that they are in the proper spaces).



 **Please Note:** Never place a fingerprint impression on the back of a fingerprint card.

11. If using the ink and paper method, complete the information at the top of the
fingerprint card (masthead). If using live scan, complete the required information.

## Section VI. Special Situations

Special attention must be given when fingerprinting an individual with abnormalities of the fingers, thumbs or hands. Special situations include:

- Amputations
- Bandaged Fingers or Hands
- Scars
- Deformities
- Worn Fingerprints
- Extra Fingers
- Webbed Fingers

### Amputations

An amputation exists when an individual has one or more fingers, thumbs or hands missing. This condition should be noted in the appropriate block of the fingerprint submission. Total amputation should be designated using the following notations:

- Amputation (AMP)
- XX
- Missing at Birth (MAB)

 **Please Note:** The term "Missing," is **not** interpreted as amputation by the FBI.

### Bandaged Fingers or Hands

If the individual has a bandage or cast on a finger, thumb or hand, place :he notation, "Unable to Print" or "UP" in the appropriate finger block.

### Scars

A scar exists when an individual has permanent tissue damage to finger, thumb or hand and when only pattern areas that have been totally destroyed or the ridge detail appears distorted. These fingerprints should be taken as they exist. The scars can be noted as "Scarred," but it is not required.

### Deformities

A deformity may exist as a result of an injury, birth defect or disease. An attempt should be made to fingerprint the individual with the techniques outlined

previously; although special equipment (e.g., a fingerprint spoon) may be needed when fingerprinting individuals with deformities. The equipment can be found in the "Postmortem Kit" and consists of:

- Black Printers Ink
- Spatula
- Fingerprint Card Strip Holder (Spoon)
- Fingerprint Card Strips



**Fingerprint Card Strip Holder (Spoon)**

**Spatula**

**Fingerprint Card Strips**

### How to Use the Fingerprint Spoon

1. Place a fingerprint card strip in the fingerprint card strip holder (spoon).

2. Using the spatula, ink the finger (starting with the right hand) and be sure to apply ink from nail to nail.

3. Place the inked finger on the fingerprint card strip holder (curved area) and press down. **Do not** roll the finger. The curved shape of the holder will serve the same purpose as rolling the finger.

4. Cut out the finger block from the card strip and paste in the corresponding block on the standard fingerprint card.

5. Repeat these steps for each of the remaining fingers. Be sure to record the correct finger in the correct finger block.

 *Please Note:* A strip of fingerprint re-tabs can be substituted for the fingerprint card strip

Case 1:09-cv-00825-MAD-DRH  Document 33-1  Filed 03/11/11  Page 57 of 117

If utilizing Live-Scan equipment, the use of a Fingerprint Spoon is not an option. You may want to fingerprint the individual on a standard fingerprint card using either Black Printers Ink, Porelon Pad or the Chemical method so that a Fingerprint Spoon may be used. Then either scan the fingerprint card and submit electronically, or mail the card.

If Live-Scan is the only option, then the finger block(s) should be left empty with a notation of "Unable to Print" or "UP." However, the number of finger blocks without fingerprint images should be kept at a minimum (no more than five).

### Worn Fingerprints

An individual may, by the nature of their work or age, have very thin or worn ridges in the pattern area. Light pressure and very little ink are used to record these types of fingerprint impressions. A technique known as "milking the fingers" can be used to raise the fingerprints prior to fingerprinting. The technique involves applying pressure or rubbing the fingers in a downward motion from palm to fingertip. In a situation of dry, flaky fingers, simply add a small amount of hand lotion or ridge builder prior to fingerprinting.

### Extra Fingers

If an individual has more than ten fingers, the thumbs and the next four fingers should be printed. When a subject with more than ten fingers has an intentional amputation performed, it is invariably the extra finger on the little finger side that is amputated.

**Don't print the
extra finger**



### Webbed Fingers or Split Thumbs

An individual may have two or more fingers webbed or grown together, making it impossible
to roll such fingers. Such fingers should be rolled as completely as possible, and a notation made to the effect that they are joined or "webbed."

*Print if possible ...*                    *...Or make a notation*

 

**Section VII. Quality Checklist**

To verify that the fingerprint impressions meet the FBI's requirements, please use the following checklist:

    1. Is there a fingerprint impression in each finger block? If there is a missing fingerprint impression, is there a reason noted in the finger block (e.g., AMP, missing at birth, unable to print, etc.)?

**Make sure to note when images are amputated or unable to print...**



    2. Are the fingerprints rolled fully, from nail to nail?

*Same finger . . .*

**Not rolled
fully**                                        **Acceptable**

Taking Legible Fingerprints

3. If the fingerprint impression is a loop, are the delta and core present?
   If the fingerprint impression is a whorl, are all deltas present?

4. Are the fingerprint impressions clear and distinct?

5. Are the fingerprint impressions uniform in tone and not too dark or light?

**Too Dark**
(too much ink or pressure)



**Too Light**
(too little ink or pressure)



**Ink Unevenly Distributed**
(causing light and dark areas)



6. Are the four finger impressions and a thumb impression in the plain
   impression block for each hand?

7. Are the rolled fingerprint impressions in the correct finger blocks when
   compared to the plain impressions?

*Verify images are in correct order ...*



 ***Please Note:*** *If using live scan equipment to capture fingerprint
impressions, it is important to clean the equipment regularly and
calibrate routinely per the manufacturers guidelines, to ensure the
quality and integrity of the fingerprint images.*

**Back to the beginning**

Exhibit 13

Exhibit 13



Alfred G. Osterweil
P.O.Box 173
Summit, New York,12175
March 4, 2009

The Honorable George R. Bartlett,III
Schoharie County Courthouse
Schoharie, New York  12157

Re: Pistol Permit Application

Dear Judge Bartlett,

I received your letter dated February 20, 2009, and wish to take this opportunity to reply to same. At the outset, I cannot be present in Schoharie County on March 24, 2009. At this time I am unable to provide a date certain.

While I am aware of the adage that a lawyer who represents himself has a fool for a client, I will appear *pro se* in this matter. I believe also that this case is important to many home owners in Schoharie County who may vote in other states but return annually to Schoharie as their vacation residence.

I would like to take issue with several of the views set forth in your correspondence, and, in addition, advance several facts and legal positions not touched upon by you.

Prior to analyzing the meaning and rationale of a residency requirement, which you described as a threshold issue, I should like to review some preliminary matters. It is my understanding that Schoharie County, like many but not all counties, falls into that category where the statute requires that a judge be the "licensing officer". Because many categories of personnel, nonjudicial in nature, are designated as licensing officers, and because this activity is administrative rather than judicial, I do not see any basis to have a plenary hearing in this matter. Indeed , I would strenuously object to such a hearing as I believe it is unwarranted and might be construed to insulate any governmental entity and its agents, servants and employees from the reach of  42 USC Sec.1983. Further it could preclude me  from proceeding directly to the US District Court from any adverse decision. While I am not admitted to practice in New York,  it is my understanding that if I were to proceed in a plenary hearing and be denied a license, my remedy would be to appeal to a state court rather than a direct appeal to the federal system. Beyond that, there is that old rule of law that I vaguely remember from law school that a litigant must exhaust his administrative remedies prior to resorting to the courts.

A point which was omitted in your letter is the failure of the licensing officer to render a decision or otherwise comply with the provisions of the statute within the prescribed time limits and its effect in this case. My records reflect that I filed for the license on May 21, 2008, by handing a copy to a sheriff's deputy who reviewed it and found it to comply with the statute. I thereafter received a letter

from the sheriff dated June 24, 2008 (Attachment A), requesting me to stop down at his office to correct a minor matter on the application. I then wrote to Sheriff Bates, advising him that while I was still a full time resident of Summit New York, I intended to set up my primary residence in another state, retaining my Summit home as a vacation home (Attachment B). Sheriff Bates called me after receiving my letter and generally indicated that the issue of my future move would impact negatively on my application. At the time of his call, the U.S. Supreme court had just decided the case of District of Columbia vs. Heller and I had obtained a copy of the slip opinion. I mentioned the case to Sheriff Bates but he had not yet read it. Based upon the holding in that case, I took it upon myself to write directly to you (Attachment C) to offer to provide you with additional information you might require to comfortably render a decision wherein you could adopt a new view of the residency requirements of the New York statute as now impacted by the Heller case.

I then met with Sheriff Bates on August 14, 2008, at which time he advised me that I would have to be re-fingerprinted. In fact I was re-fingerprinted on August 20, 2008. The only occasion I received any word from you was your recent letter dated February 20, 2009(Attachment D). I previously recognized that the residency requirement originally appearing in the statute probably dealt with the issue of monitoring and therefore, a detailed look into my background could convince the licensing official that perhaps I required less monitoring than other applicants.

I have provided, as Attachment E, some of the background facts I was prepared to provide by affidavit or otherwise had you responded to my letter.

But getting to the issue of the time lapse here and its effect, the statute provides that ..."Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment of such an application to the appropriate party. Such delay may only be for good cause and with respect to the applicant. In acting upon an application, the licensing officer shall either deny the application for reasons specifically and concisely stated in writing or grant the application..." It is my contention based on the facts in this matter that my application must be considered as granted since I received no denial and no reasons for any such denial. Surely, every citizen is entitled to rely upon time limitations imposed upon public officials to the same extent that time limits are imposed upon him. For example, if I fail to file a civil complaint within the prescribed time, I am foreclosed from proceeding. There is a reason for the six month provision, and a general rule of statutory construction compels the courts to acknowledge this language and to give it meaning. If we do nothing with respect to a failure to act within six months, we will have written that provision out of the statute. Additionally, the statute provides that "The failure or refusal of the Federal Bureau of Investigation to make the fingerprint check...shall not constitute the sole basis for refusal to issue a permit..." I have never been given any reason for not receiving a permit.

Having dealt with the issue of timeliness required by the government, I should like to address the issue of residency and the Supreme Court decision in Heller. I have only the slip opinion and thus, cannot provide the official citation. The opinion of the court is clear and unequivocal. The language of the court is compelling. On page 64, :"In sum, we hold that the District's ban on handguns in the home violates the Second Amendment... the District must permit him to register his handgun and must issue him a license to carry it in the home." The term "home" is used repeatedly throughout the decision. There is no reference to residence, domicile, principal residence or any other term which could limit the scope of this protection in one's home. The entire purpose of the Second Amendment, to insure the safety of each individual in his home, compels us to insist that a so-called second home is entitled to no less protection than a single residence. What logic could possibly compel the Supreme Court to adopt a

rule which leaves a citizen protected in only one of his homes. We contend that this ruling impliedly strikes down any state requirement that limits possession of a gun to a principal residence, domicile or other class of dwelling.

Admittedly, the court did refer to certain limitations that states could impose upon potential gun owners, but those limitations which appear on pages 54-56 deal with such issues as felons, persons with mental disorders and the like. There are no references to limitations on the type of dwellings in the recitation of the measures and areas of regulation and restriction a state might take. We submit that by enumerating areas of permissible regulation, and by omitting any reference to the type of home in that list, the court intended to strike down any such limitation. The axiom *expressio unius est exclusio alterius* seems applicable here. I hope I am forgiven if I have faltered in my Latin.

Further, we point to Article 2, Section 4 of the New York Civil Rights Law which provides: "A well regulated militia being necessary to the security of a free state, the right of the people to bear arms shall not be infringed," Thus, it is our contention that even absent the decision in Heller, any attempt by New York to limit gun ownership to certain classes of residents and deny such rights to other residents violate its own civil rights provision.

There is another rule of statutory construction which appears applicable, and that arises because New York copied, identically, the language for its Civil Rights Law as it appears in the United States Second Amendment. The rule of construction is that when a governmental entity enacts a statute, regulation or other legislation which contains the same language as appears in another entity's laws, the law presumes it had the same intent as the framers of the original document. Thus, in this situation, New York intended its act to have the same meaning and scope as the Federal provision. Since the Heller Court has interpreted the meaning of the Second Amendment, New York courts must adopt that same meaning. In this case, it means that the New York Civil Rights Act authorizes me to possess a gun in my home in Summit, irrespective of where I vote, so long as I continue to maintain a home there, as I do presently. This is not a rental property. It is my home

I will now deal with the issue of residency as though the Heller case did not exist and as though the New York Civil Rights Act was not a copy of the Second Amendment.. Your letter of February 20, 2009, cites Mahoney v. Lewis where it was held that the "term residence ...is equivalent to domicile and requires something more than mere ownership of land." Well, I have a rather large residence at 310 Rossman Fly Road and I have lived there for some years. I continue to live there and call it my home although I now vote in another state. In addition, we own another home in Summit, New York on Eagle Mountain Road in which we also live and which we also call home. Certain family situations compelled us to have these living arrangements but that is a personal matter and I need not burden anyone with those details. I have a great deal more here in Summit than mere ownership of land. But beyond that I am aware of the case of Bach vs. Pataki, decided by the 2nd CCA. I do not have the official case before me and thus, cannot provide the official citation. That case was brought by a person who had no home in New York but regularly visited his parents who did have a home somewhere upstate. That case was decided on the question of whether the Second Amendment was an individual right. The court ruled it was not an individual right, a position which is now in conflict with the Supreme Court..However, the Court of Appeals did provide its rationale for the residency requirement in *dicta* by Judge Wesley. The thrust of this *dicta* is that the state has an interest in monitoring citizens who have been licensed to have handguns to determine their continuing behavior and to be able to revoke licenses for poor judgment in the community. While *dicta* is not binding I believe I should deal with it in the event it were to become a factor here. Permit me to provide several alternative situations as follows: I continue to be domiciled in New York but I purchase a home in another state and spend

most of the year there while still retaining my Summit home. The only difference between that situation and mine is the change of the place I vote. Had I done that, there would be no residency issue here. Another situation which demonstrates the fallacy of the so-called monitoring issue would arise where I continue to be domiciled in Summit but I travel through Europe for a year or more, or if I purchase a motor home and spend most if not all of the year out of state. I submit that this monitoring issue might have had some efficacy when Summit, New York was inhabited solely by dairy farmers who took their product to market by horse and wagon. It has no validity in a modern society which is mobile and where citizens are more likely to vacation elsewhere for long periods and have second homes. Laws have to make sense. In some situations the passage of time or events not previously conceived cast a different light on a law.

With respect to my fingerprints, I do not wish to belabor the issue. The statute is clear that a license may be issued without them coming back from the FBI, and you indicated that it was not determinative to you. Obviously, it is beyond my control to provide fingerprints acceptable to the FBI. This is not an uncommon situation according to my research. Indeed, the sheriff's own printed form has a box to be checked for the failure to obtain acceptable prints. .The purpose of the prints is to assist in determining whether an applicant has a criminal record or other disqualifying aspect to his life, but there are other methods of investigation available to make these determinations.

Under all the circumstances set forth in this letter, I ask that you forthwith issue me a license for a handgun in my home.

As I indicated at the start of this letter I will not be available to speak to you personally in March, 2009, if you refuse to issue me a license at this time. I will be in Summit this summer, and if you order me to appear before you I will, as an officer of the court, comply. If I am so ordered, I would like to know whether this will be an administrative discussion or a court hearing, Further, because my case has generated so much interest from various not for profit organizations and so many gun owners in New York, I would like to bring along at least one interested New York journalist who is, himself, a gun enthusiast. Obviously, if you order a court hearing, such a hearing will automatically be open to the public.

Respectfully,

Alfred G. Osterweil



# Schoharie County Sheriff's Office

JOHN BATES, JR.
SHERIFF

(518) 295-7066

WILLIAM A. SLATER
UNDERSHERIFF

157 DEPOT LANE
P.O. BOX 689
SCHOHARIE, NY 12157
FAX (518) 295-7094

CIVIL (518) 295-7080
(518) 296-8888
RECORDS (518) 295-7072
JAIL (518) 295-7071
DEPUTIES (518) 295-7076
DARE (518) 295-7098
NON-EMERGENCY (518) 295-8114
EMERGENCY 911

Civil 295-7080

Mr. Osterweil:                                    June 24, 2008

## REGARDING YOUR PISTOL PERMIT APPLICATION

(  )  Application not signed or notarized.

(  )  Some arrests or convictions not listed or incorrect.

(  )  Reference sheet not notarized or signed.

(  )  Some reference sheets indicate you may not be a full
      time resident of Schoharie County - Explain.

(  )  In reference to your pistol permit application, the
      D.C.J.S. has rejected the original fingerprint card.
      It will be necessary for you to come in to the office
      to be reprinted.  Also ask the deputy to reprint you
      on an F.B.I. card.

(  )  In reference to your pistol permit application, the
      F.B.I. has rejected the original fingerprint card.  It
      will be necessary for you to come in to the office to
      be reprinted.

(  )  There is no additional charge for reprinting and it
      can be done any Wednesday evening between 6:30 PM and
      8:30 PM.  Please bring this letter with you so you
      get printed on the correct card.

(XX)  You may stop at the Sheriff's civil office Monday-
      Friday between 9 AM and 4 PM.

(XX)  Other:  Please stop at the Sheriff's civil office to
      complete and/or correct some information on your permit
      application.  A "premises" permit is only valid inside
      the residence for which you have applied.  The
      application needs to be changed to "carry concealed".
      Also "race" information is missing on one copy of the
      application.

John Bates, Jr., Sheriff
157 Depot Lane
PO Box 689
schoharie, NY 12157



Dear Sir,

With reference to your letter of June 24, 2008, a copy of which I have enclosed, I have a few questions.
Since I applied for a pistol permit, I purchased a home in another state. My intention is to to make that state my
primary residence while I still intend to have a vacation property here in Schoharie County. Under those
circumstance, am I still eligible for a permit. I note that the application itself does not appear to require that
Schoharie County be my principal residence or domicile.
Obviously, if my move to another state rules out a pistol permit, there is no sense in correcting the application.
Thank you for your attention to this matter.

Alfred G Osterweil
310 Rossman Fly Road
POB 173
Summit NY 12175

*C*

Alfred G. Osterweil
P.O. Box 173
Summit, New York  12175

July 10, 2008

The Honorable George R. Bartlett, III
P.O. Box 429
Schoharie, New York  12157

### Re:  Handgun License

Dear Sir:

Some months ago, I filed for a license to purchase and hold a handgun.  At that time I had been a full-time resident of Summit.  Shortly thereafter, it became expedient for me to change my primary residence and to become domiciled in another state.  When the Sheriff wrote to me with respect to a minor issue on my application, I took it upon myself to be entirely forthright and to advise him of the change in my status.  Thereafter, Sheriff Bates called me to discuss the issue.  He was most courteous and professional and suggested that there might be a problem because the State has been taking the position that an applicant must have his primary residence in New York.  I intend to continue to own a home in New York as I do now; however, I intend to vote and obtain a driver's license in that other state.  I will utilize this Summit home as a summer home, spending the great majority of the year outside New York.

I have read the Heller case, which was decided shortly after I wrote to Sheriff Bates advising him of my projected move to another state.  That case was quite clear, it seems to me, stating that the Second Amendment was adopted to permit all citizens to own and bear arms to protect them in their homes.  The case never uses the term "residence", "principal residence", "domicile", or similar designation.  Justice Scalia referred to one's "home" throughout the majority opinion.  If the amendment was meant to permit me to protect myself in my home, is it not logical to assume that I have the same right in a second home?  Indeed, the founding fathers came to Philadelphia from all the thirteen states where they had their primary residences but stayed and lived in Philadelphia for long periods of time in a "second

home". They did not choose to limit the scope of the amendment to domicile, primary residences, and the like.

In the event the Court holds the same view as does Sheriff Bates and denies my application, I believe the issue is sufficiently significant for me to pursue the matter with vigor. While I am not admitted to practice law in New York, I am admitted to practice in New Jersey, the District of Columbia, the Third Circuit Court of Appeals and the United States Supreme Court. I am prepared to appear *pro se* to see this matter concluded as a natural extension of the Heller case.

Should the Court wish to establish a record, I would be very happy to appear before the Court at any time the Court feels it convenient. If the Court wishes to have me provide an affidavit to frame the issue, I would be happy to provide same. In short, I would hope that the Court will deal expeditiously with the issue before it with the knowledge that I will cooperate fully to meet any and all directives of the Court.

Respectfully yours,


Alfred G. Osterweil

Copy to Sheriff Bates



**COUNTY COURT OF THE STATE OF NEW YORK**
COUNTY OF SCHOHARIE
THE COURTHOUSE - 290 MAIN STREET
P.O. BOX 669
SCHOHARIE, NEW YORK 12157
TEL: (518) 295-8342
FAX: (518) 295-7226



GEORGE R. BARTLETT III
COUNTY COURT JUDGE
WILLIAM J. MINKEL
COURT ATTORNEY

F. CHRISTIAN SPIES
CHIEF CLERK

February 20, 2009

Mr. Alfred G. Osterweil
310 Rossman Fly Road
Summit, New York 12175

      Re:   Pistol Permit Application

Dear Mr. Osterweil:

      I met with Sheriff Bates on February 3, 2009 concerning various issues; and during that meeting, he indicated he had legal questions regarding your pistol permit application that he felt should be addressed by the Court prior to his office further processing your application. Accordingly, in order to avoid any ex parte discussions, I asked the Sheriff to forward your paperwork to me so that I could review your application and ascertain the issues involved with your permit application.

      I have reviewed your file and it appears to me that there are two threshold issues. One being that the FBI has rejected your fingerprints twice due to the fact that the "quality of characteristics is too low to be used." Moreover, it appears that New York State DCJS was also unable to utilize your fingerprints in their record's check. There is also a note in your file, apparently from the Deputy who took your prints, indicating concern about the FBI being able to read your prints as, in his opinion, you did not have "prints to speak of. They are very worn."

      Penal Law §400 requires an FBI fingerprint and NYS DCJS search prior to the issuance of a pistol permit, but does allow the issuing authority some discretion with respect to this requirement. As the failure to be able to read your prints is certainly not under your control, I would entertain a request to waive this requirement.

The second issue seems to be that you are not or will not be a resident of the State of New York. In this regard, New York Law has regularly held that pistol permits should be issued to residents only[1] (see, Mahoney v. Lewis, 199 A.D. 2d 734). However, I acknowledge your correspondence which sets forth your intention to maintain a second home in Schoharie County and certainly appreciate the fact that, as such, you will pay real estate taxes upon that property.

At this juncture, I would like to schedule an appearance in Court where you or your attorney can present any arguments in support of your application. In particular, I would be interested in your supplying any legal precedent supporting your position with regard to residency and in support of a fingerprint check waiver. Moreover, I would like the Sheriff to be present to explain the fingerprint situation and answer any questions you or your attorney may have.

I have, accordingly, scheduled this matter for an appearance on **Tuesday, March 24, 2009 at 1:30 p.m.** If you or your attorney wish to submit written, legal arguments prior to this date, please feel free to submit same. Also, should you wish to review your file, please call Kathy in my office to arrange for a convenient time to do so. Finally, if the date set for an appearance is not convenient for you, please call my office to reschedule.

Very truly yours,

GEORGE R. BARTLETT, III

GRB/klp

c:     Sheriff John S. Bates, Jr.
       F. Christian Spies, Chief Clerk

---

[1] In Mahoney v. Lewis, id. at p. 735 it was held that the "term residence [as used in Penal Law §400] is equivalent to domicile and requires something more than mere ownership of land."



## AFFIDAVIT

I, Alfred G. Osterweil, of 310 Rossman Fly Road, Summit, New York do hereby swear to the following statements as true to the best of my knowledge and belief and I acknowledge that I may be punished for contempt and convicted of other offenses if any of said statements are false:

1. I was born in Newark New Jersey,
2. I received a Bachelor of Arts degree from Rutgers University.
3. I received a Juris Doctor degree from Rutgers University School of Law
4. I was inducted into the Army of the United States and trained at Fort Dix, New Jersey
5. As part of that training I was qualified with trhe M1 Garand and won medals as a marksman and sharpshooter with it
6. I was also qualified with the 30 caliber air cooled machine gun, the 30 caliber water cooled machine gun, the Browning Automatic Rifle and the standard army 45 caliber sidearm.
7. I thereafter was shipped to Germany where I served in an elite group of 136 men scattered throughout Germany
8. That unit, The 66th Counter Intelligence Group required a security clearance several levels above top secret.
9. As a result I was fingerprinted and underwent a background check by the FBI which included interviews with my instructors from law school back to elementary school, a check with friends and associates, a review of all books in my home and even an interview with my dentist and family physician.
10. While in Germany I was in civilian clothes rather than uniform, I did not sleep nor eat in a military facility nor did I report to a military supervisor. I was authorized and did carry a 45 caliber sidearm.
11. Upon discharge, I commenced the practice of law which I followed until my retirement in 1998 in Edgewater New Jersey'.
12. I was admitted to practice and did appear in all courts in New Jersey, the District Court for the District of New Jersey and the 3rd Circuit Court of Appeals In Philadelphia. On motion, I argued before the New York Supreme Court at 10 Center Street, Manhattan. I never appeared before the courts in the District of Columbia nor the U.S.Supreme Court although I am admitted to practice in each of them.
13. For the last thirty or so years of practice I represented police organizations almost solely, Included in the one hundred or so organizations I represented were the police employed by the Port Authority of New York and New Jersey. As such I was privy to various anti-terror plans established at Kennedy International Airport, La Guardia Airport and Newark International Airport
14. I received an honorable discharge from the US Army and I was never the subject of discipline as an attorney.
15. I was never convicted of any crime, be it felony or misdemeanor nor have I ever been arrested
16. I have never been treated for any type of mental illness
17. I am not addicted nor have I ever been addicted to any drug or substance including alcohol
18. I am married with an adult daughter and two grandsons.

19. I have two homes in Summit, New York and two homes in Many, Louisiana, I consider all of them my home and I rent out none of them

20. I have purchased guns in the past and have always been cleared to do so without any delay by the ATF. My most recent purchase which was within the past 30 days was a 22 caliber rifle

3/4/09

Alfred G. Osterweil

This is to certify that the Affiant, Alfred G. Osterweil,
did appear before me and swear to the truthfulness of the statements made therein.

3/4/09

Cynthia A. Rollenhagen
Attorney-at-Law
State of New Jersey

## **AFFIDAVIT**

I, Alfred G. Osterweil, of 310 Rossman Fly Road, Summit, New York do hereby swear to the following statements as true to the best of my knowledge and belief and I acknowledge that I may be punished for contempt and convicted of other offenses if any of said statements are false:

1. I was born in Newark New Jersey,
2. I received a Bachelor of Arts degree from Rutgers University.
3. I received a Juris Doctor degree from Rutgers University School of Law
4. I was inducted into the Army of the United States and trained at Fort Dix, New Jersey
5. As part of that training I was qualified with trhe M1 Garand and won medals as a marksman and sharpshooter with it
6. I was also qualified with the 30 caliber air cooled machine gun, the 30 caliber water cooled machine gun, the Browning Automatic Rifle and the standard army 45 caliber sidearm.
7. I thereafter was shipped to Germany where I served in an elite group of 136 men scattered throughout Germany
8. That unit, The 66th Counter Intelligence Group required a security clearance several levels above top secret.
9. As a result I was fingerprinted and underwent a background check by the FBI which included interviews with my instructors from law school back to elementary school, a check with friends and associates, a review of all books in my home and even an interview with my dentist and family physician.
10. While in Germany I was in civilian clothes rather than uniform, I did not sleep nor eat in a military facility nor did I report to a military supervisor. I was authorized and did carry a 45 caliber sidearm.
11. Upon discharge, I commenced the practice of law which I followed until my retirement in 1998 in Edgewater New Jersey'.
12. I was admitted to practice and did appear in all courts in New Jersey, the District Court for the District of New Jersey and the 3rd Circuit Court of Appeals In Philadelphia. On motion, I argued before the New York Supreme Court at 10 Center Street, Manhattan. I never appeared before the courts in the District of Columbia nor the U.S.Supreme Court although I am admitted to practice in each of them.
13. For the last thirty or so years of practice I represented police organizations almost solely, Included in the one hundred or so organizations I represented were the police employed by the Port Authority of New York and New Jersey. As such I was privy to various anti-terror plans established at Kennedy International Airport, La Guardia Airport and Newark International Airport
14. I received an honorable discharge from the US Army and I was never the subject of discipline as an attorney.
15. I was never convicted of any crime, be it felony or misdemeanor nor have I ever been arrested
16. I have never been treated for any type of mental illness
17. I am not addicted nor have I ever been addicted to any drug or substance including alcohol
18. I am married with an adult daughter and two grandsons.

19. I have two homes in Summit, New York and two homes in Many, Louisiana, I consider all of them my home and I rent out none of them

20. I have purchased guns in the past and have always been cleared to do so without any delay by the ATF. My most recent purchase which was within the past 30 days was a 22 caliber rifle

3/4/09

Alfred G. Osterweil

This is to certify that the Affiant, Alfred G. Osterweil, did appear before me and swear to the truthfulness of the statements made therein.

3/4/09

Cynthia A. Rollenhagen
Attorney-at-Law
State of New Jersey

# Supplemental Affidavit

I, Alfred G. Osterweil,of 310 Rossman Fly Road,Summit, New York,do hereby swear to the following statements as true to the best of my knowledge and belief and I acknowledge that I may be punished for contempt and convicted of other offenses if any of said statements are false:

    1.I recently had the opportunity to review the dealer's copy of the federal Firearms Transaction Record associated with a transaction in which I purchased a Heritage Arms, 22 caliber Rough Rider model revolver, serial number F54528.

    2 This is the official form  all licensed gun dealers must complete for any such transaction, and it was created to comply with the Brady Handgun Violence Protection Act of 1993(Brady Act),

    3 I was required to provide certain personal information and answer all questions  which appeared on this Form 4473 which is issued pursuant to 18 USC Sec 921 *et.seq*.

    4 The dealer must then communicate with the FBI for a so-called NICS background check.

    5 The FBI was contacted and a background check was performed. The document reveals that the NICS transaction number is 1BCZ-WG5, the name and Brady identification number are Christi and 4371, respectively.

    6 I paid for and received the revolver. Thus, it is incontrovertible  that I received a favorable background check from the FBI on February 13, 2009, the date of the transaction.

                                                     3/4/09

                Alfred G. Osterweil

This to certify that the Affiant, Alfred G. Osterweil,
did appear before me and swear to the truthfulness of the statements made therein.

    Cynthia A. Rollenhagen   3/4/09

Cynthia A. Rollenhagen
Attorney-at-Law
State of New Jersey

Exhibit 14

Exhibit 14



**Alfred G Osterweil**
P. O. Box  173
Summit, New York 12173
March 4, 2009

The Honorable George R. Bartlett,III
Schoharie County Courthouse
Schoharie, New York, 12157

Re: Pistol Permit Application

Dear Judge Bartlett,

Having already mailed a letter to you with enclosures, including an affidavit, kindly add to that submission this letter and the enclosed Supplemental  Affidavit which certainly bears rather strongly on the issue you raised with respect to an FBI check.

I submit that the fact that I successfully underwent a background check by the FBI on February 13, 2009, makes moot any possible issue about poor quality fingerprints prior thereto.

Respectfully,

Alfred G.terweil

# Supplemental Affidavit

I, Alfred G. Osterweil,of 310 Rossman Fly Road,Summit, New York,do hereby swear to the following statements as true to the best of my knowledge and belief and I acknowledge that I may be punished for contempt and convicted of other offenses if any of said statements are false:

1. I recently had the opportunity to review the dealer's copy of the federal Firearms Transaction Record associated with a transaction in which I purchased a Heritage Arms, 22 caliber Rough Rider model revolver, serial number F54528.
2. This is the official form all licensed gun dealers must complete for any such transaction, and it was created to comply with the Brady Handgun Violence Protection Act of 1993(Brady Act),
3. I was required to provide certain personal information and answer all questions which appeared on this Form 4473 which is issued pursuant to 18 USC Sec 921 *et.seq.*
4. The dealer must then communicate with the FBI for a so-called NICS background check.
5. The FBI was contacted and a background check was performed. The document reveals that the NICS transaction number is 1BCZ-WG5, the name and Brady identification number are Christi and 4371, respectively.
6. I paid for and received the revolver. Thus, it is incontrovertible that I received a favorable background check from the FBI on February 13, 2009, the date of the transaction.

3/4/09

Alfred G. Osterweil

This to certify that the Affiant, Alfred G. Osterweil,
did appear before me and swear to the truthfulness of the statements made therein.

3/4/09

Cynthia A. Rollenhagen
Attorney-at-Law
State of New Jersey

Exhibit 15



STATE OF NEW YORK
UNIFIED COURT SYSTEM
SCHOHARIE COUNTY COURT
THE COURTHOUSE PO BOX 669
SCHOHARIE, NEW YORK 12157
(518) 295-8342
FAX 295-7226

GEORGE R. BARTLETT, III

COUNTY JUDGE

March 13, 2009

Mr. Alfred G. Osterweil
P.O. Box 173
Summit, New York 12175

     Re:   Pistol Permit Application

Dear Mr. Osterweil:

     This will acknowledge receipt of your letter dated March 3, 2009 and two letters dated March 4, 2009. I will attempt to answer your letters as best I can at this preliminary juncture.

     Pursuant to your request, the Court date scheduled for March 24, 2009 is cancelled.

     It was not my intention in my letter of February 20, 2009 to <u>order</u> you to attend a "plenary hearing" nor to preclude you from challenging any decision that you may disagree with as you seem to suggest in one of your letters of March 4, 2009. Pursuant to common practice, and in fulfillment of my duties as licensing officer, I was merely trying to afford you an opportunity to, personally or through an attorney, present any facts and/or arguments you wished directly to the Court. Moreover, such an appearance would give you a full opportunity to set forth any facts you wished to present regarding your nexus to Schoharie County, New York, or to present other potentially pertinent facts concerning your application.

     In any event, if you do not wish to appear before the Court, I will certainly not require your attendance at this time.

Page 2

Accordingly, please advise the Court as to whether you would like me to reschedule the March 24, 2009 appearance, which you previously advised that you cannot attend, or whether you do not wish appear at all.

In answer to your concern about a hearing precluding your right to seek review of the Court's decision should it deny your application, I would suggest you consult with an attorney familiar with Article 78 proceedings[1] or any analogous federal challenges.

Next, I will attempt to address your concern about the fact that although your application was filed on May 21, 2008, you do not have a decision as yet. In this regard, I direct your attention to Article 400 of the New York State Penal Law. Penal Law §400.00 requires that prior to the issuance of a license, "the duly constituted police authorities of the locality where such application is made" (here the Schoharie County Sheriff) conduct an investigation. There are certain statutory requirements entailed in this investigation, including a fingerprint check by FBI and search by DCJS. It is my understanding that the Sheriff has not been able to complete his investigation, as he has been unable to obtain proper searches as your fingerprints have, to date, not been of sufficient quality to allow for completion of these checks.

I realize your frustrations and that this is not your fault. However, it is not the Sheriff's fault either. It simply remains an issue that prevents the completion of the necessary investigation.

For your information, at the time the NYS Legislature inserted the requirement of an FBI fingerprint check, the FBI did not honor requests for fingerprint search checks for pistol permit applications. Accordingly, in 1971, the Legislature amended Penal Law §400.00(4) to provide that the FBI's failure to run a fingerprint check shall not constitute the sole basis of a refusal to issue a permit (see, 39 _McKinney's Consolidated Laws of New York, Practice Commentary by William C. Donnino, Penal Law §400.00 at pp. 68-69.)_ Subsequently, the FBI started honoring requests for fingerprint checks.[2]

---

[1]. See, NY Civil Practice Law and Rules (CPLR) §§ 7801 et. seq.

[2]Please note that, although the statute provides no exceptions to fingerprint search requirements in order to accommodate the fact the FBI may not perform a search, the Court may not deny an application solely because the FBI did not provide a check. In order to allow you to provide fingerprints, I will request the Sheriff to see if he can utilize any different methods; and, in this regard, will forward him the literature you sent to me. Also, it is my understanding that

Page 3

## Conclusion

Rather than trouble you with the time and expense having your fingerprints retaken and resubmitted, without knowing an answer to your eligibility issue as a nonresident property owner, you may wish the eligibility issue be decided first. That way, if it is determined that you are not eligible, you need not to go to the additional trouble and expense of being re-fingerprinted. If, however, the Court determines that you are eligible for a permit, even though you are not a resident, you would need to resubmit your fingerprints to allow the Sheriff to complete his investigation. If you disagree with this process and wish to have the fingerprint process finished first, please advise on or before April 15, 2009.

Please advise on or before **April 15, 2009** whether you wish to appear before the Court. If you wish to appear, please plan to submit any supporting documentation or written arguments at or prior to that time. If you wish to waive an appearance, please advise the Court as soon as possible and submit any further written arguments on or before April 15, 2009, including, at a minimum, an affidavit or affirmation setting forth the facts as to your residence and your nexus with Schoharie County, New York. I note that you have submitted an affidavit dated March 4, 2009 and appreciate receiving the information contained therein. However if you do decide to appear, I would still request you to submit an affidavit or affirmation prior to your appearance detailing your residence status.

Thank you very much for your attention to this matter, and your efforts to properly frame the issue.

Date: March 13, 2009
      Schoharie, New York

Very truly yours,

GEORGE R. BARTLETT, III

GRB/klp

c:    Sheriff John S. Bates, Jr. (w/literature)

---

there has been some success in restoring fingerprints through treatment by a dermatologist or by the use of protective gloves until ridges grow back.

Exhibit 16

Exhibit 16

**ALFRED G. OSTERWEIL**
P.O. Box 173
Summit, New York, 12175



Dear Judge Bartlett,

I received your your letter dated March 13, 2009, and wish to respond to several of the positions you have set forth..

You now state that the reason for not complying with the requirement that a decision on the application must be reached within six months or the applicant be given reasons for non-compliance was the fact that "the Sheriff has not been able to obtain proper searches as your fingerprints have, to date, bot been of sufficient quality to allow for completion of these checks."

First, the statute requires the licensing officer to specifically state in writing the reasons for any delay and such delay may only be for good cause. I am sure you will acknowledge that I received no such notice from the licensing officer.

Additionally, you yourself, in your letter to me dated February 20, said that section 400 of the Penal Law " requires an FBI fingerprint and NYS DCJS search prior to the issuance of a pistol permit, but does allow the issuing authority some discretion with respect to this requirement. As the failure to be able to read your prints is certainly not under your control, I would entertain a request to waive this requirement."

I find it somewhat disquieting that you are now stating that the fingerprinting is a necessity and cannot or will not be waived.

Further you provide a bit of legislative history, presumably to bolster this new position you have enunciated where fingerprinting is apparently now essential. More specifically, "...at the time the NYS Legislature inserted the requirement of an FBI fingerprint check, the FBI did not honor requests for fingerprint search checks for pistol permit applications. Accordingly, in 1971 the Legislature amended Penal Law...400.00(4) to provide that the FBI's failure to run a fingerprint check shall not constitute the sole basis of a refusal to issue a permit.....Subsequently, the FBI started honoring requests for fingerprint checks." May I respectfully point out that once the FBI started honoring these requests for fingerprint checks, the Legislature could have easily removed the language which to this day says that a failure by the FBI to return the check was not by itself grounds for refusal to grant a permit. Indeed, by keeping the language after the FBI commenced honoring requests, we should interpret that refusal by the legislature to modify the language as its strong intent to require more than a lack of an FBI check to deny an application.

You refer obliquely to the fact that I forwarded to you an article dealing with difficult fingerprinting situations and methods commonly used to create workable prints This was from an FBI site, and I stated that none of the techniques suggested by the FBI were utilized with me. How ironic it is that you

are now suggesting that the Sheriff utilize those methods when I am once more fingerprinted.

I now refer to a sentence in your "Conclusion" which appears quite ominous and, I respectfully submit, inappropriate.. That sentence reads as follows: "If however, the Court determines that you are eligible for a permit even though you are not a resident,you would need to resubmit your fingerprints to allow the Sheriff to complete his investigation."

In this sentence, you once more elevate an FBI fingerprint report as being essential before any permit can be issued, contrary to my view of the statute and your own analysis. To me this represents a complete about face from your earlier position and I am having great difficulty in understanding how or why such diametrically opposing positions can exist or be compatible.

My position is that the Sheriff has done his investigation by contacting the references I named, all of whom have responded and by fingerprinting me on two separate occasions. That the fingerprints were not adequate has been dealt with by me, and until this recent letter of yours, appeared inconsequential. Beyond that the Sheriff is not the licensing official, and he is not charged with deciding what investigation is sufficient. That you may utilize his services does not make his judgment critical in this matter. I presume that he does those ministerial acts which you request of him. I do not believe that he is vested with any statutory decision making powers, and I do not believe that your powers are delegable to him or any other person.

Additionally, you state that I am "not a resident," I believe I am a resident of Schoharie County although I am domiciled elsewhere. Beyond that you seem to be prejudging this matter on the basis of residence, not withstanding the Supreme Court's reference to one's home as being the determinative factor for gun ownership.

With respect to testimony or affidavits, you will recall that I offered to appear before you to provide you with all the information you might need by letter of July 10, 2008, to which you never responded. That was long before six months elapsed. Thereafter, I provided you with two affidavits although your letter refers to a single affidavit. Perhaps that second affidavit was misplaced. In any event I will provide you with additional copies of both prior affidavits as well as a third affidavit with this letter. Frankly, I do not see the necessity of any proofs demonstrating my "nexus to Schoharie County." I recall that you relied on a state court decision, Mahoney v. Lewis, which in your view defined the term residence as more than mere ownership of land for the purpose of the penal code. While I believe I meet the definition as enunciated by that case, even if I do not, I submit that the Heller case trumps any existing law in conflict with it. As I have repeatedly maintained, I believe you should focus on whether I reside in a place that meets the definition of home, the word used repeatedly by the Supreme Court

I make no requests. If you ask something of me, I shall comply. In any event, I cannot be available and present in Schoharie County prior to April 15, 2009. Based upon the indications in your letter, you will bifurcate my application and first determine if I am otherwise entitled to a pistol permit, and if you so find, you will thereafter require another attempt to fingerprint me. While I do not believe such fingerprinting is necessary, in order to speed this process up, I will consent to be re-fingerprinted if you decide the eligibility issue favorably to me.

You suggested that I familiarize myself with Article 78 Proceedings. I have participated in such a hearing in New York, and in other jurisdictions where it is referred to as an Action In Lieu Of

Prerogative Writ. In such actions a Pettitioner seeks relief from an administrative ruling on the grounds that it is arbitrary and capricious. There is a heavy burden on the Petitioner and deference is given to the agency. Rather than take that route and stay within the state Ccourt system in Schoharie County, I believe a more direct method of challenging your ruling would be to go directly to the U.S. District Court by filing an action pursuant to 42 USC: Section 1983. In order to save your law clerk a few steps, I am enclosing a copy of the referenced statute.

What is interesting in this matter is that I, as an officer of the court and an honest citizen, chose to voluntarily advise the sheriff that I was changing my domicile, without which information my application would probably have sped through. I do not regret my forthrightness nor do I expect any accolades for doing what is right.

On the other hand, I am deeply disappointed in a system where honest citizens are put through a painstaking process in which government officials are virtually dedicated to denying them rights guaranteed them by the Constitution. We seem to have lost sight of the fact that the Second Amendment was enacted to protect these citizens from those very same government officials who have erected the barriers to the exercise of their constitutional rights.

Respectfully,

Alfred G. Osterweil

3/19/09

**Sec. 1983. – Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia

## AFFIDAVIT

I,Alfred G. Osterweil,of 310 Rossman Fly Road, Summit, New York do hereby swear to the following statements as true to the best of my knowledge and belief and I acknowledge that I may be punished for contempt and convicted of other offenses if any of said statements are false.

1. This third affidavit is provided to Judge Bartlett consistent with his letter dated March 13, 2009.
2. I incorporate by reference herein, any statement of fact I made in any correspondence to Judge Bartlett, and swear to those statements as being true.
3. Title to my home located at 310 Rossman Fly Road was closed on April 1, 2003.
4. From that time to today, my wife and I have played and continue to play a role in town affairs and we continue to participate in all social, political and community affairs.
5. We continue to be members in and pay dues to the Summit Snowriders, a social group dedicated to the outdoors and snowmobiling.
6. We continue to be members in and pay dues to the Summit Conservation Club, a group dedicated to the preservation of the environment.
7. I was a commissioner on the Summit Fire District Board of Commissioners but chose not to run for reelection after receiving a legal opinion that I had to be a registered voter to hold this office.
8. I was an unpaid member of the Board of Directors of Western Catskills Revitalization Corporation, a not for profit entity that distributes grants and services to needy applicants in Delaware and Schoharie Counties principally. I was compelled to leave because of a by-law which had certain attendance requirements I could not achieve.
9. My wife was a member of the Study Committee to create a new town master plan, and she participated for approximately three years up to its completion. While I was not named to that committee, I would attend many of its meetings to add such comments and give as much input as I could based on my experiences with other master plan committees.
10. My wife was also appointed to the Summit Town Planning board, and she attended regularly until she received a legal opinion that she had to be a registered voter to continue to serve.
11. Even after we had purchased a home in another state, we continued to be involved in local matters, attending town board and other town meetings.
12. With respect to the Summit Fire Department, I have a close relationship with the former and present Chiefs, and I continue to monitor current fire department matters even when I am not in town, by phone and e-mail.
13. On or about June, 2007, we purchased a home located at 159 Eagle Mountain Road, Summit, New York. Even after we had decided to purchase a home in another state, we had a garage/barn built on the Eagle Mountain property at a cost in excess of 30,000 dollars. That work was completed on or about June,2008.
14. We continue to rent a mail box in Summit, New York,
15. We do not rent out either property nor have we put either of them up for sale.
16. We have many friends in Summit and we continuer to be in contact with them, This includes all

the references I supplied to the Sheriff on my application.

17. I am on a first name basis with the Town Supervisor, the members of the Town Board and the members of the Planning Board.

18. My wife continues to be a member of a church in Jefferson, Schoharie County,thus tithing and otherwise contributing to the church and the Schoharie County community.

19. I am on a first name basis with her Pastor and have contributed funds to many local charitable causes administered by the Pastor.

20. I remain a taxpayer of not inconsiderable sums, and I will continue to oversee my local and county governments to ensure a reasonable basis for any increases.

21. I purchased a home in another state for health reasons, an attempt to avoid the severe winters we have and other reasons personal to us.

22. I have attached to this affidavit a copy of the letter I faxed to Judge Bartlett with respect to the FBI site dealing with fingerprinting

23. During this past winter, while we were in warmer climes, my daughter had occasion to live in our home at 310 Rossman Fly Road.

24. My brother-in-law and my sister-in- law reside in their home on Lang Road, Summit, New York.

25. My mother-in-law resides in Summit, New York, and due to her age and infirmities, requires assistence provided regularly by Summit home care personnel.

26. With respect to the issue of "monitoring" I can be monitored quite adequately as compared to a gun owner in a county of a million or more people as is the case in other counties even assuming monitoring is a valid consideration in view of the Supreme Court ruling in the Heller case...

3/19/09

Alfred G. Osterweil

This to certify that the Affiant, Alfred G. Osterweil,
did appear before me and swear to the truthfulness of the statements made therein.

3/19/09

Cynthia K. Rollenhagen
An Attorney-at-Law
State of New Jersey

. .

Alfred G. Osterweil
P. O. Box 173
Summit New York 12175
March 3, 2009


Re: Pistol Permit


Dear Judge Bartlett

I will be sending you a package of materials with respect to my application, but I thought you might want to visit the FBI site with respect to fingerprinting, steps to take, the issue of worn fingerprints and other matters related to the fingerprinting done by sheriff's deputies..

None of the special steps suggested in the FBI article which is attached to this FAX were utilized when I was fingerprinted.

Respectfully,


Alfred G Osterweil.

Enclosures 12

By FAX to 518 295-7226

Exhibit 17

Exhibit 17



**COUNTY COURT OF THE STATE OF NEW YORK**
**COUNTY OF SCHOHARIE**
PO BOX 669
SCHOHARIE, NEW YORK 12157
(518) 295-8383 : FAX 295-8451

GEORGE R. BARTLETT III
JUDGE

April 10, 2009

Mr. Alfred G. Osterweil
192 Lawson Lane
Many, Louisiana 71449

    -and-                      Re: Pistol Permit Application

Mr. Alfred G. Osterweil
P.O. Box 173
Summit, NY 12175

Dear Mr. Osterweil:

       This will acknowledge you letter and affidavit dated March 19, 2009.

       To avoid any potential confusion or misunderstanding, you are not required to personally appear in Court on <u>April 15, 2009</u>, or at any other time. If you would like to appear in the future to be heard on your application, please advise the Court at your earliest convenience and I will schedule your appearance for a mutually convenient date.

       If I do not hear from you by <u>April 24, 2009</u>, I will assume that you have waived your right to a personal appearance, deem your application to be fully submitted and then proceed to determine it.

       Thank you.

Date: April *10*, 2009
      Schoharie, New York

Very truly yours,

George R. Bartlett III, J.C.C.

Papers considered:

Exhibit 18

**Alfred G. Osterweil**
310 Rossman Fly Road, Summit, NY 12175
195 Lawson Lane, Many, La. 71449
April 13, 2009



Judge George R. Bartlett lll
Schoharie County Courthouse
Schoharie, N.Y. 12157

Dear Judge Bartlett:

I received your letter dated April 10, 2009, on this date.

I previously indicated that I could not be present on April 15 to appear in your court. I also indicated that it was not my original intent to request such an appearance as the statute does not appear to have any procedure for the presentation of witnesses, cross examination of witnesses or the right to subpoena witnesses or physical evidence.

Quite frankly, it seems to me to be a simple question of whether you will follow the mandate of the U. S. Supreme Court and rule that I have an absolute right to possess a gun in each of my homes, barring any personal disqualification such as a criminal record, mental instability or the like.

When I first wrote to you shortly after the Heller case was decided, and offered to appear personally, I did so to provide you with any background information you might need to feel comfortable, knowing that this application might represent a departure from the traditional view I understand you have held. Since then, I have provided you with a plethora of information, all under oath, some of which you requested.

I believe that I have set forth all the information that might be relevant to my application, thus negating any need for me to appear personally, assuming, *arguendo,* that such personal appearances are contemplated by the statute.

However, because I believe so strongly in this cause, and I do not wish to leave any stone unturned in the prosecution of this matter, I will appear before you if you request me to do so for any reason you may have.

I expect to be in Summit commencing on or about June 15, 2009, and will be available to appear at your convenience thereafter.

Respectfully,

Alfred G. Osterweil

Exhibit 19



**GEORGE R. BARTLETT III**
COUNTY COURT JUDGE
WILLIAM J. MINKEL
COURT ATTORNEY

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF SCHOHARIE
THE COURTHOUSE - 290 MAIN STREET
P.O. BOX 669
SCHOHARIE, NEW YORK 12157
TEL: (518) 295-8342
FAX: (518) 295-7226

F. CHRISTIAN SPIES
CHIEF CLERK

May 1, 2009

Mr. Alfred G. Osterweil
195 Lawson Lane
Many, Louisiana 71449
     - and -
P.O. Box 173
Summit, New York 12175

  Re: Pistol Permit Application

Dear Mr. Osterweil:

  This will acknowledge receipt of your letter dated April 13, 2009 in response to the Court's letter of April 10, 2009.

  It appears from this correspondence that you do not wish to submit any further information or personally appear in support of your application.

  Accordingly, unless I hear from you to the contrary on or before **May 15, 2009**, I will consider your application fully submitted and will proceed to determine it.

      Very truly yours,

      GEORGE R. BARTLETT, III

GRB/klp

Exhibit 20



Alfred G. Osterweil
310 Rossman Fly Road, Summit N.Y. 12175
197 Lawson Lane, Many La. 71449,
May 6, 2009

Hon. George R. Bartlett lll

Dear Sir,

I have your most recent lettter dated May 1, 2009, and I wish to place a different interpretation on my
prior correspndence from what you apparently gleaned.

I hoped to convey to you the thought that if you wanted any information which you believe is necessary
for you to finally make a decision in this long standing application, I would cooperate fully. Thus, if
you wished to meet with me personally, or have me submit additional information, I would comply,
irrespective of my own view that you probably have more information about me than you have on any
100 or more applicants, cumulatively.To phrase it differently, while I am not requesting an opprtunity to
appear or provide additional information or legal argument, I will not raise any legal or other issue if
you, as the issuing official, feel you need anything, even after close to a year of the pendency of this
application.I will comply fully.

While the doctrine of "justice delayed is justice denied" is a favorite axiom of mine, perhaps in this
case, the delay may have proved to be helpful.

On April 20, 2009, the Ninth Circuit Court of Appeals decided the case of Allen v King. If there is any
doubt in your mind about the impact of the Heller case on New York state law, I suggest that you
focus on the powerful language and logic of this case.

Respectfully,
Alfred G. Osterweil

`

Exhibit 21

COPY

At a term of County Court of the State of
New York, held in and for the County of
Schoharie, New York.

PRESENT:   HON. GEORGE R. BARTLETT, III
                                Judge

-----------------------------------------------------------------

In the Matter of

**DECISION/ORDER**

**Alfred G. Osterweil,**

                          Applicant

Pistol Permit Application

-----------------------------------------------------------------

## Background

By application dated May 16, 2008, Alfred G. Osterweil (applicant) applied for a

New York State Pistol Permit. In due course, the applicant submitted four references

dated June 30, 2008, July 1, 2008, July 14, 2008, respectively. After his initial review of

the application, by letter dated June 24, 2008, the Schoharie County Sheriff (Sheriff)

requested the applicant to come into the Sheriff's Office to "complete or correct" certain

information on the application.

By letter dated June 25, 2008, the applicant advised the Sheriff that "[s]ince I

applied for a pistol permit, I purchased a home in another state. My intention is to make

that state my primary residence while I still intend to have vacation property here in

Schoharie County. Under those circumstance [sic], am I still eligible for a permit. I note

1

that the application itself does not appear to require that the Schoharie County be my

principal residence or domicile . . ."

By memorandum dated July 8, 2008, the Sheriff forwarded the subject application

to this Court, advising that "[t]his incomplete application is being forwarded for review.

Also, enclosed is a letter dated June 25, 2008 from Mr. Osterweil detailing his current

residence plans. Please advise how you wish me to proceed with this application.

However, by note dated July 17, 2008, the Court's secretary returned the file to the

Sheriff at his request.

By letter to the Court dated July 10, 2008 *(received on July 16, 2008),* the

applicant advised that his reading of the recent United States Supreme Court's *Heller*

decision rendered New York's pistol permit residency requirement unconstitutional and,

thus, a nullity. As the Sheriff had previously requested the applicant's file be returned to

his office, the applicant's letter and file were so returned.

Thereafter, the FBI rejected applicant's fingerprint card. Accordingly, by letter

dated August 18, 2008, the Sheriff requested the applicant to be re-fingerprinted. This

was apparently completed; however, on September 6, 2008, the FBI rejected the prints a

second time, indicating that "the quality of the characteristics is too low to be used." In

addition, the fingerprint response from the New York State Division of Criminal Justice

Services (DCJS) advised the Sheriff that "Caution -Due to the Poor quality of the

fingerprint impressions received, DCJS is unable to determine whether the individual has

2

any other criminal record in New York State" *( see, rap sheet, produced July 13, 2008).*

By e-mail dated December 15, 2008, the applicant wrote the Sheriff inquiring as to the status of his application. The Sheriff e-mailed applicant that his fingerprints were rejected a second time and that "I am meeting with Judge Bartlett next week and will ask him if he will consider your application without the FBI check."

Thereafter, in early February 2009, applicant e-mailed the Sheriff, the Sheriff replied, and the applicant responded on February 2, 2009 as follows:

Applicant's e-mail of February 2, 2009:

> "Dear Sheriff Bates, I last received an E-mail from you on December 16, 2008. At that time you iondicated [sic] you were going to speak to Judge Bartlett, who would be acting not as a judge, but rather as a county's "issuing agent." I must insist on a response to my application forthwith. Dragging this out and denying me the right to gun ownership violates my rights as a US citizen under 42 USC 1983. I will not hesitate to seek damages and relief against the county and all lother [sic] persons who are in complicity in this matter.
> Very truly yours,
> Alfred G. Osterweil"

Sheriff's e-mail of February 3, 2009:

> "Mr. Osterweil,
>
> I met with Judge Bartlett on Tuesday, December 23, 2008 regarding other pistol permit matters. He was unable to address your application at that time. His secretary was asked by me to schedule an appointment to specifically discuss your application. I did not receive an appointment date until last week. I will now meet with Judge Bartlett on Friday, February 13, 2009. For your information, your fingerprints have been rejected for the second time by both the F.B.I. and NY State D.C.J.S. They will not process

3

another set of prints without an additional fee of $105.00. I intend to ask the Judge if there is any way to avoid this additional fee for you.

Sincerely,

Sheriff John S. Bates, Jr."

Applicant's e-mail of February 4, 2009:

"Dear Sheriff Bates
Thank you for your response of 2/03/09. It may be that I am simply not able to provide clear fingerprints. Does that mean that I am disqualified from gun ownership in New York? Your deputies noted that several fingers printed out clear;ly [sic] and only a few were difficult to read. If the FBI can locate felons with only one finger's print at a crime scene, they should be able to run my prints. Further, why should I be required to pay an additional fee and have the process linger on for several more months. Even the flawed NY statute indicates that the entire process must be completed within 6 months, irrespective of whether the prints come back from the FBI within that period of time. We are well beyond 6 months at this juncture.

The way my matter is being handled, it appears that every efort[sic] is being made to thwart my application for gun ownership. I suppose an illegal alien who lives in a tent in Schoharie as his only residence but whose fingerprints are clearer than mine would have been issued a permit within the prescribed 6 months. I pay enormous property taxes in Schoharie County on two residences, I served in the Armed Forces of the USA, I pay my income taxes, unlike some of our highest ranking governmental officials, and our own Supreme Court, my right to protect myself and my family in my two homes in Summit NY is being stymied. This is not the kind of country I grew up in and served.

I look forward to a speedy resolution of this matter.

Very truly yours,

Alfred G. Osterweil"

4

The Court met with the Sheriff on February 13, 2009.  Thereafter, by letter dated

February 18, 2009 the Sheriff advised applicant that his permit application was being

forwarded to the Court.  The Court wrote to the applicant on February 20, 2009 advising

that:

> "I met with Sheriff Bates on February 3, 2009 concerning various
> issues; and during that meeting, he indicated he had legal questions
> regarding your pistol permit application that he felt should be addressed by
> the Court prior to his office further processing your application.
> Accordingly, in order to avoid any ex parte discussions, I asked the Sheriff
> to forward your paperwork to me so that I could review your application
> and ascertain the issues involved with your permit application.
>
> I have reviewed your file and it appears to me that there are two
> threshold issues.  One being that the FBI has rejected your fingerprints
> twice due to the fact that the "quality of characteristics is too low to be used."
> Moreover, it appears that New York State DCJS was also unable to utilize
> your fingerprints in their record's check.  There is also a note in your file,
> apparently from the Deputy who took your prints, indicating concern about
> the FBI being able to read your prints as, in his opinion, you did not have
> "prints to speak of.  They are very worn."
>
> Penal Law §400.00 requires an FBI fingerprint and NYS DCJS
> search prior to the issuance of a pistol permit, but does allow the issuing
> authority some discretion with respect to this requirement.  As the failure to
> be able to read your prints is certainly not under your control, I would
> entertain a request to waive this requirement.
>
> The second issue seems to be that you are not or will not be a
> resident of the State of New York.  In this regard, New York Law has
> regularly held that pistol permits should be issued to residents only[1] (see,
> Mahoney v. Lewis, 199 AD 2d 734).  However, I acknowledge your
> correspondence which sets forth your intention to maintain a second home
> in Schoharie County and certainly appreciate the fact that, as such, you will
> pay real estate taxes upon that property.

---

[1]In Mahoney v. Lewis, id. at p. 735 it was held that the "term residence [as used in Penal Law §400.00] is
equivalent to domicile and requires something more than mere ownership of land."

At this juncture, I would like to schedule an appearance in Court where you or your attorney can present any arguments in support of your application. In particular, I would be interested in your supplying any legal precedent supporting your position with regard to residency and in support of a fingerprint check waiver. Moreover, I would like the Sheriff to be present to explain the fingerprint situation and answer any questions you or your attorney may have.

I have, accordingly, scheduled this matter for an appearance on **Tuesday, March 24, 2009 at 1:30 p.m.** If you or your attorney wish to submit written, legal arguments prior to this date, please feel free to submit same. Also, should you wish to review your file, please call Kathy in my office to arrange for a convenient time to do so. Finally, if the date set for an appearance is not convenient for you, please call my office to reschedule."

Penal Law §400.00 sets forth the criteria and procedure for obtaining a "pistol

permit" in New York State. In particular, Penal Law § 400.00 [4] and [4-a] provide,

inter alia, that:

4. Investigation. Before a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made. For that purpose, the records of the appropriate office of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. In order to ascertain any previous criminal record, the investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified. Two copies of such fingerprints shall be taken on standard fingerprint cards eight inches square, and one copy may be taken on a card supplied for that purpose by the federal bureau of investigation . . . When completed, one standard card shall be forwarded to and retained by the division of criminal justice services in the executive department, at Albany. A search of the files of such division and written notification of the results

6

of the search to the investigating officer shall be made without unnecessary delay. Thereafter, such division shall notify the licensing officer and the executive department, division of sate police, Albany, of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card, or the one supplied by the federal bureau of investigation, as the case may be, shall be forwarded to the bureau at Washington with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority. The failure or refusal of the federal bureau of investigation to make the fingerprint check provided for in this section shall not constitute the sole basis for refusal to issue a permit pursuant to the provisions of this section. Of the remaining two fingerprint cards, one shall be filed with the executive department, division of state police, Albany, within ten days after issuance of the license, and the other remain on file with the investigating police authority. . . Upon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay.

4-a. Processing of license applications. Applications for licenses shall be accepted for processing by the licensing officer at the time of presentment. Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for license pursuant to this section within six months of the date of presentment of such an application to the appropriate authority. Such delay may only be for good cause with respect to the applicant. In acting upon an application, the licensing officer shall either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for.

## QUESTIONS PRESENTED

### I.     Does the passage of time mandate that applicant's application be granted.

Noting that it has been more than six months since he submitted his application for

a pistol permit, applicant asserts that his permit application must be granted.

7

Penal Law §400.00(4-a) provides in pertinent part that "applications for licenses shall be accepted for processing by the licensing officer at the time of presentment. Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment . . . Such delay may only be for good cause and with respect to the applicant . . ."

The Court did not render a decision denying or granting the application within six months. However, there appears to be good cause for any delay, which reasons were communicated to applicant by the Sheriff, who was conducting an investigation mandated by Penal Law §400.00 and then, after the application was forwarded to the Court, by the Court.

The application indicated that the applicant's residence was in Schoharie County. Following submission of the application, the applicant then advised of a change in his residence to another state. Communications made clear this was an issue that needed development-especially in light of the *Heller* decision.

It should also be noted that applicant did not complete submission of his required character references until July 14, 2008.

Moreover, to date the Sheriff has still been unable to complete his investigation as applicant's fingerprints have been rejected by the FBI and DCJS, having been deemed to not be of sufficient quality to be used for comparison. Apparently, this is nobody's fault;

8

but rather, the result of applicant having worn fingerprints. Although the Court has the discretion to issue a pistol permit without the completion of an FBI check, it lacks the authority to waive a DCJS search. The applicant has been made aware of this issue through communications from the Sheriff and the Court. Indeed, the applicant was even re-fingerprinted in an effort by the Sheriff to obtain fingerprints that could be used.

Accordingly, as the application remains incomplete and as applicant has been made aware of the issue with his fingerprints, it appears the statute has been complied with. Moreover, given the issue regarding the constitutionality of New York's residency requirement and the importance of this issue, good cause exists for any delay. In any event, contrary to applicant's assertion, the fact that an application is not decided within six (6) months does not mandate that the application be granted.

Finally, this Court notes that the issue with respect to fingerprints has been held in abeyance to save the applicant the expense, time and trouble of being fingerprinted again until he receives a decision with respect to the threshold issue of whether a pistol permit may be issued to a nonresident of New York State.

## II. Is New York State's Residency Requirement for Issuance of a Pistol Permit Unconstitutional?

Insofar as pertinent to this application ,it is well-established that New York pistol

permits may be issued to residents only [2] *(see, Mahoney v. Lewis, 199 AD2d 734,*
*supra.);* and in this regard, it has been held that the "term residence [as used in Penal Law
§400.00] is equivalent to domicile and requires something more than mere ownership of
land" *(id. at p. 735).*

The applicant has candidly advised the Court that New York State is not his
primary residence and, thus not his domicile. However, citing the 2008 decision by the
United States Supreme Court in *District of Columbia v. Heller (128 S Ct. 2783)*, applicant
contends that the residency requirement in New York's licensing law is unconstitutional.

### A.  Does the Second Amendment impose a limitation on State legislation?

Initially, in upholding New York's residency requirement, the Second Circuit
Court of Appeals determined that, even if the Second Amendment conferred individual
rights *(as Heller subsequently held)*, it would not affect New York State's gun laws as
"we hold that the Second Amendment's right to keep and bear arms' imposes a limitation
on only federal, not state, legislative efforts *(see, Bach v. Pataki, 408 F 3d 75,84* . The
*Heller* decision did not address the issue of whether the Second Amendment applies to
state legislation and therefore *Bach* remains the law in New York. However,  it should be
noted that the Ninth Circuit Court of Appeals has reached a contrary conclusion *(see,*
*Nordyk v. King, ____ F 3d ___, 2009 WL 1036086).*

---

[2]Under New York's licensing statutes, non-residents may only apply for a license if they work principally
within the State.

10

**B.    Assuming the Second Amendment applies to State legislation, is New York's pistol permit system constitutional?**

In concluding that "the Second Amendment conferred an <u>individual's</u> right to keep

and bear arms" *(emphasis supplied)*, the Supreme Court directly found, for the first time,

that the right to keep and bear arms extends to individuals, not merely state-regulated

militias.  Nevertheless, the Supreme Court in *Heller* specifically permitted <u>reasonable</u>

<u>regulation</u>; and in this vain, since *Heller,* several courts have upheld New York's gun

laws *(see, e.g., People v. Abdullah, 23 Misc. 3rd 232; Chwick v. Mulvey, 13564/08 [*

*Nassau County Supreme Court]; People v. Ferguson, 21 Misc. 3d 1120).*

In *Bach v. Pataki (408 F3d 75,87),* the Second Circuit Court of Appeals held that

"New York's interest in monitoring gun licensees is substantial and that New York's

restriction of licenses to residents and persons working primarily within the State is

sufficiently related to this interest . . ."   The Second Circuit concluded that:

> There is no question that New York discriminates against non-residents in
> providing handgun licenses under Article 400.  Defendants do not contest
> this fact.  Instead, they argue that the discrimination is sufficiently justified
> by New York's public safety interest in monitoring handgun licenses.  We
> do not doubt, and *Bach* does not dispute, that '[t]he State has a substantial
> and legitimate interest . . . in insuring the safety of the general public from
> individuals who, by their conduct, have shown themselves to be lacking the
> essential temperament or character which should be present in one intrusted
> with a dangerous instrument.'
>
> New York's monitoring interest is, in essence, an interest in continually
> obtaining relevant behavioral information.  The State's licensing scheme
> vests broad revocation discretion in a licensing officer, permitting that
> officer to revoke a license on the basis of a wide variety of behavioral data;
> including information reported from local incidents . . .  (citation omitted)

11

The operative information available to licensing officers is not restricted to the legal formalities of an arrest warrant, an accusatory instrument, or a judgment of conviction. Licensing officers have the discretion to revoke licenses upon display of 'poor judgment'. (citations omitted) . . .

The ongoing flow of information to a licensing officer as a result of the licensee's tie to a particular residence or community, is an important element of the State's regulatory scheme. It substantially increases the likelihood that a licensing officer will be alerted to facts that cast doubt on a licensee's fitness to possess a firearm. *(citation omitted)* Bach challenges the substantiality of this relationship. He contends: (1) nonresidents within the State are no more difficult to monitor than residents, and (2) New York has now shown that it could not obtain the same quality of information from other States. Thus, Bach concludes defendants have not shown any "palpable and unique risks" posed by out-of-state residents. We disagree.

First, although it may be true that New York can monitor nonresidents as easily as residents while either are in the State, New York has an interest in the entirety of a licensee's relevant behavior. Information regarding a licensee's adherence to license conditions is information that may only exist when the gun owner is in-state, but information regarding the licensee's character and fitness for a continued license is not so limited. New York has just as much of an interest, for example, in discovering signs of mental instability demonstrated in New Jersey as in discovering that instability in New York. The State can only monitor those activities that actually take place in New York. Thus, New York can best monitor the behavior of those licensees who spend significant amounts of time in the State. By limiting applications to residents and in-state workers, New York captures this pool of persons. It would be much more difficult for New York to monitor the behavior of mere visitors like Bach whose lives are spent elsewhere.   . . .

Second, we think it self-evident that, at least in Bach's case, other States, like Virginia, cannot adequately play the part of monitor for the State of New York or provide it with a stream of behavioral information approximating what New York gather. They do not have the incentives to do so. First, other States are not bound to impose a discretionary revocation system like New York's. Therefore, they need not engage in monitoring of licensees similar to New York's monitoring. Second, because a New York license operates only in New York, other States, like Virginia, have very

12

little to gain from a revocation of a New York license - - a revocation would affect the safety of New Yorkers, not Virginians. Obviously, New Yorkers have a much greater interest in reporting misbehavior to New York local licensing officers than do out-of-state persons and their government officers. Monitoring is incentive-driven; without these incentives, there is little reason to expect effective monitoring, if any *(citation omitted)*.

Moreover, Bach does not point to any adequate alternative method for New York to collect this information. Bach argues that New York can and does rely on out-of-state reporting and cites Penal Law §400.00(11), which provides for revocation or suspension of a license upon the conviction of a felony or serious offense "anywhere." But New York's system permits license revocations for a range of misbehavior of which serious offenses and felonies form only a small part and Bach does not point to any reason to expect Virginia or any other State to report such behavior to New York. Bach also suggests that New York could require nonresidents to submit to more frequent renewals or periodic interviews with local officials. However, New York's proffered interest is in monitoring the relevant day-to-day behavior of license-holders; it is unclear how an accelerated renewal schedule or a round of interviews with local officials would supply this information.

Bach also suggests that reference letters or certifications from a nonresident's local authorities could fill New York's informational gap. Perhaps in other contexts references or similar informational requests might provide an adequate substitute source of information. For instance, when a State has an interest in monitoring the fitness of a licensed professional, references from persons involved in professional relationship with the licensee might be an adequate source of information. Or, where a State has an interest in monitoring the fitness of a licensed user of some universally-insured activity--driving an automobile, for instance--submission of updated insurance reports might prove adequate. In both examples, there may be strong arguments that another party has an equally strong incentive to monitor the licensee's relevant behavior–the professional's clients will often have a personal stake in the professional's work; the insurer will have a financial stake in the insured's risk profile. Here, however, Bach has not pointed to any monitor with a similar interest in assessing a nonresident's fitness to carry a handgun. Other States are not bound by New York's monitoring system. Thus, Bach has not shown how New York could "protect its interests through less restrictive means." (citation omitted).

13

> New York's monitoring rationale is distinct from rationales rejected in other
> Privileges and Immunities Clause cases. Most importantly, the monitoring
> rationale is not an interest of merely "general concern," to which a
> resident/nonresident distinction would not be tailored, but, rather, actually
> turns on where a person spends his or her time. The exception for
> nonresidents working in-state is consistent with this criterion. The
> exception also further distinguishes New York's license requirements from
> those invalidated in *Piper* and *Friedman*. There, nonresident lawyers were
> denied admittance to the bar even through their primary places of business
> were within the licensing State *(citation omitted)*. Here, by contrast,
> nonresidents with their primary place of business in New York are eligible
> for an Article 400 license (citation omitted). New York's exception is
> relevant because the location of a licensee's principal employment
> correlates with the State's monitoring interest in a manner similar to the
> place of the licensee's residence–both present opportunities for the State to
> monitor the licensee. New York's nonresident distinction, with the in-state
> worker exception, is thus tailored to the State's monitoring interest.

As detailed above by the Second Circuit Court of Appeals, the residency

requirement is an important component of New York's regulation which allows the State

to restrict handgun possession to persons of acceptable temperament, fitness and

character. Such a restriction appears to be reasonable and, thus, is constitutionally

permissible *(see, District of Columbia v. Heller, supra.)*. The statute in *Heller* differs

significantly from the law in question here, since an important component of the District

of Columbia law, which clearly influenced the Supreme Court was that the law, among

other things, totally banned all handgun possession in the District of *Columbia (see,*

*Heller, supra. at 2817; see also, People v. Ferguson, supra; Chwick v Mulvey, supra)*.

Moreover, New York law allows a non-resident, such as the applicant, to possess long

guns in New York. Thus, unlike the situation in *Heller*, the New York statutory scheme

14

does not essentially preclude the applicant from the possession of <u>any</u> firearms.

As to constitutionality of New York's pistol permit laws, additional support can be

found in New York Practice Series, New York Criminal Law *(Richard A. Greenberg and*

*Steven Y. Yurowitz, §33.1),* which concludes that:

> . . . Even if the Supreme Court ultimately holds that the Second
> Amendment applies to the states, as *Heller* appears to presage, the Second
> Amendment right vindicated by *Heller* appears to be quite limited and
> consistent with reasonable regulation of firearms, including possession of
> firearms by felons or the mentally ill, carrying firearms in "sensitive" places
> like schools and government building, law regulating the commercial sale
> of weapons, and prohibiting the carrying of "dangerous or unusual weapons
> like M-16 rifles. The Supreme Court expressly declined to address
> licensing requirements, but intimated that licensing schemes like New
> York's would not run afoul of *Heller* so long as they are not enforced in an
> arbitrary or capricious manner . . .   Thus, the only real or substantial effect
> that *Heller* will likely have on New York Law is to increase the number of
> CPLR Article 78 petitions challenging the denial of licenses to carry or
> possess firearms on grounds that the denial was arbitrary and capricious.

In any event, in *People v. Perkins,( ___ AD3d ___ [2009 N.Y. Slip Op. 03962]*), a

controlling decision in this jurisdiction handed down on May 21, 2009, the Appellate

Division, Third Department has reached the same conclusion regarding *Heller's* effect on

New York State gun laws, determining as follows:

> "While the United States Supreme Court concluded in that case that
> the Second Amendment confers a constitutionally protected individual right
> to keep and bear arms as a means of self-defense within the home, it also
> held that the right conferred by the Second Amendment-and by extension,
> Civil Rights Law §4 *(see, Chwick v. Mulvey, 2008 N.Y. Slip Op
> 22486[U])*,is not absolute and may be limited by reasonable governmental
> restrictions *(see, District of Columbia v. Heller, 128 S Ct at 2816).*

15

Unlike the statute at issue in *Heller*, Penal Law article 265 does not effect a complete ban on handguns and is, therefore, not a "severe restriction" improperly infringing upon defendant's Second Amendment rights. Moreover, in our view, New York's licensing requirement remains an acceptable means of regulating the possession of firearms *(see People v. Morrill, 101 AD2d 927; People v. Ferguson, 21 Misc.3d 1120[A], 2008 Slip Op 52112[U][NY City Crim Ct 2008]*), and will not contravene *Heller* so long as it is not enforced in an arbitrary and capricious manner *(see, District of Columbia v. Heller, 128 S Ct at 2819)" (see, People v. Perkins, __ AD3d ____, [2009 N.Y. Slip Opinion 03962, 2009 WL 1405913], supra).*

## Conclusion

Since applicant admittedly is not a resident of the State of New York, his

application for a pistol permit is denied.[3]

SO ORDERED.

Dated:      May 2 7 2009
            Schoharie, New York

                                        GEORGE R. BARTLETT III, J.C.C.

TO:    Alfred G. Osterweil
       Sheriff John S. Bates, Jr.
       NYS Pistol Permit Bureau
       NYS Division of Criminal Justice Services

---

[3] In denying the application solely on the basis of the applicant's residency status, this Court has not considered any other aspects of the application.