| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF NEW YORK | DEFENDANTS' STATEMENT<br>PURSUANT TO LOCAL RULE<br>7.1 (a)(3) |

ALFRED G. OSTERWEIL,

                                                                                      09-CV-825

                                               *Plaintiff*,

                                                                                   GLS/DRH

           -against-

GEORGE R. BARTLETT, III., in his official capacity as
Licensing Officer in the County of Schoharie,
                                         *Defendant*.

Defendant Bartlett by his attorney, Eric T. Schneiderman, Attorney General of the State of New York, for his statement of facts pursuant to Local Rule 7.1 (a)(3) states:

1. Defendant Bartlett is the duly elected Schoharie County Judge. In that capacity as Schoharie County Judge, he is the licensing officer in Schoharie County for pistol (firearm) permits (Penal Law §400). Bartlett Declaration ¶ 1.

2. On or about May 21, 2008, Alfred Osterweil submitted an application with the Schoharie County Sheriff's Department for a New York State Pistol permit. In this application, he listed his residence as being in Schoharie County, New York. Bartlett Declaration ¶ 2, Exhibit 1A.

3. Pursuant to Penal Law §400.00[4], the Schoharie County Sheriff ("Sheriff") conducts investigations regarding pistol permit applications. Part of the investigation involves verifying information set forth in the application, receiving references from the applicant's references, obtaining criminal background checks, obtaining the applicant's fingerprints and then submitting the fingerprints to the New York State Division of Criminal Justice Services and the FBI for records check. Bartlett Declaration ¶ 3.

4. By letter dated June 24, 2008 the Sheriff advised Mr. Osterweil that he needed to come into the Sheriff's office "to correct and/or complete some information on your permit."

Bartlett Declaration ¶ 4, Exhibit1.

5. In response, Mr. Osterweil sent a letter dated June 25, 2008 to the Sheriff stating that since he applied for a permit, he had purchased a home in another state which he intended to utilize as his primary residence and to now use his Schoharie County property as a vacation home. Accordingly, he asked "Under those circumstances, am I still eligible for a permit . . . Obviously, if my move to another state rules out a pistol permit, there is no sense in correcting the application." Bartlett Declaration ¶ 5, Exhibit 2.

6. By memo dated July 8, 2008, the Sheriff forwarded Mr. Osterweil's "incomplete" application to the Court together with Mr. Osterweil's letter of June 25, 2008. Bartlett Declaration ¶ 6,Exhibit 3.

7. On July 16, 2008, the Court also received a letter from Mr. Osterweil. Bartlett Declaration ¶ 7, Exhibit 4. According to court secretary, the Sheriff then requested that the application be given back to him and this was done. Apparently, the Court also sent Mr. Osterweil's letter received July 16, 2008 to the Sheriff without responding.

8. On or about August 13, 2008, the New York State Division of Criminal Justice Services *("DCJS")* advised the Schoharie County Sheriff that "Due to the poor quality of the fingerprint impressions received, DCJS is unable to determine whether this individual has any other criminal record in New York State." Bartlett Declaration ¶ 8, Exhibit 5.

9. On or about July 31, 2008, Mr. Osterweil's fingerprints were rejected by the FBI as "the quality of the characteristics in too low to be used." Bartlett Declaration ¶ 9, Exhibit 6.

10. By letter dated August 18, 2001, the Schoharie County Sheriff requested Mr. Osterweil to come into his office to be re-fingerprinted. Bartlett Declaration ¶ 10, Exhibit 7.

11. On or about September 8, 2008, Mr. Osterweil's fingerprints were apparently again

rejected by the FBI because the "quality of the characteristics is too low to be used." Bartlett Declaration ¶ 11, Exhibit 8.

12. After Mr. Osterweil's fingerprints were again rejected a series of e-mails ensued between the Sheriff and Mr. Osterweil. Bartlett Declaration ¶ 12, Exhibit 9.

13. By letter dated February 18, 2009, the Sheriff advised Mr. Osterweil that he was sending Mr. Osterweil application to Defendant Bartlett. Bartlett Declaration ¶ 13, Exhibit 10.

14. By letter to Mr. Osterweil dated February 20, 2009, Defendant Bartlett set forth what he felt were the issues regarding Mr. Osterweil's application *(i.e., the lack of quality fingerprints that could be used by the FBI and New York State Division of Criminal Justice Services and his residency [domicile]).* Accordingly, the Court scheduled an appearance on March 24, 2009 for Mr. Osterweil and/or his attorney. Bartlett Declaration ¶ 14, Exhibit 11.

15. Specifically, the letter scheduling the matter explained that this Court appearance was to allow Mr. Osterweil or his attorney the opportunity to "present any arguments in support of your application. In particular, I would be interested in your supplying any legal precedent supporting your position with regard to residency and in support of a fingerprint check waiver. Moreover, I would like the Sheriff to be present to explain the fingerprint situation and answer any questions you or your attorney may have." Bartlett Declaration ¶ 15, *Id.*

16. By letter to the Court dated March 3, 2009, Mr. Osterweil, sent information on special steps that could be taken with respect to persons with worn fingerprints. Mr. Osterweil indicated that none of these "special steps" were utilized by the Schoharie County Sheriff in his case. Bartlett Declaration ¶ 16, Exhibit 12.

17. By letter dated March 4, 2009, Mr. Osterweil advised the Court that he would not be available to attend Court on March 24, 2009 as scheduled, and would not be available until the summer. In this letter, Mr. Osterweil sets forth several issues he had with New York law and the process used in processing pistol permits. Mr. Osterweil's submission contained several enclosures and an affidavit. Bartlett Declaration ¶ 17, Exhibit 13.

18. By another letter dated March 4, 2009 to the Court, Mr. Osterweil forwarded a supplemental affidavit. Bartlett Declaration ¶ 18, Exhibit 14.

19. By letter dated March 13, 2009, the Court responded to Mr. Osterweil's correspondence. Pursuant to Mr. Osterweil's request, the Court cancelled the appearance scheduled for March 24, 2009 and asked Mr. Osterweil if he wished to reschedule the March 24, 2009 appearances or if he wished to waive an appearance. Bartlett Declaration ¶ 19, Exhibit 15.

20. By letter dated March 19, 2009, Mr. Osterweil responded, explaining in some detail his position regarding the lack of fingerprints and a residency requirement. He also stated that he would not be available to appear in the Court prior to April 15, 2009. Bartlett Declaration ¶ 20, Exhibit 16.

21. As Mr. Osterweil's letter of March 19, 2009 did not indicate if he wished to personally appear in Court or waive a personal appearance, by letter dated April 10, 2009, Defendant Bartlett wrote Mr. Osterweil a letter to inquire whether he wished to reschedule the March 24, 2009 Court date or waive a personal appearance and consider his application fully submitted on papers. Bartlett Declaration ¶ 21, Exhibit 17.

22. By letter dated April 13, 2009, Mr. Osterweil responded that " . . . I do not wish to leave any stone unturned in the prosecution of this matter, I will appear before you <u>if you</u>

<u>request</u> me to do so . . ." "I expect to be in Summit [Schoharie County] commencing on or about June 15, 2009, and will be available to appear at your convenience thereafter." Bartlett Declaration ¶ 22, Exhibit 18. *(emphasis supplied)*

23. By letter dated May 1, 2009, Defendant Bartlett acknowledged receipt of Mr. Osterweil's letter of April 13, 2009 and responded that: "It appears from this correspondence that you do not wish to submit any further information or personally appear in support of your application. Accordingly, unless I hear from you to the contrary on or before May 15, 2009, I will consider your application fully submitted and will proceed to determine it." Bartlett Declaration ¶ 23, Exhibit 19.

24. By letter dated May 6, 2009, Mr. Osterweil wrote to the Court indicating he did not wish a personal appearance and referred the Court to a recent decision by the Ninth Circuit Court of Appeals in support of his argument concerning the constitutionality of New York's pistol permitting law. Bartlett Declaration ¶ 24, Exhibit 20.

25. On May 29, 2010, the Court issued a written decision denying Mr. Osterweil's pistol permit application. Bartlett Declaration ¶ 25, Exhibit 21.

26. In this decision, the Court rejected Mr. Osterweil's argument that, since more than six (6) months elapsed since he submitted his application, the Court was required to grant his application. Bartlett Declaration ¶ 26, *Id.*

27. The Court found there was good cause for the time taken in rendering a decision. Bartlett Declaration ¶ 27, *Id.*

28. Initially, the Court noted that Mr. Osterweil's application was as yet not complete as, due to the poor quality of his fingerprints, the Sheriff had been unable to complete the investigation required by New York Law (Penal Law §400). The Court noted, as a

courtesy to Mr. Osterweil, the Court held the issue of fingerprints in abeyance in order to address the threshold issue of whether New York Law allows the issuance of a pistol permit to a non-resident. Bartlett Declaration ¶ 28, *Id.*

29. The Court noted that when Mr. Osterweil originally submitted his application, he listed his residency as being in Schoharie County, New York. It was after the application was submitted that Mr. Osterweil changed his residence (domicile) to that of another state, and so advised the Sheriff. This change in the application led to much of the above-referenced communications and submissions. Bartlett Declaration ¶ 29, *Id.*

30. In denying Mr. Osterweil's application, the Court noted Mr. Osterweil's candid acknowledgment that he was not a resident of New York State. That being the case, the Court adhered to long-standing New York precedent that a pistol permit may be issued to residents only and that the term residence *[as used in Penal Law §400.00]* is the equivalent to domicile as outlined in Mahoney v. Lewis, 199 AD2d 734). Bartlett Declaration ¶ 30, *Id.*

31. The Court rejected Mr. Osterweil's argument that New York's pistol permit system is unconstitutional. The Court quoted extensively from Bach v. Pataki (408 F3d 75, 87) wherein the Second Circuit Court of Appeals held that "New York's interest in monitoring gun licenses is substantial and that New York's restrictions to residents and persons working primarily within the State is sufficiently related to this interest . . ." Bartlett Declaration ¶ 31, *Id.*

32. The Court followed the Second Circuit's finding that the residency requirement is an important component of New York's regulation, and concluded that that requirement appears to be reasonable and constitutionally permissible as outlined in District of

Columbia v. Heller, 128 S. Ct. 2783).  Bartlett Declaration ¶32, *Id.*

33. The Court held that the statute in Heller differed significantly from the law in question here, since an important component of the District of Columbia law consisted of a total ban on all handgun possession within that jurisdiction.  Moreover, this Court noted that New York law allows a nonresident, such as Mr. Osterweil, to possess long guns.  Thus, unlike Heller, this Court found the New York statutory scheme does not preclude the applicant from the possession of any firearms.  Bartlett Declaration ¶ 33, *Id.*

34. The Court cited to the controlling decision in this jurisdiction wherein the New York State Appellate Division, Third Department determined that ". . . New York's firearms licensing requirement remains an acceptable means of regulating the possession of firearms *(citations omitted)* and will not contravene Heller so long as it is not enforced in an arbitrary and capricious manner as outlined in District of Columbia v. Heller, 128 S. Ct. at 2819; and People v. Perkins, 62 AD3d 1160, leave denied 13 NY3d 748.  Bartlett Declaration ¶ 34, *Id.*

DATED: Albany, New York
March 11, 2011

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York
                                        Attorney for Defendant Bartlett
                                        The Capitol
                                        Albany, NY  12224

                                        By: *s/Roger W. Kinsey*
                                        Roger W. Kinsey
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 508171
                                        Telephone:  (518) 473-6288
                                              Fax:  (518) 473-1572
                                        Email: Roger.Kinsey@ag.ny.gov
                                        DOL #08-078786-O

TO: Alfred G. Osterweil
      310 Rossman Fly Road
      Summit, New York 12175