UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

..................................................................

ALFRED G. OSTERWEIL,

                *Plaintiff*                09-CV-825

*versus*                                  GLS/DRH

GEORGE R. BARTLETT, III

                *Defendant*

..................................................................

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AND AS PLAINTIFF'S REPLY TO DEFENDANT'S ANSWERING BRIEF

ALFRED G. OSTERWEIL, PLAINTIFF PRO SE

310 Rossman Fly Road
P.O. Box 173
Summit, New York 12175
Phone: (518) 287-1646

`Table of Contents

Preliminary Statement......................................................................... 1

Statement of Facts..............................................................................2

Argument

    Point I   The Impact of Heller And McDonald On

            Existing Law..................................................................4

    Point II   The Standard Of Review Can Be No Less

            Than Strict Scrutiny.................................................,,........6

    Point III   The Failure Of The Licensing Official To

            Comply With The New York Statute Created

            A Federal Issue................................................................7

    Point IV   Even Prior To Heller And McDonald, New

            York Considered Itself Bound By The

            Second Amendment.........................................................10

    Conclusion...........................................................................13

## Preliminary Statement

Plaintiff relies on his prior submission with the additional material set erroneouslyforth herein. Defendant erroneously asserts that it is Plaintiff's position that "... the New York statute unlawfully discriminates against individuals who own residential property in the State of New York but are domiciled in another state." Rather, Plaintiff asserts that the facts in his case are unique and may not give rise to a general and universal rule. As Plaintiff attested in his Affidavit dated August 2, 2010, Plaintiff and his family resided in the Summit home prior to his application, he continues to live in the home with his family periodically, and he does not utilize his home as a rental property.

While Plaintiff is domiciled elsewhere, he does maintain a bona fide residence in the State of New York which has long recognized the realities of our mobile society and has acknowledged the fact that people may have more than one such residence.. See e.g. Matter of Gallagher v. Dinkins, 41 AS, D. 946, aff'd 14 N.Y. 2D 771 (1964); Matter of Gladwin v. Power, 21 A,D. 665, *aff'd* 14 N.Y. 2D 771 (1964).

1

Statement of Facts

While Plaintiff relies on the materials submitted in his Motion For Summary Judgment, there are several matters raised in Defendant's submission which require clarification.

On May 21, 2008, Plaintiff filed an application to possess a handgun in his Summit, New York residence. (Exhibit 1). Thereafter, on June 25, 2008, he advised the Sheriff, who conducts investigations for gun permits, that he was changing his domicile.(Exhibit 2).

Defendant states that the Sheriff, on July 8, 2008, "...forwarded Mr. Osterweil's "incomplete" application to the Court together with Mr. Osterweil's letter of June 25, 2008." (Def Brief-3). Initially, the licensing officer in this brief, and throughout the entire period this matter was pending before him, held himself out as a "Court" and the proceedings as a court matter. Needless to say, the statute does not provide for a court hearing. There is no ability to present evidence, present witnesses, cross examine witnesses or any of the other formalities of a trial. The record reveals that the Plaintiff resisted attempts by Bartlett to change this ordinary

2

administrative review process into something more.

With respect to the statement that the application provided to the licensing official was "incomplete", Plaintiff asserts that his application was complete as it was examined by the FBI and the State Police at least as early as August 13, 2998. (Exhibit 5). What was incomplete was the background investigation which was to be performed by the State and its agents.

The first piece of correspondence which Plaintiff received from Bartlett was the letter to Plaintiff dated February 20, 2009, which far exceeded the six month deadline he was under (Exhibit 11).

With respect to the fingerprint issue, the licensing official waived the necessity of a third attempt at obtaining a good set of prints and the followup background check, and instead chose to decide the application on the issue of residency,solely. Indeed, on May 6,2009, Bartlett wrote the following to the Plaintiff: "...I will consider your application fully submitted and will proceed to determine it." (Exhibit 20). He thereafter denied Plaintiff the right to possess a handgun in his home by letter dated May 29, 2010. (Exhibit 21).

# ARGUMENT

# POINT I

# THE IMPACT OF HELLER AND MCDONALD ON EXISTING LAW

District of Columbia v.Heller, 127 S.Ct. 2763 (2008), recognized the Second Amendment's protection of an individual right "to keep and bear arms." Then, in McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), the Court incorporated the Second Amendment as a right which is binding upon the states.

Because Bartlett attempts to limit the impact of these two decisions on the case at bar, we are compelled to examine them further. Bartlett argues that because Justice Thomas, in McDonald, wrote a concurring opinion, that somehow creates an intermediate level of scrutiny to be applied here. First, it should be noted that Thomas joined the majority in Heller. Then, while Justice Alito and those joining him in his use of the Due Process Clause of the Fourteenth Amendment as the vehicle to incorporate, Thomas chose to incorporate by way of the Privileges and Immunities Clause. Thomas, after

4

reviewing the history of the Fourteenth Amendment and the preceding atrocities which blacks had endured, concluded that the Second Amendment was fully applicable to the states "...because the the right to keep and bear arms is guaranteed by the Fourteenth Amendment as a privilege of American citizenship." id. at 3088.

On the other hand Justice Alito states that the modern standard for incorporation is merely whether the guarantee in question "...is fundamental to our scheme of ordered liberty and system of justice." id. at 3044. Obviously, Alito and his fellow justices determined that the Second Amendment met that test.

<u>Heller</u> involved the prohibition of handguns in the home. In this case, Plaintiff is denied, totally, the use of handguns in his home. Bartlett argues that the New York law is, never the less, constitutional because Plaintiff is permitted to keep rifles and shotguns. That assertion by Bartlett is simply in error. Justice Scalia, speaking for the Court in <u>Heller</u> at 2818, states:

> It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms ... is allowed. It is enough to note as we have

5

observed, that the American people have considered the handgun to be the quintessential self defense weapon.

He goes on further, stating, at 2622:

„„ the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home.

The McDonald Court, including Justice Thomas, adopted Heller as the law of the land. New York is not immune from this ruling.

McDonald has incorporated the Second Amendment right as a core right, not a diluted or second rate right that can be thwarted or evaded by States or their subdivisions.

## POINT II

## THE STANDARD OF REVIEW CAN BE NO LESS THAN ONE OF STRICT SCRUTINY

It might well be argued that no court created standard should be utilized when dealing with such a central issue as the defense of one's life and the defense of the lives of one's family in the home. The issue is so

apparent and so tethered to our American psyche and the basic instincts of all mankind, any infringement of that right should fall. At the very least, however, no standard apart from strict scrutiny appears appropriate

While Justice Scalia, in <u>Heller,</u> did not set a standard in absolute terms, he leaves no doubt about the intention of the people:

> We would not apply an "interest balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie,,,,The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrongheaded views. The Second Amendment is no different. Like the First, it is the very *product* of an interest balancing by the people...And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

## POINT III

### THE FAILURE OF THE LICENSING OFFICIAL TO COMPLY WITH THE NEW YORK STATUTE CREATED A FEDERAL ISSUE

Article 400, Section 4- a, requires the licensing officer to act on an

7

application within six months, "Except upon written notice to the applicant specifically stating the reasons for any delay." The delay must be for good cause and "with respect to the applicant."

We have previously demonstrated that the licensing official in this case did not contact Plaintiff, in writing, until longer than six months, even from the date of any alleged "correction".

Bartlett argues that his violation of the state statute does not give rise to a Federal claim. We respectfully disagree. This is akin to the right of a criminally charged defendant receiving a speedy trial. Plaintiff has effectively been denieed the right to protect himself and his family since 2008. That represents a substantial loss, if not in money, of peace of mind and a feeling of well being to which Plaintiff was entitled. Beyond that, the licensing official needlessly delayed the process with the Plaintiff from June 25, 2008, when Plaintiff advised the sheriff of his residence situation, until he rendered his "decision" on May 29, 2009. Thus, a full year elapsed from the time the licensing official was aware of the residency "issue" until the date of his "decision" which was based solely on Plaintiff's change of domicile. Had he acted within the six month limitation established by the New York legislature, this matter would have been long finalized. It was

8

because Bartlett did not fulfill his duties as required, that Plaintiff was fcaused to engage in an endles sexchange of letters between himself and Bartlett, the correspondence spanning a full year, all without Plaintiff having the right to possess a handgun in his home. Nothing new emerged from the year long battle of letters, because Bartlett based his "decision" on a fact which Plaintiff made known to him at the outset of the proceeding.

If, as expressed in Elrod v. Burns, 427 U.S. 347 (1975), 96 S. Ct. 2673, 2690, a "...loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury", can it be said that the Second Amendment is entitled to less deference than the First. We submit that the New York Legislature enacted the six month limitation for a reason. We cannot simply treat it as though it does not exist.

But it is not simply a state issue. It rises to a federal issue because failure to follow the strict mandate of the statute caused an infringement of a core constitutional right-----the right to protect one's self and one's family in the home, in this case for a considerable period of time.

9

## POINT IV

## EVEN PRIOR TO HELLER AND MCDONALD, NEW YORK CONSIDERED ITSELF BOUND BY THE SECOND AMENDMENT

"A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed." This language of the Second Amendment is carried over by the New York Civil Rights Law which tracks the quoted language but replaces the words "shall not" with the word "cannot". This represents more than an analog, as it came after the enactment of the Second Amendment. By adopting the language of the Amendment it is apparent that New York also adopted any meaning given to it. It further appears that New York's Constitution adds credence to that proposition.

Article XII, Section 1 states: "The defense and protection of the state and the United States is an obligation of persons within the state." The reference here is interesting on several levels. Firstly, it does not limit the obligation to persons who are domiciled in New York. Indeed, it calls upon every person within New York to defend it and the United States. That encompasses a broad spectrum of people, including Plaintiff.

10

Thus, it was anticipated by those who drafted the New York Constitution, that Plaintiff and others similarly situate would be obliged to arm themselves to accomplish the task.

Indeed, the New York Constitutional provision being reviewed summarized, in a single sentence, the historical review by Justice Scalia, covering many pages in Heller, demonstrating the need for the Second Amendment guarantee. By having an armed populace, the protection of the State and the national government was placed in the hands of the people.

The licensing officer's "decision", which preceded McDonald, stated that he was bound by Heller, based on several recent state court decisions, State of New York v. Perkins, and Chwick v. Mulvey.(Copies of both cases were provided to the Court in Defendant's initial motion to dismiss). Both of these cases cite the New York Civil Rights Law as an extension of, or co-theextensive with the Second Amendment. During this same time frame, the Second Circuit maintained the view that the states were not bound by Heller, and, relying in part on Mahoney v. Lewis, 199 A. D. 2d 734, which defined residence in the penal code as meaning "domicile", the Second Circuit, never referring to the New York Constitution, adopted the

11

Mahoney rationale in Bach v Pataki, 408 F. 3d, 75(2d Cir. 2005).

Thus, we were presented with what Plaintiff maintains was the incorporation of the Second Amendment by virtue of the New York Constitution and the Civil Rights law when read in *para materia*. This then would give rise to a Second Amendment cause of action, not merely a state cause of action when Bartlett failed to issue Plaintiff a permit..

Additionally, if we isolate the New York constitutional provision which obliged persons within the state to protect it, without reference to domicile, refusing to permit Plaintiff to be armed to accomplish that task not only violates that State provision, but it rises to a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff has been treated differently from all other "persons within the state", as required by New York's Constitution.

## CONCLUSION,

For all the reasons set forth herein, Plaintiff asks the Court to dismiss, in its entirety, Defendant Bartlett's Cross Motion for Judgment, enter Summary Judgment on behalf of Plaintiff, and for such other relief as the Court may deem appropriate.

Respectfully Submitted,

*[signature]*

Alfred G. Osterweil, Plaintiff *pro se*