# APPENDIX



1 of 19 DOCUMENTS

**ACCESS 4 ALL, INC., a Florida not for profit corporation, and NELSON M. STERN, individually, Plaintiffs, - against - 135 WEST SUNRISE REALTY CORP., a New York Corporation, Defendant.**

**CV 06-5487 (AKT)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2008 U.S. Dist. LEXIS 91674**

**September 30, 2008, Decided
September 30, 2008, Filed**

**COUNSEL:** [*1] For Access 4 All, Inc., a Florida not for profit corporation, Nelson M. Stern, Individually, Plaintiffs: Lawrence A. Fuller, Thomas B. Bacon, LEAD ATTORNEYS, Fuller, Fuller & Associated, P.A., North Miami, FL; Nelson Michael Stern, LEAD ATTORNEY.

For 135 West Sunrise Realty Corp., a New York Corporation, Defendant: Andrew E. Curto, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, Mineola, NY.

**JUDGES:** A. KATHLEEN TOMLINSON, United States Magistrate Judge.

**OPINION BY:** A. KATHLEEN TOMLINSON

**OPINION**

**ORDER**

A. KATHLEEN TOMLINSON, Magistrate Judge:

**I. PRELIMINARY STATEMENT**

Before the Court is a motion by Plaintiffs Access 4 All, Inc. and Nelson M. Stern's for attorney's fees, costs, and expert witness fees [DE 20]. The parties have consented to my jurisdiction for all purposes, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 [DE 23]. After a thorough review of the arguments presented in Plaintiffs' papers in support of their motion [DE 20, 25], and Defendant 135 West Sunrise

Realty Corp.'s opposition [DE 24], and for the reasons set forth below: (1) Plaintiffs' motion for attorney's fees is GRANTED to the extent set forth herein; (2) Plaintiffs' motion for costs is GRANTED and Plaintiffs [*2] shall be awarded costs in the amount of $ 1,702.74; and (3) Plaintiffs' motion for expert witness fees is GRANTED to the extent that Plaintiffs are awarded $ 4,637.25.

**II. BACKGROUND**

Plaintiffs commenced this action against Defendant in October 2006 seeking declaratory and injunctive relief, as well as attorney's fees, costs, and litigation expenses, pursuant to 42 U.S.C. § 12205. Plaintiffs alleged that Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), because "architectural barriers" existed at Defendant's shopping center (the "Premises") which denied Plaintiff and other similarly situated disabled individuals "access to full enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations" of the facility. Compl. PP 3, 6, 13.

Defendant interposed its Answer on April 12, 2007 [DE 9]. On May 22, 2007, Defendant requested an adjournment of the initial discovery planning conference because the parties were "conducting extensive settlement negotiations." [DE 12]. An initial conference was held on July 11, 2007, and following a telephone status conference on August 7, 2007, I noted the following in a Civil Conference [*3] Minute Order:

Based upon the July 19, 2007 letter of Defendant's counsel [DE 18] as well as the discussion with the parties during to-day's conference, it appears that this case has been settled in principle and that the parties will be entering into a consent judgment, with the exception of one issue. That issue involves attorney's fees in the case, which the parties have agreed to submit to the Court for a determination.

[DE 19].

On or about August 31, 2007, the parties executed a Settlement Agreement. See Decl. in Opp. to Pl.'s Application for Attorneys' Fees, Expenses & Costs (hereinafter "Curto Decl."), Ex. A. The Settlement Agreement provided that "Defendant does not admit the allegations of the Plaintiffs' Complaint, but recognizes that the Plaintiffs might prevail and receive some of the relief on the merit of their claim." Id. In consideration for resolving the litigation, Defendant agreed to (1) make 13 physical modifications to the Premises to ensure compliance with the ADA; (2) evict a certain tenant of the Premises and to ensure that the portion of the Premises at issue complied with the ADA when it was re-leased to a new tenant; and (3) implement a policy "maintaining in [*4] operable working condition those features that are required to be readily accessible to and usable by persons with disabilities." Id.

The Settlement Agreement also provided as follows:

• • • •

2. The parties are unable to agree as to the amount, if any, that Defendant shall pay as attorneys' fees, litigation expenses, expert's fees and costs. This issue shall be determined by the Magistrate Judge. Defendant expressly waives the defense of standing, but reserves the right to challenge the issue of the calculation of Plaintiffs' reasonable attorney fees, costs, expert fees and litigation expenses.

3. The parties hereby agree and will request the Court approve and enter this Agreement, providing for retention of jurisdiction by the Court to enforce, as necessary, the terms of the Agreement.

Id. Also on August 31, 2007, the parties filed a Stipulation of Discontinuance that discontinued the action with prejudice and provided, in relevant part:

IT IS HEREBY FURTHER STIPULATED AND AGREED that the parties will refer to the Magistrate Judge the determination of the amount, if any, that Defendant shall pay as and for attorneys' fees, litigation expenses, expert's fees and costs in this action pursuant [*5] to a Settlement Agreement ("Agreement") executed between the parties, and that the Court shall retain jurisdiction to enforce, as necessary, the terms of said Agreement.

[DE 21]. The Court "so ordered" the Stipulation of Discontinuance [DE 28].

## III. PREVAILING PARTY STATUS

As a threshold matter, the Court must determine whether Plaintiffs are "prevailing parties" entitled to an award of attorney's fees, costs, and litigation expenses pursuant to the ADA. See 42 U.S.C. § 12205. [1]

1   "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205.

## A. Parties' Contentions

Plaintiffs highlight that the Settlement Agreement expressly provides that the Court will retain jurisdiction to enforce its terms, Pls.' Verified Application for Att'ys Fees, Litigation Expenses & Costs & Incorp. Mem. of Law ("Pls. Mem.") at 3-4. The Stipulation of Discontinuance also contains this express retention of jurisdiction and states that "the parties will refer to the Magistrate Judge the determination [*6] of the amount, if any, that Defendant shall pay as and for attorneys' fees," Pls.' Reply in Supp. of Verified Application for Att'y Fees, Litigation Expenses & Costs & Add'l Verification ("Reply Mem.") at 2, 3. Plaintiffs argue that the Second Circuit's decision in Roberson v. Giuliani, 346 F.3d 75 (2d Cir. 2003) controls, and because the Court retained enforcement jurisdiction over an otherwise private settlement agreement, Plaintiffs are properly considered a prevailing party. Reply Mem. at 2-3.

Defendant argues first that the parties entered into a private settlement agreement in which Defendant did not admit liability and "whereby Defendant voluntarily agreed to ameliorate the alleged ADA violations in exchange for discontinuance of the action." Mem. of Law in Opp'n to Pls.' Application for Att'ys Fees, Litigation

Case 1:09-cv-00825-MAD-CFH   Document 52-3   Filed 04/07/14   Page 4 of 43

Page 3
2008 U.S. Dist. LEXIS 91674, *

Expenses and Costs ("Def. Mem.") at 2. As such, Defendant contends, "filing of the suit served as a mere 'catalyst' to the [ADA-compliant] changes being made" and so "Plaintiffs cannot be classified as 'prevailing parties.'" *Id.* at 3. Defendant also argues that "although the Settlement Agreement is mentioned in the Stipulation of Discontinuance, the terms of same are [*7] not incorporated therein." *Id.* at 4.

## B. Legal Standard and Analysis

The Second Circuit has held that "in order to be considered a 'prevailing party' . . . a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)). The Supreme Court has found that "enforceable judgments on the merits" and "settlement agreements enforced through a consent decree" constitute sufficient "material alteration[s] of the legal relationship of the parties" to justify attorney's fee awards. *Buckhannon*, 532 U.S. at 604-05. A private settlement agreement, by contrast, does not "entail the judicial approval and oversight involved in consent decrees," and is not, alone, a sufficient "material alteration" of the parties' legal relationship to justify an award of attorney's fees. *See id.* at 604 n.7.

More recently, the Second Circuit held that "the two forms of relief identified by the Supreme Court [in *Buckhannon*] as justifying prevailing party status," namely, [*8] a judgment on the merits or a court-ordered consent decree, were merely "examples" and were not the exclusive types of "judicial action that could convey prevailing party status." *Roberson*, 346 F.3d at 80-81. Accordingly, "judicial action other than a judgment on the merits or a consent decree can support an award of attorney's fees, so long as such action carries with it sufficient judicial imprimatur." *Id.* at 81 (collecting cases from other circuits that also rejected a narrow reading of *Buckhannon*).

In *Roberson*, the parties entered into a settlement agreement resolving the Section 1983 class action claims in the Complaint. *Id.* at 77-78. The agreement provided that it would not become effective if the court's order discontinuing the action "does not include a provision retaining jurisdiction over enforcement." *Id.* at 78. The agreement also stated that "[t]he issue of plaintiffs' entitlement to an award of attorneys' fees and costs and disbursements is reserved for later determination upon application to the Court . . . ." *Id.* Subsequently, the parties executed a Stipulation and Order of Discontinuance that acknowledged that the parties had entered into a settlement agreement dismissing [*9] plaintiffs' claims with prejudice. The Stipulation and Order of Discontinuance also provided that the court "shall retain jurisdiction over the settlement agreement for enforcement purposes," but the terms of the settlement agreement were not otherwise incorporated. *Id.*

The Second Circuit found that "the district court's retention of jurisdiction in this case is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees." *Id.* at 82; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (noting in dicta that "if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision [such as a provision 'retaining jurisdiction' over the settlement agreement] or by incorporating the terms of the settlement agreement in the order . . . a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."). When the lower court in *Roberson* "retained jurisdiction according to the procedures approved in *Kokkonen*, it gave judicial sanction [*10] to a change in the legal relationship of the parties," and so the plaintiffs were properly considered "prevailing parties" entitled to an award of attorney's fees. *See Roberson*, 346 F.3d at 83. *Accord A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 78 (2d Cir. 2005) (applying *Buckhannon* and *Kokkonen* to find administrative agency's dismissal of action that contained endorsement of settlement agreements rendered plaintiffs "prevailing parties" entitled to attorney's fees); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320-21 (11th Cir. 2002) (finding that "if the district court either incorporates the terms of the settlement into its final order of dismissal or expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement . . . [, which] clearly establishes a 'judicially sanctioned change in the legal relationship of the parties,' . . . sufficient to render [plaintiff] a 'prevailing party'" entitled to attorney's fees in an ADA action).

Here, the Stipulation of Discontinuance contained a separate provision stating that "the Court shall retain jurisdiction to enforce, as necessary, the terms of said [Settlement] Agreement" [*11] [DE 21]. Thus, as was the case in *Roberson*, the parties' compliance with the terms of the Settlement Agreement became a part of the Court's Order endorsing the Stipulation of Discontinuance, and "a breach of the [Settlement Agreement] would be a violation of the order." *See Kokkonen*, 511 U.S. at 381. Defendant's argument that the parties entered into a private settlement agreement without the requisite "judicial imprimatur" is misplaced. As Defendant notes in its opposition brief, the Settlement Agreement "provides

that the Court retain jurisdiction to enforce the terms thereof." Def. Mem. at 5. What Defendant does not acknowledge in its brief, however, is that this specific provision allowing the Court to retain jurisdiction to enforce the Settlement Agreement is repeated in the Stipulation of Discontinuance. Based on the precedent set by the Second Circuit in *Roberson*, I find that this Court's express retention of jurisdiction over the enforcement of the Settlement Agreement -- a provision drafted by the parties and obviously agreed to by them -- constitutes a "judicially sanctioned change in the legal relationship of the parties." Consequently, Plaintiffs are properly considered [*12] "prevailing parties" entitled to an award of attorney's fees. *See Roberson*, 346 F.3d at 79.

## IV. AMOUNT OF ATTORNEY'S FEES TO BE AWARDED

### A. Legal Standard

Having established that Plaintiffs are "prevailing parties" under the ADA, the Court must now determine the "reasonable attorney's fee" to which they are entitled. *See* 42 U.S.C. § 12205. The approach most recently espoused by the Second Circuit to determine appropriate attorneys' fees in federal litigation uses as a standard a "presumptively reasonable fee." *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), *amending* 493 F.3d 110 (2d Cir. 2007); [2] *see also Barfield v. N.Y. City Health & Hospitals Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (reiterating the "presumptively reasonable fee" standard). This presumptively reasonable fee should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources [*13] being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Arbor Hill*, 522 F.3d at 184.

> 2   The Second Circuit has recommended abandoning the term "lodestar" as its meaning has "shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Id.*

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Commc'n Services, Inc.*, 543 F. Supp. 2d 156, 2008 WL 552852, at *6 (E.D.N.Y. 2008). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

### B. Procedural [*14] Setting and Timing of Settlement in this Case

Before turning to the issue of what constitutes a "presumptively reasonable fee," the Court needs to address the procedural posture of this case. Subsequent to the Complaint being filed on October 11, 2006 and served on December 11, 2006, the parties entered into a Stipulation on April 3, 2007 extending Defendant's time to answer the Complaint to April 12, 2007. An Order was issued on April 16, 2007 directing the parties to appear before me on June 1, 2007 for the Initial Conference and further directing the parties to submit on ECF, in advance of the conference, their joint proposed discovery plan.

On May 21, 2007, the parties filed a joint letter requesting an adjournment of the June 1, 2007 Initial Conference because "the parties are conducting extensive settlement negotiations intended to fully resolve the dispute" and noting that both sides had already conducted a "mutual inspection of the subject premises" [DE 12]. That application was granted on May 25, 2007 and the Initial Conference was adjourned to July 6, 2007. In that May 25 Order, I directed the parties to make their Rule 26(a) initial disclosures. Based on a scheduling conflict [*15] of one of the attorneys, the conference was re-scheduled to July 11, 2007.

The day before the July 11 scheduled conference, Defendant's counsel filed a letter to the Court advising that "all matters with regard to this case have been resolved, except for the issue of attorney's fees sought by Plaintiffs' counsel" [DE 14]. Counsel indicated that the parties would be appearing on July 11, 2007 to seek the Court's guidance with regard to resolving that outstanding issue.

After meeting with the parties on July 11, 2007, it was clear to me that there were several issues concerning the settlement proposal with which the parties were still at odds. Defendant's counsel raised an issue concerning a defense of standing and I directed Defendant's counsel to confer with his client and to report back to me in writing within ten (10) days. I further directed the parties to resolve dates for the discovery plan and to file the same on ECF by July 19, 2007, which they did. *See* DE 15, 16. On July 19, 2007, Defendant's counsel notified the Court that Defendant was waiving the defense of standing [DE 18] and asked the Court to schedule a conference since the parties had agreed to all of the terms of settlement, [*16] except the issue of attorney's fees.

I held a telephone conference with the parties on August 7, 2007 at which time they advised that they were entering into a consent judgment, with the exception of the attorney's fee issue, which the parties agreed to submit to the Court for determination [DE 19]. The parties further informed that they had discussed and consented to having this case heard before me for all purposes, pursuant to 28 U.S.C. § 636(c). In light of that development, I set a briefing schedule for Plaintiff's motion for attorney's fees and costs. Formal consent to my jurisdiction was filed by the parties on September 13, 2007 and signed by the assigned district judge on September 19, 2007. The parties then filed the motion papers which are the subject of this Order. The Court directed no discovery in this case beyond the Rule 26(a) automatic disclosures. In addition, the Initial Conference was never held. These procedural facts are significant as they apply to the parties' positions in this fee application.

## C. Reasonable Hourly Rate

To determine reasonable hourly rates, the Court must refer to "the prevailing [market rates] in the community for similar services by lawyers of [*17] reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The Court must consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) [3] and must remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.

    3   The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the

client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson,* 488 F.2d at 717-19.

"Overall, hourly rates for attorneys approved in recent Eastern District [*18] of New York cases have ranged from $ 200 to $ 350 for partners, $ 200 to $ 250 for senior associates, $ 100 to $ 150 for junior associates, and $ 70 to $ 80 for legal assistants." *Hyeon Soon Cho v. Koam Med. Servs. P.C.,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $ 250 hourly rate for partner, $ 150 hourly rate for associate, and $ 75 hourly rate for legal assistant) (collecting cases, including *Corbett v. Reliance Moving & Storage, Inc.,* No. 1:00-cv-07656, 2007 U.S. Dist. LEXIS 96747 (E.D.N.Y. May 30, 2007) (unpublished) (awarding an hourly rate of $ 250 per partner, $ 200 per senior associate, $ 150 per junior associate, and $ 70 per legal assistant for work performed in a straightforward ERISA matter)).

### 1. *Lawrence Fuller, Esq.*

Attorney Fuller graduated from the University of Miami School of Law in 1974 and has been a member of the Florida Bar for more than 32 years. Pls. Mem. at 6-7, Ex. 2. In addition to extensive experience as a trial attorney in numerous state and federal courts, Attorney Fuller has worked on matters involving the enforcement of the ADA since approximately March 2001. *Id.,* Ex. 2. Plaintiffs request that the Court set Attorney Fuller's hourly rate [*19] at $ 385 per hour. *Id.* at 6. Plaintiffs contend that this requested hourly rate is justified based upon "the excellent results obtained in bringing the Defendant's property in compliance with the ADA." *Id.* at 8.

Plaintiffs cites to an award of attorney's fees in *Access 4 All, Inc. v. Jarel East End Hotel Corp.,* a similar ADA action that was brought in this District, in support of its request that the Court set Attorney Fuller's hourly rate at $ 385. *Id.,* Ex. 1. In an order dated December 19, 2005, District Judge Feuerstein awarded Attorney Fuller an hourly rate of $ 300 based upon his 31 years of experience as a practicing attorney and his four years of experience litigating ADA claims. *Id.* In *Access 4 All, Inc. v. Park Lane Hotel, Inc.,* No. 04 Civ. 7174, 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555, at *5 (S.D.N.Y. Dec. 7, 2005), another ADA "architectural barrier" case brought by Attorney Fuller and his firm, Magistrate Judge Francis awarded Attorney Fuller an hourly rate of $ 350 based upon his "qualifications, the quality of the work performed in this case, and the range of hourly rates approved in similar cases in this district." *See also*

*Access 4 All, Inc. v. Hi 57 Hotel, LLC*, No. 04 Civ. 6620, 2006 U.S. Dist. LEXIS 2695, 2006 WL 196969, at *5 (S.D.N.Y. Jan. 26, 2006) [*20] (awarding Attorney Fuller $ 350 per hour in similar ADA action).

Plaintiffs also cite to cases outside this district in which Attorney Fuller was awarded hourly rates of $ 300 and $ 325. Pls. Mem at 5 (citing *Disabled Patriots v. Regency Centers, L.P.*, No. 1:04-cv-0419-RWS, 2005 U.S. Dist. LEXIS 44851 (N.D. Ga. 2005) ($ 300 per hour); *Betancourt v. 3600 Centerpoint Parkway Investments, LLC*, No. 03-72868 (E.D. Mich. 2004) ($ 325 per hour)). Finally, Plaintiffs state that courts within this district have awarded at least one civil rights litigator with comparable experience and reputation an hourly rate of $ 300. Pls. Mem. at 5.

Finally, Plaintiffs submit an affidavit from Todd Shulby, Esq., an attorney licensed to practice in Florida who has handled "hundreds of civil rights actions." *Id.*, Ex. 7. Attorney Shulby states that his "current reasonable hourly rate" is $ 325 and that he has recently received attorney's fee awards at the $ 325 per hour rate. *Id.*

Defendant responds that Attorney Fuller's requested $ 385 hourly rate is excessive and is not in line with the hourly rates awarded in this district for attorneys with his level of experience and reputation. Def. Mem. at 15-16. Defendant points out that in each of [*21] the cases cited by Plaintiffs, the court awarded Attorney Fuller an hourly rate of substantially less than the $ 385 per hour that they request here. *Id.* at 16. Defendant also asserts that Attorney Shulby's affidavit should be given little or no weight by the Court because it contains merely his "subjective opinion of the reasonableness of the fees requested" and "shows no indication that Mr. Shulby is familiar with the facts or procedural history of this case." *Id.* at 17 (emphasis deleted). The Court agrees.

The Court finds that based upon the evidence submitted by Plaintiffs and upon a review of the *Arbor Hill* and *Johnson* factors, Attorney Fuller's requested hourly rate of $ 385 is well above the average hourly rate for similar cases in this District. Plaintiffs have submitted no proof that $ 385 is Attorney Fuller's customary hourly rate or that he was "able to bill any other client for the kind of litigation services rendered on behalf of plaintiffs at the claimed rates." *See Cho*, 524 F. Supp.2d at 208. In addition, neither the case law cited by Plaintiffs nor the affidavit submitted by Attorney Shulby support Plaintiffs' claim that Attorney Fuller should be compensated at $ 385 [*22] per hour. The highest hourly rate awarded to Attorney Fuller in the referenced cases was $ 350, and Attorney Shulby acknowledges that his highest customarily charged and awarded fee for this type of case is $ 325.

Additionally, Plaintiffs have failed to address the relative difficulty and complexity of litigating the issues of this case, aside from the conclusory assertion that counsel achieved "excellent results." Pls. Mem. at 8. The Court, left to make such determinations based on its own experience, finds that Plaintiffs' ADA claims regarding the "architectural barriers" that existed at the Premises were relatively straightforward and did not involve novel or complex theories or argument. Moreover, looking at the pleading filed here, it is clear that wholesale portions are duplicated from prior cases brought by Plaintiffs.

Based on the evidence submitted regarding the prevailing market rates and due to the straightforward nature of Plaintiffs' ADA claims, the Court finds that an hourly rate of $ 385 for Attorney Fuller is not warranted in this case. I particularly note Judge Feuerstein's observation which took into account Attorney Fuller's four years of experience litigating ADA   [*23] cases (now seven years) in the context of his 31 years as a practicing attorney. *See Jarel East End Hotel Corp.*, Pls. Mem., Ex. 1 at 7. Accordingly, the Court will adjust Attorney Fuller's hourly rate for this matter to $ 300 per hour. Such adjustment brings Attorney Fuller's hourly rate more in line with the prevailing market rate within this district. *See Finkel*, 543 F. Supp. 156, 2008 WL 552852 at *6 (awarding partner $ 225 per hour in ERISA/LMRA action); *Coated Fabrics Co. v. Mirle Corp.*, No. 06 CV 5415, 2008 U.S. Dist. LEXIS 3470, 2008 WL 163598, at *7 (E.D.N.Y. Jan. 16, 2008) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $ 200 to $ 375 for partners. . . ."); *Cho*, 524 F. Supp. 2d at 208 (awarding partner $ 250 per hour in straightforward wage litigation); *Merrill Lynch Bus. Fin. Services Inc. v. Brook-Island Med. Associates, P.C.*, No. 06 CV 5912, 2007 U.S. Dist. LEXIS 66595, 2007 WL 2667454, at *6 (E.D.N.Y. Aug. 16, 2007) (awarding solo practitioner with 22 years experience $ 250 per hour)

### 2. *Thomas Bacon*

Attorney Thomas Bacon graduated from The American University, Washington College of Law in 1989 and has been an attorney for 18 years, most recently as a solo practitioner and then, as of February 2006, an associate [*24] with Fuller, Fuller & Associates, P.A. Pls. Mem. at 6, Ex. 2. Attorney Bacon, along with Attorney Fuller, has "handled hundreds of lawsuits seeking to force property owners to bring their property into ADA compliance and remove barriers to access." *Id.* at 7. Plaintiffs request the Court award Attorney Bacon an hourly rate of $ 350 for his work on this matter.

Plaintiffs do not submit any citations to cases in this district in which Attorney Bacon was awarded an hourly rate of $ 350, [4] nor do they submit any evidence that $ 350 is his customarily charged rate or that this hourly

rate was ever actually charged to, or paid by, his clients in similar cases. Plaintiffs again rely on the "excellent results obtained" as justification for this requested hourly rate, and again cite Attorney Shulby's affidavit which sets forth his opinion that such an hourly rate is reasonable. Pls. Mem. at 7, Ex. 7. The Court finds these assertions to fall short of the mark.

    4   Plaintiffs do note that Attorney Bacon was awarded an hourly rate of $ 325 in *Access 4 All, Inc. v. Absecon Hospitality Corporation*, Civil Action No. 04-6060 (D.N.J. 2007). Pls. Mem. at 6.

Defendants oppose Plaintiffs request for a $ 350 [*25] hourly rate for Attorney Bacon's work as being excessive and not in line with the prevailing market rates. The Court agrees. Moreover, the Court finds that the routine nature of this case warrants a reduction in Attorney Bacon's fee, given the breadth of Attorney Fuller's experience and position as lead counsel. *See Access 4 All, Inc. v. Grandview Hotel Limited Partnership*, No. 04 Civ. 4368, 2005 U.S. Dist. LEXIS 42539 (Dec. 20, 2005) (Orenstein, J.) The prevailing hourly rate is this district for senior associates is $ 200 to $ 250, *Cho*, 524 F. Supp. 2d at 207, and Plaintiffs have submitted no evidence to justify any departure from these market rates. Accordingly, the Court exercises its discretion to reduce the hourly rate awarded to Attorney Bacon to $ 250 per hour in order to bring it in line with the prevailing market.

### 3. Nelson Stern, Esq.

Attorney Stern acts as both a named plaintiff and co-counsel for Plaintiff Access 4 All, Inc. [5] The only evidence submitted in support of Attorney Stern's qualifications is the length of time that he has worked as a practicing attorney and member of the New York Bar -- 17 years. Pls. Mem. at 6, 7. Although not cited by Plaintiffs, the Court notes that in *Hi 57 Hotel, LLC.*, [*26] Attorney Stern was awarded an hourly rate of $ 350 for his work on a similar ADA matter. 2006 U.S. Dist. LEXIS 2695, 2006 WL 196969 at *3. Finally, Plaintiffs rely on the "excellent results obtained" by their counsel in support of their request that this Court award Attorney Stern an hourly rate of $ 400 for his work on this case. Pls. Mem. at 6, 7.

    5   As Magistrate Judge Maas noted in *Hi 57 Hotel, LLC*, Attorney Stern's dual role exempts him from the general rule that an attorney filing a lawsuit as a pro se plaintiff may not recover attorney's fees. *See Hi 57 Hotel, LLC.*, 2006 U.S. Dist. LEXIS 2695, 2006 WL 196969 at *2 n.1.

This Court agrees with the Defendant's assertion that the requested $ 400 hourly rate for Attorney Stern is beyond the appropriate market rate for an attorney of his experience in this district. *See* Def. Mem. at 15. Likewise, Attorney Stern for all appearances served the role of local counsel (in addition to his being a Plaintiff) in this matter, as reflected by his time entries. *See* Pls. Mem., Ex. 4. Again, Plaintiffs do not cite any cases in which Attorney Stern was awarded an hourly rate of $ 400, nor do they submit any evidence that $ 400 is his customarily charged rate or that this hourly rate was ever actually charged [*27] to, or paid by, his clients in similar cases. Based upon the evidence submitted by Plaintiffs, the Court finds that $ 225 is an appropriate hourly rate for the work performed by Attorney Stern in this matter.

### 4. Paralegal

Although not specified in Plaintiffs' Memorandum of Law, it appears from the attorney time sheets submitted to the Court that Plaintiffs request that paralegal work be compensated at an hourly rate of $ 115. *See* Pls. Mem., Ex. 3. 3. Defendants oppose this billing rate as excessive. Def. Mem. at 16.

Based upon the Court's review of the time records and the paralegal's duties in connection with this case, the Court finds that an hourly rate of $ 75, a rate normally awarded in this district for paralegal work (and awarded in two recent 2008 cases), is appropriate. *See Coated Fabrics Co.*, 2008 U.S. Dist. LEXIS 3470, 2008 WL 163598 at *8 (approving $ 75 per hour fee for paralegal work); *Finkel*, 543 F. Supp. 2d 156, 2008 WL 552852 at *6 (finding $ 75 per hour fee for paralegals to be "reasonable and appropriate"); *Cho*, 524 F. Supp. 2d at 208 (approving $ 75 per hour fee for legal assistant's work on wage and hour case).

### D. Reasonable Number of Hours

To determine whether the number of hours spent by Plaintiffs' counsel were reasonable, [*28] the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 U.S. Dist. LEXIS 42232, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming

fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.*., No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re "Agent Orange" Prod. Liability Litig.*., 818 F.2d 226, 237 (2d Cir. 1987)).

A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, [*29] and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

### 1. *Vague and Block-billed Time Entries*

Defendant contends that many of the time entries are block-billed, vague, and provide insufficient detail as to the exact nature of the tasks performed. Def. Mem. at 14-15. The Second Circuit has clearly held that an attorney's contemporaneous time records "should specify, for each attorney, the date, the hours expended, and *the nature of the work done*." *Carey*, 711 F.2d at 1148 (emphasis added). The burden is on Plaintiffs' counsel to submit time records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987).

Initially, Defendant argues that "Plaintiff Stern's only submission in support of the Application is his one-page 'timesheet' consisting of 'vague and incomplete' task descriptions." Def. Mem. at 14, 25. The Court agrees. Upon review of the invoice, Pls. Mem., Ex. 4, Attorney Stern's October 13, 2006 time entry reflecting one hour spent to "Review initial pleading and file [*30] same" is the only time entry of which the Court can make any sense. Accordingly, of the 4.4 hours charged by Attorney Stern some of which time apparently was devoted to the *pro hac vice* motion of Attorney Bacon, the Court will award attorney's fees for this one hour time entry only.

With respect to Plaintiffs' remaining counsel, the Court agrees that Attorneys Fuller and Bacon could have amplified some of the time entries, such as "phone call(s) with opposing counsel" and "preparing letter to Defendant." Attorneys, however, are not required to provide the Court with a detailed accounting of each minute spent performing a task in the case. Rather, the records produced should be specific enough to assess the amount of work performed. *See Hensley*, 461 U.S. at 437 n.12. Having evaluated the records of the Fuller firm, the Court finds that these time entries though vague in some instances are not so abstruse that the Court is unable to

determine the nature of the work performed. Accordingly, no reduction of hours will be made on this basis.

### 2. *Billing Related to Attorney Bacon's Pro Hac Vice Motion*

Defendant argues that it was not necessary to move for Attorney Bacon's *pro hac vice* admission [*31] in the first instance because Attorney Fuller is admitted to practice in this district and because Attorney Stern could have acted as local counsel. Def. Mem. at 18. It is within the Court's discretion whether to award attorney's fees for a *pro hac vice* motion. *See Pretlow v. Cumberland County Bd. of Social Services*, No. Civ. 04-2885, 2005 U.S. Dist. LEXIS 35547, 2005 WL 3500028, at *6 (D.N.J. Dec. 20, 2005). I decline to do so here. Moreover, the fact that Plaintiffs chose to utilize Florida counsel rather than equally qualified ADA counsel in this District was entirely up to Plaintiffs. Defendant is not required to pay for that choice. Accordingly, the Court declines to award any attorney's fees for the preparation of the *pro hac vice* motion. Accordingly, 1.3 hours attributable to Attorney Fuller on October 31 and November 7, 2006 and two-tenths of an hour attributable to Attorney Bacon on October 6, 2006 will be deducted from the attorney's fee award. [6]

> 6   The Court has already disallowed recovery for the four-tenths of an hour Attorney Stern spent in connection with the *pro hac vice* motion. *See* Section IV(D)(1).

### 3. *Discovery-Related Work Done While Engaging in Settlement Discussions*

Defendant contends that Attorney [*32] Fuller "needlessly" billed 2.9 hours on March 30, 2007 in connection with the preparation of discovery documents and Rule 26(a) disclosures "even though issue had not yet been joined, and he continued to bill for correspondence regarding discovery issues after opposing counsel pointed out that this was needlessly running up the bill pending settlement." Def. Mem. at 19. Plaintiffs contend that it was necessary to perform such "initial discovery work" because it was unclear when, if ever, settlement would be accomplished and "counsel would have been remiss to hold the prosecution of this case in abeyance while a defendant drags settlement negotiations along for a period of several months." Reply Mem. at 10. The Court agrees that Plaintiffs did not act unreasonably by conducting such initial discovery efforts, and does not find the time expended on such efforts to be unreasonable. Accordingly, the Court declines to reduce Plaintiffs' requested fee award on this basis.

### 4. *Pre-Litigation Work*

Defendant argues that attorney's fees for the 3.2 hours spent by Attorney Fuller and Attorney Bacon on "pre-litigation" background work should not be recoverable. Def. Mem. at 19; *see* Pl. Mem., Ex. [*33] 3 (Attorney Fuller's September 14, 15, 22, and October 5, 2006 time entries and Attorney Bacon's August 23, September 6, 2006 time entries). Plaintiffs argue that this work, including "initial investigation of Plaintiff's claims, determination of property ownership, determination [of] whether the Defendant's premises was the subject of prior or pending ADA actions, etc.," was part of their general investigation of "the veracity of Plaintiffs' claims" as mandated by Rule 11. Reply Mem. at 10. The Court agrees that the time spent on this pre-litigation work was reasonable, *compare Lake v. Schoharie County Comm'r of Soc. Servs.*, No. 9:01-CV-1284, 2006 U.S. Dist. LEXIS 49168, at *26-27 (N.D.N.Y. May 16, 2006) (finding the more than 81 hours spent on initial investigation of a civil rights claim brought under Section 1988 to be excessive), and appears to have been expended in furtherance of the litigation. The Court will, however, deduct one-quarter hour from Attorney Fuller's September 15, 2006 time entry for his phone call with Ms. Durbin, Plaintiffs' expert, as this does not correspond with Ms. Durbin's invoice and time records. See Section VI, below.

Moreover, the Court does not find that [*34] Attorney Bacon's expenditure of two hours to draft the Complaint in this case is excessive. *See* Def. Mem. at 22. While the Court recognizes that the Complaint is very similar to the complaint filed in *Access 4 All, Inc. v. Grandview Hotel Limited Partnership*, No. 04 Civ. 4368, 2006 U.S. Dist. LEXIS 15603, at *10 (E.D.N.Y. Mar. 6, 2006) (and, indeed, contains much of the same language and phrasing), the Court also notes that some work had to be put into the drafting of the Complaint to make it applicable to this particular case. Two hours was not an unreasonable amount of time to do so, and the Court will not reduce these requested hours.

### 5. Work Done by Multiple Attorneys

Defendant argues "[i]t is excessive in itself that three experienced attorneys participated in this straightforward action especially given that all three of the attorneys have been involved in numerous similar, if not identical, cases." Def. Mem. at 20. Although Defendant cites Attorney Fuller's attendance at the July 11, 2007 initial conference as an example, the Court finds that Attorney Fuller did not charge for his time spent to travel to or attend this conference. *See* Reply Mem. at 11-12. In addition, although [*35] both Attorney Bacon and Attorney Stern billed for time spent in connection with the Rule 34 inspection notice, the Court has already determined that this time charged by Attorney Stern will not be compensated. *See* Section IV, C, 1, above. Finally, the fact that

Attorney Fuller and Attorney Bacon both participated in settlement negotiations does not automatically mean that their work was duplicative. *See Kapoor v. Rosenthal*, 269 F. Supp. 2d 408, 414 (S.D.N.Y. 2003) ("Multiple attorneys are allowed to recover fees on a case if they show that the work reflects the distinct contributions of each lawyer."). Accordingly, the Court will not reduce the hours requested on this basis.

### 6. The Instant Fee Application

Defendant contends that the time spent by Plaintiffs preparing this attorney's fee application is excessive. In general, when a plaintiff is awarded reasonable attorney's fees, the plaintiff is also entitled to an award of reasonable attorney's fees in connection with the time spent to prepare the fee application. *See, e.g., Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995); *Davis v. City of New Rochelle*, 156 F.R.D. 549, 560 (S.D.N.Y. 1994). [*36] In considering this issue, the Court notes that Plaintiffs' counsel has done many fee applications prior to this one and were not dealing with novel or complex issues. The Court has reviewed the time entries in connection with the fee application by Plaintiffs' counsel which indicate that Attorney Bacon spent 8.2 hours drafting the initial fee application and 11.2 hours drafting the reply, while Attorney Fuller spent one-half an hour reviewing the fee application. The Court finds these hours to be excessive, especially in light of the numerous prior fee applications drafted by Plaintiffs' counsel. Accordingly, the 19.4 total hours spent by Attorney Bacon will be reduced by half to 9.7 hours.

### 7. Travel Time

Defendant objects to Attorney Bacon's May 16, 2007 time entry which reflects three hours charged at his full hourly rate for "Travel to New York City for inspection" [7] and 4.6 hours billed for "Local travel to inspection, attending inspection and meeting with expert." Def. Mem. at 22. It is well-established that within this circuit, time charged by an attorney for travel will be reimbursed at half of the attorney's hourly rate. *Duke v. County of Nassau*, No. 97-CV-1495, 2003 U.S. Dist. LEXIS 26536, 2003 WL 23315463, at *5 (E.D.N.Y. Apr. 14, 2003) [*37] ("[A]ll time entries which account for travel time will be compensated at fifty percent of the attorney's general billing rate."); *Connor v. Ulrich*, 153 F. Supp. 2d 199, 203 (E.D.N.Y. 2001) ("[C]ourts in this circuit customarily reimburse attorney's for travel time at fifty percent of their hourly rates.") (internal quotation marks omitted). In Attorney Bacon's second entry, it is impossible to determine what portion of the 4.6 hours was devoted to "local travel." Accordingly, the entire 7.6 hours billed on May 16, 2007 will be compensated at $ 112.50

(or half of the $ 225 per hour rate the Court finds appropriate for Attorney Bacon, see Section IV, B, 2, above).

7    Plaintiffs note that although it took Attorney Bacon six hours to travel to New York, he charged only three of those hours to Plaintiffs and charged the remaining three hours to another unrelated client. Reply Mem. at 13.

**E. Calculation of Presumptively Reasonable Fee**

Based upon the Court's adjusted reasonable hourly rates and adjusted reasonable number of hours, the presumptively reasonable attorney's fees in connection with Plaintiffs' ADA claim are $ 18,465, and are calculated as follows:

| Attorney/Legal Intern | Hourly Rate | No. of Hours Requested | No. Of Hours Awarded | Award |
|---|---|---|---|---|
| Lawrence Fuller | $ 300 | 18.7 | 17.15 | $ 5,145 |
| Thomas Bacon | $ 250 | 52.9 | 43 | $ 10,750 |
| Thomas Bacon | $ 112.50 (travel rate) | 7.6 | 7.6 | $ 855 |
| Nelson Stern | $ 225 | 4.4 | 1 | $ 225 |
| Paralegal | $ 75 | 2.3 | 2.3 | $ 172.50 |
| Total | | | | $ 17,147.50 |

**F. [*38] Overall Reduction of Presumptively Reasonable Fee**

Defendant argues that the Court should exercise its discretion to reduce or decline to award attorney's fees because Plaintiffs and their counsel are "professional litigants" who have commenced 24 reported ADA actions in New York, Florida, Ohio, Massachusetts, and Texas, and who have filed 84 ADA-related actions in New York since 2003. Def. Mem. at 8-9. Defendant asserts that an award of the full amount of attorney's fees requested is not warranted here because "important public policy interest[s] are served by preventing a proliferation of suits brought under the auspices of aiding the disabled, but [are] in reality commenced solely for the purposes of churning out billable hours." Def. Mem. at 11-12 (collecting cases from Florida district courts in which courts criticized ADA-litigation "cottage industry").

Most persuasive to the Court is Defendant's citation to *Access 4 All, Inc. v. Grandview Hotel Limited Partnership*, No. 04 Civ. 4368, 2006 U.S. Dist. LEXIS 15603, at *10 (E.D.N.Y. Mar. 6, 2006), a decision in which District Judge Platt reviewed a Report and Recommendation by Magistrate Judge Orenstein awarding attorney's fees to Plaintiff [*39] *Access 4 All*, another individual plaintiff, and their counsel Fuller, Fuller & Associated, P.A. The court noted that the plaintiffs and their attorneys

. . . have pursued dozens of Title III actions against various hotels in federal courts throughout New York, New Jersey, Massachusetts, and D.C. These cases involve identical legal issues and similar factual issues. The duplicitous nature of the litigation warrants a reduction in the law firm's fee award.

*Id.* In particular, the court found that the complaint filed in *Grandview Hotel Limited Partnership* "contain[ed] the same boilerplate language as Complaints the firm filed" in at least two other cases. 2006 U.S. Dist. LEXIS 15603 at *11. After comparing the Complaint filed in this action to the complaint filed in *Grandview Hotel Limited Partnership*, this Court concludes that the two pleadings contain most of the same "boilerplate language," and the Court has taken note of the evidence submitted by Defendant with respect to the numerous other similar ADA actions filed by Plaintiffs and their counsel, both within and outside this district. Curto Decl., Ex. C.

As the court in *Grandview Hotel Limited Partnership* noted, "[w]hen confronted with such a situation, a [*40] court may choose to (i) cut the number of hours billed, (ii) reduce the amount of the fee, or (iii) disallow the entire amount." 2006 U.S. Dist. LEXIS 15603 at *12 (choosing to reduce counsel's hourly rate from $ 250 per hour, awarded by Magistrate Judge Orenstein, to $ 150 per hour based upon "the garden variety nature of this action and its lack of complexity). The Court finds that an overall reduction of 15% of the attorney's fees awarded is appropriate in this instance. Accordingly, the presumptively reasonable fee of $ 17,147.50 is hereby

reduced by 15% (or $ 2,572.13). Plaintiffs are hereby awarded attorney's fees in the amount of $ 14,575.37.

## V. COSTS

The ADA provides that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. Pursuant to Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Local Civil Rule 54.1 provides that taxable [*41] costs include monies expended for trial transcripts, deposition transcripts "if the deposition was used or received in evidence at the trial," and witness fees and mileage for witnesses that testify at trial. Plaintiffs seek a total of $ 2,702.74 in costs for the Fuller firm (which accounts for all the costs itemized in Exhibit 3 less the expert report fees, which are dealt with in Section VI, below) and seeks $ 300 in costs for Attorney Stern, see Pls. Mem., Ex. 4.

The Court maintains sole discretion whether to allow taxation of costs. *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir. 1995). Plaintiffs, as the prevailing party, bear the burden to justify the taxation of costs. *John & Kathryn G. v. Bd. of Educ. of Mount Vernon Pub. Sch.,* 891 F. Supp. 122, 123 (S.D.N.Y. 1995).

With respect to the costs incurred by the Fuller firm, Defendant objects to a May 9, 2007 $ 250 expense for "Travel: Meal(s) & Tip(s) & Ground Transportation incurred by attorney," because it does not correspond to any time entry or task performed by Attorney Fuller or Attorney Bacon on that date. Def. Mem. at 23. The Court agrees with Defendant and declines to reimburse Plaintiffs for this cost. Defendant [*42] also objects to a July 8, 2007 $ 250 expense for "Travel: Airfare and miscellaneous expenses for hearing," because the Fuller firm did not provide supporting documentation and because Plaintiffs did not explain why Attorney Fuller had to travel to attend the initial conference hearing when Attorney Stern resides locally. *Id.* The Court finds that this is a reasonable cost, especially considering that Attorney Fuller did not bill for his time to travel or attend this hearing. Accordingly, the Court will reimburse Plaintiffs for this cost.

Defendant also objects to the $ 750 "Re-Inspection Fee(s) to disability group." *Id.* at 24. Although Plaintiffs do not explain what a "re-inspection fee" is, the Court presumes that it is "for 'the reinspection contemplated after the Defendant completes the repairs of the existing barriers to access, to confirm that ADA violations have

been corrected.'" *Park Lane Hotel, Inc.,* 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555 at *5 (same Plaintiff Access 4 All, Inc. represented by the Fuller firm). The Court agrees with the *Park Lane Hotel* court that "there is no basis for assessing against the defendant the costs of monitoring compliance where the monitoring entity has not been identified [*43] and the work has not been performed." *Id.* Accordingly, the Court declines to reimburse Plaintiffs for this $ 750 cost.

Finally, Plaintiffs seek reimbursement for a $ 300 "New case service" charge levied by Attorney Stern. Plaintiffs have provided absolutely no evidence or explanation as to what this cost is or why it is necessary. Accordingly, the Court declines to reimburse Plaintiffs for this $ 300 cost.

The Court finds Defendant's remaining objections to Plaintiffs' request for costs to be without merit. Therefore, Plaintiffs will be awarded $ 1,702.74 in costs.

## VI. EXPERT FEES

"Under the ADA, a court may award a plaintiff its expert witnesses' reasonable fees as a litigation expense." *Access 4 All, Inc. v. Hi 57 Hotel, LLC,* No. 04 Civ. 6620, 2006 U.S. Dist. LEXIS 2695, 2006 WL 196969, at *4 (S.D.N.Y. Jan. 26, 2006). *See also* 42 U.S.C. §§ 12117(a), 12205; *Access 4 All, Inc. v. Park Lane Hotel, Inc.,* No. 04 Civ. 7174, 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555, at *5 (S.D.N.Y. Dec. 7, 2005) (noting the court's discretion to award expert witness fees to prevailing parties under the ADA). Plaintiffs seek reimbursement for expert witness fees in the amount of $ 5,512.50 for two reports prepared by Carol Durbin. Pl. Mem. at 9-10, Ex. 8, 9. Plaintiffs [*44] contend that based upon Ms. Durbin's credentials, $ 175 is a reasonable hourly rate for her services, *id.* at 10, Ex. 10, and has submitted an invoice detailing her activities in connection with these two reports. *Id.,* Ex. 11.

Defendant contends initially that Plaintiffs should not be permitted to recover these expert witness fees because "[t]here was no need for expert witnesses because immediately after issue was joined, the parties commenced settlement negotiations," and so there was no pretrial discovery or motion practice. Def. Mem. at 24. Defendant also argues that Plaintiffs' use of an expert located in Florida rather than a "local expert" diminishes their entitlement to expert fees. *Id.* Finally, Defendant contends that Ms. Durbin's hourly rate of $ 175 is excessive. *Id.*

The Court disagrees with Defendant's contention that there was "no need" for Ms. Durbin's expert reports. Clearly, Plaintiffs relied upon Ms. Durbin's facility inspections and reports in initiating and litigating this case. *See Hi 57 Hotel, LLC,* 2006 U.S. Dist. LEXIS 2695,

2006 WL 196969 at *4. Accordingly, Plaintiffs may recover the expert witness fees requested, with the following modifications. Ms. Durbin's August 21, 2006 Invoice contains [*45] an entry for "Meeting with plaintiff's counsel" on August 8, 2006 that does not correspond with any of the submitted attorneys' invoices. Accordingly, the amount of awarded expert fees will be reduced by $ 350 (2 hours x $ 175 hourly rate). In addition, while the Court finds Ms. Durbin's hourly rate of $ 175 to be reasonable, *see id.* (awarding expert fees based upon Ms. Durbin hourly rate of $ 175), the Court does not, in its discretion, find that Ms. Durbin's six hours of travel time should be compensated at her regular $ 175 hourly rate. Rather, the Court finds it appropriate to compensate Ms. Durbin's travel time at $ 87.50 per hour, or half of her hourly rate. *See Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109, 2002 U.S. Dist. LEXIS 14832, 2002 WL 1870383, at *2 (S.D.N.Y. Aug. 13, 2002) (compensating expert witness for travel time at half his regular rate). Accordingly, the amount of awarded expert fees will be further reduced by $ 525 (six hours of travel time x $ 87.50 reduction from normal hourly rate).

Therefore, Plaintiffs' application for expert fees is GRANTED and Plaintiff is awarded $ 4,637.25 in expert fees.

## VII. CONCLUSION

Based on the foregoing, Plaintiffs' attorney's fee application is hereby [*46] GRANTED to the extent set forth above, and Plaintiffs are awarded $ 14,575.37 in attorney's fees. Plaintiffs' request to tax costs and expert fees is also hereby GRANTED and Plaintiffs are awarded $ 1,702.74 in costs and $ 4,637.25 in expert fees.

**SO ORDERED.**

Dated: Central Islip, New York

September 30, 2008

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON

U.S. Magistrate Judge



FOCUS - 1 of 3 DOCUMENTS

**JOHN REITER, Plaintiff, -v.- METROPOLITAN TRANSPORTATION AU-
THORITY OF THE STATE OF NEW YORK, MTA NEW YORK CITY TRANSIT,
and MYSORE L. NAGARAJA, P.E., Individually and as Senior Vice President and
Chief Engineer, Defendants.**

**01 Civ. 2762 (GWG)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2007 U.S. Dist. LEXIS 71008**

**September 25, 2007, Decided
September 26, 2007, Filed**

**PRIOR HISTORY:** Reiter v. MTA N.Y. City Transit
Auth., 457 F.3d 224, 2006 U.S. App. LEXIS 18229 (2d
Cir. N.Y., 2006)

**COUNSEL:** [*1] For Plaintiff: Gregory G. Smith,
Esq., Gregory Smith & Associates, New York, NY.

For Defendant New York City Transit Authority: Steven
M. Stimell, Esq., Jay P. Warren, Esq., Bryan Cave LLP,
New York, NY.

**JUDGES:** GABRIEL W. GORENSTEIN, UNITED
STATES MAGISTRATE JUDGE.

**OPINION BY:** GABRIEL W. GORENSTEIN

**OPINION**

*OPINION AND ORDER*

GABRIEL W. GORENSTEIN, UNITED STATES
MAGISTRATE JUDGE

| | |
|---|---|
| I. INTRODUCTION | 1 |
| A. Factual Background | 1 |
| 1. Reiter's 2003 Fee Application | 1 |
| 2. Appeal | 3 |
| 3. Reiter's Current Fee Application | 3 |
| II. DISCUSSION | 4 |
| A. Reasonable Hourly Rate | 5 |
| 1. Difficulty of the Case | 8 |
| 2. Counsel's Customary Rates | 9 |
| 3. Experience of Attorneys | 11 |
| 4. Survey Evidence/Awards in Other Cases | 12 |
| 5. Summary | 15 |
| B. Reasonable Hours | 17 |
| 1. First Application: Time Expended Through Judgment | 19 |
| a. Hours to be Eliminated | 19 |
| i.   Time Spent on Plaintiff's Motion for Summary Judgment | 20 |
| ii.  Time Spent on Plaintiff's Two Motions to Strike | 21 |

| | |
|---|---|
| iii. Time Summaries That Do Not Match Contemporaneous Records | 23 |
| iv. Summary of Time To Be Eliminated | 24 |
| b. Percentage Reduction | 24 |
| i. Background | 24 |
| ii. Pursuit of Unsuccessful Claims | 26 |
| iii. Time Spent After the NYCTA Offered to Reinstate Reiter | 27 |
| iv. Evidence of Excessive Time Spent | 29 |
| v. Vague Entries | 29 |
| c. Conclusion as to Percentage Reduction | 30 |
| d. The Request for Overall Reduction for Lack of Success | 31 |
| e. Conclusion as to First Application | 34 |
| 2. Second Application: Entry of Judgment to Present | 34 |
| a. Hours to Be Eliminated | 35 |
| b. Claims as to Excessive Hours | 38 |
| c. Conclusion as to the Second Application | 40 |
| C. Expenses and Costs | 40 |
| 1. Costs Related to the First Fee Application | 41 |
| 2. Costs Related to the Second Fee Application | 43 |
| Conclusion | 44 |

John [*2] Reiter brought this action in April 2001 against his employer, the New York City Transit Authority ("NYCTA"); his former supervisor Mysore L. Nagaraja; and the Metropolitan Transportation Authority of the State of New York. Following a jury trial, he obtained damages and injunctive relief based on retaliatory conduct that he suffered as an employee of the NYCTA. Reiter has made an application for attorney's fees. The parties have consented to disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). I.

*INTRODUCTION*

A. *Factual Background*

1. *Reiter's 2003 Fee Application*

The vast majority of the claims Reiter originally made in his complaint were dismissed as a result of a summary judgment motion by defendant. *Reiter v. Metro. Transp. Auth.*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167 (S.D.N.Y. Sept. 30, 2002) (JGK) ("*Reiter I*"). The remaining claim, for retaliation, was the subject of a jury trial held in 2003. The jury found that the NYCTA had unlawfully retaliated against Reiter when it demoted him in response to his filing a complaint with the Equal Employment Opportunity Commission and awarded him $ 140,000 in pain and suffering, a sum the trial court later reduced to $ 10,000 [*3] on defendants' motion for remittitur. *See Reiter v. Metro. Transp. Auth.*

of *N.Y.*, 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *6, 8-11 (S.D.N.Y. Sept. 30, 2003) (JGK) ("*Reiter II*"). After trial, Reiter moved for equitable relief pursuant to 42 U.S.C. 2000e-5(g)(1), including, *inter alia*, reinstatement. The Court granted reinstatement, but denied the remainder of Reiter's demand for equitable relief. 2003 U.S. Dist. LEXIS 17391, [WL] at *13-16. In November 2003, Reiter moved for attorney's fees and costs.[1]

1 *See* Motion for Attorney's Attorney's [sic] Fees and Costs, filed Nov. 12, 2003 (Docket # 93) ("Pl. First Mot."); Affirmation [of Gregory G. Smith] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. First Mot.) ("Smith Aff."); Affirmation [of Janet Lennon] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. Mot.) ("Lennon Aff."); Affirmation [of Charlesa E. London] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. First Aff.") ("London Aff."); Memorandum of Points and Authorities in Support of Motion for Attorney's Fees and Expenses, filed Nov. 12, 2003 (Docket # 94) ("Pl. First me."); Affirmation of Steven M. Stimell in [*4] Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, filed Mar. 3, 2004 (Docket # 104); Defendant's [sic] Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees and Costs, filed Mar. 3, 2004 (Docket #

105) ("Def. First Mem."); Plaintiff's Memorandum of Law in Reply in Further Support of His Motion for Attorneys' Fees and Costs, filed May 3, 2004 (Docket # 112) ("Pl. First Reply Mem."); Declaration of Gregory G. Smith in Further Support of Plaintiff's Application for Attorneys' Fees and Costs, filed May 3, 2004 (Docket # 113).

In the 2003 application, Reiter sought $ 457,155 in fees for 1,713.30 hours of work performed by three attorneys who represented him during his court proceedings as well as court costs. *See* Pl. First Mot. Reiter arrived at that figure by presenting a total of 1,713.30 hours at a rate of $ 350 per hour for work by attorneys Gregory Smith and Janet Lennon and $ 150 per hour for attorney Charlesa London. In ruling on that application, this Court concluded that Reiter could not recover fees incurred subsequent to the Offer of Judgment made by the defendants. *See Reiter v. Metro. Transp. Auth.*, 224 F.R.D. 157, 169 (S.D.N.Y. 2004) (GWG) [*5] ("*Reiter III*"). As to the work of Reiter's counsel prior to that date, the Court concluded that Reiter's counsel had presented insufficient evidence as to an appropriate fee for his services and awarded a fee of $ 200 per hour to Smith and Lennon based on the $ 175 per hour fee set forth in Reiter's retainer agreement as adjusted for inflation. *See Reiter v. Metro. Transp. Auth.*, 224 F.R.D. 157, 2004 WL 2072369, at *8 (S.D.N.Y. Sept. 2004) (GWG) ("*Reiter IV*"). As a result, judgment was entered for $ 17,075.42 in attorney's fees and costs.

## 2. Appeal

Reiter appealed the judgment, and the Second Circuit affirmed in part and reversed and remanded in part. The Second Circuit ruled that Reiter was entitled to attorney's fees that arose after the Offer of Judgment. *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 229-32 (2d Cir. 2006) ("*Reiter V*"), *cert. denied*, 127 S. Ct. 1331, 167 L. Ed. 2d 84 (2007). In addition, the Second Circuit concluded that this Court had not given "appropriate weight" to evidence in the record that Reiter's attorneys had "set the retainer rate because, in part, they were offering a discount to a plaintiff in a civil rights case." *Id.* at 233. Accordingly, it remanded the case for "additional [*6] consideration" of the appropriate rate for plaintiff's attorneys. *Id.*

## 3. *Reiter's Current Fee Application*

Following remand, Reiter supplemented his previous motion for attorney's fees to include time spent for the 2003 fee application, the appeal to the Second Circuit, and the supplemental fee application itself. Reiter now seeks an award of $ 877,575.00 in attorney's fees - for 2,056 hours of work performed by Smith, Lennon, and London. Pl. Supp. Mem. at 1. He has raised the hourly

rate for which he seeks compensation to $ 500 per hour for the work performed by Smith and Lennon and $ 300 per hour for work by London. *See* 2003 U.S. Dist. LEXIS 17391, [WL] at 1 n.1. The defendants challenge the rates claimed in Reiter's supplemental fee application as well as the hours sought.[2]

> 2   *See* Notice of Supplemental Motion for Attorneys' Fees, filed on Nov. 30, 2006 (Docket # 126); Affirmation [of Gregory Smith], filed Nov. 30, 2006 (Docket # 127) ("Supp. Smith Aff."); Memorandum of Points and Authorities in Support of Supplemental Motion for Attorney's Fees and Expenses, filed Nov. 30, 2006 (Docket # 128) ("Pl. Supp. Me."); Defendant's [sic] Memorandum of Law in Opposition to Plaintiff's Supplemental Motion for Attorney's Fees, [*7] filed Jan. 22, 2007 ("Docket # 130) ("Def. Supp. Mem."); Declaration of Jay P. Warren, dated Jan. 18, 2007 ("Warren Decl.") (attached to Def. Supp Mem.); Declaration of Steven M. Stimell, dated Jan. 18, 2007 (attached to Def. Supp. Mem.) ("Stimell Supp. Decl."); Smith Affirmation in Further Support of Supplemental Fees and Expenses, filed Mar. 13, 2007 (Docket # 133) ("Smith Supp. Reply Aff."); Plaintiff's Reply Memorandum of law in Further Support of His Supplemental Attorney's Fees and Costs Application, dated Mar. 12, 2007 (Docket # 133) ("Pl. Supp. Reply Me."); Letter from Jay P. Warren, dated Mar. 21, 2007 (Docket # 134) ("Sur-reply"); Letter from Gregory G. Smith, dated Apr. 6, 2007 (Docket # 132) ("Sur-Sur-Reply").

## II. *DISCUSSION*

42 U.S.C. § 2000e-5(k) provides that a "prevailing party" in an action under Title VII may recover, in the court's discretion, "a reasonable attorney fee (including expert fees) as part of the costs." *See, e.g., Am. Fed'n of State, County & Mun. Employees v. County of Nassau*, 96 F.3d 644, 650 (2d Cir. 1996) ("An award of fees under Title VII is within the discretion of the trial court . . . ." (internal quotation marks and citation omitted), *cert. denied*, [*8] 520 U.S. 1104, 117 S. Ct. 1107, 137 L. Ed. 2d 309 (1997). The jury's verdict in Reiter's favor made him a "prevailing party" and, because there are no "special circumstances" justifying a denial of fees, he is entitled to recover reasonable attorney's fees as part of the costs assessed against the defendants. *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414-415, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975) (discussing *Newman v. Piggie Park Enters.*, 390 U.S. 400, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968)).

As the Second Circuit noted in its recent decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate . . . ." *Id.* at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). This figure has commonly been referred to as the "lodestar" -- a term that *Arbor Hill* eschews in favor of the term "presumptively reasonable fee." *Id.* at 111.

A. *Reasonable Hourly Rate*

*Arbor Hill* made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to [*9] pay . . . ." *Id.* at 112. Thus, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* In addition, the rate to be set for Reiter's attorneys must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Reiter V*, 457 F.3d at 232 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

To determine an appropriate hourly rate, *Arbor Hill* directs that a court should engage in the following process

the district court, in exercising its considerable discretion, [is] to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to [*10] spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate

what can properly be termed the "presumptively reasonable fee."

493 F.3d at 117-18 (emphasis in original). The "*Johnson* factors" are those originally laid out in the case of *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). These factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of [*11] the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 493 F.3d at 114 n.3 (citing *Johnson*, 488 F.2d at 717-19).

*Arbor Hill* specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Id.* at 112.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested-in [*12] particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community. *Blum*, 465 U.S. at 895 n.11; *601 W. Assocs. LLC v. Kleiser-Walczak Constr. Co.*, 2004 U.S. Dist. LEXIS 8920, 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004).

In his original application, submitted in November 2003, Smith sought $ 350 per hour for himself (and Lennon) and $ 150 per hour for London. *See* Pl. First Mot. Smith now requests hourly rates of $ 500 for himself and Lennon, and $ 300 for London. *See* Pl. Supp. Mem. at 1 n.1. Reiter states that even if "$ 350 per hour was the prevailing rate in the Southern District of New York when plaintiff made his first fee application," *see* Pl. Supp. Reply Mem. at 5, "[t]wo plus years have since passed and arguably the rates in the Southern District of New York have gone up." *Id.*

Reiter's own briefing with respect to the *Johnson* factors or any other factors relied upon by the Second Circuit has been cursory: he did not review them at all in his initial memorandum of law and reviews them in just one of his submissions, and there only briefly. *See* Pl. First Reply Mem. at 17-19. While we have considered all the *Johnson* factors as well as the other factors [*13] summarized in *Arbor Hill*, some of them do not support either an increase or a decrease in the hourly rate and/or have not been argued or briefed by the parties. Thus, we discuss below only those most pertinent to our conclusion as to the appropriate hourly rate.

Specifically, we discuss in separate sections below (1) the difficulty of the case-which encompasses the novelty and complexity of the issues and the level of skill required to perform the legal services properly; (2) information as to counsel's customary hourly rates; (3) counsel's experience, reputation, and abilities; and (4) awards in similar cases. With respect to the results obtained, we follow what has been the prevailing practice in this Circuit and consider this question in a later section that discusses whether there should be an adjustment in the presumptively reasonable fee based on limited success. *See* section II.B.1.d below.

### 1. *Difficulty of the Case*

At the outset, the Court notes that this case involved a single plaintiff and the testimony of seven witnesses, including plaintiff and his wife, over a six-day trial. *Reiter II*, 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *1, 5. As is discussed further below, the Court had previously dismissed [*14] many of Reiter's claims and allowed but a single retaliation claim to go to the jury. *See Reiter I*, 2002 U.S. Dist. LEXIS 18537,

2002 WL 31190167, at *14. The only monetary damages Reiter sought from the jury was compensation for pain and suffering. *Reiter II*, 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *1. Questions of equitable relief were decided by the district judge. 2003 U.S. Dist. LEXIS 17391, [WL] at *13-16.

There is nothing to suggest that this case was particularly novel or complex. No discovery or other disputes were the subject of any court briefing until the summary judgment motions were filed -- an event that took place approximately eight months after the defendants answered. Plaintiff deposed six witnesses. *See id.* Notably, Reiter made this case more complex than it needed to be given that, following discovery, he pursued numerous claims that were ultimately dismissed by the district court. *See generally Ricard v. Kraft Gen. Foods, Inc.*, 1993 U.S. Dist. LEXIS 21062, 1993 WL 385129, at *3 (S.D.N.Y. Mar. 16, 1993) ("It is not generally speaking, a good litigation tactic to attempt to ride several different legal causes of action at trial . . . . [This] approach . . . increas[es] the information which must be reviewed in order to determine whether a genuine issue of material fact [*15] exists."), *aff'd*, 17 F.3d 1426 (2d Cir. 1994). Finally, no inference of complexity should be taken from the fact that the case was originally filed in 2001. The discovery period of approximately six months was in line with, if not shorter than, the discovery period in many cases of this type. The trial was not lengthy. The vast bulk of time spent since the filing of the complaint has been devoted to the dispute over attorney's fees.

### 2. *Counsel's Customary Rates*

One of the *Johnson* factors that seems particularly helpful in determining the maximum ceiling of "what a reasonable, paying client would be willing to pay," *see Arbor Hill*, 493 F.3d at 112, for a particular attorney's services is that attorney's "customary hourly rates." *Id.* at 114 n.3 (citing *Johnson*, 488 F.2d at 718). In calculating "what rate a paying client would be willing to pay," *id.* at 112, a paying client normally would have no reason to pay more than the attorney's customary rate.

In plaintiff's original application, he supplied no information as to his own customary rates. Defendants in their opposition papers argued that there were a number of deficiencies in plaintiff's application, including that there was no evidence [*16] that his lead counsel, Smith, "actually" charged clients anything more than $ 200 per hour. Def. First Mem. at 15. In his reply papers, plaintiff cursorily argued the *Johnson* factors, *see* Pl. First Reply Mem. at 17-19, but still gave no evidence as to his attorney's "customary hourly rate."

After remand from the Second Circuit, the Court held a conference at which it informed Smith that he

needed "to provide evidence of what you actually charged clients," and, more broadly, that the Court had "not been given help . . . as to what . . . a proper rate is, other than what [is] contained in case law," see Transcript, dated Oct. 30, 2006 (Docket # 137), at 4, 6-7 -- referring to Reiter's citation of case law as the exclusive evidence that he had provided as to the market rate for his counsel's services.

In the supplemental briefing, Reiter and the defendants submitted some of Smith's retainer agreements in criminal cases. Defendants have appended three of Smith's retainer agreements, dated April 12, 2005, May 4, 2005, and July 16, 2006, which all provide for payment of a flat fee for certain services in defending a criminal case but also specify hourly rates for additional services of between [*17] $ 250 to $ 350 per hour. Def. Supp. Mem. at 6-7; see also Smith Retainer Agreements (appended to Smith Affirmation in Response to Letter Written by Jay P. Warren, dated Nov. 20, 2006) (reproduced as Ex. A to Warren Decl.). Smith has one retainer agreement for a "complex criminal tax case" currently pending in this district that calls for $ 350 per hour for all pre-trial services and for disposition of the case prior to trial and $ 450 per hour for the trial of the case. Pl. Supp. Reply Mem. at 8-9; see also Letter from Gregory G. Smith, dated Apr. 26, 2007 (Docket # 136) (retainer agreement for representation on a 2007 criminal drug conspiracy charge; flat rate but "in case of dispute," $ 450/hour in and out of court). There is no evidence as to whether the hourly billable rate was actually paid to Smith on any of these cases.

In any event, these rates may be appropriate with respect to payment to Smith on criminal matters but not with respect to civil cases. As is described further in the next section, Smith has extensive criminal experience but, as of 2001 -- the date Reiter retained Smith -- little civil experience. As a result, his hourly rate for criminal cases is of limited utility [*18] for purposes of determining an appropriate rate in this civil case. Notably, plaintiff has supplied no agreements with respect to any civil cases for any of the three attorneys in this matter. Nor have these counsel even asserted that they have ever been paid an hourly rate for civil cases.

### 3. Experience of Attorneys

To support his originally-sought rates, Reiter submitted London and Lennon's resumes as well as affidavits from all three attorneys which described their experience in general terms. See Smith Aff.; Lennon Aff.; London Aff.; see also Resumes (reproduced in Ex. 1 of Pl. First Mot.). Both Smith and Lennon have significant criminal experience. Smith was admitted in 1988, and worked in the New York County District Attorney's Office from that year until 1995. See Smith Aff. P 4. Len-

non has been practicing since 1981: she has spent time at the Office of the Special Narcotics Prosecutor, the New York County District Attorney's Office, and the New York City Police Department. See Lennon Resume. As to their experience in civil matters, the record is sparse. Smith's affidavit gives only the most generic descriptions of his civil experience. Smith Aff. P 4. He offers no discussion [*19] of his experience in employment cases -- such as descriptions or number of cases filed prior to bringing Reiter's suit, or any other details of what these litigations entailed. Both attorneys indicate only that they "completed several employment discrimination cases in the Southern and Eastern Districts of New York[,] all but the instant case settling out of court for money damages." Pl. Reply Mem. at 16. Smith was admitted to the federal court bar only in 1998 -- three years before the litigation began. Def. First Mem. at 19.

Less information has been provided concerning London. It would appear from her resume that she was admitted to the New York State Bar in either 2000 or 2001 and that, prior to becoming employed with Smith's solo practice in September 2001, she worked at a New York City firm handling largely criminal matters. See Resume of Charlesa E. London, undated (reproduced in Ex. 1 to Pl. First Mot.), at 1. [3]

> 3   While Smith and Lennon themselves offer no useful description of their civil experience, the additional information provided by defendants shows that it was very limited as of 2001. See Def. Supp. Mem. at 7 n.3.

The lack of significant experience of Reiter's attorneys [*20] in employment discrimination matters is important to the analysis of rates inasmuch as this Court can only award the prevailing market rate for counsel of "similar experience and skill" to Reiter's counsel. Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005).

### 4. Survey Evidence/Awards in Other Cases

Reiter has submitted a survey published in 2005 by the National Law Journal which lists fee rates for large law firms in Manhattan. See Ex. 4 to Supp. Smith Aff. Reiter argues that the rates at Manhattan's largest law firms are "the best evidence for assessing the market rate here in the Southern District of New York." Pl. Supp. Reply Mem. at 10. There are several problems with this contention. First, the focus on the rates charged by the most expensive firms in this district is inappropriate given that the rate at which counsel is to be compensated here is the rate that would be paid by a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill, 493 F.3d at 112 (emphasis added). Reiter has not shown that the

rates charged by the large firms in these surveys are the sort of rates that a reasonable plaintiff in an employment [*21] discrimination suit would pay.

Next, Reiter has submitted no evidence that these firms are in the relevant market for determining his attorney's rates. Reiter must show that these large firms are providing "similar services" and that their lawyers are of "reasonably comparable skill, experience, and reputation.'" *Reiter*, 457 F.3d at 232 (quoting *Blum*, 465 U.S. at 896 n.11). Reiter has not shown that his counsel have the same "skill, experience, and reputation" in the area of civil litigation as the attorneys in these firms. Id. As noted in the previous section, as of 2001, counsel had extremely limited experience in civil litigation, let alone employment litigation. Nor has Reiter shown that his counsel's firm, which appears to have been essentially a solo practice during the relevant time period, has the "reputation" accorded to the firms listed in the survey.

Whether it justifies their rates or not, the fact is that the large firms listed on the survey have acquired a reputation that allows them to command high rates in the market. Many other firms, in particular smaller firms that may be providing equally capable services, simply do not command anywhere near such rates when it    [*22] comes to areas such as employment law litigation.

This Court's knowledge of the range in rates charged by practitioners is based on its own experience largely as a result of its participation in settlement conferences where attorney rates are frequently revealed in private discussions with the Court. *See generally McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *Farbotko*, 433 F.3d at 209 (court may consider its "own familiarity with the rates prevailing in the district").

The Court recognizes that high rates have been awarded to counsel at smaller firms where counsel is highly experienced in a particular area of litigation. *See, e.g., Bernier v. Papagianopolous*, 2006 WL 2819590, at *1-2 & n.2 (S.D.N.Y. Oct. 2, 2006) ("an experienced litigator in this area" compensated at $ 400/hour); *Ashkinazi v. Sapir*, 2005 U.S. Dist. LEXIS 8889, 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) ($ 425/hour for partner in small firm who had 26 years [*23] of experience and specialized in employment law); *Raniola v. Bratton*, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *6 n.9 (S.D.N.Y. Apr. 21, 2003) ($ 400/hour for "experienced" attorney at a small firm). [4] But case law is also replete with instances where experienced attorneys have been awarded lower rates. *See Tlacoapa v.*

*Carregal*, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) ($ 250/hour for lead attorney and $ 125/hour for junior attorney at small firm of three full-time attorneys); *Pascuiti v. New York Yankees*, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000) (awarding $ 250/hour for attorneys with almost 30 years experience in civil rights litigation); *see also Cowan v. Ernest Codelia, P.C.*, 2001 U.S. Dist. LEXIS 185, 2001 WL 30501, at *10 (S.D.N.Y. Jan. 12, 2001) (awarding a sole practitioner who had been an "active civil rights litigator for many years" an hourly rate of $ 250), *aff'd*, 50 Fed. Appx. 36 (2d Cir. 2002). In *Pascuiti*, the court surveyed case law on hourly rates and found that as of 2000, "the range of fees in this District for 'seasoned civil rights litigators,' particularly those in small firms, is between $ 200/hr and $ 300/hr." 108 F. Supp. 2d at 266. The Court notes that a recent survey of case law found that "[w]ithin the    [*24] last five years, courts have approved rates ranging from $ 250 to $ 425 per hour for work done by partners in small firms in this district." *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 U.S. Dist. LEXIS 34159, 2005 WL 3338555, at *4 (S.D.N.Y. Dec. 7, 2005).

> 4  Reiter's citation to other cases where high rates were awarded, *see* Pl. Supp. Reply Mem. at 5-7, typically involved attorneys with significant civil rights experience. *See, e.g., Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006)($ 425/hour reasonable for partner with "decades of experience," who delivered an "effective and thoroughly professional performance")' *Kuper v. Empire Blue Cross & Blue Shield*, 2003 WL 233350111, at *9-10 (S.D.N.Y. Dec. 18, 2003) ($ 425/hour reasonable for attorney with "thirty-five years of litigation experience in the fields of labor and employment law, particularly employment discrimination"), *adopted by*, 2004 U.S. Dist. LEXIS 635, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004); *New York State NOW v. Pataki*, 2003 U.S. Dist. LEXIS 7272, 2003 WL 2006608, at *2-3 (S.D.N.Y. Apr. 30, 2003) ($ 400/hour and $ 430/hour reasonable for two attorneys who "both have more than 30 years of experience with civil rights and labor and employment law").

Smith does [*25] not represent himself or either of his associates on this case to be "seasoned civil rights litigators" such that they could command a higher rate. Nor has Smith pointed to any evidence suggesting that their practice has garnered a reputation as a leader in any area of the law, received public recognition, or even been involved in significant litigation in the employment law area. Based on the evidence before the Court, Smith's hourly rate must fall at the far lower end of the scale of

reasonable rates for employment discrimination litigators.

### 5. Summary

Reiter has failed to meet his burden "to produce satisfactory evidence in addition to the attorney's own affidavits showing that the requested rates are at the prevailing market level." *Paulino v. Upper W. Side Parking Garage, Inc.*, 1999 U.S. Dist. LEXIS 7544, 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999) (citing, *inter alia, Blum*, 465 U.S. at 896 n.11). The Court's task has been made particularly difficult because Smith has not submitted evidence with respect to what other employment discrimination attorneys with his level of experience charge for an hourly rate. *See ACE Ltd. v. CIGNA Corp.*, 2001 U.S. Dist. LEXIS 17014, 2001 WL 1286247, at *5 (S.D.N.Y. Oct. 22, 2001) ("Ideally, . . . evidence [*26] [as to hourly rate] should include affidavits from attorneys with similar qualifications stating the precise fees typically charged and paid, during the relevant time period, in the relevant market.") (internal quotation omitted) (citing *Nat'l Helicopter Corp. of Am. v. City of New York*, 1999 U.S. Dist. LEXIS 11702, 1999 WL 562031, at *6 (S.D.N.Y. July 30, 1999)); *Altman v. Port Auth.*, 879 F. Supp. 345, 353 (S.D.N.Y. 1995) (attorney requesting fees "submitted affidavits from three attorneys with substantial experience in employment discrimination cases" who attested to appropriateness of the requested hourly rates).

Based on all the factors discussed above, especially including Smith's relative inexperience in civil litigation in general and employment litigation in particular, the Court concludes that a current rate of $ 275 per hour for Smith would be appropriate. While Lennon seemingly has greater civil trial experience than Smith, *see* Pl. Supp. Reply Mem. at 7, it is not significantly greater and thus a rate of $ 275 per hour would be an appropriate [5] current rate for her as well. Reiter's November 2003 application reflects that he sought only $ 150 per hour for London's time, which was less than half the rate [*27] being sought by Reiter and Lennon. In light of London's inexperience, and the determination that Smith and Lennon should command $ 275 per hour, the Court concludes that $ 150 per hour would be an appropriate current rate for Lennon. *See, e.g., Tlacoapa*, 386 F. Supp. 2d at 370 ($ 125/hour for junior attorney) (citing *Lawson v. City of New York*, 2000 U.S. Dist. LEXIS 15709, 2000 WL 1617014, at *4-5 (S.D.N.Y. Oct. 27, 2000)). Certainly, there are practitioners who charge more than these rates. But, in this Court's experience, practitioners with experience similar to Smith and Lennon, particularly those in solo practices and smaller firms, charge these rates or even less in some instances. The Court finds that the rates it awards here are "what a reasonable, paying

client would be willing to pay," *Arbor Hill*, 493 F.3d at 112, particularly keeping in mind the client "wishes to pay the least amount necessary to litigate the case effectively." *Id.*[4]

> 5    A current rate is being applied as it is well-established that where, as here, litigation spans a number of years, the reasonable hourly rate should be adjusted to account for "the delay factor, either by basing the award on current rates or by adjusting the fee based on [*28] historical rates to reflect its present value." *Missouri v. Jenkins*, 491 U.S. 274, 282, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)(internal quotation marks and citation omitted); *accord Raniola*, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *6.

> 6    Defendants make various arguments that scattered hours submitted by plaintiff should be billed at a lesser rate because they involved paralegal rather than attorney tasks. *See* Def. Supp. Mem. at 23-24. Because the Court is engaging in across the board reductions of hours, *see* section II.B.1.b & section II.B.2.b-c below, it will exercise its discretion to not subtract hours or reduce rates for the relatively minor number of hours might be characterized as involving non-attorney tasks.

> The Court notes further that it rejects the defendants' argument, Def. Supp. Mem. at 24, n.22, that time spent by London reading and digesting deposition transcripts were necessarily those of a paralegal. The same is true for the preparation of trial notebooks. *See Raniola*, 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *5 & n.8 ("a very junior attorney . . . was properly assigned to [handle the trial notebooks], particularly in view of the fact that the plaintiff's attorneys were all either single practitioners or belonged to a very small firm . . . [*29] [and] larger firms are more likely to have a staff of paralegals").

### B. Reasonable Hours

The second step in computing the "presumptively reasonable fee" -- which we shall occasionally refer to as the "lodestar" -- is the calculation of reasonable hours.

It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specifying, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *accord Sowemimo v. D.A.O.R. Sec., Inc.*, 2000 U.S. Dist. LEXIS

2007 U.S. Dist. LEXIS 71008, *

9180, 2000 WL 890229, at *4 (S.D.N.Y. June 30, 2000), *aff'd*, 1 Fed. Appx. 82 (2d Cir. 2001). The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053, 113 S. Ct. 978, 122 L. Ed. 2d 132 (1993); [*30] *accord Nike, Inc. v. Top Brand Co.*, 2006 U.S. Dist. LEXIS 76543, 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006), *adopted by*, 2006 U.S. Dist. LEXIS 76540, 2006 WL 288443 (S.D.N.Y. Oct. 6, 2006). In addressing this question, courts should not, however, engage in "an *ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Grant*, 973 F.2d at 99.

Additionally, the law requires that if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its "lodestar" calculation. *Hensley*, 461 U.S. at 434; *accord Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 n.6 (2d Cir. 1999); *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116-17 (2d Cir. 1997); *In re Stock Exch. Options Trading Antitrust Litig.*, 2006 U.S. Dist. LEXIS 87825, 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). In addition, in cases where the documentation of hours is "vague or incomplete," the court may also reduce the award. E.g., *Rosso v. Pi Mgmt. Assocs., L.L.C.*, 2006 U.S. Dist. LEXIS 27127, 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (citing *In re Painewebber Ltd. P'ships Litig.*, 2003 U.S. Dist. LEXIS 13377, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003)).

However, the Supreme Court noted in *Hensley* that "[t]here is no precise [*31] rule or formula for making these determinations." 461 U.S. at 436. And, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a court may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." *Carey*, 711 F.2d at 1146.

We now examine the hours expended with respect to the two fee applications submitted by Reiter: (1) the first application, which covered the period from the beginning of the case until the entry of the original judgment; and (2) the second application, which covers the period following entry of judgment (including the appeal) through the present.

### 1. First Application: Time Expended Through Judgment

Reiter's first application relates to the work performed in this case through the entry of judgment on October 24, 2003. (Docket # 92). Reiter seeks a total of 1,713.30 hours of attorney time. *See* Pl. First Mot.; *see also* Def. Supp. Mem. at 3. The defendants argue that certain of the hours sought should be eliminated, *see* Def. Supp. Mem. at 15-23; *see also* Def. First Mem. at 22-25; others should be reduced, *see* Def. Supp. Mem. at 23-25; *see also* Def. First Mem. at 18-19; and that [*32] the hours in general should be subject to an across-the-board reduction for inefficient and excessive expenditures of time. *See* Def. Supp. Mem. at 25-33; Def. First Mem. at 25-32. In response to these objections, Reiter explains that, in order to be successful against "a much larger adversary[,] . . . it was necessary for plaintiff's attorneys to devote a lot of time, energy and effort throughout the course of this litigation . . ." Pl. Supp. Reply Mem. at 7. Although Reiter addresses many of the defendants' objections, Reiter does not challenge defendants' calculations as to how much time the fee application allots to different tasks–an exercise Reiter himself did not perform. Thus, except where otherwise noted, the Court accepts as accurate the summary of time set forth in defendants' papers.

#### a. Hours to be Eliminated

Defendants proffer several categories of time they argue should be eliminated entirely as compensable hours. Def. Supp. Mem. at 15-23. We have considered all of them and discuss the following categories below: (1) over 400 hours expended on the plaintiff's motion for summary judgment, *see* Def. Supp. Mem. at 15-17; (2) more than 70 hours spent on two motions to strike, [*33] *see id.* at 18-19; *see also* Def. First Mem. at 24; and (3) several summary time entries that are "inconsistent with contemporaneous records." *See* Def. Supp. Mem. at 21-22; Def. First Mem. at 22-25.

#### i. Time Spent on Plaintiff's Motion for Summary Judgment. Both parties submitted motions for summary judgment to Judge Koeltl. Reiter does not dispute that the time spent on his own motion totaled 477.1 hours (Smith–102 hours; Lennon–123.6 hours; London–251.5 hours). *See* Def. First Mem. at 22-24. This does not include the nearly 230 hours that plaintiff spent in opposing defendants' motion for summary judgment. Def. Supp. Mem. at 15. Defendants argue that "no reasonable attorney, having completed discovery, could believe there were no material disputed facts with regard to whether retaliation was a motivating factor for the TA's decision to transfer plaintiff . . . ." *Id.* at 17. Alternatively, defendants contend that much of the time spent on plaintiff's summary judgment motion is duplicative of the 230 hours spent opposing defendants' motion for summary judgment. *Id.* at 15.

In support of this expenditure of time, Reiter states that he had a "good faith basis," Pl. Reply Mem. at 19, to bring [*34] the motion and that the motion gave "Judge Koeltl the opportunity to review the evidence to determine whether or not a trial could have been avoided upon a finding that defendants' stated reason was a subterfuge and defendants did not have a legitimate business reason justifying plaintiff's demotion." Pl. Supp. Reply Mem. at 17-18. However, Reiter simply does not address the question of whether he could have reasonably believed, following discovery, that defendants could not dispute material facts in plaintiff's motion. In denying Reiter's motion, Judge Koeltl dedicated a single paragraph to it, noting that:

> [the] motion merely recounts facts already presented in the plaintiff's response to the defendants' summary judgment motion. These responses provide no basis to decide as a matter of law that the plaintiff is entitled to judgment, and are sufficient only to deny the defendants' motion on the last retaliation claim.

*Reiter I*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *11. That Reiter could not prevail on his motion should have been clear given that defendants had offered three non-discriminatory reasons for the NYCTA's decision to transfer Reiter in 2000. *See id.* While Reiter argues that these reasons [*35] were "subterfuge," *see* Pl. Supp. Reply Mem. at 18, he makes no effort to justify his claimed belief that there was no genuine dispute of fact on this point. Reiter himself admits the case was an "entirely fact intensive, circumstantial case." Pl. First Reply Mem. at 15.

For these reasons, the Court will eliminate the 477.1 hours attributable to plaintiff's motion for summary judgment. [7]

> [7]  A further reason justifying this elimination is the fact that Reiter's expenditure of more than 700 hours dedicated to summary judgment motion practice is extraordinary. It is equivalent to a single attorney working 8 hours a day exclusively on the motions, 5 days a week, for more than 4 months. Having examined the papers relevant to these motions available in the Court file, the Court finds this amount of time excessive. Notably, courts of this jurisdiction have rejected fee requests relating to a single motion as "excessive" based on much less time than what Reiter has claimed. *See, e.g., Blumenschine v. Prof'l Media Group, LLC*, 2007 U.S. Dist. LEXIS 23448, 2007 WL 988192, at * 17 (D. Conn. Mar. 30,

2007)(136.2 hours spent researching and drafting plaintiff's summary judgment motion disallowed because the motion "was denied on [*36] all grounds"; all but one ninth of the time plaintiff spent opposing the defendant's motion for summary judgment disallowed; and 24.35 hours dedicated to the reply disallowed); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006)(200 hours plaintiff spent on successful effort to oppose summary judgment is unreasonable; 10% reduction); *Nike*, 2006 U.S. Dist. LEXIS 76543, 2006 WL 2946472, at *7-8 (more than 241.5 hours on a motion for summary judgment is "excessive" and "not commensurate with this kind of memorandum;" 25% reduction granted; *See Spray Holdings v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (123.75 hours on a motion to dismiss is "excessive on its face;" 15% reduction applied). Based on this excessive amount of time, we include the approximately 230 hours attributable to plaintiff's opposition of the defendants' motion for summary judgment on the list of items reflecting excessive hours. *See* section II.B.1.b.iv below.

ii.  *Time Spent on Plaintiff's Two Motions to Strike.* Reiter filed two motions to strike during the course of summary judgment briefing. *See Reiter*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *14; *see also* Motion to Strike, filed Mar. 26, 2002 (Docket # 28) ("First [*37] Mot. to Strike"); Motion to Strike, filed May 25, 2002 (Docket # 39) ("Second Mot. to Strike"). Defendants have calculated, and Reiter does not dispute, that nearly 75 hours were spent on these two motions (Smith--12 hours; Lennon--7.5 hours; London--55.25 hours). *See* Def. Supp. Mem. at 19; Def. First Mem. at 24.

First, on March 26, 2002, Reiter moved to strike portions of the defendants' papers in support of the motion for summary judgment. *See* First Mot. to Strike. Judge Koeltl denied this motion as "untimely" and on the merits. *Reiter I*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *14. Plaintiff justifies the expenditure of time on this motion largely on the ground that Judge Koeltl found, in ruling on the defendants' motion for sanctions, that Reiter's motion to strike had not been "entirely baseless" or brought in bad faith. *See* Pl. Supp. Reply Mem. at 19; *see also Reiter I*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *14. Judge Koeltl's ruling, however, does not address whether it was reasonable for plaintiff to have brought the motion.

Reiter filed his second motion to strike also during the pendency of the summary judgment motions. *See* Second Mot. to Strike. Specifically, Reiter sought to

strike as irrelevant a letter submitted [*38] to the Court by defense counsel that had attached the State Supreme Court decision denying Reiter's Article 78 motion. *See* Second Mot. to Strike. But, as Judge Koeltl found, the State Supreme Court's decision related to Reiter's federal due process claim and, indeed, the claim was dismissed based on the state court decision. *Reiter I*, 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *13; *see also* Memorandum Endorsement, dated May 28, 2002 (Docket # 40) (finding motion to strike was not "necessary").

In conclusion, the motions to strike related to the summary judgment proceedings were simply unnecessary. In any event, inasmuch as they were intertwined with the summary judgment motions, and the time spent on those motions was excessive to begin with, no additional time will be permitted for them. [8]

> 8   Because of this ruling, it is unnecessary to address defendants' contention that London's "typing time" should be eliminated as "secretarial" work. *See* Def. Supp. Mem. at 22. It appears that this time is attributable solely to the motions for summary judgment and the motions to strike. *See id.,* at 22 n.18.

*iii. Time Summaries That Do Not Match Contemporaneous Records.* Reiter concedes that "9.9 hours of Mr. Smith's time [*39] . . . should be disallowed because the requested time is not supported by contemporaneous records." Pl. Supp. Reply Mem. at 21 (citing Def. [Supp.] Mem. at 22). [9] Likewise, Reiter withdraws his request for compensation for London's time on June 13, 2001, November 7, 2001, and September 2, 2003—totaling 6.5 hours—because "there are no contem-

poraneous time records" for those days. Pl. Supp. Reply Mem. at 21.

> 9   This includes 3.4 hours of Smith's time for September 10 and 18, 2001, and 6.5 hours of Smith's work on September 4-5, 2003. Pl. Supp. Reply Mem. at 20. He also concedes that ".9 hours controls for his June 29, 2001 entry.": *Id.* at 21.

Reiter further "concedes" that there is no contemporaneous record for London's work on September 5, 2002, but asks that the Court compensate her 11.5 hours nonetheless. *See id.; see also* Declaration of Charlesa E. London, dated Mar. 12, 2007 (attached as Ex. 3 to Supp. Smith App.), P 16. Reiter acknowledges, however, that the "specific time is not stated." *Id.* Inasmuch as the law is clear in this Circuit that applications for attorney's fees must be based on contemporaneous time records, the Court eliminates 11.5 hours attributable to London's work. [*40] *Carey*, 711 F.2d at 1147 ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit.").

Reiter has conceded that certain hours should be compensated at a 50% rate because they involve travel time. *See* Pl. Supp. Reply Mem. at 23. Instead, for the sake of simplicity, we have simply subtracted 50% of the hours involved. This amounts to: Smith—5.15 hours; Lennon—.5 hours; London—3.25 hours. Def. Supp. Mem. at 24.

*iv. Summary of Time To Be Eliminated.* Based upon the above, the amounts attributable to each attorney are as follows:

| | Smith | Lennon | London |
|---|---|---|---|
| Billed Hours | 720.50 | 712.50 | |
| Hours for Summary Judgment Motion | 47.00 (motion) 55.00 (reply) | 76.70 (motion) 46.90 (reply) | 176.75 (motion) 74.75 (reply) |
| Hours on First Mot. to Strike | 12.00 | 5.8 | 37.25 |
| Hours on Sec. Mot. to Strike | -- | 1.7 | 18.00 |
| Hours Without Adequate Records | 9.90 | -- | 18.00 |
| Travel Time | 5.15 | 0.5 | 3.25 |
| Total Hours After Elimination | 591.45 hours | 148.70 | 384.50 hours |

See Pl. First Mot. at 1; Def. First Mem. at 22-25; Def. Supp. Mem. at 15-20; 21-22.

b. *Percentage Reduction*

i. *Background.* The defendants make a number of other arguments that the hours claimed by Reiter's counsel are unreasonable--some relating to specifically identified hours, *see, e.g.,* Def. [*41] Supp. Mem. at 25-27 nn. 26-29, and some seeking across-the-board reductions (30% for Smith and 50% for Lennon and London). *See, e.g.,* Def. Supp. at 25, 28-33. We now consider whether there should be a percentage reduction with respect to hours not attributable to the summary judgment motion or the motion to strike (or the other hours eliminated in the previous section).

The Second Circuit has stated that a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday,* 42 F.3d at 134. Rather, as already discussed, a court may use a percentage deduction "'as a practical means of trimming fat from a fee application.'" *McDonald ex rel Prendergast,* 450 F.3d at 96 (quoting *Carey,* 711 F.2d at 1146). "Particularly where the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Alveranga v. Winston,* 2007 U.S. Dist. LEXIS 96749, 2007 WL 595069, at *5 (E.D.N.Y. Jan. 29, 2007) (internal quotations and citations omitted); *accord Saunders v. Salvation Army,* 2007 U.S. Dist. LEXIS 22347, 2007 WL 927529, at *3 (S.D.N.Y. Mar. 27, 2007) [*42] ("Rather than comb through detailed time sheets, a court can "exclude excessive and unreasonable hours from its fee computation by making an across-the-board reduction in the amount of hours."). Case law is replete with instances where courts have applied percentage reductions in the amounts requested. *See, e.g., Alveranga,* 2007 U.S. Dist. LEXIS 96749, 2007 WL 595069, at *6 (40%); *Sec. Exch. Comm. v. Goren,* 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003) (30%); *Elliott v. Bd. of Educ.,* 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (10%); *Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.,* 215 F.R.D. 60, 64-65 (E.D.N.Y. 2003) (10%) *Rotella v. Bd. of Educ.,* 2002 U.S. Dist. LEXIS 507, 2002 WL 59106, at *6 (E.D.N.Y. Jan. 17, 2002) (20%-30%); *Sabatini v. Corning-Painted Post Area Sch. Dist.,* 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (15%); *Quinn v. Nassau County Police Dep't,* 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (20%-30%); *Perdue v. City Univ.,* 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (20%); *Am. Lung Ass'n v. Reilly,* 144 F.R.D. 622, 631 (E.D.N.Y. 1992) (40%).

A reduction may be applied for "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) (20% reduction). In addition, a reduction [*43] may be applied based on limited success obtained. *Hensley,* 461 U.S. at 437 (court "may simply reduce the award to ac-

count for the limited success"); *accord Patterson v. Balsamico,* 440 F.3d 104, 124 n.13 (2d Cir. 2006).

We now discuss the circumstances that relate to the request for an across-the-board reduction.

ii. *Pursuit of Unsuccessful Claims.* We begin by addressing the extent to which there should be a reduction based on plaintiff's pursuit of a number of theories and claims that were ultimately rejected. [10] The defendants correctly note that Reiter was not successful on a number of claims. *See* Def. Supp. Mem. at 28-32; *see also generally Reiter I,* 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167. But, as defendants themselves concede, *see* Def. First Mem. at 28, hours spent on unsuccessful claims may be awarded if the claims are "'inextricably intertwined' and 'involve a common core of facts' . . ." *Quaratino,* 166 F.3d at 425 (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir. 1996)); *accord Murphy v. Lynn,* 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims [*44] were interrelated and required essentially the same proof."), *cert. denied,* 522 U.S. 1115, 118 S. Ct. 1051, 140 L. Ed. 2d 114 (1998) (citation omitted). With the exception of plaintiff's due process claim, [11] it does not appear that any of the unsuccessful claims pursued by plaintiff involved exploration during the course of discovery of facts that would not also have been explored anyway as a result of Reiter's pursuit of his successful retaliation claim. *See* Def. Supp. Mem. at 31.

10    While arguably any reduction based on pursuit of unsuccessful claims could be applied after the lodestar figure has been calculated, *see, e.g., Kassim v. City of Schenectady,* 415 F.3d 246, 255-56 (2d Cir. 2005), it is of no mathematical significance whether such a reduction is made based on the attorney's hourly rate, the number of reasonable hours, or the product of these two figures.

11    Reiter argued that "the appeals process that he used to review his Year 1999 performance evaluation violated his due process rights. [He] claim[ed] that the NYCTA failed to follow its own internal procedures when he proceeded through the appeals process." *See Reiter I,* 2002 U.S. Dist. LEXIS 18537, 2002 WL 31190167, at *13.

In defense of these claims, Reiter provides a "brief background [*45] statement" to "demonstrate[] the interrelationship of the claims made . . . in his complaint." Pl. Supp. Reply Mem. at 26. The facts given as background, however, fail to describe the events connected to his due process claim. Thus, he has failed to show that

this claim was factually and legally related to any of his other claims. *See* Pl. Reply Mem. at 19-22; Pl. Supp. Reply Mem. at 26-27. Nor does Reiter describe the extent to which he spent time pursuing this claim. Consequently, some reduction in hours is warranted for this claim. The time records submitted make it impossible to determine how much was attributable to this particular claim. Thus, a percentage reduction is the only way to account for it.

*iii. Time Spent After the NYCTA Offered to Reinstate Reiter.* Defendants next seek to eliminate all attorney hours expended between August 14 and September 9, 2003, because they reflect an effort to get Reiter reinstated to a position that had job responsibilities additional to the ones he originally had. *See* Def. Supp. Mem. at 20-21. The NYCTA notes that it had offered to reinstate Reiter to his former position as Deputy Vice President of Engineering Services, an offer he initially [*46] rejected. *See* Letter from Stephen M. Stimell to Judge Conboy, dated Aug. 4, 2003 (reproduced as Ex. A to Supp. Stimell Decl.).

It appears that during this period Reiter's counsel dedicated some 76.75 hours (Smith--48 hours and London--28.75 hours), both in and out of court to: (1) prepare for and attend two proceedings before Judge Koeltl; (2) meet with Reiter; (3) research various issues of equitable relief; (4) seek a permanent injunction; and (5) draft Reiter's equitable relief submission, including affidavits. *See* Hourly Worksheets 2001-2003 (reproduced as Ex. 2 of Pl. Mot.). The issues raised in relation to equitable relief included requests not merely related to reinstatement but also with respect to (1) back pay; (2) front pay; (3) seven vacation days to compensate for the time spent at trial; and (4) prejudgment interest. *See Reiter II,* 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *13-16.

With respect to reinstatement, Reiter asserts that his efforts were justified because the NYCTA "offered to reinstate plaintiff to what was then a watered down version of his original position," and that he fought only to "be restored to his original position with his original responsibilities[.]" Pl. Supp. Reply Mem. [*47] at 20. Judge Koeltl's decision makes clear, however, that Reiter sought to be reinstated to an enhanced VP Engineering position, essentially a promotion. *See Reiter II,* 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *12. The decision also reflects that in August 2003, the NYCTA "agreed that [Reiter] could be returned to his prior position as DVP Engineering Services with the core responsibilities he had prior to the transfer." *Id.* Given that much of what Reiter was seeking was unnecessary, the fees sought for this phase of the case are excessive.

*iv. Evidence of Excessive Time Spent.* There are a number of individual examples of entries that reflect

excessive time spent on various tasks. For example: (1) on April 21, 2001, 3 hours by Smith preparing waivers of service for deposition witnesses; (2) on June 23, 2001, 2.5 hours by Smith drafting five deposition notices; (3) 80.25 hours total by the three attorneys for reviewing and digesting deposition transcripts, *see* Def. Supp. Mem. at 26 & nn. 27-29; (4) 19.25 hours of London's time spent over two weeks on "research relating to and drafting voir dire," *see id.* at 27; *see also* London's Hourly Worksheets Nov. 14, 2002-Nov. 27, 2002; and (5) 230 hours attributable [*48] to opposing the defendants' motion for summary judgment. *See* section II.B.1.a.i & n.8 above (discussion of his motion for summary judgment); *see generally* Hourly Worksheets 2001-2003. The Court agrees that these hours are beyond what was required for the tasks involved.

*v. Vague Entries.* Plaintiff's application contains a number of vague entries. Most notably, there are a number of entries listed only as "[t]rial [p]reparation," which together amount to close to 90 hours. *See* Smith's Hourly Worksheets, Jan. 13, 2003-Jan. 22, 2003; Lennon's Hourly Worksheets, Jan. 10, 2001 & Jan. 14, 2001; London's Hourly Worksheets, Jan. 10, 2003 & Jan. 17, 2003. Where there are vague entries of this kind, sometimes referred to as "block billing," the entries make it impossible for the Court to determine if the "trial preparation" involved compensable tasks (such as drafting questions for witness examinations) or non-compensable tasks (such as photocopying of exhibits). *See, e.g., Molefi v. Oppenheimer Trust,* 2007 U.S. Dist. LEXIS 10554, 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) ("because block billing renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or [*49] unnecessary, courts apply percentage cuts where there is a substantial amount of block billing in a fee request.") (15% reduction) (internal quotations and citations omitted); *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.,* 2007 U.S. Dist. LEXIS 11328, 2007 WL 486610, at *5 (S.D.N.Y. Feb. 14, 2007) ("Where, as here, time entries are duplicative or vague, an across-the-board reduction in the number of hours spent, with a concomitant decrease in the fee award, is well within the court's discretion.") (approximately 50% reduction); *accord Alveranga,* 2007 U.S. Dist. LEXIS 96749, 2007 WL 595069, at *5 & n.13 (where "entries in plaintiff's fee application combine tasks in a way that makes it difficult for the Court to assess whether the time logged was reasonable," percentage reduction was justified); *Klimbach v. Spherion Corp.,* 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (10% reduction for numerous "block entries"); *Aiello v. Town of Brookhaven,* 2005 U.S. Dist. LEXIS 11462, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (time entries "rife with vague entries for 'conferences,' 'meetings,' and 'research,' without any further explanation of those ser-

vices," making it difficult to "parse out whether the number of hours spent on the work performed was reasonable") (10% [*50] reduction). Accordingly, some reduction is required by this circumstance as well.

### c. Conclusion as to Percentage Reduction

There is also a larger problem with respect to the hours being sought for the first fee application in this case. This case was not an unusually complex one. It involved approximately six depositions by plaintiff, no discovery disputes that involved formal motion practice; and a six-day trial. See Def. First Mem. at 2. With the elimination of time related to Reiter's summary judgment motion, his two motions to strike and the lack of contemporaneous records, as described in section II.B.1.a. above, the overall number of hours sought for the first fee application is still 1,124.65 hours. A review of case law suggests that even this figure is higher than what has been claimed or allowed in employment discriminations case with a single plaintiff and a short trial. See, e.g., Blumenschine, 2007 U.S. Dist. LEXIS 23448, 2007 WL 988192, at *15 (994.8 hours billed by six attorneys and a paralegal in association with a six-day jury trial); Petrovits v. New York City Transit Auth., 2004 U.S. Dist. LEXIS 174, 2004 WL 42258, at *6 (S.D.N.Y. Jan. 7, 2004) (court approved 885.22 hours for two attorneys and six-day jury trial).

After [*51] considering each of the circumstances discussed in section II.B.1.b.i through section II.B.1.b.v above, the Court concludes that the hours remaining after the eliminations in section II.B.1.a. above should be reduced by 15% for each attorney. Accordingly counsel's reasonable hours for their work from March 7, 2000 through entry of judgment following the jury trial are as follows: (1) Smith--502.73 hours; (2) Lennon--126.40 hours; and (3) London--326.83 hours. The total, 955.96 hours, while still high, is in line with a reasonable number of hours to expend on a case of this kind.

### d. The Request for Overall Reduction for Lack of Success

Arriving at this total "does not end the inquiry," however. Hensley, 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward. Id. The lodestar figure may be adjusted on the basis of the "results obtained." Id. "Indeed 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (quoting Hensley, 461 U.S. at 436). [12] Thus, where a party prevails, but obtains far lesser relief than might have been expected, case [*52] law reflects that a court consider an adjustment in the lodestar amount. See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003) (where plaintiff was awarded $ 500,000

in punitive damages, but received $ 15,000 in compensatory damages, "far less than she sought[,]" award was reduced by 10%).

> 12   Once again, it does not matter mathematically whether the reduction is taken against the hours expended alone or against the hours expended multiplied by the hourly rate.

As was noted in Kassim v. City of Schenectady:

> a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's "partial or limited success" is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory.

415 F.3d 246, 256; accord Farrar, 506 U.S. at 114 (requiring court to consider "'the amount of damages awarded as compared to the amount sought'" in evaluating the reasonableness of a claim for attorney's fees) (quoting City of Riverside v. Rivera, 477 U.S. 561, 585, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (Powell, J., concurring)); Access 4 All, 2005 U.S. Dist. 34159, 2005 WL 3338555, at *6 ("in the Second Circuit, fees may be [*53] reduced based on the limited success of the plaintiff, even if the case was litigated on the basis of a single, unitary theory, and even if the plaintiff recovered more than nominal relief.") (citing Kassim, 415 F.3d at 253-55). Defendants argue that a reduction should be taken based on the degree of success obtained by Reiter. See Def. Supp. Mem. at 40-41.

Reiter's complaint did not reflect specific amounts sought for damages. His arguments with respect to pain and suffering damages at trial, however, were sufficient to convince the jury to award him $ 140,000 in such damages. These damages were reduced, however, to $ 10,000 by remittitur. See Reiter II, 2003 U.S. Dist. LEXIS 17391, 2003 WL 22271223, at *8-11. For equitable relief, Reiter was reinstated to his former position as he sought but was denied a number of other items, specifically: (1) seven vacation days he used to attend this trial; (2) back pay for missed raises or pension benefits; and (3) prejudgment interest. [13] 2003 U.S. Dist. LEXIS 17391, [WL] at *13-16. He also did not obtain a permanent injunction to prevent future retaliation. 2003 U.S. Dist. LEXIS 17391, [WL] at *15. As noted, Reiter's main victory was that he was awarded reinstatement to his former position. While this represents a substantial degree [*54] of success, it certainly does not reflect complete success on his claims given the other categories of damages or relief pursued by Reiter.

13   Reiter was also denied front pay, but it appears that he sought this pay only in the event he was not given reinstatement. *See* Sur-Reply at 3.

Plaintiff argues that his "primary objective in his litigation was reinstatement." *See* Sur-Sur-Reply at 3. Indeed, language in *Kassim* suggests that a court should consider the plaintiff's "main objective" in analyzing the degree of success. *See* 415 F.3d at 255. The Court finds it difficult to determine precisely what the "main objective" was in this case. Certainly, to the extent plaintiff was seeking damages, his case was largely a failure. But to the extent he was seeking reinstatement, it was a success. Notably, this was not a case--as is true of many employment discrimination suits--where plaintiff was without a job and thus reinstatement was critical to his livelihood. Rather, plaintiff had a job at precisely the same salary of the job to which he sought reinstatement. In these circumstances, the Court concludes that money damages was the more important--if not the main--objective to Reiter. While no [*55] significant reduction is warranted, the Court concludes that the 15% reduction suggested by defendants, see Def. Supp. Mem. at 41, is too high. It concludes, rather, that Reiter should obtain 90% of the fees he seeks, and thus the Court reduces the award by 10% based on Reiter's limited success. The total number of hours for each attorney is: (1) Smith--452.46 hours; (2) Lennon--113.76 hours; and (3) London--294.15 hours.

### e. Conclusion as to First Application

Plaintiff should be awarded $ 199,828.75 with respect to the First Fee Application. This figure is derived from the following calculations:

| | | |
|---|---|---|
| Smith: | 452.46 hours x $ 275 | $ 124,426.50 |
| Lennon: | 113.76 hours x $ 275 | $ 31,284.00 |
| London: | 294.15 hours x $ 150 | $ 44,122.50 |
| TOTAL: | 860.37 hours | $ 199,833.00 |

### 2. Second Application: Entry of Judgment to Present

Plaintiff seeks fees from the date of the judgment against him through the present, a period that encompasses the preparation of his first fee application, the Court's ruling on that fee application, Reiter's appeal of the ruling, and the preparation of the supplemental fee application. Since filing the application, Reiter has submitted time sheets reflecting hours spent on additional work: (1) researching [*56] and drafting his reply memorandum; (2) reviewing defendants' application for a writ of certiorari; and (3) responding to defendants' Sur-Reply. *See* Hourly Worksheets (reproduced as Ex. 4 to Smith Supp. Reply Aff.); *see also* Sur-Sur-Reply, at 1 (Hourly Worksheets attached).

It is settled that the time spent on a fee application is itself compensable. *See, e.g., Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183-84 (2d Cir. 1996); *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.,* 71 F.3d 1053, 1059 (2d Cir. 1995). However, "if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *Valley Disposal,* 71 F.3d at 1059 (citing *Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979), *aff'd on other grounds,* 448 U.S. 122, 100 S. Ct. 2570, 65 L. Ed. 2d 653 (1980)). The Court has attempted to piece together the various time records-a task that Reiter himself did not perform--and concludes that Reiter seeks fees for 474.2 hours for attorneys on the fee application. This breaks down as follows:

| | Smith | Lennon | London |
|---|---|---|---|
| First Fee Application | 103 [14] | 29.3 | — |
| Appeal | 110.2 | 32.3 | — |
| Second Fee Application | 44 | 13.5 | — |
| Supplemental Reply | 62.9 | 56.7 | 13.50 |
| Writ of Certiorari | 4.50 | — | — |
| Sur-Sur-Reply | 4.30 | — | |
| Total | 328.90 | 131.80 | 13.50 |

14    This [*57] figure removes six hours that Smith says he expended on paralegal tasks. *See* Pl. Supp. Mem. at 1 n.1 (six hours of paralegal work). These hours are added back in at the rate of $ 100 per hour as reflected in section II.B.2.c below. The hours billed for secretarial services are discussed in the next section.

*See* Def. Supp. Mem. at 34-35; Sur-Reply at 1; Sur-Sur-Reply Hourly Worksheets, Jan.-Mar. 2007 (reproduced as Ex. 4 to Smith Supp. Reply Aff.). Defendants make numerous challenges to these fees. *See* Def. Supp. Mem. at 34-39; *see also* Sur-Reply.

a. *Hours to Be Eliminated*

Certain hours submitted by Reiter on this application should not be compensated. First, Smith spent 17.3 hours on a motion to reconsider this Court's elimination of 8.1 hours of his time. *See* Def. Supp. Mem. at 35-36. This includes 9.3 hours on a motion to reconsider the decision and another 8 hours on the objections to the denial of this motion. *Id.* at 35. This time is not compensable for two reasons. As defendants note, "[e]xpending 17.3 hours to recover 8.1 hours is unreasonable." Def. Supp. Mem. at 36. Moreover, no reasonable attorney would have moved for reconsideration initially. The subject of the motion for reconsideration--the [*58] elimination of certain hours--was a topic that Reiter had not addressed in the briefing on the original motion and thus he had plainly waived any objection. As this Court held and the Second Circuit affirmed: "Reiter had the opportunity to address this discrepancy in his reply papers yet did not do so." *Reiter IV,* 224 F.R.D. 157, 2004 WL 2072369, at *3; *see also Reiter V,* 457 F.3d at 233 n.2.

Second, the 8 hours (Smith--5.5; Lennon--2.5) Reiter spent researching the viability of appealing this Court's November 15, 2006 Order is unreasonable. *See* Order (Docket # 124). That Order required only that Reiter respond to defendants' discovery requests on the subject of his fee application. Reiter's argument that the Order "might violate a previous Order[,]" *see* Pl. Supp. Reply Mem. at 30, and/or presented "an issue of privilege and confidentiality," *id.,* was addressed in this

Court's denial of Reiter's motion for reconsideration. *See* Memorandum Endorsement, dated November 16, 2006 (Docket # 125). As the Court then explained: Reiter was free to file a privilege log. *Id.* Thus, any time Reiter spent "researching the implications of disclosing other representation," Pl. Supp. Reply Mem. at 30, was unnecessary [*59] and should not be compensated. Accordingly, 5.5 hours of Smith's time and another 2.5 hours of Lennon's time will be deducted from the hours sought.

Third, defendants contend that 13 hours a Ms. St. Villiere spent typing Smith's contemporaneous billing notes should be eliminated as secretarial duties. *See* Def. Supp. Mem. at 35. While Reiter responds that Villiere was hired as a paralegal, *see* Pl. Supp. Reply Mem. at 29, this fails to address the contention that the tasks she performed were secretarial. Defendants correctly point out, *see* Def. Supp. Mem. at 22-23, 35, that secretarial time is compensable only if it is the custom in the market in which fees were sought to bill such time separately, *Missouri,* 491 U.S. at 296-97--a point that Reiter has not addressed in his papers. In any event, case law supports exclusion of this time. *See, e.g., Marisol A. v. Giuliani,* 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000) ("secretarial services are part of overhead and are not generally charged to clients"); *Ginsberg v. Valhalla Anesthesia Assocs., P.C.,* 1998 U.S. Dist. LEXIS 387, 1998 WL 19997, at *4 n.3 (S.D.N.Y. Jan. 20, 1998). [15]

15    The Court rejects defendants' argument that Reiter should not have researched [*60] the question of whether the district court had jurisdiction to award fees for hours spent on the appeal. Def. Supp. Mem. at 36. Also, the court will allow the 1.5 hours spent by Lennon at the 2006 status conference. *See Carey,* 711 F.2d at 1146 ("Under section 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist.").

In sum, the amounts attributable to each attorney following the elimination of these hours are as follows:

|  | Smith | Lennon | London | Secretary |
|---|---|---|---|---|
| Billed Hours | 328.90 | 131.80 | 13.50 | 13.00 |
| Motion to Reconsider | 17.30 | -- | -- | -- |
| Objections to Court's | 5.50 | 2.50 | -- | -- |
| Nov. 15, 2006 Order |  |  |  |  |
| Typing | -- | -- | -- | 13.00 |

| | Smith | Lennon | London | Secretary |
|---|---|---|---|---|
| Total Hours After Elimination | 306.10 | 129.30 | 13.50 | 0 |

b. Claims as to Excessive Hours

The defendants have pointed to a number of areas in which apparently excessive hours have been sought. *See* Def. Supp. Mem. 37-39. The Court agrees that the following items appear to be greater than what could reasonably have been required:

1. 12.8 hours (Smith--6.9; Lennon--5.9) searching files in response to defendants' 2006 discovery requests. *Id.* at 37.

2. 68.7 hours (Smith--50.1; Lennon--18.6) of research performed [*61] by Smith and Lennon in 2003 in connection with the first fee application and the appeal, *see id.* at 38, and 25.6 additional hours (Smith--21.4; Lennon--4.2) of research performed by Smith and Lennon from 2004-2006. *Id.* at 39. The Court finds this excessive in light of the nature of the briefing produced by the plaintiff. [16]

3. 28 hours for strategy discussions between Smith and Lennon from 2003-2006. *See id.* at 37.

4. 43.3 hours (Smith--37.6; Lennon--5.7) spent preparing for oral argument before the Second Circuit. *Id.* at 37.

5. 5.4 hours of Lennon's time reviewing Smith's 2003 reply brief. *See id.* at 39; *see also* Sur-Reply at 2.

6. 126.2 hours (56--Smith; 56.7--Lennon; 13.5--London) for drafting Reiter's supplemental reply brief on the current motion. *See* Hourly Worksheets from January 22-March 13, 2007 (reproduced as Ex. 4 to Smith Supp. Reply Aff.). While new arguments were made in the supplemental reply brief, the fact that there were "approximately 400 pages" of exhibits, *see* Sur-Sur-Reply, at 2, is of little significance in that the exhibits attached consisted largely of past filings in this matter, past letters between the parties, a transcript, as well as affirmations and past [*62] complaints from plaintiff's counsel--in other words, documents

with which Reiter's counsel was presumably familiar. *See Trs. of Local 807 Labor-Management Health & Pension Funds v. River Trucking & Rigging, Inc.,* 2005 U.S. Dist. LEXIS 31083, 2005 WL 3307080, at *4 (E.D.N.Y. Dec. 2, 2005) ("42.25 hours is an unreasonable amount of time to have spent researching and drafting the Reply Brief").

[17]

16  This second category of research encompasses the time Smith and Lennon spent researching market rates in connection with both the first and second fee application. *See* Def. Supp.Mem. at 38-39. As defendants note, the 7.8 hours spent on March 27, 2004 is excessive, *inter alia,* because it "yielded one case cited in the First Application,. . . which this Court rejected as inapposite[]," *see id.,* and the remaining 13.6 hours spent on researching this issue for the second fee application yielded "three cases, one National Law Journal article, and one bankruptcy case report. . . ." *Id.* at 39.

17  In addition, 4.5 hours of Lennon's time recorded as "rev'd file" on November 1, 2003 is hopelessly vague and supports a reduction. *See* Def. Supp.Mem. at 36.

In addition, there is the question of whether the 448.9 hours remaining in the fee [*63] application following the elimination of hours reflected in the previous section is appropriate in light of the hours reasonably expended on the case as a whole.

A frequently cited case, *Davis v. City of New Rochelle,* 156 F.R.D. 549 (S.D.N.Y. 1994), found that the award courts had made for time spent on fee applications ranged between 8% and 24% of the award for time spent on the case itself. *Id.* at 561. More recent cases are similarly within this range. *See, e.g., Baird v. Boies, Schiller & Flexner LLP,* 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (awarding on fee application 10% of total attorney's fees awarded); *see also cf. Irish v. City of New York,* 2004 U.S. Dist. LEXIS 3770, 2004 WL 44454, at *8 (S.D.N.Y. Mar. 10, 2004) (awarding six hours for work on fee application where 210 hours in overall fees or 3%). Thus, in one recent case, a litigant sought 33% of the overall fees as expenses for the fee application. *See*

*Knoll v. Equinox Fitness Clubs,* 2006 U.S. Dist. LEXIS 76577, 2006 WL 2998754, at *3-4 (S.D.N.Y. Oct. 20, 2006). Based on the fact that the fee sought was large in proportion to the fees involved in the underlying case, the court reduced the award to "approximately ten percent of the main fee award." 2006 U.S. Dist. LEXIS 76577, [WL] at *4.

In terms of raw hours, [*64] the·448.9 hours at issue are far greater than what courts have found to be a reasonable expenditure of time for an attorney's entire fee application. *See, e.g., Brady,* 455 F. Supp. 2d at 212 (rejecting 257 hours spent on fee litigation as "surprisingly high"); *Murray v. Comm'r of N.Y. Dep't of Educ.,* 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (150 hours for fee application is "grossly amplified" and noting that even in a complex case, a fee application should take about 30 hours). The Court recognizes that these cases, unlike Reiter's, do not involve an appeal and thus the Court will not reduce this figure simply to come in line with cases that involved only district court work. Nonetheless, the Court notes that, with the hours attributed to the appeal subtracted from the total the number of hours sought for the fee application--331.79 hours--is unreasonable in light of all the factors discussed above. It represents an attorney working 40 hour weeks for more than 8 weeks. Having carefully examined the submissions from plaintiff, the Court find that these hours far exceed what is appropriate.

### c. Conclusion as to the Second Application

In light of all the reasons given above, the Court will reduce [*65] the time sought by each counsel for the second fee application by 40%. Accordingly, the totals allowed for each attorney on the second fee application are as follows:

| Smith: | 183.66 hours x $ 275 | $ 50,506.50 |
|---|---|---|
| Lennon: | 77.58 hours x $ 275 | $ 21,334.50 |
| London: | 8.1 hours x $ 150 | $ 1,215.00 |
| TOTAL: | 269.34 hours | $ 73,056.00 |

We add to this figure $ 600 to account for the paralegal time expended by Smith for a total of $ 73,656.00 in fees.

## C. Expenses and Costs

An award of attorney's fees should "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Le-Blanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. Nat'l Football League,* 887 F.2d 408, 416 (2d Cir. 1989)); *accord id.,* 143 F.3d at 763 (citing *Kuzma v. IRS,* 821 F.2d 930, 933-34 (2d Cir. 1987)). Case law reflects that the expenses recoverable under Title VII and other fee-shifting statutes are not limited to the costs taxable by statute and rule such as 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); and Local Civil Rule 54.1. *See, e.g., Disney Enters., Inc. v. Merchant,* 2007 U.S. Dist. LEXIS 26400, 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007); *Raniola,* 2003 U.S. Dist. LEXIS 7199, 2003 WL 1907865, at *7-8; [*66] *Shannon v. Fireman's Fund Ins. Co.,* 156 F. Supp. 2d 279, 304-05 (S.D.N.Y. 2001).

Costs associated with mailings, photocopies, and court fees are compensable. *See, e.g., Molefi,* 2007 U.S. Dist. LEXIS 10554, 2007 WL 538547, at *8; *Levy v. Powell,* 2005 U.S. Dist. LEXIS 42180, 2005 WL 1719972, at *12 (E.D.N.Y. July 12, 2005) (allowing recovery of costs for "photocopies, deposition transcripts, expert witness fees, travel, filing fees, messenger services, mailings, and facsimiles."); *Lawson ex rel. Torres v. City of New York,* 2000 U.S. Dist. LEXIS 15709, 2000 WL 1617014, at *5 (S.D.N.Y. Oct. 27, 2000) (reimbursing, as part of attorney's fee award, costs for photocopying and transcripts). A litigant may not, however, recover for expenditures associated with "routine office overhead." *Pinner v. Budget Mortgage Bankers, Ltd.,* 336 F. Supp. 2d 217, 222 (E.D.N.Y. 2004), aff'd, 169 Fed. Appx. 599 (2d Cir. 2006).

### 1. Costs Related to the First Fee Application

Reiter requests expenses relating to the period covered by the first fee application totaling $ 12,090.72. *See* Pl. Reply Mem. at 23; Pl. Supp. Reply Mem. at 39. Defendants find these costs to be "excessive," Def. Supp. Mem. at 43, and object to the following elements of Reiter's stated costs:

| 1. photocopies (commercial) | $ 818.27 |
|---|---|
| 2. photocopies (at office) | $ 585.20 |
| 3. postage | $ 161.02 |
| 4. courier | $ 85.00 |
| 5. local facsimile | $ 48.00 |
| 6. stenographer fee | $ 433.35 |

*See* [*67] *id.* at 43-44; *see also* Pl. Supp. Reply Mem. at 39-41.

The defendants argue that $ 1,403.47 for photocopies should be excluded because "there is no indication that these copies were 'used or received in evidence'" as required by the Local Rule, and in any event, "$ 585.20 was for making 2,926 copies on November 12, 2003, long after dispositive motions had been made and after the trial was completed." Def. Supp. Mem. at 43-44; *see also* Sur-Reply at 2. As already noted, however, a plaintiff recovering expenses is not limited to costs taxable by statute or rule. Also, the expenditure occurred shortly before the fee application and Reiter represents that the materials copied "includ[e], but [are] not limited to, correspondence, notes, complaint(s) and motions," *see* Receipt, dated Nov. 12, 2003 (reproduced in Ex. 3 to Pl. First Mot.), accumulated "during the course of and in furtherance of Plaintiff's litigation." *See* Pl. Supp. Reply Mem. at 40.

Defendants' reliance on Local Civil Rule 54.1(c) to defeat Reiter's claims for postage and courier services, *see* Def. Supp. Mem. at 44, is also misplaced. *Kuzma*, 821 F.2d at 933 (photocopying, postage, covers, exhibits, typing, transportation and parking [*68] fees "clearly represent the reasonable costs of litigation"); *see also Disney*, 2007 U.S. Dist. LEXIS 26400, 2007 WL 1101110, at *9 ("While such items as delivery charges and postage are not typically regarded as taxable costs under 28 U.S.C. § 1920, . . . they are recoverable under a fee shifting statute . . . .") (citations omitted).

With respect to facsimile charges, defendants argue that "there is no basis to charge $1 per fax where the cost incurred is that of a local telephone call." *See* Def. Supp. Mem. at 43. Reiter has not come forth with evidence that such charges are currently "ordinarily charged" to clients. Accordingly, this charge will be eliminated.

Finally, the defendants cite to Local Civil Rule 54.1(c)(2) to argue that a "stenographer fee . . . is not

chargeable to the [defendants]" because "it appears that the deposition transcript of Joseph Siano was not relied on by the Court in ruling on dispositive motions and was not used at trial." *Id.* at 44. Once again, defendants incorrectly rely on an irrelevant rule and thus their objection must be rejected.

Accordingly, following the reduction of the $ 48.00 charge for faxes, the recoverable costs associated with the Reiter's First Application total $ [*69] 12,042.72.

### 2. Costs Related to the Second Fee Application

Reiter also seeks payment of the $ 3,397.60 in costs stemming from his appeal which the Second Circuit awarded to him, *see* Order, dated Sept. 5, 2006 (reproduced as Ex. 6 to Supp. Smith Aff.), "plus $ 208.80 in copying costs, [a] $ 14.57 Staples charge and $ 17.04 [in] Federal Express fees." Pl. Supp. Reply Mem. at 42. Defendants do not contest that they owe the $ 3,397.60 awarded to him, *see* Def. Supp. Mem. at 43, although it is unclear as of this time whether this sum has been paid. [18] They assert that there is no basis to allow additional expenses given the Second Circuit's award of costs. *See* Def. Supp. Mem. at 44. But, once again, this argument ignores the fact that costs awarded generally by statute or rule differ from those available in an attorney's fees application. Accordingly, plaintiffs are entitled to an award of these expenses.

> 18    It apparently had not been paid as of the filing of plaintiff's reply memorandum. *See* Pl. Supp. Reply Mem. at 42.

In sum, defendants shall reimburse Reiter $ 3,638.01 for costs incurred during the Second Fee Application.

### Conclusion

Accordingly, Reiter's application (Docket ## [*70] 93,126) is granted. He is entitled to an award as follows:

| Attorney's fees for the first application: | $ 199,833.00 |
|---|---|
| Attorney's fees for the second application: | $ 73,656.00 |

| | |
|---|---|
| Costs for the first application: | $ 12,042.72 |
| Costs for the second application: | $ 3,638.01 |
| TOTAL | $ 289,169.73 |

Because the record is unclear as to the extent to which defendants have paid some of these fees or costs already, the parties are directed to confer on this question and to present, within 10 days, an appropriate judgment for entry by the Court.[19]

[19]   To the extent the parties believe the Court has made any mathematical or calculation errors in this Opinion, such errors should be brought to the Court's attention by means of a letter at the same time.

Dated: September 25, 2007

New York, New York _

GABRIEL W. GORENSTEIN

United States Magistrate Judge



**WILLIAMSBURG FAIR HOUSING COMMITTEE, et al., Plaintiffs, - against -
NEW YORK CITY HOUSING AUTHORITY, et al., Defendants, - and - UNITED
JEWISH ORGANIZATIONS OF WILLIAMSBURGH, INC., et al., Interve-
nor-Defendants**

**76 Civ. 2125 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2005 U.S. Dist. LEXIS 5200**

**March 31, 2005, Decided
April 4, 2005, Filed**

**SUBSEQUENT HISTORY:** On reconsideration by, Costs and fees proceeding at, Motion granted by Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., 2005 U.S. Dist. LEXIS 19401 (S.D.N.Y., Sept. 9, 2005)

**PRIOR HISTORY:** Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 1984 U.S. Dist. LEXIS 22440 (S.D.N.Y., 1984)

**COUNSEL:** [*1] Attorneys for Plaintiff: ALAN LEVINE, ESQ. New York, NY; PUERTO RICAN LEGAL DEFENSE & EDUCATION FUND, INC. New York, NY, By: FOSTER MAER, ESQ. Of Counsel.

Attorneys for Defendants: RICARDO ELIAS MORALES, ESQ., General Counsel, NEW YORK CITY HOUSING AUTHORITY, New York, NY, By: GARY NESTER, ESQ. NANCY M. HARNETT, ESQ. CORINA L. LESKE, ESQ. ELISSA M. KRELL, ESQ. Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

**Sweet, D.J.,**

The Williamsburg Fair Housing Committee *et al.* (the "Plaintiffs") have moved for an award of attorneys'

fees and expenses in this class action commenced against one of the defendants in this action, The New York City Housing Authority ("NYCHA"). NYCHA has moved for an order striking Plaintiffs' motion. For the reasons set forth, Plaintiffs' motion is granted in part as set forth below, and NYCHA's motion is denied.

*Prior Proceedings*

**A. The Present Motions**

Plaintiffs' application for attorneys' fees and expenses was originally filed on February 5, 2003. After extensions of time had been granted so that the parties could engage in settlement discussions, NYCHA's opposition to this motion was filed on July 16, 2003. Additional [*2] efforts to reach a settlement were made, and Plaintiffs' reply brief was filed on June 18, 2004. On July 7, 2004, NYCHA submitted a letter brief seeking to strike Plaintiffs' application for attorneys' fees and expenses. Both motions were marked as fully submitted without oral argument on November 1, 2004. Additional briefing was subsequently submitted by NYCHA and from the Plaintiffs.

**B. Prior History Of This Action**

This class action was commenced on May 11, 1976 by non-white individuals who alleged that as a result of a system of racial, ethnic and religious quotas operated by NYCHA, Plaintiffs and members of their class were denied access to low-income public housing in certain housing developments and publicly financed apartments -- *i.e.*, Jonathan Williams Plaza, Independence Towers, Taylor-Wythe Houses, 115-123 Division Avenue, and

Bedford Gardens (the "Williamsburg Developments") — in the Williamsburg section of Brooklyn, New York. According to the complaint, this quota system violated NYCHA regulations; regulations of the United States Department of Housing and Urban Development, 24 CFR § 1.4(b)(2)(ii); and §§42 U.S.C. 1981, [*3] 1982, 1983, and 3604(b).

On May 5, 1978, the Honorable Charles H. Tenney approved a Consent Decree executed by the parties that provided in pertinent part as follows:

> Non-white applicants for rentals at Jonathan Williams Plaza, Independence Towers and 115-123 Division Avenue will be given preference until 32% of the dwelling units in those developments are rented to non-white families. At Bedford Gardens the goal for the adjustment period is that 35% of the apartments shall be rented to non-whites. The completion of the initial renting of apartments at [Roberto] Clemente Plaza ("Clemente Plaza") [1] will see that development rented 51% to non-whites and 49% to whites. The 60% white/40% non-white ratio at Taylor-Wythe Houses will not be changed.

*Williamsburg Fair Housing Committee v. New York City Housing Authority*, 450 F. Supp. 602, 607 (S.D.N.Y. 1978).

> 1   Construction of Clemente Plaza was completed only after Plaintiff's original action was brought. *Williamsburg*, 450 F. Supp. at 607.

[*4] In 1989, the Plaintiffs filed a contempt motion challenging NYCHA's continuing use of racial preferences in violation of the 1978 Consent Decree.

On April 19, 1991, Judge Tenney so ordered a Stipulation and Settlement executed by the parties (the "1991 Stipulation") that provided apartments to 190 non-whites who had been denied public housing in the Williamsburg Developments because of their race.

In early 1993, the Plaintiffs reviewed tenant information and NYCHA reports with respect to vacancy rates and turnover rates for apartments in the Williamsburg Developments. Based on this review, the Plaintiffs concluded: (1) that there had been a significant decline in the vacancy rate among white-occupied apartments and (2) that as a result of the transfer of white-occupied apartments to other white tenants, the rate of desegregation in the Williamsburg Developments had been significantly slowed.

In January, 1995, the Plaintiffs submitted an order to show cause that the Court declined to sign. Instead, the submission was treated as a motion for: (1) an order holding the defendants in civil contempt, (2) a temporary restraining order, and (3) expedited discovery. The Plaintiffs' motion [*5] papers alleged, *inter alia*, that NYCHA

> wrongfully threatened to evict and sanction tenants, rigged tenant elections, denied use of common facilities, ignored complaints of death threats and physical assaults by Hasidic tenants on non-Hasidic tenants, delayed life threatening [apartment] repairs, and otherwise coerced, intimidated, threatened and interfered with tenants on account of race, color, national origin and religion.

(Declaration of Foster Maer signed January 31, 1995 ("Maer Decl."), at P 3.) The motion also alleged that NYCHA (1) "waged a war" against a group of African-American and Latino residents organized under the name Concerned Residents by "threatening" to evict them (*id.* P 8), (2) ignored or condoned "physical assaults and death threats made by Hasidic tenants against the group's members and supporters" (*id.*), and (3) wrongfully denied Concerned Residents' requests to meet in the NYCHA community center. (*Id.* at PP 61-67).

On June 5, 1996, the February, 1995 motion was dismissed for failure to prosecute with leave granted to renew on the original papers. [2]

> 2   By Order dated June 21, 1995, the Court rejected plaintiffs' motion for a preliminary injunction with respect to use of the community center at Taylor-Wythe Houses by Concerned Citizens. On June 11, 1997, Plaintiffs withdrew the allegations that NYCHA refused to repair "life-threatening" conditions in minorities' apartments. (Letter from Foster Maer of June 11, 1997, at 1.)

[*6] In the fall of 1996, an effort was commenced to explore the possibility of settling the dispute concerning the transfer of apartments among white tenants. Meetings were held and correspondence was exchanged. These efforts were unsuccessful and the parties subsequently engaged in discovery and motion practice.

On February 20, 1998, NYCHA moved to terminate the Consent Decree, and in May, 1998, Plaintiffs cross-moved for contempt and other relief. The Plaintiffs also met with counsel for HUD in an effort to settle the

litigation, and they sought the assistance of certain Latino officials and activists.

In November, 1998, with HUD Chief Administrative Law Judge Alan Heifetz ("Heifetz") acting as a mediator, NYCHA and the Plaintiffs resumed negotiations. After more than two years of settlement discussions between Plaintiffs and NYCHA, the parties reached an agreement. Further negotiations ensued, and a Settlement Agreement was executed by the parties [3] on May 30, 2002.

> 3   Pursuant to a request by NYCHA, the United Jewish Organizations of Williamsburg, Inc. ("UJO") was included as a signatory to the Settlement Agreement.

[*7] Pursuant to the Court's standard motion practice, a Fed. R. Civ. P. 23(e) fairness hearing was held on Wednesday, September 25, 2002. That same day, the Settlement Agreement was so ordered by the Court.

The Settlement Agreement provided for: (1) the immediate termination as to NYCHA of both the 1978 Consent Decree and the 1991 Stipulation; (2) changes to NYCHA's lease-succession rules; (3) an independent arbiter, selected by the parties, to oversee lease successions for a period of three years and sixty days after entry of the Court's endorsement of the Settlement Agreement; (4) a special waiting list for up to 70 persons who between 1991 and 1993 may not have had the opportunity to request an apartment in the Williamsburg Developments; and (5) the offer of 150 Section 8 housing vouchers [4] to current Williamsburg Development residents. All of the provisions of the Settlement Agreement are race-neutral.

> 4   The vouchers were offered pursuant to Section 8(o) of the United States Housing Act of 1937. See 42 U.S.C. § 1437f.

[*8] Discussion

Pursuant to the Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988, [5] Plaintiffs seek an award of $ 1,381,005.00 in attorneys' fees associated with: (1) the investigation that commenced in 1993 of reports concerning the alleged illegal transfer among white tenants of apartments in the Williamsburg Developments; (2) attempts to work with NYCHA to address this alleged transfer problem; (3) the prosecution of plaintiffs' January, 1995 motion and May, 1998 cross-motion; (4) opposition to defendants' February, 1998 motion; and (5) negotiations culminating in the September, 2002 Settlement Agreement.

> 5   Section 1988 provides, in pertinent part, that "in any action or proceeding to enforce a provi-

sion of sections 1981, . . . 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ... ." 42 U.S.C. § 1988(b).

[*9] In opposition to Plaintiffs' application, NYCHA argues that the Settlement Agreement does not qualify as a judgment, consent decree, or any other document entitling the Plaintiffs to attorneys' fees because: (1) the Court did not dictate its terms; (2) in contrast to the 1978 Consent Decree and the 1991 Stipulation, in which the Court explicitly retained jurisdiction, the Settlement Agreement delegated oversight responsibility to a private arbiter; and (3) the Court's review of the Settlement Agreement, while fully compliant with Fed. R. Civ. P. 23(e) on judicial approval of class action settlements, did not rise to the level of scrutiny applied to a consent decree.

A. *The Plaintiffs Are Prevailing Parties*

1. *The Second Circuit Has Adopted A Broad Construction Of The Term "Prevailing Party"*

NYCHA has argued that Plaintiffs are not entitled to attorneys' fees pursuant to Section 1988(b) because they do not meet the Supreme Court's definition of "prevailing parties." See *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604, 149 L. Ed. 2d 855, 121 S. Ct. 1835 (2001). The [*10] *Buckhannon* court held that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur*" to justify an award of attorneys' fees pursuant to the fee-shifting provisions of either the Fair Housing Amendment Act, 42 U.S.C. § 3613(c)(2), or the Americans with Disabilities Act, 42 U.S.C. § 12205. *Id.* at 605.

NYCHA has interpreted *Buckhannon* to hold that litigants are entitled to "prevailing party" status only if they have "[secured] a judgment on the merits or a court-ordered consent decree." (Def. Mem. Opp. Pl's Application Attys.' Fees and Expenses, at 13.)

NYCHA's interpretation of *Buckhannon* has been rejected by the Second Circuit. *See Preservation Committee of Erie County v. Federal Transit Administration*, 356 F.3d 444, 452 (2d Cir. 2004) (adopting the view that "*Buckhannon* does not limit fee awards to enforceable judgments on the merits or consent decrees.") Rather, the Second Circuit has read *Buckhannon* to hold that "status as a 'prevailing party' is conferred [*11] whenever there is a 'court ordered change [in] the legal relationship between [the plaintiff] and the defendant' or a 'material alteration of the legal relationship of the parties.'" *Id.* (quoting *Texas State Teachers Ass'n v. Garland Inde-*

Case 1:09-cv-00825-MAD-CFH   Document 52-3   Filed 04/07/14   Page 37 of 43

Page 4
2005 U.S. Dist. LEXIS 5200, *

*pendent School Dist*, 489 U.S. 782, 792, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989) (alterations in original) (internal citations omitted)); *see also Torres v. Walker*, 356 F.3d 238, 244 (2d Cir. 2004) (stating that "according to the [*Buckhannon*] Court, to be a prevailing party, there must be a 'judicially sanctioned change in the legal relationship of the parties' that bears the 'necessary judicial *imprimatur*.'") (quoting *Buckhannon*, 532 U.S. at 605); *Roberson v. Giuliani* 346 F.3d 75, 79-80 (2d Cir. 2003) (stating that "in order to be considered a 'prevailing party' after *Buckhannon*, a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned") (quoting *Buckhannon*, 532 U.S. at 604); *New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi and Limousine Com'n*, 272 F.3d 154, 158 (2d Cir. 2001) (*per curiam* [*12]   ) (same).

**2. *The Settlement Agreement Materially Altered the Legal Relationship Of The Parties***

NYCHA has not, and cannot, seriously challenged that the Settlement Agreement satisfies the first prong of *Buckhannon's* "prevailing party" test -- *i.e.*, whether the legal relationship of the parties has been materially altered. As described above, the Settlement Agreement mandated that NYCHA: (1) modify its rules concerning the succession of tenancies; (2) for a period of three years and sixty days, submit to Heifetz documentation concerning all apartments for which NYCHA has approved lease successions; (3) abide by Heifetz' determination concerning the legitimacy of any such lease succession; (4) offer 150 Section 8 housing vouchers to tenants of the Williamsburg Developments; (5) revise its waiting list for the Williamsburg Developments so as to afford a priority to certain persons who were affected by the practices that were the subject of this litigation; and (6) share responsibility for lease successions with the Plaintiffs.

Based on the foregoing, it is determined that the Settlement Agreement materially altered the legal relationship of the parties.

**3. *The*   [*13]   *Settlement Agreement Carries Sufficient Judicial Imprimatur To Justify An Award Of Attorneys' Fees***

As described above, in order to establish that they are entitled to attorneys' fees pursuant to Section 1988, Plaintiffs must demonstrate not only that some material alteration of the legal relationship between the parties was achieved, but also that the relief so provided carried sufficient judicial *imprimatur*. *See Roberson*, 346 F.3d at 80.

**a. *The Settlement Agreement Disposed Of The Under-lying Action With Respect To NYCHA***

The Plaintiffs argue that sufficient judicial imprimatur exists with respect to the Settlement Agreement because the lawsuit has not been dismissed and is still pending. There is at least some authority from this district to support the general proposition that judicial imprimatur exists with respect to a partial settlement where "the underlying litigation continued in full force" and the parties to the agreement "remained before the Court." *Brandner Corp. v. V-Formation, Inc.*, 2004 U.S. Dist. LEXIS 27848, No. 96 Civ. 3163 (JSR), 2004 WL 1945761, at *2 (S.D.N.Y. Mar. 4, 2004).

Here, NYCHA is not before the Court in connection with the [*14]   underlying litigation. The Settlement Agreement states explicitly that it shall have the effect of dismissing Plaintiffs' action against NYCHA. Paragraph one of the Settlement Agreement states as follows:

> The Consent Decree entered on May 5, 1978, the Stipulation and Order dates April 17, 1991, and the underlying action are hereby dissolved, extinguished, and for all purposes terminated and dismissed as to NYCHA; and all rights, duties and obligations as to NYCHA created thereunder shall cease to exist. All pending motions and cross-motions are hereby withdrawn with prejudice.

(09/25/02 Settlement Agreement at P 1.) Since NYCHA is not currently before the Court, there is no basis for recognition of judicial imprimatur pursuant to the rule suggested by the Brandner court.

**b. *The Settlement Agreement Did Not Expressly Retain The District Court's Enforcement Jurisdiction***

The Second Circuit has held that in the context of a stipulation of settlement, a district court's express retention of enforcement jurisdiction over the agreement is a sufficient demonstration of judicial *imprimatur* to convey prevailing party status on the plaintiff. *See Torres*, 356 F.3d at 245 [*15]   (holding that a so-ordered stipulation of dismissal failed to satisfy the *Buckhannon* judicial *imprimatur* requirement in part because the court had not expressly retained jurisdiction over enforcement of the terms of settlement); *Roberson*, 346 F.3d at 84 (holding that a dismissal in which the court expressly retained jurisdiction to enforce the settlement terms satisfied the *Buckhannon* judicial *imprimatur* requirement) (citing *Kokkonen v. Guardian Life Ins. of America*, 511 U.S. 375, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994)).

However, the Settlement Agreement contains no such term expressly retaining the Court's enforcement

jurisdiction. Rather, the Settlement Agreement merely lists the terms of the settlement.

Plaintiffs argue that the mere fact that the Court so ordered the Settlement Agreement is sufficient judicial *imprimatur* to justify an award of attorneys' fees under 42 U.S.C. § 1988. This argument has been flatly rejected by the Second Circuit. See *Torres*, 356 F.3d at 244 (stating that the "'so ordered' stipulation of dismissal in this case does not carry with it a 'sufficient judicial imprimatur' to [*16] warrant treatment as a monetary judgment . . . .")

**c. The Settlement Agreement Physically Incorporated The Terms Of Settlement And There Is Other Evidence That The Court Intended To Place Its Imprimatur On The Settlement**

The Second Circuit has stated that judicial *imprimatur* can be found where the court physically incorporates the terms of settlement into its order and there is also some other evidence that the court intended to place its *imprimatur* on the settlement. *Id.* at 244-45 n.6. As stated above, the document so ordered by the Court on September 25, 2002 enumerated all terms of the agreement in their entirety.

Moreover, there is ample evidence that the Court intended to place its *imprimatur* on this settlement: The Court held multiple conferences to assist in reaching a settlement, participated in an effort to resolve contested issues, and reviewed the settlement as required by Fed. R. Civ. P. 23(e). Also, a fairness hearing was held and the Court approved the Settlement Agreement immediately after such hearing.

**d. The Settlement Agreement Created Obligations To Be Performed And Enforced By [*17] The Court**

Judicial *imprimatur* can also be found where a so-ordered stipulation of settlement (1) contains "obligations of the court that [are] beyond the power of the parties to perform and that [can] be enforced only by the [court]" and (2) where the court has "carefully reviewed the terms of the [settlement] . . . ." *Torres*, 356 F.3d at 245 (citing *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734 (2d Cir. 2000)).

As described above, the Settlement Agreement provided for specified amendments to NYCHA's lease-succession rules. To ensure YCHA's enforcement of the amended lease-succession rules, the Settlement Agreement also specified the following procedure for the periodic review of decisions by NYCHA to approve lease-succession applications concerning rental units in the Williamsburg Developments. The Settlement Agreement provided as follows:

Within 30 calendar days of the end of each calendar quarter, NYCHA will forward to Alan W. Heifetz, Esq. ("Heifetz") a list of those units at [the Williamsburg Developments] at which, during the quarter, and subject to the terms of this agreement, persons have been advised that [*18] their application for lease succession have been approved. The list shall be accompanied by the document and information upon which NYCHA relied both to evaluate and to grant the request for succession ("Administrative Record"). ...

Pursuant to this Settlement Agreement, Heifetz shall review each decision to grant succession at the developments ... . Heifetz shall determine on the basis of the Administrative Record as a whole whether a decision to grant succession is without a reasonable basis. ...

If Heifetz finds that a decision to grant succession is without a reasonable basis, he shall advise NYCHA in writing of his findings and the specific reasons therefor no later than 45 days after the close of all submissions. NYCHA shall send the affected person a copy of Heifetz's finding which, by reason of NYCHA's agreement to be bound by that finding, shall constitute NYCHA's final and binding determination of the person's remaining family member claim. Nothing contained herein shall abrogate any rights the affected person may otherwise have to challenge the final and binding determination in a court of competent jurisdiction, nor shall anything contained herein be deemed to [*19] confer upon the affected person any right to sue Heifetz.

(Settlement Agreement at P 5.)

The above-described provisions relating to post-approval review of lease successions are sufficient to establish judicial *imprimatur*. First, since the above-described review process is not subject to oversight by NYCHA, [6] it is an obligation that is beyond the power of the parties to perform. *See Torres*, 356 F.3d at 245. Second, in his capacity as arbiter selected by the parties, Heifetz performs a function that, pursuant to the Settlement Agreement, would otherwise be required of this Court. Therefore, maintenance of the post-approval review process is functionally equivalent to an obligation

undertaken by the Court, and it can be enforced only by the Court. *See id.* In the event that NYCHA fails to provide to Heifetz the required lease-succession information, it would be this Court's obligation to determine whether a civil contempt order is warranted. *See Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 917 n.2 (citing *Kokkonen*, 511 U.S. at 375).

> 6   The Settlement Agreement makes clear that Heifetz does not act on behalf of NYCHA, HUD or any other administrative agency. Paragraph 14 states that "it is the parties' and Heifetz's understanding that Heifetz is participating in these proceedings solely by virtue of the parties' agreement and is not serving in any official capacity or pursuant to any statute or regulation."

[*20]   Finally, it is undisputed that this court has carefully reviewed the terms of the Settlement Agreement, as required by the Second Circuit. *See Torres*, 356 F.3d at 245. As described above, the Court undertook a review of the settlement terms as required by Rule 23(e), and it so ordered the Settlement Agreement only after a fairness hearing was conducted.

#### e. *Preservation Coalition Does Not Bar Plaintiffs' Recovery of Attorneys' Fees*

According to NYCHA, the Second Circuit's decision in *Preservation Coalition*, 356 F.3d 444, bars Plaintiffs' recovery of attorneys' fees. In *Preservation Coalition*, an historic preservation organization alleged that various federal and state agencies had violated the National Historic Preservation Act, the National Environmental Policy Act, and the Transportation Act by failing to consider and address the impact of developing an area of Buffalo's waterfront on an historic Erie Canal terminus. *See Preservation Coalition*, 356 F.3d at 448. In particular, the historic preservation organization challenged a Final Environmental Impact Statement ("FEIS") as inadequate because it failed to [*21]   consider a subsequently excavated historic slip wall, and moved for an injunction against further construction and a writ of mandamus ordering the agencies to prepare a Supplemental Environmental Impact Statement ("SEIS"). *See id.*

The district court denied the injunction, but ordered the agencies to prepare an SEIS to address the issues raised by the discovery of the slip wall. *See id.* Thereafter, the district court entered a stipulation and order which memorialized the parties agreement that the development project should include the newly discovered slip wall; dismissed the historic preservation organization's claims; vacated the district court's prior orders; required the agencies to prepare a new FEIS, which the historic preservation organization reserved the right to

challenge; and thereafter awarded fees and costs of approximately $ 167,000. *See id.*, at 449.

On appeal, the Second Circuit affirmed in part and vacated in part, holding that the historic preservation organization could only recover fees for obtaining the Court-ordered SEIS, but not for any work thereafter, including the stipulation and order that settled the litigation. The [*22]   Second Circuit explained that:

> We agree with appellants that, under *Buckhannon* — which was decided after the settlement was reached -- appellee is not entitled to recover the fees and costs associated with obtaining the Stipulation and Order that dismissed the case with prejudice. The effect of the Stipulation and Order was to vacate the district court's orders providing for ongoing judicial involvement and to begin the environmental review process anew. This Stipulation and Order is functionally a private settlement agreement that the Supreme Court concluded does not provide prevailing party status to a plaintiff because, by its own terms, it eliminated the ongoing judicial oversight in favor of restarting the review process from scratch.

*Id.* at 451.

*Preservation Coalition* is distinguishable on its facts. There, the stipulation and order that settled the litigation merely provided that the parties would submit themselves to an environmental review process conducted and enforced by the relevant administrative agencies. The district court undertook no obligation of its own. In contrast, here the Court has taken on an obligation — *i.e.* [*23]   , the obligation to engage in post-approval review of lease successions -- that is beyond the power of the parties to perform and can only be enforced by the Court.

Furthermore, although the *Preservation Coalition* court indicated that stipulation and order that settled the litigation enumerated the terms of the settlement, id. at 449, it did not indicate that there was additional evidence that the district court intended to place its judicial *imprimatur* on the settlement. In contrast and as described above, there is ample evidence here beyond the mere enumeration of settlement terms in the Settlement Agreement to demonstrate that Court intended to place its imprimatur on the settlement between the parties.

Based on the foregoing, it is determined that the Settlement Agreement carried adequate judicial *imprimatur*

to satisfy the second prong of the *Buckhannon* test for prevailing party status.

**B. *NYCHA Is Ordered To Pay Attorneys' Fees In The Amount Of $ 187,680***

Where an award of fees is found to be warranted pursuant to federal law, a court begins by determining the "lodestar amount." This "lodestar" is "'properly calculated by multiplying the [*24] number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 94, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989)). The lodestar includes time spent in preparation of a fee application. *Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995).

In calculating the lodestar, the district court typically perform a three-step process: (1) it determines the reasonable hourly rate for each attorney; (2) it excludes excessive, redundant, or otherwise unnecessary hours; and (3) it excludes hours dedicated to severable unsuccessful claims. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433-35, 440, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983); *Quaratino*, 166 F.3d at 425. In a fourth step, the Court may choose to provide a reduction of the lodestar depending upon a prevailing party's limited success. *See Hensley*, 461 U.S. at 440.

Based on the extensive submissions of the parties, two issues are here presented: the amount of time appropriately expended [*25] and the applicable hourly rate.

**1. *Requirements Concerning Records Submitted In Support of Section 1988 Fee Applications***

"The burden is on counsel [requesting fees] to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required . . . ." *F. H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). It is well established that pursuant to 42 U.S.C. § 1988(b), "it is necessary for the Court to examine contemporaneous billing records, time sheets or other documented, authentic, and reliable time records." *Murray v. Comm'r of N.Y. Dep't of Educ.*, 354 F. Supp. 2d 231, 238 (E.D.N.Y. 2005). As stated by one court of this district:

In order to recover attorney's fees, the prevailing party must submit time records specifying, "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Although time records need not contain great detail and specificity, attorneys should identify the general [*26] subject matter of their work. [*Hensley*, 461 U.S. at 437 n.12]. If "the time records submitted in support of a fee application lack sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed, the Court is justified in reducing the hours claimed for those entries." *Mautner v. Hirsch*, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993), *aff'd in part, rev'd in part*, 32 F.3d 37 (2d. Cir. 1994) (citations omitted); *see also Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510, 520, (S.D.N.Y. 1994) (reducing lodestar by thirty percent due in part to vague time entries such as "telephone call to S. Berger," "review Macklowe files," and "conference with T. Holzman").

*Williams v. New York City Housing Authority*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997).

Fee applicants should not "'lump several services or tasks into one time sheet entry because it is then difficult . . . for a court to determine the reasonableness of the time spent on each of the . . . services or tasks provided. . . . It is the responsibility of the applicant to make separate [*27] time entries for each activity.'" *Wilder v. Bernstein*, 975 F. Supp. 276, 286 (S.D.N.Y. 1997) (quoting *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 731 (Bankr. E.D.N.Y. 1995) (internal quotations and citation omitted)).

"Mixed-class entries are properly excluded since, without more detail, a court cannot determine the proper compensation." *Hutchinson v. McCabee*, 2001 U.S. Dist. LEXIS 11927, No. 95 Civ. 5449 (JFK), 2001 WL 930842, at *4 (S.D.N.Y. Aug. 15, 2001); *see also Beberaggi v. New York City Transit Auth.*, 1994 U.S. Dist. LEXIS 1638, No. 93 Civ. 1737 (SWK), 1994 WL 48805, at *3 (S.D.N.Y. Feb. 17, 1994) (deducting hours from fee request in part because plaintiff's counsel's time sheets do not specify the amount of time spent on each separate task"); *Williams*, 975 F. Supp. at 327 (rejecting billing entries where, among other things, attorneys mixed legitimate requests with requests for non compensable work).

Finally, the Second Circuit has stated that "any attorney -- whether a private practitioner or an employee of a nonprofit law office -- who applies for court-ordered compensation . . . must document the application with contemporaneous [*28] time records." *Carey* 711 F.2d

at 1148. "'Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* . . . .'" *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991)). However, such typed reconstructions fail to satisfy Carey if they contain more detail than the original records. *See, e.g., People ex rel. Vacco v. RAC Holding, Inc.*, 135 F. Supp. 2d 359, 364 n.1 (N.D.N.Y. 2001)

### 2. *Certain Records Submitted By Plaintiffs' Counsel Are Impermissibly Vague*

Here, certain of the time entries are impermissibly vague in that they: (1) do not adequately describe the subject matter of the tasks purportedly performed; (2) fail to adequately differentiate tasks that are compensable at different rates; and (3) combine compensable and non-compensable tasks into single entries.

Many time entries fail to indicate the subject matter of telephone calls, conferences, and documents reviewed and drafted, or otherwise [*29]  provide context by referring to specific issues or events in the case. With respect to the records submitted by Plaintiffs' attorney Foster Maer, there is significant over-reliance on generic descriptions such as "research," "telephone conference," "conf w AL," "TC NC," "mtg w/GC," "Prep record, litigation," "ltr. to HS," "memo/law," and "fee prep." (*See* Declaration of Gary Nester signed July 15 2003 ("Nester Decl."), at Ex. CC.) Similarly, the time records of Plaintiffs' attorney Alan Levine also contain a significant number of time entries bearing generic labels such as "Tel NC," "ltrs to NC," "motion to compel," "brief and affs.," and "memo." (*See* Affirmation of Alan Levine signed February 15, 2003 ("Levine Aff."), at Ex. A.)

Furthermore, a review of the records submitted reveals that certain paralegal work (*e.g.*, reviewing tenant files and drafting file summaries) was combined with

attorney work (*e.g.*, drafting court documents and preparing for conferences).

A number of entries combine compensable with non compensable tasks including publicity efforts, lobbying, and clerical work. For example, Levine's 4.5 hour time entry for July 23, 1998 combined an unspecified [*30]  amount of time spent drafting a letter "for JAF to White House Staff" with various telephone conferences and the review of tenant files. (*See* Levine Aff. Ex. A.) Moreover, reimbursement was sought for 391.65 hours spent on tasks that Plaintiffs' attorneys admit are not compensable. (*See* Nester Dec. Ex. EE; Affirmation of Foster Maer signed on February 5, 2003 ("Maer Aff."), at P 67; Levine Aff. P 51a).

### 3. *Plaintiffs' Counsel May Not Recover Fees Evidenced Only By Non-Contemporaneous Time Entries*

In support of their fee application, Plaintiffs' counsel submitted typed versions of the original handwritten records. Upon NYCHA's request, Plaintiffs' counsel also produced the handwritten notes that were made contemporaneously with the events reflected therein. (*See* Nester Decl. PP 59-60 & Exs. U-V.) A comparison of the two sets of records for Levine shows that the typed records do not merely transcribe the handwritten records. Rather, they provide greater detail about the nature of the work, increase the number of hours attributed to certain tasks, and add new entries in some instances. (*See* Nester Decl. PP 64-66 & Ex. X.) "Such 'hindsight review' is not an [*31]  adequate substitute for contemporaneous time records." *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (quoting *Ward v. Brown*, 899 F. Supp. 123, 130 (W.D.N.Y. 1995)).

### 4. *NYCHA's Calculation Of Hours Is Adopted*

For the reasons set forth above, NYCHA's calculation of the time expended by Plaintiffs' counsel is adopted. That calculation is as follows:

| Time Expended by Maer and His Associates | | |
|---|---|---|
| Task | Hours | |
| | Maer | Associates |
| Discovery (Tenant Files) | -- | 250 |
| Discovery (Depositions) | 83.6 | -- |
| 1998 Cross Motion | 24 | 16 |
| Settlement | 111.2 | -- |
| Fee Application | 29.1 | 19.4 |
| Total Hours: | 247.9 | 285.4 |
| Time Expended by Levine and His Associates | | |
| Task | Hours | |
| | Levine | Associates |

2005 U.S. Dist. LEXIS 5200, *

| | | |
|---|---|---|
| 1998 Cross-Motion | 24 | 16 |
| Settlement | 185 | -- |
| Fee Application | 13.5 | 9 |
| Total Hours: | 222.5 | 25 |

### 5. Applicable Hourly Rates

An hourly rate of $ 350 is sought by the Plaintiffs for the work performed by Foster Maer. An hourly rate of $ 375 is sought by the Plaintiffs for work performed by Alan Levine. The parties agree that $ 150 is the appropriate hourly rate for work performed [*32] by the associates of both Maer and Levine.

The Second Circuit has stated that "attorney's fees are to [be] awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *Carey*, 711 F.2d at 1139 (internal quotations omitted). The need to avoid the appearance of awarding a windfall takes on added importance when the defendant is a public agency. *See, e.g., Santa Fe Natural Tobacco Co. v. Spitzer*, 2002 U.S. Dist. LEXIS 5384, Nos. 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631, at *5 (S.D.N.Y. Mar. 29, 2002).

The rates to be used in calculating the lodestar are the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984); *see also Kirsch v. Fleet Street Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997).

In determining the prevailing market rate in the community, the following factors should be considered: (1) the experience, reputation and ability of the attorneys, [*33] (2) the customary fee charged by counsel and their actual billing practice, (3) whether the fee is fixed or contingent, and (4) what courts have awarded to other counsel with similar backgrounds in similar cases. *See Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 516 (S.D.N.Y. 1984).

Levine has been a full-time civil rights litigator and educator for approximately thirty-eight years, and he has a private practice devoted exclusively to civil rights matters. He is also part-time special counsel to the Puerto Rican Legal Defense and Education Fund ("PRLDEF"), where he participates in and consults on federal civil rights litigation. He is an adjunct professor of law at Brooklyn Law School, and he has previously taught at the Benjamin N. Cardozo School of Law and the New York University School of Law. For five years, he was an associate professor of Hofstra University School of Law, where he was the director of the school's constitu-

tional law clinic. He has served as class counsel in a number of significant civil rights cases in state and federal courts.

Maer has been a full-time public interest litigator for approximately twenty-five [*34] years. After graduating from Northeastern University School of Law, he was awarded a Reginald Heber Smith Community Law Fellowship (1978-80), and he worked for Connecticut Legal Services through 1981, serving as the managing attorney for his last year there. In 1981, Maer went to work for The Legal Aid Society in New York City as a staff attorney. He was counsel on a number of significant cases. In 1989, he began working at Brooklyn Legal Services Corporation A ("BLSA"). As the director of legal work, he had primary responsibility for overseeing the legal work of 15 staff attorneys and 4 paralegals at the Williamsburg office. He has litigated numerous cases concerning environmental and land-use issues. He served as counsel in the instant case. In 1996 Maer began working part-time at PRLDEF and BLSA. In the beginning of 2000, he began working full-time at PRLDEF.

This Court has awarded an experienced civil rights attorney with 18 years experience an hourly rate of $ 375. *See Davis v. N.Y. City Hous. Auth.*, 2002 U.S. Dist. LEXIS 23738, Nos. 90 Civ. 628 (RWS), I92 Civ. 4873 (RWS), 2002 WL 31748586, at *3 (S.D.N.Y. Dec. 6, 2002); *see also R.E. v. N.Y. City Bd. of Educ.*, 2003 U.S. Dist. LEXIS 58, No. 02 Civ. 1067 (DC), 2003 WL 42017, at *3 (S.D.N.Y. Jan. 6, 2003) [*35]   (awarding $ 375 per hour to a lawyer experienced in IDEA cases); *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) (awarding an experienced employment discrimination lawyer an hourly rate of $ 375); *Green v. Torres*, 2002 U.S. Dist. LEXIS 8096, No. 98 Civ. 8700 (JSR), 2002 WL 922174, at *1 (S.D.N.Y. May 7, 2002) (awarding an experienced civil rights lawyer $ 400 per hour); *Marisol A. v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2002) (awarding $ 375 to the lead attorney in a civil rights case). Furthermore, a recent billing survey made by the *National Law Journal* shows that senior partners in New York City charge as much as $ 750 per hour and junior partners charge as much as $ 490 per hour. *See In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*, National Law Journal, December 6, 2004, at 22.

On the basis of their experience and comparable awards, a reasonable hourly

2005 U.S. Dist. LEXIS 5200, *

rate for both Maer and Levine is $ 375 an hour.

### 6. Lodestar Calculation

Maer and Levine billed a total of 470.4 hours in connection with the above-described motions. Based on an hourly [*36]  rate of $ 375, they generated fees in the amount of $ 176,400.

The associates of Maer and Levine billed a total of 310.4 in connection with the above-described motions. Based on an hourly rate of $ 150, they generated fees of $ 46,560.

### 7. Reduction Of Lodestar To Reflect Plaintiffs' Partial Success

As reflected in the Settlement Agreement, the Plaintiffs were only partially successful with respect to the above-described motions. Therefore, a reduction in the lodestar is warranted. *See Hensley*, 461 U.S. at 440. For

this reason, the amount of fees that are recoverable will be reduced by $ 35,280.

### Conclusion

The Plaintiffs' motion for a fee award is granted in part, and NYCHA's motion to strike the application is denied. Based upon the submissions to date, a fee award in the amount of $ 187,680 is appropriate.

Because the parties may well have anticipated only a decision on the prevailing party issue, leave is granted for any additional submissions within thirty (30) days.

It is so ordered.

New York, NY

March 31, 2005

ROBERT W. SWEET

U.S.D.J.