UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| ALFRED G. OSTERWEIL, | : | |
| --- | --- | --- |
| | : | |
| *Plaintiff* | : | Case No. 1:09-cv-825 (MAD/DRH) |
| | : | |
| *Versus* | : | |
| | : | |
| GEORGE R. BARTLETT, III, et al., | : | |
| | : | |
| *Defendants* | : | |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS**

**PLAINTIFF IS THE PREVAILING PARTY**

A party meets the threshold requirement necessary to be considered a prevailing party under section 1988 if he or she succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Texas State Teachers Assn. v. Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L. Ed. 2d 866 (1989). Defendants paid only nominal attention to this point, as it is clear from the record, judgment was entered in Plaintiff's favor and the Defendants modified the statute subject to Plaintiff's complaint, thus satisfying the threshold for "prevailing party" status as a material alteration of the relationship of the parties took place. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 604, 121 S. Ct. 1835, 1840, 149 L. Ed. 2d 855 (2001).

Defendants primarily focus their argument on the premise that even if the Plaintiff is determined to be the "prevailing party", they should not be entitled to attorneys fees as such an

award would be unjust. In support of this position, Defendants cite <u>Wilder v. Bernstein</u> 725 F. Supp. 1324, 1329 (S.D.N.Y. 1989) (incorrectly cited in Defendants' Response as 72 FSupp 1324). However, <u>Wilder</u> stands in direct opposition to Defendants' position. The plaintiffs in <u>Wilder</u> were awarded attorney fees, and the nineteen private child-care agencies, which were acting as intervenors, were also awarded attorney fees. These awards were in fact re-affirmed by the Second Circuit Court of Appeals.

> Given their "comprehensive" and "detailed" efforts, their "integral and essential role," and their "significant impact" on the creation of a remedy that vindicated the civil rights of the children and their families in the foster care system, the district court held that the intervenors were therefore prevailing parties entitled to an award of attorneys' fees and costs. <u>Wilder v. Bernstein</u>, 965 F.2d 1196, 1201 (2d Cir. 1992).

Despite Defendants' attempt to misdirect this Court's attention, the reality of the case at hand is that the Plaintiff is and always was Mr. Osterweil. For the few time entries that do use the word "client," there is no basis to conclude that "client" does not mean Mr. Osterweil. While the National Rifle Association assisted the Plaintiff in acquiring the best legal services available and paid for those services on behalf of the Plaintiff, the Plaintiff and client was always Mr. Osterweil.

The Defendant's presumption that because the Plaintiff received financial support from a non-profit organization, he has forfeited his right to attorneys' fees is counter to the case law of this District and throughout the Nation. "It is also well-established that representation by a lawyer employed by a non-profit corporation….is not a special circumstance justifying denial of attorney's fees. <u>Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean</u>, 515 F. Supp. 33, 35 (W.D.N.Y. 1981) <u>vacated</u>, 667 F.2d 305 (2d Cir. 1981), <u>citing</u> <u>New York Gaslight Club, Inc. v. Carey</u>, 447 U.S. 54, 55, 100 S. Ct. 2024, 2027, 64 L. Ed. 2d 723 (1980), "We agree with the courts which have held that the allowable fees and expenses may not be reduced because (the

prevailing party's) attorney was employed . . . by a civil rights organization . . . or because the attorney does not exact a fee." Torres v. Sachs, 538 F.2d 10, 13 (2d Cir. 1976). "That a nonprofit legal services organization may contractually have agreed not to charge any fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action, calculated in the usual way." Blanchard v. Bergeron, 489 U.S. 87, 95, 109 S.Ct. 939, 103 L. Ed. 2d 67 (1989); Anderson v. Rochester-Genesee Reg'l Transp. Auth., 388 F. Supp. 2d 159, 167 (W.D.N.Y. 2005)

Further, courts have repeatedly held that the fact that a third party paid legal fees on behalf of a plaintiff does not preclude an award of attorneys' fees if the plaintiff is a "prevailing party." See Branham v. May "[T]he existence of third-party financing of a plaintiff's suit, as is the case here, has been held to be no bar to the awarding of attorneys' fees, CIV.A. 04-214-HRW, 2007 WL 1287945 (E.D. Ky. Apr. 30, 2007) citing Am. Council of the Blind v. Romer, 962 F.2d 1501, 1503 (10th Cir. 1992), vacated and remanded on other grounds, 506 U.S. 1075, 113 S.Ct. 1038, 122 L. Ed. 2d 348 (1993). Numerous other cases have allowed the prevailing party to recover attorneys fees without regard to other factors, such as the party's ability to pay his own lawyer, Jones v. Wilkinson, 800 F.2d 989 (10th Cir.1986), Cooper v. Singer, 719 F.2d 1496 (10th Cir. 1983), overruled on other grounds, Venegas v. Mitchell, 495 U.S. 82, 110 S.Ct. 1679, 109 L. Ed. 2d 74 (1990), or whether the prevailing party was a lawyer representing himself pro se and thus not liable for fees. Duncan v. Poythress, 777 F.2d 1508 (11 Cir. 1985). An attorneys fee award has also been awarded when counsel was receiving partial compensation from a third party, Johnson v. University College of the University of Alabama in Birmingham, 706 F.2d 1205 (11th Cir. 1983), Ward v. Kelly, 515 F.2d 908 (5th Cir. 1975).

There is no logical distinction between the financing arrangements in the above-cited cases and the arrangements between the parties in this case that would require a different result. Therefore, the fact that Plaintiff was represented by attorneys retained by a civil rights organization or that a third party paid any of the legal fees on behalf of Plaintiff, does not affect Plaintiff's right or ability to recover those costs. As such, as the "prevailing party", Plaintiff is entitled to and should receive compensation for his attorneys' fees.

**PLAINTIFF IS ENTITLED TO THE REQUESTED ATTORNEYS FEES**

**A.    The Rates Are Reasonable**

Defendants argue that the rates sought by Plaintiff are outrageously unreasonable. See Defs' Memorandum at 5. However, it is important to note that Plaintiff was represented by two separate law firms dealing with two separate aspects of the case. The hourly rates of Mr. Schmutter and the rates of the respective partners and associates of the firms Farer Fersko and Greenbaum, Rowe, Smith & Davis LLP, are well within the normal and expected rates found in the Second Circuit and the Northern District of New York. Mr. Schmutter's Declaration, attached hereto, describes in sufficient detail the basis for the rates charged. As to the law firm of Bancroft PLLC, our initial Motion for Attorneys Fees and Costs spelled out in great detail the qualifications of Mr. Clement. Mr. Clement's Amended Declaration, attached hereto, provides biographical information for all of the members of Bancroft who worked on the case and leaves little doubt that that firm is made up of some of the most accomplished lawyers available to any client in this District or anywhere in the country.

Nevertheless, the factors that determine a reasonable rate are generally the "prevailing market rate for counsel of similar experience and skill to the fee applicant's counsel." Nautilus

Neurosciences, Inc. v. Fares, 13 CIV. 1078 SAS, 2014 WL 1492481 (S.D.N.Y. Apr. 16, 2014); Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir.2005); Accord Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 10 Civ. 1853, 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (instructing courts to look at market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation").

This case involved an issue that had wide-ranging significance to thousands of residents of New York. Although Mr. Osterweil was a single party, aggrieved by a single action of the State, this same illegal conduct was the policy of the State and applied to every individual who lived part-time in the State of New York. Mr. Osterweil, an attorney, recognized the significance of the outcome of his case and sought out the help and assistance of the best attorneys available. The Defendants appear to be suggesting that because Mr. Osterweil brought this action where he owned property and where his rights were denied, his choice in representation should be limited to an attorney from that district only; that is not the law.

There are very few attorneys who practice Second Amendment constitutional litigation, and who practice constitutional litigation on behalf of plaintiffs against government entities. As such, Plaintiff hired attorneys with skills, experiences, and reputations not easily comparable to or found in local counsel. The decision to hire attorneys who possessed the necessary skills to achieve the results Mr. Osterweil sought should not be used to his detriment.

**B.     Combined and Non-specific Time Entries**

The Defendants contend that the Plaintiff has improperly engaged in "block billing" or "mixed class entries", *i.e.* the aggregation of various tasks within a single time entry, and as such those tasks should be excluded from the calculation of time. See Defs' Memorandum at 8.

Defendants cite Williamsburg as evidence of this position. "[M]ixed-class entries are properly excluded since, without more detail, a court cannot determine the proper compensation." Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., 76 CIV. 2125 (RWS), 2005 WL 736146 (S.D.N.Y. Mar. 31, 2005) opinion amended on reconsideration, 76 CIV.2125 RWS, 2005 WL 2175998 (S.D.N.Y. Sept. 9, 2005).

However, Defendants neglect to elaborate on the true rationale on which those "mixed-entries" were excluded. In Williams, the court rejected lumped billing entries where attorneys either combined items which should have been compensated at different hourly rates (such as time for travel to and attendance at meetings, where travel time was compensated at a lower rate), or mixed legitimate requests with requests for work which may not have been compensable at all. In those instances such "mixed-class" entries are determined to be excluded since, without more detail, a court cannot determine the proper compensation. However, it has long been held in this District that itemization of billing entries is not required nor should they be excluded, so long as the different tasks which have been lumped together are compensable at the same rate. Hutchinson v. McCabee, 95 CIV. 5449 (JFK), 2001 WL 930842 (S.D.N.Y. Aug. 15, 2001) quoting Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y.1999).

As discussed in Rodriguez ex rel. Kelly v. McLoughlin, block billing is not grounds for blanket exclusion. "Although defendants are correct to some degree that block billing makes it more difficult for the Court to determine with precision exactly how much time was spent on each task, the practice of block billing is not prohibited in this Circuit." Id. 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); Wise v. Kelly, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008); LV v. New York City Dep't of Educ., 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010). Further, as long as all of the work recorded in one entry is compensable, a court is capable of evaluating the application.

Ursa Minor Ltd. v. Aon Fin. Products, Inc., 00 CIV 2474(AGS), 2001 WL 1842042 (S.D.N.Y. May 30, 2001).

The Defendants' Memorandum in Opposition lists all the time entries they deem "mixed" and segregates them by law firms. Our list below integrates the Defendants' list and then separates them by the two unique forms of entries. The immediate list highlights the fact that these "mixed" entries selected by the Defendant are in fact merely one overarching activity with an elaboration of the supporting tasks included. Id. at 8-15., e.g. *"Complete draft brief; review record and revise facts section of brief; proofread brief; e-mail brief to P. Clement"*, Id. at 8. The additional tasks listed in the aforementioned example are in essence an expansion of the task "complete draft brief". To penalize the Plaintiff for providing more detail by itemizing the various tasks performed to "complete draft brief" is simply unjust and misconstrues the meaning of "block billing". Nonetheless, all activities within the entries are both compensable and compensable at the same rate and thus not subject to exclusion.

>1/20/12	Complete draft brief; review record and revise facts section of brief; proofread brief; e-mail brief to P. Clement
>
>1/24/12	Communicate with D. Schmutter regarding joint appendix; adjust brief cites to match joint appendix; revise and edit brief
>
>1/25/12	Revise and edit brief to incorporate edits and suggestions from other attorneys; review Judge Kavanaugh's dissent in Heller II; redact appendix
>
>4/26/12	Complete draft of argument section; review Bartlett's motion materials; edit draft and send to P. Clement
>
>7/01/12	Review briefs filed to date; develop matrix categorizing new arguments presented by Bartlett
>
>7/05/12	Review appellee brief; review certification case law; review Pullman doctrine case law; review waiver case law; review Heller and McDonald; review standing case law; review district court opinion; review all district court filings; review joint appendix

10/05/12       Review case materials; assemble materials for oral argument preparation; e-mail P. Clement regarding moot

1/30/13        Review opinion and orders; review materials on certification process; exchanges e-mails regarding certification and timing, see id. at p. 29;

4/09/13        Review briefing order; review NY Court of Appeals rules; review briefing in recently certified cases

4/12/13        Draft brief; revise draft; speak to court regarding brief and appendix requirements; edit brief

4/13/13        Review recent Second Amendment decisions; revise draft

4/21/13        Review prepared briefing materials; revise citations to match new appendix; enter cite check changes; revise brief; send revised brief to P. Clement

6/10/13        Review state response brief; review opening brief; review NY Court of Appeals rules; review potential arguments in favor of not filing a reply brief; review argument transcript; discuss strategy with P. Clement

6/12/13        Review constitutional avoidance materials; review materials on certification jurisdiction; review materials on certification procedures; review district court and Second Circuit briefing

6/17/13        Review additional Second Amendment materials; draft responses to State's timing arguments; draft responses to State's arguments attempting to distinguish Heller; draft responses to State's intermediate scrutiny arguments; review and edit Second Circuit transcript for potential inclusion as an addendum

6/18/13        Review state cases on argument forfeiture; draft response to State's constitutional avoidance arguments; draft introduction and summary of argument; complete rough draft of brief; edit draft

6/24/13        Revise brief; review cite check changes; proofread brief; coordinate filing of brief.

9/02/11        Prepared Notice of Appearance. Conferred with Court re: filing deadline

10/06/11       Corresponded with Christopher Conte and Paul Clement re: [redacted]. Examined response

1/25/12	Examine issues re: appendix and filing brief and appendix; Confer with Mr. Brady re: Joint Appendix; Confer and correspond with Mr. Hudson re: [redacted]

1/27/12	Confer and correspond with Paul Clement re: [redacted]; Confer with Case Manager re: designation of counsel; Examine issues re: [redacted]

4/12/12	Confer with Mr. Brady re: motion to certify question of law; Confer with Christopher Conte re: [redacted]; Correspond with Paul Clement re: [redacted]

4/18/12	Examine motions of State to certify question of law and stay briefing schedule; Examine appellate rules re: motions; Correspond with Christopher Conte and Paul Clement re: [redacted]

4/20/12	Examine issues re: [redacted]; Confer with Christopher Conte; Correspond with Al Osterweil re: [redacted]

4/30/12	Draft opposition to motion for certification; Prepare revisions and comments; Examine revised draft and prepare comments; Prepare revisions and final version of opposition; Filed opposition; Correspond with Al Osterweil and all co-counsel re: [redacted]; Examine rules re: filing opposition to motion

6/26/12	Examine State's brief and prepare analysis for co-counsel and client; Examine recent case law

7/03/12	Prepare Oral Argument Statement; Examine Oral Argument Statement of State; Examine State's brief

7/08/12	Examine State's brief and case law; Examine draft reply and prepare comments

7/09/12	Correspond with Paul Clement re: [redacted]; Examine correspondence from Al Osterweil re: [redaction]; Correspond with Al Osterweil

7/10/12	Examine reply brief; File reply brief; Correspond with Al Osterweil re: [redacted]

8/21/12	Examine issues re: [redaction]; Correspond with clients and co-counsel re: [redacted]

1/29/13	Examine opinion of Second Circuit; Confer with client re: [redacted]; Confer with Al Osterweil re: [redacted]; Confer with Reuters re: decision

4/22/13    Prepare brief and appendix for filing; Examine correspondence from New York State re: appendix; Examine final draft of brief; Correspond with Zac Hudson re: [redacted]

2/04/14    Confer with Zac Hudson re: [redacted]; prepare for call with Court; Conference call with Court re: status of case; Correspond with clients and co-counsel re: [redacted]; Examine issues re: [redacted]

The remaining examples of "block billing" activities listed by Defendant may fall within the definition of "mixed class", however, all the activities listed within a single entry are both compensable and compensable at the same rate and thus not subject to exclusion. <u>Id.</u> at 8-15.

1/19/12    Draft brief; review recent New York case law on gun control; review New York case law on gun control; review New York gun control statutory regime

1/23/12    Revise brief; coordinate appearance of P. Clement and Z. Hudson with D. Schmutter

1/26/12    Conduct final edits and read-through of brief; coordinate filing with D. Schmutter; coordinate printing and filing with case manager; communicate with P. Clement about finalizing brief and logistical issues

4/23/12    Prepare for and participate in conference call with client; research stay and extension standards and motion format; draft and edit stay opposition; send draft to P. Clement; review P. Clement's edits; send draft to client

4/23/12    Prepare for and participate in conference call regarding response to State's certification and stay motions; edit opposition to stay

4/25/12    Research NY attorney general enforcement discretion; research NY and Second Circuit law on constitutional avoidance and certification; review NY residence and domicile cases; begin drafting motion opposition; edit drafted preliminary statement and statement of facts

4/30/12    Read and edit P. Clement's draft; circulate to group; set up cite-check; incorporate cite-check changes; coordinate submission of certification opposition; review final certification opposition

10

7/06/12    Complete review of district court documents; review Decastro and Ezell cases; review Ezell briefs; draft outline; complete rough draft of brief

7/07/12    Draft introduction and summary; complete draft of brief; add and edit citations; e-mail draft to P. Clement; conduct additional research on Pullman and waiver to address P. Clement's concerns; incorporate and proofread P. Clement's edits; send draft brief to D. Schmutter

7/10/12    Review District Court docket for Bartlett's past fingerprint-related arguments; exchange e-mails regarding brief; review cases cited in brief; review District Court opinion; review Bartlett brief; review cite-check changes; edit brief; complete final draft of brief; send final draft to D. Schmutter

10/23/12   Review briefs in preparation for moot; review relevant Second Amendment case law; review relevant New York case law; review certification cases; exchange e-mails with attorneys regarding moot; prepare questions for moot

10/24/12   Discuss case with K. Corkan and E. Murphy; review joint appendix materials; prepare for and participate in moot; type up questions for moot; conduct additional research on certification for P. Clement

10/24/12   Review materials on NY attorney general authority; review additional certification case law; review case law on authority of federal courts to interpret state statutes; construct case timeline; send research results and time line to P. Clement

2/12/13    Exchange e-mails regarding letter to NY Court of Appeals; review certification and stay oppositions; draft letter to NY Court of Appeals; exchange e-mails with P. Clement regarding same

4/10/13    Build brief outline; review materials filed in Second Circuit; review relevant NY case law and statutory provisions

4/11/13    Review relevant NY case law; review appendix materials; draft brief

4/18/13    Exchange emails regarding brief; develop additional constitutional avoidance material; edit revised brief; forward brief to D. Schmutter

4/19/13    Exchange e-mails with P. Clement regarding brief; review recent Supreme Court opinions for material on sanctity of

the home; review briefing order; review cite check; discuss logistics with D. Schmutter and case manager

4/22/13    Review updated brief; send to D. Schmutter; review updated appendix; exchange e-mails with D. Schmutter and case manager regarding brief; coordinate filing of brief; review electronic filing requirements; send final brief and appendix to D. Schmutter

4/30/13    Exchange e-mails regarding brief and appendix issues; review NY Court of Appeals rules; assemble additional appendix materials

5/01/13    Exchange e-mails regarding brief and appendix issues; review briefing order; review NY Court of Appeals rules; discuss brief and appendix issues with NY Court of Appeals clerk's office; review and redact updated appendix; address pro hac issues

5/06/13    Review redactions; make additional redactions to appendix; update brief cover and brief appendix citations; exchange e-mails regarding pro hac vice motions; discuss redaction issues with case manager; review updated brief and appendix

5/07/13    Discuss pro hac issues with clerk's office; discuss filing with case manager; exchange e-mails regarding brief, appendix and filing deadlines; review final appendix and brief; coordinate submissions of appendix and brief; exchange e-mails with D. Schmutter regarding same

6/23/11    Prepared initial filings. Corresponded with Paul Clement re: [redacted]. Examined documents from Al Osterweil, see Dkt. No. 48-2 at p. 10;

10/12/11   Examined correspondence from State re: CAMP conference. Correspond with clients re: [redacted]

1/13/12    Prepare Appellate brief; Examine Second Circuit rules re: brief preparation and filing

1/16/12    Prepare brief; Examine rules of Second Circuit re. brief length and filing

1/19/12    Confer with Mr. Hudson re: [redacted]; Prepare brief and appendix

1/23/12    Prepare appendix; Examine record re: appendix; Confer with Mr. Brady re: appendix and issues in case; Correspond

with Mr. Hudson re: [redacted]; Examine draft brief from Mr. Clement; Correspond with Mr. Clement re: [redacted]

1/24/12    Prepare joint appendix; Examine issues re: [redacted]; Examine correspondence from Mr. Osterweil re: [redacted]

4/23/12    Examine issues re: [redacted]; Conference call with Christopher Conte, Paul Clement and Zac Hudson re: [redacted]; Prepare opposition to stay

4/24/12    Prepare and file opposition to motion for stay; Correspond with clients re: [redacted]; Examine issues re: [redacted]

2/20/13    Examine order from court re: certification; Correspond with court re: briefing schedule; Correspond with client and co-counsel re: [redaction]

4/19/13    Examine draft brief and prepare comments; Confer with Zac Hudson re: [redacted]; Correspond with Simon Heller re: appendix; Confer and correspond with Al Osterweil re: [redacted]; Examine issues re: e-filing brief and appendix

3/06/14    Prepare declaration of Daniel L. Schmutter; Examine issues re: fee apoplication; Examine issues re: Brief

7/03/14    Prepare Declaration of Daniel L. Schmutter; Prepare Declaration of Al Osterweil; Examine issues re: fee application; Prepare notice and motion; Prepare revisions to Brief; Confer with Court re: procedures; Examine issues re: fee motion procedures; Confer with Rob McNally and Zac Hudson re: fee application

As the remaining "mixed" entries contain work that is both compensable and compensable at the same rate, it would therefore be improper to exclude these entries on the sole basis they were "block billed", as block billing is permitted, in no way prejudices any party, and all of the work listed is compensable at the same rate.

Defendants further argue that entries that fail to include sufficient detail should be excluded from any calculation of fees, yet fail to support this notion in any way other than to state the entries start with key phrases. See Defs' Memorandum at 16. Defendants argue the time entries that begin with such phrases as "conference with", "call to" and "email to" are

typically deemed to be vague to be compensated. See Defs' Memorandum at 15-16; citing Tucker v. City of New York, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).

However, Defendants' neglect to extend on the full discussion of the Tucker court, "[t]his requirement is generally not satisfied by vague entries such as "conference with" or "call to" a specified person…*citations omitted*…although the court may be able to deduce the nature and relevance of a generally described time entry based on its familiarity with the case or other contextual clues." Id. Further, Defendants fail to describe the general standard by which "vague" entries are evaluated. For an entry to be deemed non-vague, "they must identify the general subject matter of the claimed time expenditures." People ex rel. Vacco v. Rac Holding, Inc., 135 F. Supp. 2d 359, 363 (N.D.N.Y. 2001).

While, Plaintiff maintains that the entries provide adequate detail for the Court to properly determine their relevance to the calculation of fees and therefore should not be reduced. If the Court were to classify some of the entries as vague, the Defendants' requested relief for total exclusion of that time entry from the calculation of fees is improper, unjust and unsupported by case law. In fact, such drastic measures have been routinely disapproved by the courts. "Complete disallowance of attorneys' fees was not an appropriate remedy to address prevailing civil rights attorneys' impermissibly vague billing records." People ex rel. Vacco v. Rac Holding, Inc., 135 F. Supp. 2d 359 (N.D.N.Y. 2001).

In Raniola v. Bratton, the court found that "Defendants' complaint about lack of specificity in the work summaries does not, in itself, justify their demand for a substantial reduction in compensable time." Although certain time entries were "fairly general, terms such as 'case preparation' or 'meeting' ... are sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed." No. 96 Civ.

4482(MHD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003), (citing Tran v. Tran, 166 F. Supp. 2d 793, 800 (S.D.N.Y. 2001) ("Although attorneys must record the general nature of their work, they need not include detailed descriptions of the exact work performed."), Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 970 F. Supp. 333, 342 (S.D.N.Y. 1997) ("[W]here an attorney's time entries are vague, courts may attempt to decipher them by reference to 'the context in which these entries occur [to determine] what work was involved.'") (quoting Lenihan v. City of N.Y., 640 F. Supp. 822, 826 (S.D.N.Y. 1986)). "The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." Raniola at *4 (citing Algie v. RCA Global Commc'ns, Inc., 891 F.Supp. 875, 894–96 (S.D.N.Y, 1994), affd, 60 F.3d 956 (2d Cir.1995)); see Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing Co., Inc., 11 CIV. 4308 PGG, 2013 WL 6171660 (S.D.N.Y. Nov. 25, 2013).

Thus, because the general subject matter of the time entries are distinguishable on their face or the subject matter is easily discernible from the contextual clues of the time entries or the Court's familiarity with the case at hand, it is unreasonable to determine the entries to be so vague as to exclude them from the calculation of fees.

**C.     Amended Declarations/Remaining Issues**

Plaintiffs have attached hereto the Amended Declarations of Daniel L. Schmutter and Paul D. Clement. These Amended Declarations are not additions to the original, respective, Declarations filed but are instead full replacements that seek to answer the questions posed by the Defendant. Specifically, the Amended Declarations address the Defendants contention that the matter was overstaffed and that some of the work performed during the course of litigation

was unnecessary also these Declarations include expanded biographical information in addition to the clarifications provided in the Declarations. The following section briefly discusses the aspects that were questioned.

As to the Schmutter Declaration, Defendants first claim that the redactions in certain entries render those entries insufficiently detailed to be evaluated. However, by this logic no entry containing privileged information could ever support a fee award. There is no support for that proposition. In fact, the redacted entries are all either privileged communications, legal research, or attorney analysis of particular issues. Identifying the subject matter of the communication, the research, or the analysis would not in any way enhance Defendants' ability to object.

Defendants argue that this matter was overstaffed. Yet the so-called "overstaffing" was really nothing more than a partner (Clement), an associate (Hudson), and local counsel (Schmutter); typical staffing in a case of this sort. Further, as counsel of record, Mr. Schmutter was obligated to review and be satisfied with every paper filed. Additionally, there were two separate oral arguments. Mr. Clement argued before the Second Circuit, and Mr. Schmutter argued before the New York Court of Appeals. Entries for the other attorneys were limited to specific task-based assignments.

Defendants argue that the Court of Appeals brief involved "writing on issues not even before the court." The fact that Defendants argued that the issue <u>should not</u> be before the court does not mean it <u>was not</u> actually before the court. The Second Amendment issue was squarely presented in the brief and argued at oral argument. Surely it is not up to Defendants to decide what arguments Plaintiff may present to a court.

Finally, Defendants complain that certain time was really administrative and/or clerical in nature, yet Defendants do not identify which time this is. Certainly, it is unfair to make Plaintiff guess at which time he must justify, and it is unfair to allow the Court to make the same guess when Plaintiff would have no opportunity to respond.

## CONCLUSION

It is clear from the record that the Plaintiff is the "prevailing party" in this matter and, as such, is entitled to attorneys fees. The exclusion of fees or their reduction is meant only for those cases where the billings fall so far below any standard that it cannot be determined what was done and what rate was charged, which as discussed in detail above, is not applicable to this case. Further, neither block billing nor vagueness is grounds for complete exclusion, as Defendants suggest, for proper and necessary work conducted by Plaintiff and to do so would be unjust and improper.

For the foregoing reasons, the Plaintiff respectfully request that this Court grant Plaintiff's motion pursuant to FRCP 54(d)(2) and 42 U.S.C. section 1988(b) and attorneys' fees in the amount of no less than $238,871.32, together with disbursements and expenses in the amount of $6,180.03, for a total allowance of no less than $245,051.35, together with such other and further relief as to the Court may deem just and proper.

Respectfully Submitted,

s/ Daniel L. Schmutter
Daniel L. Schmutter, Esq.
Bar Number: 507669
Attorneys for Plaintiff
Greenbaum, Rowe, Smith & Davis LLP
99 Wood Avenue South
Iselin, New Jersey 08830
Telephone: (732) 549-5600
Fax: (732) 549-1881
E-mail: dschmutter@greenbaumlaw.com