**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALFRED G. OSTERWEIL,**

                              **Plaintiff,**

      **vs.**                                  **1:09-cv-825**
                                            **(MAD/CFH)**

**GEORGE R. BARTLETT, III, in his official**
**capacity as Licensing Officer in the County of**
**Schoharie,**

                              **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**GREENBAUM, ROWE, SMITH &**       **DANIEL LOUIS SCHMUTTER, ESQ.**
**DAVIS, LLP**
P.O. Box 5600
Woodbridge, New Jersey 07095-0988
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**           **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**NEW YORK STATE LAW DEPARTMENT**    **JAMES B. MCGOWAN, ESQ**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      In this action, Plaintiff challenged the denial of his application for a permit to possess a

pistol pursuant to New York State's statutory mechanism by which individuals apply for and may

be granted permits to carry or possess firearms. On February 7, 2014, the Court granted judgment

in favor of Plaintiff and dismissed this action. *See* Dkt. No. 46. Presently before the Court is Plaintiff's motion for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. *See* Dkt. Nos. 48, 55. Defendant opposes the motion. *See* Dkt. No. 52.

## II. BACKGROUND[1]

In May 2008, Plaintiff applied for a handgun permit in Schoharie County, New York pursuant to New York Penal Law § 400.00(3)(a), which instructs an applicant for a license to carry or possess a pistol or revolver to apply for a license "'in the city or county . . . where [he] resides.'" *Osterweil v. Bartlett*, 706 F.3d 139, 140 (2d Cir. 2013) (quoting N.Y. Penal Law § 400.00(3)(a)) ("*Osterweil II*"). At that time, Plaintiff's primary residence was his house in Summit, New York, within Schoharie County. *Id.* While his license application was pending, Plaintiff moved his primary residence to Louisiana, keeping his house in Summit as a part-time vacation residence. *See id.* Plaintiff notified the Schoharie County licensing authorities of his change in domicile. *Id.*

Upon review of Plaintiff's application, Defendant, the licensing officer for Schoharie County, "interpreted § 400.00(3)(a)'s apparent residence requirement as a domicile requirement, relying on a 1993 decision from New York's Appellate Division, Third Department holding that, 'as used in this statute, the term residence is equivalent to domicile.'" *Id.* at 141 (quoting *Mahoney v. Lewis*, 199 A.D.2d 734, 735 (3d Dept. 1993)). Defendant further "concluded that a domicile requirement was constitutional under the Second Amendment . . . because of the State's interest in monitoring its handgun licensees to ensure their continuing fitness for the use of deadly

---

[1] The Court presumes the parties' familiarity with the full factual and procedural history of this action and discusses only the background pertinent to the instant motion.

weapons." *Id.* Defendant therefore denied Plaintiff's application based on Plaintiff's representations that New York State was not his primary residence and therefore not his domicile. *Id.*

Plaintiff commenced this action *pro se* on July 21, 2009, alleging that the denial of his handgun permit application violated his rights under the United States Constitution, the New York State Constitution, and the New York State Civil Rights Law. *See* Dkt. No. 1. In a May 20, 2011 Memorandum-Decision and Order, this Court interpreted Section 400.00(3)(a) as imposing a domicile requirement and determined that such a requirement did not violate the Second or Fourteenth Amendments. *See Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 78-89 (N.D.N.Y. 2011) ("*Osterweil I*"). The Court thus granted summary judgment for Defendant. *See id.* at 90.

On appeal to the Second Circuit, Plaintiff argued that a domicile requirement for handgun ownership is unconstitutional. *See Osterweil II*, 706 F.3d at 141. However, Defendant's "primary response" on appeal was "that there *is no* domicile requirement under New York law." *Id.* Defendant argued that "New York's highest court has never held that the law requires domicile, that the text speaks only of residence, that the New York Court of Appeals would likely apply only a residence requirement as a matter of constitutional avoidance, and that if the statute is construed as requiring only residence, 'this litigation would thereby be resolved.'" *Id.* (citation omitted). As such, Defendant urged the Second Circuit to certify the "domicile-or-residence question" to the New York Court of Appeals or to apply *Pullman* abstention and decline to decide the case at all. *Id.* In contrast, Plaintiff asked the Circuit to "stick with *Mahoney's* domicile-only rule and evaluate its constitutionality" and argued that "an important federal constitutional right is at stake, that certification will engender needless delay, and that the presence of an issue of

constitutional avoidance will actually exacerbate state-federal tension by having both a state court and a federal court opine on a constitutional question in the same case." *Id.* at 144.

Finding that the domicile-or-residence question met the three requirements for certification, the Second Circuit certified the following question to the New York Court of Appeals: "Is an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere eligible for a New York handgun license in the city or county where his part-time residence is located?" *Id.* at 145. After accepting the certified question, the New York Court of Appeals answered the certified question in the affirmative. *See Osterweil v. Bartlett*, 21 N.Y.3d 580, 582 (2013) ("*Osterweil III*"). In reaching this conclusion, the Court of Appeals analyzed the statute's plain language, legislative history, and inclusion of a mechanism whereby a license may be issued to a person "who is 'not . . . usually a resident' in New York State." *Id.* at 585-87. Based on its holding that Section 400.00(3)(a) does not preclude a part-time resident and non-domiciliary of New York from applying for a New York handgun license, the court "ha[d] no occasion to decide whether a contrary law would be unconstitutional." *Id.* at 587.

The Second Circuit then determined that the Court of Appeals' reading of Section 400.00(3)(a) resolved this litigation, declined to reach the constitutional question raised by Plaintiff's appeal, vacated this Court's decision in *Osterweil I*, and remanded this action to this Court. *See Osterweil v. Bartlett*, 738 F.3d 520 (2d Cir. 2013) ("*Osterweil IV*"). On remand, this Court dismissed the action because the Court of Appeals' interpretation of the statute removed any impediment to Plaintiff obtaining a New York State handgun license, and entered judgment in Plaintiff's favor. *See* Dkt. Nos. 46-47.

On March 10, 2014, Plaintiff filed a motion seeking attorney's fees and costs incurred in Plaintiff's appeal to the Second Circuit and subsequent proceedings. *See* Dkt. No. 48. Plaintiff

was represented before the Second Circuit and New York Court of Appeals, as well as before this Court on remand, primarily by attorney Daniel Louis Schmutter, with support from other attorneys at Mr. Schmutter's firm, Greenbaum, Rowe, Smith & Davis, LLP ("Greenbaum"). *See* Dkt. No. 48-1 at 9.[2]  Beginning in December 2011, Plaintiff was also represented on appeal by attorney Paul D. Clement and supporting attorneys at Mr. Clement's firm, Bancroft, PLLC ("Bancroft").  *See id.* at 9-10.  Plaintiff seeks $238,871.32 in attorney's fees and $6,180.03 in costs associated with the appeal of this matter.  Dkt. No. 48 at 1.  Defendant opposes the motion in its entirety on the ground that Plaintiff is not a prevailing party as contemplated by 42 U.S.C. § 1988.  *See* Dkt. No. 52-2 at 6-7.  Defendant further argues that even if Plaintiff is a prevailing party, the fees sought by Plaintiff are unreasonable and excessive.  *See id.* at 8.

## III. DISCUSSION

Pursuant to § 1988, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "Determining whether an award of attorney's fees is appropriate requires a two-step inquiry.  First, the party must be a 'prevailing party' in order to recover.  If [it] is, then the requested fee must also be reasonable." *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996) (citations omitted).

**A.     Whether Plaintiff Is a Prevailing Party**

A party is considered a prevailing party for purposes of awarding attorney's fees under § 1988 if the party "succeed[ed] on any significant issue in litigation which achieves some of the

---

[2] Citations to page numbers of documents identified by docket entry number are to the page numbers assigned by the Court's electronic filing system.

benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "To qualify for attorney's fees, there must be a 'judicially sanctioned changed in the legal relationship of the parties.'" *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134, 137 (2d Cir. 2011) (quoting *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12. Section 1988 "has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting," and therefore, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Wilder v. Bernstein*, 965 F.2d 1196, 1201-02 (2d Cir. 1992) (quoting S. Rep. No. 94-1011, at 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5912).

In the present matter, Defendant argues that Plaintiff is not a prevailing party and therefore not entitled to attorney's fees because Plaintiff prevailed on an interpretation of New York State statutory law and not the constitutional issue raised. *See* Dkt. No. 52-2 at 3-4. However, an award of fees is permitted where "the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim." *Maher v. Gagne*, 448 U.S. 122, 132 (1980). As the Supreme Court has explained, "such a fee award 'furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues.'" *Id.* at 133 (quoting *Gange v. Maher*, 594 F.2d 336, 342 (2d Cir. 1979)).

Here, Plaintiff prevailed not on a pendent state law claim but on a question of state statutory interpretation certified to the state's highest court. The First Circuit was confronted with a similar issue in *Exeter-West Greenwich Regional School District v. Pontarelli*, in which the plaintiffs raised constitutional challenges to the Rhode Island Commissioner of Education ("Commissioner")'s determination that a Rhode Island statutory provision required the plaintiff school district to pay tuition for a student within the district to attend a private religious high school. *See* 788 F.2d 47, 49 (1st Cir. 1986). The district court certified the question of whether the Commissioner had properly interpreted the statute to the Rhode Island Supreme Court. *See id.* The Rhode Island Supreme Court responded in the negative, finding that the school district had no obligation to pay the student's private school tuition. *Id.* The district court thus dismissed the plaintiff's complaint as moot, and later awarded attorney's fees to the plaintiff as the prevailing party. *Id.* at 49-50. The First Circuit upheld the award, finding that the plaintiffs achieved some of the benefit they sought from their § 1983 claim by succeeding in having the Commissioner's decision overturned and that denying a fee award for litigating a state-court issue when the federal court abstains from deciding the constitutional claim would "interfere with efficient allocation of issues and cases between the state and federal systems." *Id.* at 51 (quoting *Bartholomew v. Watson*, 665 F.2d 910, 913 (9th Cir. 1982)).

It does not appear that the Second Circuit has addressed the precise issue of whether a plaintiff that prevails on a state-law question certified to a state court, thereby resolving the plaintiff's § 1983 claims without a resolution of the constitutional issue raised, is a prevailing party for purposes of § 1988. The Court finds the First Circuit's reasoning in *Pontarelli* persuasive, and agrees that denying an award of attorney's fees under such circumstances would undermine "the policy concern of avoiding unnecessary constitutional decisions" that is the

"underlying rationale" of permitting plaintiffs to collect attorney's fees on state law claims pendent to substantial constitutional claims. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914 (2d Cir. 1997). Furthermore, Plaintiff's success on the state-law issue removed the barrier to Plaintiff obtaining a handgun permit, which is the relief Plaintiff sought in this action. As such, the Court finds that Plaintiff is a prevailing party entitled to attorney's fees under § 1988.

Defendant argues that awarding attorney's fees in this action would nonetheless be unjust because Plaintiff opposed resolution of the state statutory issue and had his attorney's fees paid by the National Rifle Association ("NRA"). This Court's discretion to deny a prevailing party fees under § 1988 is significantly limited by the presumption that the prevailing party is entitled to recovery absent special circumstances rendering the award unjust. *See Milwe v. Cavuoto*, 653 F.2d 80, 82 (2d Cir. 1981). The Second Circuit has instructed district courts that "the 'principal factor' underlying the decision to allow fee shifting . . . [is]: 'whether a person in the plaintiff's position would have been deterred or inhibited in seeking to enforce civil rights without an assurance that his attorneys' fees would be paid if he were successful.'" *Id.* (quoting *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978)). Thus, the presumption in favor of awarding attorney's fees is inapplicable "[i]n a case like *Zarcone*, where from the outset it was clear that the prospects for recovery were bright enough to attract competent counsel on a contingent fee basis . . . since there was 'no financial disincentive or bar to vigorous enforcement' of the plaintiff's civil rights." *Id.* at 83 (quoting *Zarcone*, 581 F.2d at 1044).

> The district court's discretion to deny fees begins, therefore, only after an initial determination that the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained. Only after this threshold has been crossed may a district court proceed to the second step and exercise discretion to deny counsel fees if it believes an award would work an injustice.

*Kerr v. Quinn*, 692 F.2d 875, 877-78 (2d Cir. 1982).

Here, the factors Defendant identified – Plaintiff's opposition to resolving this case on non-constitutional grounds and the NRA's financial support of Plaintiff – are not the type of "special circumstances" the Second Circuit has found to justify the denial of attorney's fees to a prevailing party. Defendant does not contend that Plaintiff's prospects for recovery were so bright from the outset of Plaintiff's case that Plaintiff could have readily attracted counsel on a contingent basis. Such an argument would be unlikely to succeed in light of the fact that Plaintiff's only requested relief was the granting of his permit application. Further, even if Plaintiff had sought monetary damages, at the time that Plaintiff commenced his appeal, the New York Appellate Division's reading of §400.00(3)(a) as containing a domicile requirement had not been disturbed, and lower courts' application of the Supreme Court's decision in *McDonald v. Chicago*, 561 U.S. 742 (2010), affirming that the Second Amendment is fully applicable to the states, was just developing. Thus, unlike in *Zarcone*, the wrongfulness of Defendant's challenged conduct here was not so clear that potential counsel would likely have assessed bright prospects for recovery. *See Zarcone*, 581 F.2d at 1044. The Court therefore concludes that special circumstances do not justify denying Plaintiff an award of attorney's fees.

Plaintiff is thus a prevailing party and has met the threshold requirement to obtain an award of attorney's fees.

## B.     The Reasonableness of the Requested Fee

Having found that Plaintiff is entitled to an award of attorney's fees, the Court must now determine whether Plaintiff's fee request is reasonable. In awarding attorney's fees, the district court is to determine the "presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N.Y. State Office of*

*Mental Health,* 652 F.3d 277, 289 (2d Cir. 2011).

### 1. Whether the Hourly Rates Requested Are Reasonable

The reasonable hourly rate to by used by the district court in determining the

presumptively reasonable fee is "what a reasonable, paying client would be willing to pay."

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d

Cir. 2008). When "stepping into the shoes of the reasonable, paying client," the court is to bear in

mind that the reasonable client "wishes to pay the least amount necessary to litigate the case

effectively." *Id.* In determining what a reasonable, paying client would be willing to pay, the

Court

> should . . . consider factors including, but not limited to, the
> complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required
> to prosecute the case effectively (taking account of the resources
> being marshaled on the other side but not endorsing scorched earth
> tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself,
> whether an attorney might have initially acted pro bono (such that a
> client might be aware that the attorney expected low or non-existent
> remuneration), and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

*Id.*

Furthermore, the Second Circuit "'forum rule' generally requires use of 'the hourly rates

employed in the district in which the reviewing court sits in calculating the presumptively

reasonable fee.'" *Bergerson*, 652 F.3d at 290 (quoting *Simmons v. N.Y. City Transit Auth.*, 575

F.3d 170, 174 (2d Cir. 2009)). Pursuant to the forum rule,

> when faced with a request for an award of higher out-of-district
> rates, a district court must first apply a presumption in favor of
> application of the forum rule. In order to overcome that
> presumption, a litigant must persuasively establish that a reasonable
> client would have selected out-of-district counsel because doing so

would likely (not just possibly) produce a substantially better net result.

*Simmons*, 575 F.3d at 175.  A party seeking higher out-of-district rates "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176.  A litigant cannot overcome the presumption in favor of in-district rates "by relying on the prestige or 'brand name' of her selected counsel." *Id.* Rather, the litigant can prevail by "establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* (citation omitted).

As the Second Circuit has explained, "[i]f a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge ... m[ay] allow only an hourly rate which local attorneys would have charged for the same service." *Id.* (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)).  "The [non-prevailing party] should not be required to pay for a limousine when a sedan could have done the job." *Id.* at 177.

In the present matter, Plaintiff seeks fees based on the hourly rates actually charged by his attorneys in this matter, with no reference to the prevailing rates in this or any district. Specifically, Plaintiff seeks fees based on the following hourly rates for Plaintiff's Washington, DC-based Bancroft attorneys: (1) $1,100 per hour for Paul D. Clement; (2) $625 per hour for Kelsi Brown Corkran; (3) $575 per hour for Erin Murphy; and (4) $425 per hour for D. Zachary Hudson.  As to Plaintiff's attorneys at Greenbaum's Woodbridge, New Jersey office, Plaintiff seeks fees based on the following hourly rates: (1) $500 per hour for Raymond Brown; (2) $350 per hour for Daniel L. Schmutter; (3) $240 per hour for Irene Hsieh; and (4) $210 per hour for

Marjan F. Disler, as well as $185 per hour for paralegals Tracy A. Fego and Kaitlin Luzzi.

Plaintiff contends that the Greenbaum attorneys' hourly rates are reasonable "given the unusual legal and factual circumstances of this case" and because "they are comparable to [the hourly rates] of other civil rights attorneys in the community." Dkt. No. 48-1 at 9. Plaintiff further contends that the Bancroft attorneys' hourly rates are reasonable because they are "consistent with the rates in the national appellate market for the price of legal services of comparable quality rendered in cases demanding similar skill, judgment, time and performance." *Id.* at 10. As to Mr. Clement in particular, Plaintiff argues that the $1,100 hourly rate is reasonable because "it represents the actual market rate which [Mr. Clement] commands and collects." *Id.* Plaintiff further argues that "the nature and magnitude of the ramifications of this case not just for [Plaintiff] but for all similarly situated persons . . . required the involvement of an attorney of Mr. Clement's caliber." *Id.*

Defendant argues that Plaintiff has failed to justify an award of out-of-district rates as Plaintiff has not shown that litigating this case required special expertise not available within this district. *See* Dkt. No. 52-2 at 9-10. The Court agrees. Plaintiff baldly asserts that "Plaintiff hired attorneys with skills, experiences, and reputations not easily comparable to or found in local counsel," but offers no support for this contention. Dkt. No. 55 at 5. Plaintiff does not identify what specific expertise or skills his attorneys possessed that attorneys within the Northern District of New York do not possess. Plaintiff repeatedly states that "[t]here are very few attorneys who practice Second Amendment constitutional litigation, and who practice constitutional litigation on behalf of plaintiffs against government entities." *See, e.g.*, *id.* However, although Plaintiff's counsel's declarations make clear that Plaintiff's attorneys – particularly the Bancroft attorneys – have significant experience in federal appellate litigation, counsel does not identify any specific

experience litigating Second Amendment claims.  *See* Dkt. Nos. 55-1, 55-2.  Nor has Plaintiff

shown that attorneys within this district are not competent to handle federal appellate litigation of

a civil rights claim akin to Plaintiff's claim or that any such attorneys were unwilling or unable to

take Plaintiff's case.  In short, Plaintiff appears to have assumed that local counsel could not have

achieved a successful result in this action without inquiring into the competence and expertise of

attorneys within this district.

   As such, Plaintiff has not met his burden of making a particularized showing that he

"would have received a substantially inferior result to that provided by [his] selected counsel" if

he had retained local counsel.  *Simmons*, 575 F.3d at 177.  The Court does not dispute Plaintiff's

contentions that his attorneys were well qualified to handle this action.  However,

> [w]hile [Plaintiff] cannot be faulted for wanting to retain counsel
> with the best possible reputation, it is not [Defendant]'s
> responsibility to compensate for such counsel based on higher
> out-of-district rates where [Plaintiff] has not shown that they were
> likely to produce a substantially better result than competent
> counsel in [this district] would produce for less—in this case,
> substantially less—money.

*Id.*  Accordingly, the Court finds that the prevailing hourly rates for the Northern District of New

York are the appropriate guide for reasonable hourly fees in this case.

   As recently as 2012, the Second Circuit has upheld determinations that

> [t]he prevailing hourly rates in [the Northern District of New York],
> which are what a reasonable, paying client would be willing to pay,
> are $210 per hour for an experienced attorney, $150 per hour for an
> attorney with more than four years experience, $120 per hour for an
> attorney with less than four years experience, and $80 per hour for
> paralegals.

*Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (internal quotation marks omitted)

(quoting *Bergerson*, 652 F.3d at 290).  Defendant argues that Plaintiff should be awarded fees at

these rates.  However, "more recent surveys in Northern District cases have indicated that, for a

civil rights matter, the prevailing rate in the Northern District is higher than $210." *Bergerson*, 652 F.3d at 290 (citations omitted). In recent civil rights cases in this district, the court has found the reasonably hourly rate for an experienced attorney to range from $225 to $295. *See, e.g.*, *Zhou v. State Univ. of N.Y. Inst. of Tech.*, No. 6:08-CV-0444, 2014 WL 7346035, *3 (N.D.N.Y. Dec. 23, 2014) ($225 per hour); *Neroni v. Coccoma*, No. 3:13-CV-1340, 2014 WL 3866307, *3 (N.D.N.Y. Aug. 6, 2014) ($295 per hour); *Deferio v. Bd. of Trs. of State Univ. of N.Y.*, No. 5:11-CV-0563, 2014 WL 295842, *7 (N.D.N.Y. Jan. 27, 2014) ($250 per hour); *Koziol v. Peters*, No. 6:12-CV-823, 2012 WL 5986574, *3 (N.D.N.Y. Nov. 29, 2012) ($225 per hour); *Martinez v. Thompson*, No. 9:04-CV-0440, 2008 WL 5157395, *15 (N.D.N.Y. Dec. 8, 2008) ($275 per hour); *see also Luessenhop v. Clinton County*, 558 F. Supp. 2d 247, 260-67 (N.D.N.Y. 2008) (providing an extensive analysis of empirical evidence and relevant cases to determine that $235 per hour was the reasonable hourly rate for an experienced civil rights litigator in this district as of 2008).

Here, Mr. Clement has unique expertise in federal appellate litigation of constitutional issues and more than twenty years of experience, including three years as the forty-third Solicitor General of the United States. Mr. Brown has forty years of experience and significant experience in appellate litigation, including argument before the New York Court of Appeals, and Mr. Schmutter has twenty-two years of litigation experience. In light of counsel's experience, the prevailing rates in this district, and the demands of this case, the Court finds that the following hourly rates are warranted in this case: $300 per hour for Mr. Clement; $250 per hour for Mr. Brown; and $235 per hour for Mr. Schmutter. Ms. Corkran and Ms. Murphy have approximately ten and nine years of legal experience respectively, and each has extensive experience in federal appellate litigation. As such, the Court finds that $200 per hour is the reasonable hourly rate for Ms. Corkran's and Ms. Murphy's work in this case.

As to the associate attorneys and paralegals who performed work in this case, the Court finds no reason to depart from the prevailing hourly rates in this district. Ms. Disler and Mr. Hudson each have more than four years of experience, while Ms. Hsieh has less than four years of experience. Accordingly, $150 per hour is warranted for Ms. Disler and Mr. Hudson's work; $120 per hour for Ms. Hsieh's work; and $80 per hour for Ms. Fego's and Ms. Luzzi's work.

### 2. *Whether the Number of Hours Expended Is Reasonable*

In determining a reasonable fee, the district court "should exclude . . . hours that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (citation omitted). The relevant inquiry for the court "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). In excluding hours that were not reasonably expended, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

Plaintiff requests a fee award based on 499.3 total hours expended by his attorneys and their staff. Plaintiff argues that the number of hours requested is reasonable because his attorneys obtained "excellent results" despite not prevailing on every contention raised. Dkt. No. 48-1 at 11. Defendant argues that the number of hours expended is unreasonable and should be reduced on the following grounds: (1) Plaintiff's counsel improperly engaged in "block billing" or "mixed-class" time entries; (2) a number of counsel's time entries are too vague to be compensable; (3) counsel's hours included redundant and unnecessary work; (4) the number of hours counsel

expended on research, Plaintiff's briefs to the Second Circuit and Court of Appeals, and preparation for oral argument were excessive; (5) counsel's hours include time spent on clerical or paralegal-level tasks that should be compensated at paralegal rates; and (6) the fee award should not include time spent in preparation of Mr. Clement's and Mr. Hudson's *pro hac vice* applications to the New York Court of Appeals. The Court addresses Defendant's arguments seriatim.

### a. Mixed-Class Time Entries

Defendant contends that a number of counsel's time entries must be excluded because they combine various tasks into one time entry, thereby making it "impossible to decipher how much time was actually spent on each task contained in the entries." Dkt. No. 52-2 at 18. Defendant's argument ignores that so-called "block billing" is not prohibited in the Second Circuit. *See Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); *Tottey v. Life Ins. Co. of N. Am.*, No. 5:05-CV-877, 2009 WL 3764222, *3 (N.D.N.Y. Nov. 10, 2009).

> As one court has explained, "multiple entries comply with the Second Circuit's requirement of specificity in *Carey* that the records specify the date, hours expended, and nature of the work done." Thus "'[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"

*Rodriguez*, 84 F. Supp. 2d at 425 (citations omitted). Nonetheless, in exceptional cases, courts in this circuit have reduced fees where block billing "render[ed] it difficult to determine whether, and/or the extent to which, the work done by [the prevailing party's] attorneys [was] duplicative or unnecessary," *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003), or where the time entries "fail[ed] to adequately differentiate tasks that are compensable at different rates[] and . . . combine[d] compensable and non-compensable tasks into single entries," *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76 Civ. 2125, 2005 WL 736146, *10 (S.D.N.Y. Mar. 31, 2005).

The Court has reviewed the time entries identified by Defendant as improper mixed-class time entries and finds that the entries are not so cluttered or entangled as to prevent the Court from meaningfully reviewing whether the time spent on each task was excessive. In fact, most of the specified entries contain numerous actions taken by counsel related to one larger task and are thus appropriately billed as one entry.[3] As Counsel's combining topically related tasks into single time entries does not significantly prohibit the Court from evaluating the reasonableness of the time spent by Plaintiff's counsel on various tasks, the Court finds that excluding such entries because of their "mixed" nature is not warranted. Furthermore, none of the time entries identified by Defendant combine items that should be compensated at a lower hourly rate, e.g. travel time, or non-compensable items with compensable items. Accordingly, the Court declines to reduce Plaintiff's counsel's hours on this ground.

### b. Impermissibly Vague Time Entries

Defendant next argues that many of counsel's time entries are too vague to permit the Court to evaluate their reasonableness. *See* Dkt. No. 52-2 at 18-19. Specifically, Defendant contends that Mr. Schmutter's redacted time entries fail to include sufficient detail to apprise the Court of the subject-matter of the tasks performed. *See id.* The time entries Defendant references are redacted, save for the following phrases: "Examined issue re:"; "Conferred with Paul Clement [or Zac Hudson] re:"; "Corresponded with Paul Clement [or Zac Hudson] re:"; "Corresponded with Paul Clement and Christopher Conte re:"; "Legal research re:"; "Correspond with clients and

---

[3] For example, the January 20, 2012 time entry to which Defendant directs the Court's attention reads: "Complete draft brief; review record and revise facts section of brief; proofread brief; e-mail to brief to P. Clement." Dkt. No. 52-2 at 11. Each of the "various tasks" listed pertains to the larger task of preparing Plaintiff's appellate brief. Many of the "mixed-class" time entries that Defendant points to similarly contain descriptions of various actions counsel took when working on a single larger objective, such as preparation for oral argument or the drafting of a specific court filing.

co-counsel re:"; and "Correspond with Al Osterweil re:." *See* Dkt. No. 55-1 at 11-49.

"[A]n application for attorneys' fees must be supported by detailed, contemporaneous time records indicating the attorney who performed the work, 'the date, the hours expended, and the nature of the work done.'" *People ex rel. Vacco v. Rac Holding, Inc.*, 135 F. Supp. 2d 359, 363 (N.D.N.Y. 2001) (quoting *Carey*, 711 F.2d at 1148). "While the fee applicant's records need not be extraordinarily detailed, they must identify the general subject matter of the claimed time expenditures." *Id.* (citing *Hensley*, 461 U.S. at 437 n.12) (other citations omitted). "If 'the time records submitted in support of a fee application lack sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed, the Court is justified in reducing the hours claimed for those entries.'" *Williamsburg*, 2005 WL 736146, at *9 (citation omitted).

The courts in this circuit have found that "vague entries such as 'conference with' or 'call to' a specific person" generally lack sufficient specificity, while "time entries that refer to unspecified communications with unidentified 'outside counsel' or 'colleagues'" are "plainly inadequate." *Tucker v. City of New York*, 704 F. Supp.2d 347, 356 (S.D.N.Y. 2010) (citations omitted); *see also Williamsburg*, 2005 WL 736146 at *10 (finding time entries that "fail[ed] to indicate the subject matter of telephone calls, conferences, and documents reviewed and drafted, or otherwise provide context by referring to specific issues or events in the case" impermissibly vague); *Vacco*, 135 F. Supp. 2d at 364 (reducing a fee award based on impermissibly vague time entries that "indicate[d] merely that a phone call was made or a meeting attended without describing the nature of the discussions therein").

The Court finds Mr. Schmutter's redacted time entries impermissibly vague and thus not compensable. Mr. Schmutter's entries omit any reference to specific issues or subject matter and

rely on "generic descriptions," such as "examined," "conferred," and "corresponded." *See Williamsburg*, 2005 WL 736146 at *10. Plaintiff argues that the subject matter of the time entries is "easily discernible from the contextual clues of the time entries or the Court's familiarity with the case at hand." Dkt. No. 55 at 15. Despite the Court's familiarity with the relevant legal issues in this case, the Court cannot ascertain the nature of Mr. Schmutter's time expenditures from the bare phrases "examined issues re:", "legal research re:" and "corresponded [or conferred] re:". Plaintiff essentially asks the Court to assume that the issues Mr. Schmutter examined and the topics of his communications with co-counsel were relevant to Plaintiff's case without providing any information regarding what issues and topics he examined and discussed. Doing so would relieve Mr. Schmutter of his burden to identify the general subject matter of his claimed expenditures in order to provide the Court with an adequate basis for reviewing the reasonableness of his claimed hours, which the Court may not do.

Plaintiff further argues that Mr. Schmutter's time entries were properly redacted to protect privileged communications and attorney work product. *See* Dkt. No. 55 at 16. However, courts in this circuit have reduced attorney's fees on vagueness grounds where, as here, the time records were "so thoroughly redacted that the Court could not reasonably review them." *Home Funding Group, LLC v. Kochmann*, No. 3:06CV1234, 2008 WL 4298325, *6 n.7 (D. Conn. Sept. 18, 2008); *see also Skanga Energy & Marine Ltd.* v. *Arevenca S.A.*, No. 11 Civ. 4296, 2014 WL 2624762, *7 (S.D.N.Y. May 9, 2014) (reducing hours where the attorney's time entries were heavily redacted to delete allegedly privileged information); *Zhou*, 2014 WL 7346035 at *4 (basing reduction of hours in part on the vagueness of billing entries redacted based on attorney-client privilege). Plaintiff has not directed the Court to any precedent that compels or suggests a contrary result. Accordingly, the Court will not award fees for the 13.8 hours identified by Mr.

Schmutter as conferral or communication on unspecified topics with co-counsel and Mr. Conte or the 13.2 hours expended on examining unidentified issues.

Plaintiff additionally contends that even if Mr. Schmutter's time entries were impermissibly vague, "total exclusion of [those] time entr[ies] . . . is improper, unjust and unsupported by case law." Dkt. No. 55 at 14. In support of this argument, Plaintiff refers the Court to the *Vacco* court's holding that "a complete disallowance of attorneys' fees[] is not [an] appropriate [remedy]" to address the vague nature of the prevailing party's attorney's time entries. 135 F. Supp.2d at 364. However, in that case, the district court had originally determined that the prevailing party was not entitled to any recovery of attorney's fees because counsel's time records were too vague. *See id.* at 363. Upon reconsideration, the court held that this remedy was too drastic and determined that a ten percent reduction in total attorney's fees was appropriate. *Id.* at 365. Here, by excluding the specific time entries the Court finds impermissibly vague, the Court is excluding slightly more than five percent of the total hours sought by counsel. This reduction is narrowly drawn to exclude only those time entries lacking adequate description and is plainly not unduly drastic. *See id.* at 364 (collecting cases in the Second Circuit reducing requested fee awards by ten to twenty percent for vague or incomplete billing records). The Court therefore finds that exclusion of Mr. Schmutter's impermissibly vague time entries is proper.

### c. Overstaffing

Defendant additionally contends that all of Mr. Schmutter's work in this case was duplicative of the work performed by the Bancroft attorneys and evidenced unnecessary overstaffing. *See* Dkt. No. 52-2 at 19. Defendant therefore requests that the Court exclude all of Mr. Schmutter's hours as redundant and unnecessary. *See id.* Defendant also argues that the time the attorneys spent communicating with each other was unnecessary and excessive in light of the

relatively simple nature of the case. *See id.* at 20. In response, Plaintiff contends that Mr.

Schmutter performed work that was non-duplicative of the Bancroft attorneys' work and that his

review of the Bancroft attorneys' work was necessary as counsel of record. *See* Dkt. No. 55 at 16.

Plaintiff further contends that the staffing of this case with one lead partner, associate, and local

counsel was appropriate and not excessive. *See id.*

The district court is "accorded ample discretion" in assessing whether the extent of

staffing was appropriate in a given case in light of the complexity of the litigation. *Carey*, 711

F.2d at 1146.

> Under section 1988, prevailing parties are not barred as a matter of
> law from receiving fees for sending a second attorney to depositions
> or an extra lawyer into court to observe and assist. . . . Of course, a
> trial judge may decline to compensate hours spent by collaborating
> lawyers or may limit the hours allowed for specific tasks, but for
> the most part such decisions are best made by the district court on
> the basis of its own assessment of what is appropriate for the scope
> and complexity of the particular litigation. A district court's
> determinations on such matters will be overturned on appeal only
> when it is apparent that the size of the award is out of line with the
> degree of effort reasonably needed to prevail in the litigation.

*Id.* (citations omitted).

The Court agrees with Defendant's assertion that the issues on appeal in this case were not

particularly complex. The facts were undisputed. Plaintiff's appeal hinged on three legal issues:

the proper meaning of the term "resides" in New York's statutory scheme for the issuance of

handgun permits and whether that scheme violated the Second and Fourteenth Amendments. The

issue of New York State statutory construction was straightforward, and Plaintiff's attorneys

devoted much of their time on this issue to arguing against its resolution by the New York Court

of Appeals. Similarly, the Fourteenth Amendment issue raised by Plaintiff was a fairly typical

equal protection claim and did not raise any novel legal issues. However, the Second

Amendment issue was more complicated in light of the recency of the Supreme Court's *McDonald* decision and the decision's impact on Second Amendment jurisprudence.

The Court therefore finds that some of the use of multiple attorneys and consultation between attorneys was appropriate in this case. Furthermore, the Court does not find that all of Mr. Schmutter's work was duplicative or unnecessary and will not exclude the entirety of Mr. Schmutter's time from the fee award. For example, Mr. Schmutter argued for Plaintiff before the New York Court of Appeals. Mr. Schmutter's time spent in preparation for and representing Plaintiff at oral argument was plainly not redundant of any other attorney's work.

However, review of counsels' records reveals a duplication of efforts by multiple attorneys on many of the tasks performed in this appeal. The Court will address these redundancies in its discussion of the time expended on each of the steps of the appeal that follows.

### d. Redundant and Unnecessary Hours

Defendant argues that the time Plaintiff's counsel spent on various steps of the appeal process was excessive in light of counsel's experience and the complexity of the arguments raised. As with the question of overstaffing, the district court's familiarity with the case guides its determination of whether the hours expended by counsel were reasonably necessary.

> The district court must thus examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. . . . In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

22

Defendant first argues that the number of hours Plaintiff's attorneys spent drafting Plaintiff's initial brief to the Second Circuit was excessive. *See* Dkt. No. 52-5 at 21. Counsel billed a total of 80.35 hours for preparation and editing of the brief: 26.2 hours by Mr. Schmutter, 5.5 hours by Mr. Clement, 46.25 hours by Mr. Hudson, and 2.4 hours by Ms. Fego.[4] Defendant contends that reasonable experienced appellate attorneys would not spend so many hours on preparing an appellate brief. The Court first notes that the 80.35 hours does not include the time counsel billed as research, which undoubtedly related to the issues addressed in Plaintiff's brief. The Court thus agrees that the time expended is unreasonable and includes redundant work. *See Peterson v. Foote*, No. 83-CV-153, 1995 WL 118173, *4 (N.D.N.Y. Mar. 13, 1995) (concluding that 98.45 hours spent researching and drafting an appellate brief was unreasonable and reducing the hours to 65.60). The Court finds that the hours expended by Mr. Clement and Ms. Fego in preparation of the brief were reasonable, and will reduce by one-third the time Mr. Schmutter and Mr. Hudson spent drafting and editing the initial appellate brief. The Court will therefore award 56.45 total hours for the preparation of Plaintiff's appellate brief: 17.56 hours by Mr. Schmutter, 5.5 hours by Mr. Clement, 30.99 by Mr. Hudson, and 2.4 by Ms. Fego.

Defendant next contends that the time spent preparing Plaintiff's opposition to Defendant's motion to extend time and motion to certify a question was excessive. *See* Dkt. No. 52-2 at 22. Counsel spent 12.7 hours preparing Plaintiff's opposition to Defendant's motion to extend time.

---

[4] Plaintiff did not categorize his attorney's time entries by task or provide calculations for total hours spent on each task, nor did Plaintiff provide the Court with calculations of each attorney's and paralegal's total hours expended. Defendant "use[d] the full amount of time listed for the group of tasks that includes the task being evaluated" when approximating how much time was spent on each task, thus potentially overstating the time expended on a given task. In order to obtain a more precise picture of the time counsel expended on each task, the Court independently categorized counsel's time entries into tasks. The Court's references to hours expended on each task are references to the Court's own calculations.

The Court finds this amount excessive due to the simple nature of the opposition, which involved a straightforward legal argument on the requirements of the Second Circuit's rule governing extensions of time. The Court's view is that three hours was the time reasonably necessary to complete the opposition brief. Accordingly, the Court will award one hour for the opposition preparation to each of the attorneys that worked on it – Mr. Schmutter, Mr. Clement, and Mr. Hudson.

As to Plaintiff's opposition to Defendant's motion to certify, the Court finds that opposing certification "was not reasonably necessary to the outcome" of Plaintiff's appeal. *Tucker*, 704 F. Supp.2d at 354. Plaintiff's opposition to certifying the question of state law undermined Plaintiff's likelihood of success, as it attempted to bar the very avenue for Plaintiff to obtain the relief he sought – namely, the granting of his permit application – on which Plaintiff ultimately prevailed. Plaintiff did not argue on appeal that New York law imposed a residence requirement for obtaining a handgun permit. Plaintiff argued only that a domiciliary requirement was unconstitutional. Thus, certification had no potential to worsen Plaintiff's position, as an answer from the New York Court of Appeals affirming a domicile requirement for handgun possession would have left Plaintiff in the same position before the Second Circuit as the position Plaintiff took on appeal. The Court does not find that a reasonable attorney would have expended significant amounts of time opposing a viable avenue for success that had no potential to weaken his client's position. As a result, the Court will not award fees for the time spent opposing certification of the state statutory question to the New York Court of Appeals.

Defendant also challenges the 32.75 hours Plaintiff's counsel billed for the drafting and editing of Plaintiff's reply brief to the Second Circuit as excessive. *See* Dkt. No. 52-2 at 22. Plaintiff devoted seven pages of its twenty-five page reply brief to arguing that the Second Circuit

should not certify the statutory construction question to the New York Court of Appeals. This portion of Plaintiff's reply brief essentially duplicated the arguments raised in Plaintiff's certification opposition, and was not reasonably necessary to a successful outcome for Plaintiff as discussed above. The Court will therefore reduce the time spent on Plaintiff's reply brief by one-fourth and will award 4.5 hours to Mr. Schmutter, 1.88 hours to Mr. Clement, and 18.19 hours to Mr. Hudson for time expended on the reply brief.

Defendant further contends that the 56.25 hours Plaintiff's attorneys spent preparing Plaintiff's brief to the New York Court of Appeals was excessive and included unnecessary time briefing constitutional issues that were not before the court. *See* Dkt. No. 52-2 at 23. Plaintiff dedicated two pages of his thirty-one page brief to addressing the question of statutory construction that was certified to the Court of Appeals. The remainder of Plaintiff's brief reiterated the same arguments as to why a domiciliary requirement would be unconstitutional as Plaintiff set forth in his initial and reply briefs to the Second Circuit. Plaintiff argues that "[t]he Second Amendment issue was squarely *presented* in the brief and argued at oral argument" and that "it is not up to Defendant[] to decide what arguments Plaintiff may present to a court." Dkt. No. 55 at 16 (emphasis added). Although each of these statements may be true, neither addresses the fact that a limited question of statutory construction was certified to the New York Court of Appeals. Plaintiff's constitutional arguments were relevant only insofar as they supported an argument that the doctrine of constitutional avoidance should lead the court to interpret the statute as containing a residence requirement.

Furthermore, Plaintiff has provided no explanation as to why nearly sixty hours of work was required to prepare a brief that contained the same arguments that Plaintiff had twice argued before the Second Circuit. Similarly, Plaintiff's counsel billed nearly thirty hours for producing

Plaintiff's reply brief to the New York Court of Appeals. The brief again largely reiterated the same points as to the constitutionality of a domicile requirement that Plaintiff had already expounded numerous times, often citing to or quoting Plaintiff's opening brief. As counsel has provided no justification for why nearly ninety hours of work was necessary to reassert arguments Plaintiff had already developed, many of which were outside the scope of the statutory issue before the New York Court of Appeals, the Court will reduce the time counsel spent preparing its briefs to the Court of Appeals by two-thirds. Thus, the Court will allow Mr. Schmutter to be compensated for 1.65 hours, Mr. Clement to be compensated for 2.64 hours, Ms. Murphy to be compensated for 0.25 hours, and Mr. Hudson to be compensated for 24 hours spent preparing Plaintiff's briefs to the New York Court of Appeals.

Defendant also seeks a reduction in the time billed for research and reviewing Plaintiff's own prior arguments and Defendant's submissions. *See* Dkt. No. 52-2 at 24. By the Court's calculation, counsel spent approximately 79 hours on legal research and 15 hours reviewing Defendant's case filings. The Court first notes that it has already excluded Mr. Schmutter's time charged as research on vagueness grounds. Even after this exclusion, however, the Court finds that the 65.75 hours spent on research in this case was excessive, especially in light of the limited issues presented on appeal. The Court will accordingly reduce the time billed for research by one-third and will award fees for 1.4 hours of Ms. Fego's time, 1.6 hours of Ms. Disler's time, 1 hour of Ms. Hsieh's time, 0.25 hours of Mr. Clement's time, and 39.8 hours of Mr. Hudson's time spent researching. The Court further finds that the 14.6 hours expended on reviewing Defendant's fillings demonstrates a duplication of efforts and will reduce this time by one-third. As such, the Court will award fees for 4.3 hours of Mr. Schmutter's time and 5.5 hours of Mr. Hudson's time.

Defendant further argues that Plaintiff's attorneys billed an excessive amount of time

related to oral argument preparation and argument before the Second Circuit and the New York

Court of Appeals. *See* Dkt. No. 52-2 at 25. Mr. Clement spent 30.5 hours preparing for oral

argument and arguing before the Second Circuit, while his colleagues at Bancroft collectively

spent 33 hours aiding in his preparation. The courts in this circuit have found as few as twenty-

eight hours spent in preparation for oral argument before the Second Circuit to be excessive. *See*

*Luessenhop*, 558 F. Supp. 2d at 270; *see also Levitan v. Sun Life & Health Ins. Co.*, No. 09 Civ

2965, 2013 WL 3829623, *10 (S.D.N.Y. July 24, 2013) (finding 54 hours collectively billed for

preparation and attendance at oral argument before the Second Circuit excessive); *Peterson*, 1995

WL 118173 at *4 (determining that 79.80 hours spent preparing for oral argument and arguing

before the Second Circuit was excessive). Mr. Clement and Mr. Hudson, who contributed the

most hours to aiding in Mr. Clement's oral argument preparation, both participated in the drafting

of Plaintiff's Second Circuit briefs and extensive conferral with co-counsel, and should have

already been familiar with the relevant case law and legal arguments. Furthermore, Mr. Clement

and his associates were retained for this appeal specifically for their expertise in arguing

constitutional issues before the federal appellate courts. Accordingly, the Court agrees that the

time devoted to the Second Circuit oral argument was excessive, and reduces by one-third the

time expended. Mr. Clement will therefore be compensated for 20.44 hours, Mr. Hudson for

14.57 hours, Ms. Murphy for 2.85 hours, and Ms. Corkran for 4.69 hours.

As to oral argument before the New York Court of Appeals, Plaintiff seeks fees for

approximately 44 hours spent in preparation and argument. As with Plaintiff's briefs to the New

York Court of Appeals, the bulk of Plaintiff's argument before the New York Court of Appeals

restated Plaintiff's arguments to the Second Circuit. Plaintiff has provided no explanation why

preparing to address these arguments, which had already been developed and asserted numerous

times on appeal, required 44 hours of work. As a result, the Court will reduce by one-third the time expended on oral argument before the New York Court of Appeals and will compensate Mr. Schmutter for 17.29 hours, Ms. Luzzi for 5.36 hours, Mr. Brown for 3.69 hours, Mr. Clement for 0.25 hours, and Mr. Hudson for 3.02 hours.

Additionally, Defendant requests that the Court reduce the time compensated for preparation of Plaintiff's legal fee application to the extent that it exceeds twenty-four percent of the total hours the Court finds compensable. *See* Dkt. No. 52-2 at 26; *see also Reiter v. Metro. Transp. Auth.*, No. 01 Civ. 2762, 2007 WL 2775144, *20 (S.D.N.Y. Sept. 25, 2007) (finding that awards for time spent on fee applications in this circuit generally range between eight to twenty-four percent of the total award for total time spent on the case). Plaintiff seeks compensation for 12.05 hours spent preparing the instant motion for attorney's fees. This time is well within the range of reasonable percentages identified by Defendant, and the Court finds it reasonable.

### e. Administrative Tasks

Defendant also objects to Plaintiff seeking to be compensated at attorney rates for tasks capable of performance by clerical or paralegal staff. *See* Dkt. No. 52-2 at 25. Contrary to Plaintiff's assertion that "Defendant[] do[es] not identify which time this is," Dkt. No. 55 at 17, Defendant specifically refers to the preparation and review of appendixes, preparation and filing of administrative forms, coordinating filing, and checking cites, *see* Dkt. No. 52-2 at 25. The Court agrees that the district's prevailing rate of $80 per hour for paralegal work should apply to the following tasks: (1) preparation and filing of Plaintiff's notice of appearance; (2) preparation and filing of the Second Circuit's Form C and Form D, which are brief administrative forms; (3) filing of various scheduling notifications; (4) conferral with the court regarding filings; and (5) preparation and filing of Plaintiff's oral argument statement to the Second Circuit, which is a one-

page form stating that Plaintiff sought oral argument and would be represented at argument by Mr. Clement. The Court also finds that even at a paralegal rate, the 16.3 hours spent preparing these "initial filings" was excessive. For instance, Mr. Schmutter billed 2.8 hours on preparation of his notice of appearance alone. The Court will award five hours total for the preparation of these simple forms at the rate of $80 per hour.

### *f.* **Pro Hac Vice** *Applications*

Defendant further argues that Plaintiff is not entitled to attorney's fees for the time spent preparing Mr. Clement's and Mr. Hudson's *pro hac vice* applications or the fees related to their applications because their admission to the New York Court of Appeals was unnecessary, as Mr. Schmutter is admitted to practice in New York and argued before the New York Court of Appeals for Plaintiff. *See* Dkt. No. 52-2 at 26. "It is within the Court's discretion whether to award attorney's fees for a *pro hac vice* motion." *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. CV 06-5487, 2008 WL 4453221, *11 (E.D.N.Y. Sept. 30, 2008). However, the district courts in this Circuit often award attorney's fees and costs associated with *pro hac vice* admission. *See Deferio*, 2014 WL 295842, *14 (collecting cases awarding fees and expenses related to *pro hac vice* admission in cases in which the prevailing parties also had local co-counsel). The Court will therefore permit Plaintiff to recover the attorney's fees and costs associated with Mr. Clement's and Mr. Hudson's *pro hac vice* motions. However, the Court finds that the preparation and filing of the *pro hac vice* motions are appropriately categorized as a non-legal clerical tasks. *See Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2011 WL 4594141, *11 (N.D.N.Y. Sept. 30, 2011) (permitting recovery of attorney's fees for the filing of counsel's motion to proceed *pro hac vice* at paralegal hourly rate). As such, the Court will award fees for the preparation of counsel's *pro hac vice* motions at the paralegal hourly rate of $80 per hour.

In summation, based upon the Court's adjusted hourly rates and adjusted number of hours, the Court finds that the reasonable attorney's fees in connections with Plaintiff's case are $54,305.65, calculated as follows:

| Attorney/ Paralegal | Hourly Rate Requested | Hourly Rate Awarded | No. of Hours Requested | No. of Hours Awarded | Amount Awarded |
|---|---|---|---|---|---|
| Paul Clement | $1,100.00 | $300.00 | 57.25 | 40.2 | $12,060.00 |
| Raymond Brown | $500.00 | $250.00 | 5.5 | 3.69 | $922.50 |
| Daniel Schmutter | $350.00 | $235.00 | 140.10 | 66.79 | $15,695.65 |
| Kelsi Corkran | $625.00 | $200.00 | 7 | 4.69 | $938.00 |
| Erin Murphy | $575.00 | $200.00 | 4.5 | 2.85 | $570.00 |
| D. Zachary Hudson | $425.00 | $150.00 | 269.25 | 147.07 | $22,060.50 |
| Marjan Disler | $210.00 | $150.00 | 2.5 | 2.1 | $315.00 |
| Irene Hsieh | $240.00 | $120.00 | 1 | 1 | $120.00 |
| Tracy Fego | $185.00 | $80.00 | 4.2 | 12.3 | $984.00 |
| Kaitlin Luzzi | $185.00 | $80.00 | 8 | 8 | $640.00 |

**C.     Costs and Expenses**

Plaintiff also seeks costs and expenses totaling $6,180.03. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted).  Recoverable out-of-pocket expenses include

"[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," postage expenses, and similar expenses that can be "distinguished from nonrecoverable routine office overhead." *Id.* (internal quotation marks and citation omitted).

With the exception of the costs related to Mr. Clement's and Mr. Hudson's motions for *pro hac vice* admission discussed above, Defendant does not contest Plaintiff's request for costs. The Court has reviewed the disbursement records and receipts submitted by Plaintiff's counsel and has determined that the expenses charged, which include charges for photocopying, binding, shipping, travel, and filing fees, are the type of charges that are compensable. Accordingly, the Court will award Plaintiff the requested $6,180.03 in costs and expenses.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for attorney's fees and costs (Dkt. No. 48) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiff is awarded $54,305.65 in attorney's fees; and the Court further

**ORDERS** that Plaintiff is awarded $6,180.03 in costs.

**IT IS SO ORDERED.**

Dated: March 11, 2015
        Albany, New York

Mae A. D'Agostino
U.S. District Judge